UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____x

MERIDIAN HORIZON FUND, LP, MERIDIAN : 
HORIZON FUND II, LP, MERIDIAN : 
DIVERSIFIED FUND, LP, MERIDIAN : 
DIVERSIFIED FUND, LTD., MERIDIAN : 
DIVERSIFIED ERISA FUND, LTD., : 
MERIDIAN DIVERSIFIED COMPASS FUND, : 
LTD., and MERIDIAN ABSOLUTE RETURN : 
ERISA FUND, LTD., :                        09-Civ-3708 (TPG)
 :
                              Plaintiffs, :     **ECF FILED**
 :
            - against - :                      **ORAL ARGUMENT**
 :                                             **REQUESTED**
TREMONT GROUP HOLDINGS, INC., :
TREMONT PARTNERS, INC., TREMONT :
(BERMUDA) LIMITED, OPPENHEIMER :
ACQUISITION CORPORATION, KPMG LLP, :
and KPMG (CAYMAN), :
 :
                             Defendants. :
 :
_____x

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KPMG CAYMAN'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>

George A. Salter
(GASalter@hhlaw.com)
W. Sidney Davis
(WSDavis@hhlaw.com)
Katie M. Lachter
(KMLachter@hhlaw.com)
Sabrina H. Cochet
(SHCochet@hhlaw.com)

HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
Tel: (212) 918-3000
Fax: (212) 918-3100

*Attorneys for Defendant*
*KPMG Cayman*

Dated: May 20, 2009

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ..................................................................................2

FACTUAL ALLEGATIONS ....................................................................................3

ARGUMENT ........................................................................................................5

I.    LEGAL STANDARD .....................................................................................5

II.   THE COMPLAINT MUST BE DISMISSED BECAUSE OF A LACK OF
      SUBJECT MATTER JURISDICTION..............................................................6

      A.    Plaintiffs' Complaint Fails To Allege Facts Supporting Subject Matter
            Jurisdiction For Its Securities Law Claim Against KPMG Cayman........................7

            1)    Plaintiffs Have Failed To Plead Facts Showing That KPMG
                  Cayman's Alleged Wrongful Conduct Had Any Link With
                  The United States ................................................................8

            2)    Plaintiffs Have Failed To Plead Facts Showing That KPMG
                  Cayman's Alleged Wrongful Conduct Had Any Effect Within
                  The United States ..............................................................10

      B.    The State Claims Against KPMG Cayman Should Also Be Dismissed
            For Lack Of Subject Matter Jurisdiction...............................................11

III.  THE COURT SHOULD DISMISS THIS CASE UNDER THE DOCTRINE
      OF FORUM NON CONVENIENS .................................................................12

      A.    There Is A Viable Alternate Forum For The Claims Against KPMG
            Cayman: The Cayman Islands................................................................13

      B.    The Public Interest And Private Interests Weigh In Favor Of A
            Dismissal Of The Claims Against KPMG Cayman Under The
            Doctrine Of Forum Non Conveniens .......................................................14

            1)    Public Interests Weigh In Favor Of A Dismissal Of The
                  Claims Against KPMG Cayman .............................................14

            2)    Private Interests Also Weigh In Favor Of A Dismissal of the
                  Claims Against KPMG Cayman .............................................15

i

IV.  PLAINTIFFS' 10(B) CLAIMS MUST BE DISMISSED BECAUSE
     PLAINTIFFS FAIL TO PLEAD FACTS RAISING A STRONG
     INFERENCE OF SCIENTER ........................................................................................ 16

V.   PLAINTIFFS' COMMON LAW FRAUD AND NEGLIGENCE CLAIMS
     FAIL TO SATISFY NECESSARY PLEADING REQUIREMENTS AND
     MUST BE DISMISSED ................................................................................................ 20

CONCLUSION ...................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps">CASES</span>

*Acito v. IMCERA Group,*
  47 F.3d 47 (2d Cir. 1995) ...............................................................................17

*Alfadda v. Fenn,*
  159 F.3d 41 (2d Cir. 1998) ........................................................................passim

*APWU v. Potter,*
  343 F.3d 619 (2d Cir. 2003) ............................................................................. 6

*Ashcroft v. Iqbal,*
  566 U.S. ___ (2009), No. 07-1015, 2009 WL 1361536 (May 18, 2009)............1, 6, 20, 22

*ATSI Communications v. Shaar Fund,*
  493 F.3d 87 (2d Cir. 2007)......................................................................5, 6, 20, 22

*Bacardi v. De Lindzon,*
  728 So. 2d 309 (Fla. 3d Dist. Ct. App. 1999) ...............................................13

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...........................................................................................5

*Bersch v. Drexel Firestone, Inc.,*
  519 F.2d 974 (2d Cir. 1975)........................................................................7, 9, 11

*Chambers v. Time Warner, Inc.,*
  282 F.3d 147 (2d Cir. 2002)............................................................................... 5

*Chill v. General Elec. Co.,*
  101 F.3d 263 (2d Cir. 1996) ............................................................................17

*Coronel v. Quanta Capital Holdings Ltd.,*
  No. 07 Civ. 1405(RPP), 2009 WL 174656............................................................6

*Davidoff v. Farina,*
  No. 04 Civ. 7617(NRB), 2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005) ................21

*DiVittorio v. Equidyne Extractive Indus., Inc.,*
  822 F.2d 1242 (2d Cir. 1987) ......................................................................19, 21

*Ernst & Ernst v. Hochfelder et al.,*
  425 U.S. 185 (1976) .........................................................................................16

*Euro Trade & Forfaiting, Inc. v. Vowell,*
  No. 00 CIV. 8431 (LAP), 2002 WL 500672 (S.D.N.Y. March 29, 2002) ........................ 8, 11

*Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London,*
  147 F.3d 118 (2d Cir. 1998) ................................................................................. 8, 11, 14

*Ganino v. Citizens Utils. Co.,*
  228 F.3d 154 (2d Cir. 2000) ................................................................................. 16

*Gulf Oil Corp. v. Gilbert,*
  330 U.S. 501 (1947) ............................................................................................ 14

*In re Bayer AG Sec. Litig.,*
  423 F. Supp. 2d 105 (S.D.N.Y. 2005) ................................................................ 7, 10

*In re Complete Mgmt. Inc. Sec. Litig.,*
  153 F. Supp. 2d 314 (S.D.N.Y. 2001) ................................................................ 18

*In re Take-two Interactive Sec. Litig.,*
  551 F. Supp. 2d 247 (S.D.N.Y. 2008) ................................................................ 5, 17

*Makarova v. United States,*
  201 F.3d 110 (2d Cir. 2000) ................................................................................. 6

*Morisson v. National Australia Bank, Ltd.,*
  547 F.3d 164 (2d Cir. 2008) ................................................................................. passim

*Novak v. Kasaks,*
  216 F.3d 300 (2d Cir. 2000) ................................................................................. 17

*Piper Aircraft Co. v. Reyno,*
  454 U.S. 235 (1981) ............................................................................................ 12, 16

*Pollux Holding Ltd. v. Chase Manhattan Bank,*
  329 F.3d 64 (2d Cir. 2003) ................................................................................. 12

*Romback v. Chang,*
  355 F. 3d 164 (2d Cir. 2004) ................................................................................. 6

*Rothman v. Gregor,*
  220 F.3d 81 (2d Cir. 2000) ................................................................................. 18, 20

*Shields v. Citytrust Bancorp,*
  25 F.3d 1124 (2d Cir. 1994) ................................................................................. 17

*Specialty Assistant Servs., Inc. v. Colin Luke Associates, Ltd.,*
  No. Civ.A.02-6553, 2004 WL 2988516 (E.D. Pa. Dec. 27, 2004) ....................... 13

iv

*Stevelman v. Alias Research Inc.*,
174 F.3d 79 (2d Cir. 1999) ............................................................ 18

*Sty-Lite Company v. Eminent Sportwear Inc.*,
115 F. Supp. 2d 394 (S.D.N.Y. 2000) ........................................... 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
127 S. Ct. 2499 (2007) ................................................................... 17

*Warter v. Boston Securities, S.A.*,
380 F. Supp. 2d 1299 (S.D. Fla. 2004) ......................................... 15

*Windt v. Qwest Communications International, Inc.*,
544 F. Supp. 2d 409 (D.N.J. 2008) .......................................... 13, 14

*Wyndham Assocs. V. Bintliff*,
398 F.2d 614 (2d Cir. 1968) .......................................................... 15

*Zoelsch v. Arthur Andersen & Co.*,
824 F.2d 27 (D.C.Cir. 1987) ............................................................ 7

*Zucker v. Sasaki*,
963 F. Supp. 301 (S.D.N.Y. 1997) ................................................ 18

## STATUTES

17 C.F.R. § 240.10b-5 ..................................................................... 16

Fed. R. Civ. P. 9(b) ................................................................... passim

Fed. R. Civ. P. 12(b)(1) ..................................................................... 2

Fed. R. Civ. P. 12(b)(6) ..................................................................... 2

SEC Rule 10(b) ........................................................................ 2, 4, 16

15 U.S.C. § 78j(b) ........................................................................... 15

15 U.S.C. § 78u-4(b) ......................................................................... 1

15 U.S.C. § 78u-4(b)(2) ................................................................... 16

## OTHER AUTHORITIES

Tom McNamara, *International Forum Selection and Forum Non Conveniens*,
34 INT'L LAW. 558 (2000) ............................................................. 13

Defendant KPMG Cayman[1] submits this memorandum in support of its motion, pursuant to Rules 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and the provisions of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b), to dismiss the claims asserted by Foreign Plaintiffs[2] in the Complaint dated April 10, 2009 (the "Complaint").

Foreign Plaintiffs contend that KPMG Cayman failed, in conducting its audits of the financial statements of two foreign funds, to uncover the fraud perpetrated by Bernard L. Madoff ("Madoff"), his investment company, Bernard L. Madoff Investment Securities, LLC ("BMIS"), and BMIS's auditor, Friehling & Horowitz, C.P.A., P.C. ("F&H"). According to Foreign Plaintiffs, KPMG Cayman should have discovered that Madoff held none of the assets he claimed to hold for his investment advisory clients, and made none of the trades. Foreign Plaintiffs supply no legal basis to support their theory that KPMG Cayman should have known about, much less be held liable for, the fraud of a third-party broker dealer that it was not engaged to audit.

As a threshold matter, this Court does not have jurisdiction to hear the claims against KPMG Cayman in this case, where foreign plaintiffs are suing a foreign defendant for its audits of foreign funds' financial statements. Further, Foreign Plaintiffs' tenuous and fact-deficient allegations belie their claims that KPMG Cayman acted fraudulently. The Complaint's allegations, even viewed in the light most favorable to plaintiffs, fail to state a claim due to their complete lack of factual support. As the United States Supreme Court recently held, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to avoid a motion to dismiss]." *Ashcroft v. Iqbal*, 556 U.S. __ (2009), No. 07-1015, 2009 WL 1361536 at *13 (May 18, 2009).

---

[1] KPMG Cayman is a Cayman Islands partnership and a member of the KPMG network of independent member firms affiliated with KPMG International, a Swiss cooperative. (Compl. ¶ 24.)

[2] Plaintiffs Meridian Diversified Fund, Ltd., Meridian Diversified ERISA Fund, Ltd., Meridian Diversified Compass Fund, Ltd., and Meridian Absolute Return ERISA Fund, Ltd. are exempted companies with limited liability under the laws of the Cayman Islands (collectively, the "Offshore Plaintiffs" or "Foreign Plaintiffs"). (Compl. ¶ 14.) Only the Foreign Plaintiffs allege claims against KPMG Cayman.

## PRELIMINARY STATEMENT

Plaintiffs bring this action to recover losses sustained on investments due to the fraud admittedly perpetrated by Madoff. Neither Madoff, nor his investment firm, nor its auditor is a party to this suit. Instead, plaintiffs seek to hold liable the managers and auditors of the funds in which they invested. The Complaint is premised on the notion that these managers and auditors should have uncovered Madoff's scheme, thereby preventing plaintiffs' losses. According to the Complaint, KPMG Cayman's audit reports on the financial statements of certain foreign funds in which Foreign Plaintiffs invested were false and misleading because they stated that the audits had been performed in accordance with generally accepted auditing standards ("GAAS"). (Compl. ¶ 117.) The only losses claimed against KPMG Cayman are by Foreign Plaintiffs from investments in foreign funds.

Foreign Plaintiffs' claims against KPMG Cayman must be dismissed for several reasons. First, the Court does not have subject matter jurisdiction over those allegations. The alleged wrongful conduct did not occur in the United States and did not have any effect in the United States. Where, as alleged in the Complaint here, foreign plaintiffs are bringing claims against a foreign defendant based on conduct that took place overseas, there is no basis for a U.S. court to assert jurisdiction over those claims. (*See Infra* Section II.) The Court should also dismiss the claims against KPMG Cayman pursuant to the doctrine of *forum non conveniens* because the Cayman Islands would be an adequate and significantly more convenient forum. (*See Infra* Section III.)

Further, Foreign Plaintiffs' Section 10(b) claim against KPMG Cayman fails because it does not raise a strong inference that KPMG Cayman acted with scienter. The Complaint alleges no facts regarding KPMG Cayman's state of mind and contains no factual support for its

assertion that KPMG acted knowingly or recklessly. (*See Infra* Section IV.) Finally, Foreign Plaintiffs' state law fraud and negligence claims likewise fail. The conclusory statements and inadequate allegations in the Complaint fail to raise the claims against KPMG Cayman above the speculative level and thus fail to provide Foreign Plaintiffs with a right to relief. (*See Infra* Section V.)

## FACTUAL ALLEGATIONS

Plaintiffs allege that they invested in two funds, the Rye Select Broad Market XL Fund, LP (the "Onshore XL Fund") and the Rye Select Broad Market XL Portfolio Limited (the "Offshore XL Fund"), and that they lost over $116 million of capital invested in these funds. The XL funds were sold and managed by several of the Defendants – Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Limited (collectively, the "Tremont Defendants"). (Compl. ¶1.) Defendant Oppenheimer Acquisition Corporation, the parent of Tremont Group Holdings, allegedly provided legal, compliance, and other support to the Tremont Defendants. *Id.*

Plaintiffs are comprised of both onshore (U.S.) and offshore (non U.S.) entities. (Compl. ¶ 13-14.) The Foreign Plaintiffs are the only plaintiffs suing KPMG Cayman. (Compl. ¶ 14.) The Onshore XL Fund's returns were based on the economic performance of the Rye Select Broad Market Fund, LP (the "Onshore Reference Entity"). Similarly, the Offshore XL Fund's returns were based on the economic performance of the Rye Select Broad Market Portfolio Limited (the "Offshore Reference Entity"). (Compl. ¶¶ 19-20.)

According to plaintiffs, the Tremont Defendants delegated investment decisions for the Reference Entities to Madoff and/or BMIS. BMIS is a securities broker-dealer and investment advisor registered with the Securities and Exchange Commission ("SEC"). (Compl. ¶ 17.) Madoff and BMIS purportedly executed all trades on behalf of the Reference Entities and served as the custodian for their

securities. (Compl. ¶ 2.) In December 2008, it was revealed that, since at least the early 1990s, Madoff had been running a Ponzi scheme and that he allegedly never invested a substantial portion of his investment advisory clients' assets in securities. Thus, it became apparent that the Reference Entities actually held little or no assets. (Compl. ¶ 5.)

U.S. Plaintiffs assert causes of action for fraud and negligence against KPMG LLP based on its audit reports of U.S. funds. Foreign Plaintiffs assert causes of action for fraud and negligence against KPMG Cayman based on its audit reports of foreign funds. (Compl. ¶¶ 25-26.) Plaintiffs' sole claim against the KPMG entities is that the audit reports were false and misleading because they falsely stated that the funds' and the Reference Entities' financial statements were in conformity with generally accepted accounting principles ("GAAP") and that KPMG LLP and KPMG Cayman had performed their audits in accordance with GAAS. (Compl. ¶ 117.)

Of the fifteen claims for relief in the Complaint, only three relate to KPMG Cayman. The eleventh claim for relief seeks to hold KPMG Cayman liable for violations of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 thereunder; the thirteenth claim for relief alleges common law fraud; and the fifteenth claim for relief alleges negligence under state law. (Compl. ¶¶ 211-19; 228-35; 243-49.) The Complaint alleges that KPMG Cayman was engaged to audit the Offshore XL Fund's and the Offshore Reference Entity's 2006 and 2007 financial statements. (Compl. ¶ 89.) It further alleges that KPMG Cayman sent its unqualified audit reports to the Foreign Plaintiffs. (Compl. ¶ 26.)

Plaintiffs allege in conclusory fashion that KPMG Cayman "knew or was reckless in not knowing that issuing unqualified audit reports on the financial statements of the Reference Entities, the XL Funds, and other Madoff-managed funds sold by the Tremont Defendants would violate GAAS." (Compl. ¶ 11.) According to Plaintiffs, because KPMG Cayman was engaged to audit the financial

statements of the Offshore XL Fund and the Offshore Reference Entity, it should also have investigated – indeed, in essence audited – BMIS. (Compl. ¶ 98.) Further, it is alleged without basis that KPMG Cayman was reckless in failing to know that BMIS's own auditor had failed to conduct adequate audits of BMIS. (Compl. ¶¶ 99-103.) Plaintiffs allege that, had KPMG Cayman in essence audited BMIS, it would not have been possible for KPMG Cayman to obtain sufficient audit evidence about BMIS's operations, and therefore, KPMG Cayman would have discovered that the assets did not exist and the trades had not occurred as Madoff claimed. (Compl. ¶¶ 104-112.) Accordingly, Plaintiffs assert that KPMG Cayman's audits were not performed in accordance with GAAS; that KPMG Cayman knew that its audits violated GAAS; and that KPMG Cayman was reckless in representing that its audits were in fact GAAS compliant. (Compl. ¶ 113.)

## ARGUMENT

### I.    LEGAL STANDARD

When considering a motion to dismiss, a court should construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, the Complaint must "provide the grounds upon which [plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Communications v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (applying *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) in the context of securities fraud). In *Twombly*, the Supreme Court recently reevaluated the standard that a plaintiff must meet to avoid the dismissal of its complaint. There, the Supreme Court imposed a flexible 'plausibility standard,' which requires plaintiffs to "provide grounds for more than mere speculation or suspicion that a plaintiff is entitled to the requested relief." *In re Take-two Interactive Sec. Litig.,* 551 F. Supp. 2d 247, 259 (S.D.N.Y. 2008). As the Supreme Court held on May 18, 2009,

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability it 'stops short of the line between possibility and plausibility of 'entitlement to relief'." *Iqbal*, 2009 WL 1361536 at *12 (internal citation omitted). Accordingly, in order to survive a motion to dismiss for failure to state a claim, the pleading must allege "enough facts to state claim for relief that is plausible on its face." *Coronel v. Quanta Capital Holdings Ltd.*, No. 07 Civ. 1405(RPP), 2009 WL 174656 at *10 (S.D.N.Y. Jan 26, 2009) (internal citations and quotations omitted).

Furthermore, under the Federal Rules of Civil Procedure, fraud claims are subject to heightened pleading requirements that the plaintiff must meet to survive a motion to dismiss. This heightened pleading standard requires a plaintiff to plead "the circumstances constituting fraud ... with particularity." Fed. R. Civ. P. 9(b). "This pleading constraint serves to provide a defendant with fair notice of a plaintiff's claim, safeguard his reputation from improvident charges of wrongdoing, and protect him against strike suits." *ATSI Communications*, 493 F.3d at 99 (citing *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004)).

## II. THE COMPLAINT MUST BE DISMISSED BECAUSE OF A LACK OF SUBJECT MATTER JURISDICTION

Subject-matter jurisdiction is the linchpin of the authority enabling a judge to decide a claim in court. *See Morisson v. National Australia Bank ltd*, 547 F.3d 167, 170 (2d Cir. 2008) ("*NAB*"). A plaintiff asserting subject matter jurisdiction has the burden of proving that such jurisdiction exists by a preponderance of evidence. *Id.*; *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *NAB*, 547 F.3d at 170 (*citing APWU v. Potter*, 343 F.3d 619, 623 (2d. Cir. 2003)).

**Plaintiffs' Complaint Fails To Allege Facts Supporting Subject Matter Jurisdiction For Its Securities Law Claim Against KPMG Cayman**

In a securities litigation, a court may have subject matter jurisdiction even if the plaintiff or the defendant is a foreign party. *See NAB*, 547 F.3d at 170-71. However, the Second Circuit has recently held that although there is no bright line rule, where, as is the case here, <u>foreign</u> plaintiffs are suing a <u>foreign</u> defendant based on transactions in a <u>foreign</u> country, the courts of the United States are "not the world's court, and [they] cannot and should not expend . . . resources resolving cases that do not affect Americans or involve fraud emanating from America." *NAB*, 547 F.3d at 175.

The Second Circuit has determined that a court should review two factors to decide whether it has subject matter jurisdiction: (1) whether the wrongful conduct occurred in [some manner in the] United States (the "Conduct Test"); or (2) whether the wrongful conduct, even if it occurred [outside the United States], had a substantial adverse effect in the United States or on a United States citizen (the "Effects Test"). *In re Bayer AG Sec. Litig.*, 423 F. Supp. 2d 105, 110-11 (S.D.N.Y. 2005).

Under the conduct test, a court must first resolve "what conduct comprises the heart of the alleged fraud," *NAB*, 547 F.3d at 175, and then must examine the nature of the alleged fraudulent conduct to determine whether (1) the defendant's activity in the United States, if any, is more than <u>merely preparatory</u> to a securities fraud conducted elsewhere and (2) the acts or failures to act <u>directly caused</u> the claimed losses. *In re Bayer AG Sec. Litig.*, 423 F. Supp. 2d at 111 (emphasis added); *Zoelsch v. Arthur Andersen & Co.*, 824 F.2d 27, 30 (D.C.Cir. 1987). In the seminal case of *Bersch v. Drexel Firestone, Inc.*, the Second Circuit explained that the anti-fraud provisions of the Exchange Act do not apply "to losses from sales of securities to foreigners outside of the United States unless acts (or culpable failures to act) within the United States directly caused such losses." 519 F.2d 974, 993 (2d Cir. 1975). Here, according to

plaintiffs, the alleged fraud (statements made in KPMG Cayman's audit reports) occurred outside the United States. (Compl. ¶ 26.)

Under the effects test, the court, taking all the facts pled in the complaint as true, determines whether plaintiffs properly asserted that the alleged "illegal activity abroad cause[d] a substantial effect within the United States." *Euro Trade & Forfaiting, Inc. v. Vowell*, No. 00 CIV. 8431 (LAP), 2002 WL 500672 (S.D.N.Y. March 29, 2002) at *6 (internal quotation and citation omitted); *see Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 128 (2d Cir. 1998). Courts usually closely scrutinize the alleged facts to determine whether the plaintiffs are United States investors or if the complaint alleges that stocks were traded on a United States securities exchange. *Euro Trade*, 2002 WL 500672 at *9. Here, the alleged losses were all incurred by non-U.S. entities from investments in non-U.S. entities.

### 1) Plaintiffs Have Failed To Plead Facts Showing That KPMG Cayman's Alleged Wrongful Conduct Had Any Link With The United States

According to the Complaint, the claims against KPMG Cayman, a foreign partnership, (Compl. ¶ 26), are only asserted by Foreign ("Offshore") Plaintiffs, (Compl. ¶ 14), on the basis of audits of foreign funds, (Compl. ¶ 20.) (*See also* Compl. ¶¶ 211-19.)

In *NAB*, where the Second Circuit recently applied the conduct test, the court found that as a first step of the conduct test, courts should determine the conduct at issue by looking at the conduct that was "more central to the fraud and more directly responsible for the harm to investors." *NAB*, 547 F.3d at 176. KPMG Cayman's wrongful conduct as stated by Foreign Plaintiffs is as follows: "KPMG Cayman issued to the Offshore Plaintiffs audit reports in which it made materially false and misleading representations that it had conducted the audits of the Offshore XL Fund's and the Offshore Reference Entity's financial statements in accordance with

GAAS, when in fact KPMG Cayman did not conduct these audits in the manner represented." (Compl. ¶ 212.)

Taking all the facts in the Complaint as true, there is no part of KPMG Cayman's allegedly fraudulent conduct that occurred in the United States. While it is true that the Complaint includes American plaintiffs and American defendants, as well as transactions taking place in the United States, the plaintiffs clearly delineated these transactions and claims and pled them completely separately from the foreign claims pled by the Foreign Plaintiffs against KPMG Cayman. *See generally* Compl. Furthermore, there is no claim of conspiracy or of aiding and abetting which might link KPMG Cayman with any of the American defendants, or the American plaintiffs.

The *Bersch* and *NAB* cases are instructive on this issue. In *Bersch*, the court found that the alleged fraudulent conduct "was committed by placing the allegedly false and misleading [statements] in the purchaser's hands" and that the conduct occurred outside of the United States, and concluded that there was no subject matter jurisdiction. *Bersch*, 519 F.2d at 987. In *NAB*, the Complaint alleged that a Florida company had manipulated its financials and that its Australian owner had included the misleading information in its own public statements which were then disseminated to and relied upon by foreign investors. *NAB*, 547 F.3d at 173, 176. The court did not find any basis for subject-matter jurisdiction. *Id.*

In the instant case, the Complaint claims that KPMG Cayman issued allegedly misleading audit reports on the financial statements of foreign funds and that Foreign Plaintiffs relied on these opinions to make investment decisions regarding the foreign funds. The conduct by KPMG Cayman that allegedly caused Foreign Plaintiffs to continue to invest or fail to withdraw their investment in the foreign funds happened outside of the United States: "[o]n

balance, it is the foreign acts--not any domestic ones--that 'directly caused' the alleged harm here." *NAB*, 547 F.3d at 172; (internal citation omitted) (*see* Compl. ¶¶ 211-19); *see also In re Bayer AG Sec. Litig.*, 423 F. Supp. 2d at 111-13.

Just as in *NAB* where the court found that "the lengthy chain of causation between [the U.S. party]'s actions and the statements that reached investors" weighed against a finding of subject-matter jurisdiction, *NAB*, 547 F.3d at 177, the lengthy chain of causation from Madoff's and BMIS's Ponzi scheme to KPMG Cayman's unqualified audit reports on the financial statements of foreign funds that reached the foreign investors compels dismissal of the securities claim against foreign defendant KPMG Cayman.

Taking all allegations regarding KPMG Cayman's conduct as true, the Complaint fails to assert any grounds for proper subject-matter jurisdiction and the securities law claims against KPMG Cayman should be dismissed.

### 2) Plaintiffs Have Failed To Plead Facts Showing That KPMG Cayman's Alleged Wrongful Conduct Had Any Effect Within The United States

As stated above, the Complaint alleges claims by Foreign Plaintiffs only against KPMG Cayman and fails to specify any American shareholder or investor who suffered losses as a result of KPMG Cayman's conduct. (*Compare* Compl. ¶¶ 202-10 to ¶¶ 211-21.) There is also no claim that the offshore funds at issue were traded on an American securities exchange. *See generally* Compl.

KPMG Cayman does not dispute that American plaintiffs and American defendants are amongst the parties to the lawsuit but, as discussed above, they have no link to the claims asserted against KPMG Cayman. In a case where there are both foreign plaintiffs and U.S. plaintiffs, it is appropriate for a court to dismiss the claims by the foreign plaintiffs based on lack

of subject matter jurisdiction while allowing the claims by U.S. plaintiffs to remain. *See Bersch,* 519 F.2d at 997.

In *Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London,* the Second Circuit declined to find subject matter jurisdiction, stating: "[i]n this case, there is no U.S. party to protect or punish" 147 F.3d at 130-131; *see also Euro Trade,* 2002 WL 500672 at *10 (internal citation omitted). In this case as well, based on Foreign Plaintiffs' alleged claims against KPMG Cayman, there is no U.S. party to protect or punish – as such, and taking all allegations in the Complaint as true, there is, under the law of this Circuit, no subject matter jurisdiction.

**B. The State Claims Against KPMG Cayman Should Also Be Dismissed For Lack of Subject Matter Jurisdiction**

As discussed above, this Court lacks subject matter jurisdiction over the federal securities law claims against KPMG Cayman. Consequently, the two pendent state law claims alleged against KPMG Cayman should also be dismissed for lack of subject matter jurisdiction, as the Court has no other basis for federal jurisdiction.

Without a federal question to create federal jurisdiction, Foreign Plaintiffs can assert subject matter jurisdiction against KPMG Cayman based on diversity jurisdiction only. It is indisputable that taking all allegations in the Complaint as true, there is not complete diversity between the plaintiffs and the defendants in this suit; nor is there diversity between the Foreign Plaintiffs and KPMG Cayman regarding the claims against KPMG Cayman. *Sty-Lite Company v. Eminent Sportwear Inc.,* 115 F. Supp. 2d 394, 398 (S.D.N.Y. 2000) ("An alien plaintiff may not obtain diversity jurisdiction in a federal court while suing a company which is either incorporated in a foreign country or has its principal place of business in a foreign country."). Accordingly, all state law claims against KPMG Cayman must be dismissed.

## III. THE COURT SHOULD DISMISS THIS CASE UNDER THE DOCTRINE OF FORUM NON CONVENIENS

In the Second Circuit, a court may decide to decline to exercise its jurisdiction and dismiss an action pursuant to the doctrine of *forum non conveniens* if it determines that there is a viable alternate forum which "will be most convenient and will best serve the ends of justice." *Alfadda v. Fenn*, 159 F.3d 41, 46 (2d Cir. 1998) (internal quotation and citation omitted). This is true even when a plaintiff alleges federal securities law claims. *Id.* at 47.

The Complaint should be dismissed as to the claims against KPMG Cayman in favor of the Cayman Islands as a forum because (1) all the Foreign Plaintiffs, which are the only Plaintiffs asserting claims against KPMG Cayman, (Compl. ¶ 14), are domiciled there; (2) KPMG Cayman is domiciled there, (Compl. ¶ 14); and (3) the audited funds at the heart of the claims against KPMG are domiciled there, (Compl. ¶ 20). In short, the locus of the entire matter as to KPMG Cayman is located in the Cayman Islands.

In the Second Circuit, courts follow a two step analysis when determining whether to dismiss a claim based on the doctrine of *forum non conveniens*. First, the court will determine whether there is a viable alternate forum; second, the court will weigh the public and private interests involved in the matter. *Alfadda*, 159 F.3d at 45-46. Generally, the court begins the analysis with a "strong presumption in favor of plaintiff's choice of forum," *id.* at 46, but in the case of foreign plaintiffs who invested in foreign funds and are suing a foreign defendant, little or no deference should be afforded to their choice of forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981) ("a foreign plaintiff's choice [of forum] deserves less deference"); *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003) (when foreign plaintiffs are suing foreign defendants, "it is more likely that forum-shopping for a higher damage award or for some other litigation advantage was the motivation for plaintiff's

selection."); *see also Windt v. Qwest Communications International, Inc.*, 544 F. Supp. 2d 409, 415, 417 (D. N.J. 2008).

## A. There Is A Viable Alternate Forum For The Claims Against KPMG Cayman: the Cayman Islands

An alternative forum will be found adequate if (1) the defendant is subject to service of process in the alternative forum and (2) the forum recognizes the subject matter of the lawsuit. *See Alfadda*, 159 F.3d at 45. Based on these requirements, the Cayman Islands is an adequate, indeed far superior, alternative forum for the claims against KPMG Cayman.

It is undisputed that KPMG Cayman is a partnership under the laws of the Cayman Islands and is domiciled in the Cayman Islands. (Compl. ¶ 14.) Therefore, KPMG Cayman is subject to service of process of the Cayman Islands courts.

The Cayman Islands courts recognize actions sounding in fraud and negligence, and there is no indication that the remedy available is less than adequate.[3] On the contrary, various American courts have recognized that the Cayman Islands represents a valid alternative forum. *See e.g., Bacardi v. De Lindzon,* 728 So. 2d 309, 313 (Fla. 3d Dist. Ct. App. 1999) (finding that the Cayman Islands is an adequate alternate forum and dismissing certain fraud and legal malpractice claims based on the doctrine of *forum non conveniens*); *Specialty Assistant Servs., Inc. v. Colin Luke Associates, Ltd.*, No. Civ. A.02-6553, 2004 WL 2988516 at *6, n.6 (E.D. Pa. Dec. 27, 2004) ("It appears that the Cayman Islands may also be an adequate alternative forum in this case because Colin Luke was a corporation organized and existing under the laws of the Cayman Islands"); *see also* Tom McNamara, *International Forum Selection and Forum Non Conveniens*, 34 INT'L LAW. 558, 560-61 (2000) (providing the list of the 13 foreign forums that

---

[3] See e.g. Cayman islands Limitation law (1996 Revision) (discussing time limits for bringing actions of various classes, including negligence and fraud actions).

U.S. courts have consistently deemed as adequate alternate forums in 1999, which includes the Cayman Islands).

Based on the allegations in the Complaint, the Cayman Islands is a viable alternate forum for the claims against KPMG Cayman.

**B. The Public Interest And Private Interests Weigh In Favor Of A Dismissal Of The Claims Against KPMG Cayman Under The Doctrine Of Forum Non Conveniens**

**1) Public interests weigh in favor of a dismissal of the claims against KPMG Cayman**

The *Alfadda* case lists the interests that a court in the Second Circuit will review to determine which forum will be more convenient and will best serve justice. The public interests include "(1) having local disputes settled locally; (2) avoiding problems of applying foreign law; and (3) avoiding burdening jurors with cases that have no impact on their community." 159 F.3d at 46; *see Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947).

First, the public interest of having a foreign dispute with foreign parties resolved locally weighs heavily against the New York forum chosen by plaintiffs. Neither New York nor the United States has any interest in the resolution of this completely foreign dispute with no link to the United States. *See Alfadda*, 159 F.3d at 46; *see also Windt*, 544 F. Supp. 2d at 423-24. Additionally, taking all the allegations in the Complaint as true, it appears that this Court would most likely have to apply Cayman Islands law to the claims by the Foreign Plaintiffs which are based on transactions and conduct that took place in the Cayman Islands. (*See* Compl. ¶¶ 14, 19-20.) Finally, if the claims against KPMG Cayman are not dismissed, New York jurors would be asked to decide claims that do not impact their community and that involve no American party to protect or to punish. *Cf. Europe and Overseas Commodity Traders, S.A.*, 147 F.3d at 130-31. The Cayman Islands courts and Cayman Islands trier of fact, however, have a significant interest in deciding these claims that are, at their core, Cayman Islands fraud claims.

### 2) Private Interests Also Weigh In Favor Of A Dismissal Of The Claims Against KPMG Cayman

As for the private interests, they include: (1) ease of access to evidence; (2) cost for witnesses to attend trial; (3) availability of compulsory process and (4) other factors that might shorten trial or make it less expensive. *See Gilbert*, 330 U.S. at 508.

Plaintiffs' own allegations state that, not only are Foreign Plaintiffs and KPMG Cayman all residents of the Cayman Islands, but KPMG Cayman's audit reports on the Cayman Islands funds' financial statements occurred in the Cayman Islands and, consequently, documents and witnesses relating to the alleged wrongful acts are located there. *See generally* Compl. Ease of access to the evidence thus favors dismissal of the claims in favor of the Cayman Islands forum. Additionally, there is no indication that pertinent witnesses would not be available to participate in a lawsuit in the Cayman Islands. *See Alfadda*, 159 F.3d at 48. Finally, the claims against KPMG Cayman are pled as completely separate from the rest of the causes of action with separate plaintiffs and a separate defendant and separate non-party funds at issue. (Compl. ¶¶ 211-19, 228-35, 243-49.) The costs and the length of a trial in the Cayman Islands will be greatly reduced compared to a trial in New York and can be easily dismissed while the rest of the case remains in the New York forum. *See, e.g., Warter v. Boston Securities, S.A.*, 380 F. Supp. 2d 1299, 1307 (S.D. Fla. 2004) (citing *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir.1968)) (finding that in a case with multiple defendants, a court may sever certain claims for which dismissal under the doctrine of *forum non conveniens* would be appropriate).

The proper forum for the Cayman Island Plaintiffs' claims against KPMG Cayman, which are based on their audit reports issued in the Cayman Islands of Cayman Islands funds, is the Cayman Islands. "[D]ismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is

unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co.*, 454 U.S. at 249. As discussed above, all the factors in the *forum non conveniens* analysis weigh heavily in favor of the Cayman Islands as the most appropriate and convenient forum. The Court should dismiss all claims against KPMG Cayman.

## IV. PLAINTIFFS' 10(b) CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS FAIL TO PLEAD FACTS RAISING A STRONG INFERENCE OF SCIENTER

In order for a claim brought pursuant to Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 to survive a motion to dismiss,[4] a plaintiff must allege that the defendant, "in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000). Scienter is a necessary element of any claim brought under section 10(b) and represents "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder et al.*, 425 U.S. 185, 193 n.12 (1976).

Plaintiffs must satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b), which states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Although Rule 9(b) allows the pleading party to aver scienter generally, the Second Circuit warns that "the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind [must not be mistaken] for a license to base claims of

---

[4] Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, promulgated thereunder, 17 C.F.R. § 240.10b-5, prohibit fraudulent activities in connection with securities transactions. Section 10(b) makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security ..., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Rule 10b-5 specifies the following actions among the types of behavior proscribed by the statute: "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5.

fraud on speculation and conclusory allegations." *Chill v. General Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996) (internal citation omitted). This requirement is further reinforced by the Private Securities Litigation Reform Act ("PSLRA"), which requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Courts have found that there is "a strong inference" under the PSLRA only if "'a reasonable person would deem [it] cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *In re Take-two Interactive*, 551 F. Supp. 2d at 259 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007)).

A plaintiff may establish the requisite "strong inference" of scienter either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Novak*, 216 F.3d at 307, *quoting Acito v. IMCERA Group*, 47 F.3d 47, 52 (2d Cir. 1995). "Motive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged. Opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged." *Id.* (quoting *Shields v. Citytrust Bancorp*, 25 F.3d 1124, 1130 (2d Cir. 1994)).

Alternatively, plaintiffs can plead scienter by showing strong circumstantial evidence of conscious misbehavior or recklessness. Allegations of recklessness generally are sufficient when plaintiffs "have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements" or have "alleged facts demonstrating that defendants failed to review or check information that they had a duty to monitor or ignored obvious signs of fraud." *Id.* at 308. However, in the case of non-fiduciary accountants, the standard for pleading scienter by recklessness is heightened further: "[f]or recklessness on the part of a non-fiduciary

accountant to satisfy securities fraud scienter, such recklessness must be conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care. It must, in fact, approximate an actual intent to aid in the fraud being perpetrated by the audited company." *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000) (citations omitted).

Applying these standards to the instant case, it is clear that Foreign Plaintiffs have not stated a securities fraud claim against KPMG Cayman. Foreign Plaintiffs did not allege any motive on the part of KPMG Cayman to commit fraud. For their claim to survive the instant motion to dismiss, Foreign Plaintiffs must have stated with particularity facts constituting strong circumstantial evidence of KPMG Cayman's recklessness. To the contrary, the Complaint is virtually devoid of facts and is instead populated with unsupported conclusory statements. In essence, the Complaint alleges that KPMG Cayman violated GAAS and, therefore, was reckless in issuing unqualified audit reports. (Compl. ¶ 118.) However, "[i]t is unambiguously the law that allegations of a violation of GAAP and GAAS are, without more, insufficient to survive a motion to dismiss." *In re Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp. 2d 314, 334 (S.D.N.Y. 2001) (citing *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir. 1999)). The Complaint alleges no facts relating to KPMG Cayman's state of mind. It states, without offering any factual support for the assertion, that KPMG Cayman acted "knowingly or recklessly" with respect to the existence of the audited funds' assets and occurrence of trades. Compl. ¶ 212. "This conclusory and fact-deficient allegation is insufficient to allege securities fraud." *Zucker v. Sasaki*, 963 F. Supp. 301, 306 (S.D.N.Y. 1997) (assertion, without factual support, that auditor knew or was reckless in not knowing a particular fact was insufficient to state securities fraud claim).

Foreign Plaintiffs' theory of liability on the part of KPMG Cayman hinges on the notion that KPMG Cayman had a duty to seek independent corroboration of – in essence, to audit – information provided to the audited fund by BMIS, an SEC-registered broker-dealer. Foreign Plaintiffs, however, cite no facts from which it can reasonably be inferred that KPMG Cayman knew, or should have known, that it had a duty to investigate the activities of an entity other than the one it was engaged to audit. Foreign Plaintiffs make the tepid allegation that, "[u]pon information and belief, KPMG knew that Tremont Partners (as general partner of the onshore Audited Entities, and investment manager/sub-advisor to the offshore Audited Entities) engaged Madoff and BMIS to perform the functions of investment advisor, prime broker, and custodian of the Audited Entities' investments." (Compl. ¶ 97.) Plaintiffs, however, do not cite a single fact to support that "information and belief." This fails to satisfy the pleading standard of Rule 9(b). *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (in the case of fraud allegations, "Rule 9(b) pleadings cannot be based upon information and belief … [unless] accompanied by a statement of the facts upon which the belief is based.").

In the very next paragraph of their complaint, Plaintiffs allege, "[b]ecause all of the Audited Entities' investment and income information available to KPMG was based on information from BMIS, KPMG needed to do more than rely solely on the procedures it performed with respect to the Audited Entities." (Compl. ¶ 98.) Assuming arguendo that KPMG Cayman was aware of BMIS's role in advising the audited funds (which Foreign Plaintiffs merely infer rather than plead), nothing in any of Foreign Plaintiffs' allegations suggests why KPMG Cayman would have any duty to, in essence, conduct an audit of BMIS, or that it knew or should have known of such a duty. None of the provisions of GAAS that Plaintiffs cite suggests that an auditor cannot rely on the statements of an SEC-regulated broker-

dealer that serves as an investment advisor to an audit client, or that an auditor has any obligation to second-guess the audit work performed on a third-party, such as BMIS. In the absence of any facts supporting the idea that KPMG knew, or should have known, that it had a duty to investigate BMIS, Foreign Plaintiffs have wholly failed to meet the demanding standard of pleading "conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care" and that "approximate[s] an actual intent to aid in the fraud being perpetrated." *Rothman*, 220 F.3d at 98.

## V. PLAINTIFFS' COMMON LAW FRAUD AND NEGLIGENCE CLAIMS FAIL TO SATISFY NECESSARY PLEADING REQUIREMENTS AND THEREFORE MUST BE DISMISSED

The fundamental flaws of Foreign Plaintiffs' claims against KPMG Cayman under Section 10(b)-5 are just as substantial in their common law claims.[5] Both the claims of fraud and negligence are premised on the notion that KPMG Cayman, while auditing the funds, had a duty to investigate – indeed, in essence audit – any information from third party BMIS. (Compl. ¶¶ 90-103.) Plaintiffs, however, are unable to even allege with any certainty that KPMG Cayman knew of BMIS's involvement, or, if so, that there was some red-flag triggering a duty to investigate BMIS. (Compl. ¶ 97.) As the Supreme court noted in Iqbal, "[W]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 2009 WL 1361536 at *13. Plaintiffs' claims fail to satisfy the necessary pleading standards and should be dismissed.

To state a valid claim of fraud under Rule 9(b), a plaintiff must specify with particularity the elements that constituted the wrongful conduct. *See ATSI Communications,* 493 F.3d at 99. As discussed above, Foreign Plaintiffs allege that KPMG Cayman had a duty to seek

_____

[5] As mentioned previously, Cayman Islands law will most likely apply to the fraud and negligence claims alleged by Foreign Plaintiffs against KPMG Cayman and based on conduct that took place in the Cayman Islands.

independent corroboration of information provided to the audited fund by BMIS and that it failed to do so. The Complaint, however, is devoid of specific allegations to support Plaintiffs' claims, and especially any facts to show that KPMG Cayman knew, or should have known, that it had a duty to investigate the activities of an entity other than the one it was engaged to audit and that KPMG failed to conduct its audit according to GAAS or GAAP. *See Davidoff v. Farina*, No. 04 Civ. 7617(NRB), 2005 WL 2030501 at \*12 (S.D.N.Y. Aug. 22, 2005) (When a GAAP violation is alleged, "plaintiffs must provide at the very least some level of detail about the improper accounting alleged to underlie misleading statements, and their materiality, in order to survive the motion to dismiss phase") (internal citation and quotation omitted).

Additionally, inasmuch as plaintiffs attempt to bolster their claims with the claim that "KPMG [Cayman] knew that Tremont Partners (…) engaged Madoff and BMIS to perform the functions of investment advisor, prime broker, and custodian of the Audited Entities' investments," (Compl. ¶ 97), allegations made "upon information and belief" necessarily fail to satisfy the Rule 9(b) pleading standard. *DiVittorio*, 822 F.2d at 1247. Finally, Plaintiffs assert claims against both KPMG LLP and KPMG Cayman as though all factual allegations apply to them in exactly the same way. (*See* Compl. ¶¶ 89-121.) However, the particularity requirement under Rule 9(b) requires that the allegations specify the supporting facts for each claim against each defendant. *DiVittorio*, 822 F. 2d at 1247 ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud"). Plaintiffs fail to do so – this is one more failure of many in meeting the necessary pleading requirements.

Foreign Plaintiffs' claim of common law negligence also fails to satisfy the requirements which would enable it to survive a 12(b)(6) motion. This claim is based on the same allegations

as those used for Foreign Plaintiffs' fraud claim, and even without the heightened pleading standard of Rule 9(b), the allegations represent no more than a list of speculations and conclusory statements which do not render the allegations of negligence <u>plausible</u>. *See ATSI Communications*, 493 F.3d at 98. The Complaint is devoid of any factual allegations to support the claim that KPMG Cayman "failed to exercise reasonable care by negligently and/or grossly negligently failing to conduct audits of the offshore XL Fund and the Offshore Reference Entity in accordance with GAAS." (Compl. ¶ 245.) "It is the conclusory nature of [plaintiff's] allegations, rather than their extravagantly fanciful nature, that disentitles [them] from the presumption of truth," accordingly, both the fraud and negligence state law claims should be dismissed. *See Iqbal*, 2009 WL 1361536 at *14.

## CONCLUSION

For the foregoing reasons, this Court should grant KPMG Cayman's motion to dismiss the Complaint.

Dated: May 20, 2009                                        Respectfully submitted,


s/ George A. Salter

George A. Salter
(GASalter@hhlaw.com)
W. Sidney Davis
(WSDavis@hhlaw.com)
Katie M. Lachter
(KMLachter@hhlaw.com)
Sabrina H. Cochet
(SHCochet@hhlaw.com)

HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
Tel: (212) 918-3000
Fax: (212) 918-3100

*Attorneys for Defendant KPMG Cayman*