UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

MERIDIAN HORIZON FUND, LP, MERIDIAN : 
HORIZON FUND II, LP, MERIDIAN :
DIVERSIFIED FUND, LP, MERIDIAN :
DIVERSIFIED FUND, LTD., MERIDIAN :      No. 09 Civ. 3708 (TPG)
DIVERSIFIED ERISA FUND, LTD., MERIDIAN :
DIVERSIFIED COMPASS FUND, LTD. and :
MERIDIAN ABSOLUTE RETURN ERISA :
FUND, LTD., :
     :
                    Plaintiffs, :      ECF CASE
     :      Electronically Filed
     :
     v.      :
     :
TREMONT GROUP HOLDINGS, INC., :
TREMONT PARTNERS, INC., TREMONT :
(BERMUDA) LIMITED, OPPENHEIMER :
ACQUISITION CORPORATION, KPMG LLP, :
and KPMG (CAYMAN), :
     :
                    Defendants. :

---------------------------------------------------------- x

## DEFENDANT OPPENHEIMER ACQUISITION CORP.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

William K. Dodds
Robert W. Topp
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Tel.: (212) 698-3500
Fax: (212) 698-3599

David A. Kotler
DECHERT LLP
902 Carnegie Center, Suite 500
Princeton, New Jersey 08540
Tel.: (609) 955-3200
Fax: (609) 955-3259

*Attorneys for Oppenheimer Acquisition Corp.*

13461747

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF RELEVANT FACTS ................................................................................... 3

    A.    Plaintiffs' Investments In The Hedge Funds That Were Managed By Tremont Partners And Tremont Bermuda ............................................................. 3

    B.    Plaintiffs' Claims Against The Tremont-Related Defendants Based On The Losses They Suffered In The Madoff Ponzi Scheme ..................................... 4

    C.    Plaintiffs' Limited And Conclusory Allegations Against OAC ............................ 5

ARGUMENT ............................................................................................................................ 6

I.    PLAINTIFFS FAIL TO STATE A SECTION 20(A) CLAIM AGAINST OAC ............. 7

    A.    Plaintiffs Have Failed To State A Claim For A Primary Violation Of The Exchange Act By A "Controlled Person" .......................................................... 7

    B.    Plaintiffs Have Failed To Adequately Allege That OAC "Controlled" Tremont ............................................................................................................ 8

            1.    The Conclusory Pleading Of A Parent/Subsidiary Relationship Is Inadequate .................................................................................... 10

            2.    The Conclusory Pleading Of OAC Providing Support Services to the Tremont Defendants Is Inadequate .................................... 10

            3.    The Conclusory Pleading Of OAC Directing The Tremont Defendants To Switch Auditors Is Inadequate ....................................... 11

            4.    The Conclusory Pleading Of A Common Director Is Inadequate .......... 12

    C.    Plaintiffs Have Failed To Adequately Allege "Culpable Participation" By OAC In The Alleged Securities Fraud Committed By The Tremont Defendants ........................................................................................................ 13

CONCLUSION ....................................................................................................................... 17

13461747

# TABLE OF AUTHORITIES

*Ashcroft v. Iqbal,*
    07-1015, 2009 WL 1361536 (U.S. May 18, 2009) .................................................. 6, 7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
    493 F.3d 87 (2d Cir. 2008) .................................................................................. 7

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................... 6

*Boguslavsky v. Kaplan,*
    159 F.3d 715 (2d Cir. 1998) ........................................................................... 7, 13

*Burstyn v. Worldwide Xceed Group, Inc.,*
    01 Civ. 1125, 2002 WL 31191741 (S.D.N.Y. Sept. 30, 2002) .............................. 16

*City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l PLC,*
    423 F. Supp. 2d 348 (S.D.N.Y. 2006) ................................................................ 14

*Cohen v. Citibank, N.A.,*
    954 F. Supp. 621 (S.D.N.Y. 1996) ....................................................................... 7

*Cromer Fin. Ltd. v. Berger,*
    137 F. Supp. 2d 452 (S.D.N.Y. 2001) ................................................................ 16

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,*
    553 F.3d 187 (2d Cir. 2009) ............................................................................... 7

*Ellison v. Am. Image Motor Co.,*
    36 F. Supp. 2d 628 (S.D.N.Y. 1999) ................................................................... 9

*In re Alstom SA,*
    406 F. Supp. 2d 433 (S.D.N.Y. 2005) ................................................................ 14

*In re Corning, Inc. Sec. Litig.,*
    349 F. Supp. 2d 698 (S.D.N.Y. 2004) ............................................................ 7, 14

*In re Deutsche Telekom AG Sec. Litig.,*
    00 Civ. 9475, 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002) ................................. 16

*In re Digital Island Sec. Litig.,*
    223 F. Supp. 2d 546 (D. Del. 2002), *aff'd*, 357 F.3d 322 (3d Cir. 2004) ............... 15

*In re Emex Corp. Sec. Litig.,*
    01 Civ. 4886, 2002 WL 31093612 (S.D.N.Y. Sept. 18, 2002) ......................... 14, 15

13461747

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    308 F. Supp. 2d 249 (S.D.N.Y. 2004)..........................................................8, 12, 13

*In re Global Crossing Ltd. Sec. Litig.*,
    471 F. Supp. 2d 338 (S.D.N.Y. 2006)......................................................14

*In re Global Crossing Ltd. Sec. Litig.*,
    02 Civ. 910, 2005 WL 1875445 (S.D.N.Y. Aug. 5, 2005) .......................11

*In re Global Crossing, Ltd. Sec. Litig.*,
    02 Civ. 910, 2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005) .........................8

*In re Initial Public Offering Sec. Litig.*,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003)......................................................10

*In re Solv-Ex Corp. Sec. Litig.*,
    210 F. Supp. 2d 276 (S.D.N.Y. 2000)......................................................11

*In re Sotheby's Holdings, Inc. Sec. Litig.*,
    00 Civ. 1041, 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) .....................8

*In re Twinlab Corp. Sec. Litig.*,
    103 F. Supp. 2d 193 (E.D.N.Y. 2000) .....................................................16

*In re WorldCom, Inc. Sec. Litig.*,
    02 Civ. 3288, 2004 WL 1097786 (S.D.N.Y. May 18, 2004).....................10

*In re Yukos Oil Co. Sec. Litig.*,
    04 Civ. 5243, 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) .....................14

*International Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995)..........................................................................4

*Kimmel v. Labenski*,
    85 Civ. 0804, 1988 WL 19229 (S.D.N.Y. Feb. 10, 1988)................12, 13

*Klock v. Lehman Bros. Kuhn Loeb Inc.*,
    584 F. Supp. 210 (S.D.N.Y. 1984) ............................................................7

*Martinez v. City of New York*,
    06 Civ. 1476, 2008 WL 681465 (S.D.N.Y. Mar. 11, 2008) ........................6

*Maywalt v. Parker & Parsley Petroleum Co.*,
    808 F. Supp. 1037 (S.D.N.Y. 1992)..........................................................11

*Mishkin v. Ageloff*,
    97 Civ. 2690, 1998 WL 651065 (S.D.N.Y. Sept. 23, 1998)......................15

*Ofori-Tenkorang v. Am. Int'l Group, Inc.*,
    460 F.3d 296 (2d Cir. 2006)..................................................................3, 6

*S.E.C. v. First Jersey Sec., Inc.*,
    101 F.3d 1450 (2d Cir. 1996)...........................................................8, 10, 13

*Smith v. Local 819 I.B.T. Pension Plan*,
    291 F.3d 236 (2d Cir. 2002)......................................................................6

*Solow v. Stone*,
    994 F. Supp. 173 (S.D.N.Y.), *aff'd*, 163 F.3d 151 (2d Cir. 1998) ...........6

*Starr v. AHey, Inc.*,
    01 C 6087, 2003 WL 21212596 (N.D. Ill. May 23, 2003) ......................9

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
    250 F.3d 87 (2d Cir. 2001)..................................................................9, 13

## STATUTES/RULES

15 U.S.C. § 78t(a) ..........................................................................................7

15 U.S.C. § 78u-4(b)(2) ...............................................................................14

Fed. R. Civ. P. 12 ......................................................................................1, 6

13461747

Defendant Oppenheimer Acquisition Corp. ("OAC") respectfully submits this memorandum of law in support of its motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the Complaint fails to state a legally sustainable cause of action against OAC.

## PRELIMINARY STATEMENT

As is true of the three consolidated Tremont actions pending before the Court, the claims asserted against OAC by the Meridian Fund Plaintiffs boil down to the same unremarkable -- and inactionable -- facts: that in 2001, OAC purchased the Tremont group of entities and that OAC was the holding company of the Tremont entities. As with each of the consolidated amended complaints, there are no competent allegations of fact by the Meridian Fund Plaintiffs that OAC actually did anything to encourage, assist or benefit from alleged wrongdoing by Tremont entities, let alone by Bernard Madoff or his firm, or to support a cognizable legal theory that these corporate affiliates of Tremont should have done something. As the argument below demonstrates, Plaintiffs' claim against OAC, as with the claims asserted in the consolidated amended complaints, is as bereft of legal merit as it is devoid of factual substance.

OAC is a long-established holding company that at present conducts one business, to own the stock of two other entities: OppenheimerFunds, Inc. ("OFI") (which is not a defendant in this Complaint) and defendant Tremont Group Holdings, Inc. ("Tremont Group"). OFI is a well-known mutual fund management company that is not alleged to (and in fact did not have) any connection with the now-notorious Bernard L. Madoff ("Madoff") or his investment firm, Bernard L. Madoff Investment Securities ("BMIS"). OAC's other subsidiary, Tremont Group, is in turn the parent of defendants Tremont Partners, Inc. ("Tremont Partners") and Tremont (Bermuda) Limited ("Tremont Bermuda"). Tremont Partners was the general partner of one of the Tremont-offered funds that Plaintiffs invested in and investment adviser of the other fund in which the Plaintiffs invested (collectively, the "XL Funds"). Thus, OAC is two levels removed from Tremont Partners on the corporate organization chart.

As the Complaint makes clear, Tremont Partners and Tremont Bermuda had independently operated the XL Funds, with Madoff as a portfolio manager, to the benefit of investors long before OAC acquired Tremont Group. Nothing changed after the acquisition. The Complaint does not allege that OAC played any role in any of the Plaintiffs' investments with Tremont or in the management of those investments by Tremont Partners. The 249 paragraph Complaint contains no averment that OAC was involved in the day-to-day operations of Tremont Partners in any respect, let alone with respect to the Tremont Partners-Madoff investment relationship that is at issue in this case. Nor do Plaintiffs allege that OAC ever communicated with any Plaintiff on any topic, much less with regard to any Plaintiff's investment in an XL Fund.

Implicitly acknowledging the lack of any substantive ground for liability, Plaintiffs seek to advance but one cause of action against OAC -- for control person liability under Section 20(a) of the Securities Exchange Act of 1934. Plaintiffs conclusorily contend that OAC had the power to and did, in fact, "control" the Tremont Defendants (as defined herein), such that OAC should be liable for the alleged securities fraud committed by the Tremont Defendants. Plaintiffs' control person claim is deficient as a matter of law because Plaintiffs failed to plead (and indeed cannot plead) any of the elements to state such a claim: (a) a primary violation of the federal securities laws on the part of any of the Tremont Defendants, (b) that OAC "controlled" any of the Tremont Defendants, and (c) that OAC was a "culpable" participant in the Tremont Defendants' alleged securities fraud.

Indeed, the fundamental premise of the Plaintiffs' claim against OAC is negated by their Complaint itself, which fails to allege any nexus whatsoever between any action or inaction by OAC and their putative losses. Plaintiffs began investing in XL Funds many years before OAC acquired the Tremont holding company parent and continued to do so thereafter. The Plaintiffs recite having many contacts and communications regarding Madoff with various Tremont managers -- and with Madoff himself -- but none with or involving OAC. Plaintiffs undoubtedly paid their own advisors to manage their assets wisely -- but paid nothing to OAC. There is not

the slightest averment of fact that OAC controlled any aspect of the operations or circumstances that they now claim resulted in their losses. Thus, their after-the-fact effort to saddle OAC with the outcome of their own professional investment decisions and extended relationships with the Madoff operation finds no support in logic, equity or the federal securities laws.

## STATEMENT OF RELEVANT FACTS[1]

**A.  Plaintiffs' Investments In The Hedge Funds That Were Managed By Tremont Partners And Tremont Bermuda**

The Complaint alleges that the Plaintiffs began investing in Tremont funds "purportedly managed by Madoff" in 1994. Compl. ¶ 41. Eventually, Plaintiffs allege, they invested millions of dollars in two funds managed by the Tremont Defendants -- the Rye Select Broad Market XL Fund, L.P. (the "Market XL Fund") and the Rye Select Broad Market XL Portfolio Limited (the "XL Portfolio Fund") (collectively the "XL Funds"). *Id.* ¶¶ 19-20, 27-35.[2] At all relevant times, Tremont Partners served as the general partner of the Market XL Fund and investment manager of the XL Portfolio Fund. Compl. ¶ 22.[3]

The XL Funds were available only to either "accredited investors" and "qualified purchasers" (i.e., that owned not less than $5,000,000 in investments) who acknowledged they were "willing and able to bear the economic risks" of a "speculative," "illiquid" investment that

---

[1]    Solely for the purposes of this motion to dismiss, the Complaint's well-pleaded factual allegations are accepted as true. *See Ofori-Tenkorang v. Am. Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[2]    The Complaint also identifies two additional Tremont funds -- the Rye Select Broad Market Fund, L.P. (the "Market Fund") and the Rye Select Broad Market Portfolio Limited (the "Portfolio Limited Fund") -- for which Madoff was also the portfolio manager and custodian. Compl. ¶¶ 19-20. The Market XL Fund and XL Portfolio Fund were more leveraged versions of the Market Fund and Portfolio Limited Fund, respectively, with each of the XL Funds having investments in their counterpart and engaging in swaps with designated counterparties. *Id.* ¶¶ 19, 20, 57, 60. According to the Complaint, the stated investment purpose of each of the XL Funds was to achieve "long-term capital growth and a return based on a three times levered [sic] exposure to the economic performance" of the counterpart funds. Compl. ¶ 19, 20. However, none of the Plaintiffs is alleged to have directly invested in the Market Fund or the Portfolio Limited Fund.

[3]    With regard to the Market Fund and Portfolio Limited Fund discussed in note 2, *supra*, Tremont Partners served as the general partner of the Market Fund and sub-advisor to the Portfolio Limited Fund, and Tremont Bermuda served as the investment manager for the Portfolio Limited Fund. Compl. ¶ 22-23.

involves "a high degree of risk" (the Market XL Fund) or "investors that can afford to make high risk investments," "have adequate means," and "no need for liquidity" (the XL Portfolio Fund).[4]

**B.    Plaintiffs' Claims Against The Tremont-Related Defendants Based On The Losses They Suffered In The Madoff Ponzi Scheme**

As came to light in December 2008, Madoff had secretly been orchestrating a giant Ponzi scheme for many years through BMIS, causing thousands of sophisticated investors, including Plaintiffs, to lose billions of dollars. Compl. ¶¶ 5, 82-85. Although Plaintiffs, along with thousands of other sophisticated and "accredited" investors, dozens of financial institutions, and even the SEC, apparently were duped by Madoff's scheme, Plaintiffs seek no relief from Madoff; instead Plaintiffs allege, *inter alia*, various causes of action against Tremont Group, Tremont Partners and Tremont Bermuda (the "Tremont Defendants") stemming from the XL Funds' investments through Madoff. *Id.* ¶¶ 122-43, 150-201. Specifically, Plaintiffs allege that, irrespective of any profits they may have withdrawn prior to the news of Madoff's scheme becoming public in December 2008, the Tremont Defendants should make them whole for their recent losses because the Tremont Defendants:

- violated Section 10(b) of the Exchange Act and committed fraud by making false and misleading statements regarding their due diligence into Madoff, familiarity with Madoff's operations and monitoring of Madoff and by falsely stating that the assets managed by Madoff existed and were appreciating and the trades purportedly being made by Madoff actually occurred (Compl. ¶¶ 40-88, 122-43, 150-69);

- breached their fiduciary duties to Plaintiffs by failing to use reasonable care while conducting due diligence into Madoff, monitoring Madoff, providing financial disclosures and overseeing the management of Plaintiffs' assets by Madoff (*Id.* ¶¶ 170-187); and

---

[4]    *See* Rye Select Broad Market XL Fund, L.P. Amended and Restated Confidential Private Placement Memorandum, General Notices, pp. 10-14 (attached as Exhibit D to the Declaration of Jason C. Vigna in Supp. of the Tremont Defendants' Mot. to Dismiss the Meridian Plaintiffs' Complaint ("Vigna Decl."); Rye Select Broad Market XL Portfolio Limited Information Memorandum, p. 16 (attached as Exhibit B to the Vigna Decl.). This Court is authorized to take notice of these documents under Rule 12(b)(6) as documents referenced in and integral to Plaintiffs' Complaint. *See, e.g., International Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

- acted negligently by failing to manage and oversee the management by Madoff of Plaintiffs' investments (*Id.* ¶¶ 188-201).[5]

## C.    Plaintiffs' Limited And Conclusory Allegations Against OAC

Plaintiffs argue that OAC "had the power, both direct and indirect, to control Tremont Group Holdings (and its subsidiaries) and it did in fact exercise such control." Compl. ¶ 146. The allegations relating to OAC, however, are to the effect that:  (i) OAC acquired Tremont Group as its wholly owned subsidiary in 2001[6] (Compl. ¶¶ 21, 24, 146); (ii) Tremont's annual revenue of $100 million constitutes just 7% of OAC's total annual revenue (*Id.* ¶ 24); (iii) on unstated dates by unstated means, OAC provided "extensive" support services to not only the entity it owned, Tremont Group, but to "the Tremont Defendants," but comprised only of "compliance, audit, finance and human resources" (*Id.* ¶ 146); (iv) John V. Murphy ("Murphy") - - the president and a director of OAC, and Chairman and CEO (and formerly a president) of OFI -- serves on Tremont Group's board of directors (*Id.* ¶ 146), and (v) OAC directed the Tremont Defendants to change its auditors from Ernst & Young to KPMG, which OAC had engaged for both of its subsidiaries' audit work (*Id.* ¶ 146).

Although Plaintiffs generically allege that OAC provided certain back-office services, Plaintiffs do not allege that OAC did, or could have, played a role in any investment-related activities carried out by Tremont Partners and Tremont Bermuda with respect to Plaintiffs' investments in any of the XL Funds.  Plaintiffs do not allege that OAC (a) established the investment strategy for any of the XL Funds, (b) selected Madoff to manage the XL Funds, (c) performed due diligence as part of Tremont's selection of Madoff to manage the XL Funds, (d) monitored Madoff's performance as manager of the XL Funds, (e) prepared or reviewed any offering materials for any of the XL Funds, (f) prepared or reviewed account statements for Plaintiffs or any other investor in the XL Funds, (g) entered into any contract with respect to the

---

[5]    In addition, Plaintiffs bring claims of fraud, negligence and violation of Section 10(b) of the Exchange Act against KPMG LLP and KPMG (Cayman) (the "KPMG Defendants") in relation to the KPMG Defendants' role as auditors to the XL Funds.  Compl. ¶¶ 89-121, 202-49.

[6]    Plaintiffs do not allege that OFI has ever had an ownership interest in Tremont Group or any other Tremont entity.

XL Funds with any Plaintiff, or (h) communicated with any Plaintiff on any topic, much less with regard to any Plaintiff's investment in any of the XL Funds.

There is no allegation that any Plaintiff purchased as a result of, or even after, the OAC acquisition of Tremont Group. And there is no averment that OAC controlled any person with respect to an act, or inaction, that resulted in either their investment or their loss.

## **ARGUMENT**

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), while the Court must accept well-pleaded factual allegations as true, the Court is not required to "draw unreasonable inferences or to credit legal conclusions at odds with plaintiff's own factual allegations." *Solow v. Stone*, 994 F. Supp. 173, 181 (S.D.N.Y.), *aff'd*, 163 F.3d 151 (2d Cir. 1998); *see Ofori-Tenkorang*, 460 F.3d at 298. Rather, as the U.S. Supreme Court recently articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), Rule 8 of the Federal Rules of Civil Procedure requires dismissal of a complaint, such as that here, that does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Martinez v. City of New York*, 06 Civ. 1476, 2008 WL 681465, at *3 (S.D.N.Y. Mar. 11, 2008)) (Griesa, J.) (relying on *Twombly* to dismiss complaint that did not allege "enough facts to state a claim to relief that is plausible on its face").

Conclusions are not facts. Complaints that merely plead "labels and conclusions[] and a formulaic recitation of the elements of a cause of action" do not suffice. *Twombly,* 550 U.S. at 555; *Ashcroft v. Iqbal*, 07-1015, 2009 WL 1361536, at *13 (U.S. May 18, 2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"); *see also Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (quotation omitted). The *Twombly* Court rejected the long-recognized standard that a complaint should survive a motion to dismiss unless it appears that "no set of facts" could be asserted which would entitle the plaintiff to relief. *Id.* at 561-63.

And, as the Supreme Court confirmed only days ago, under the "plausibility standard" of *Twombly*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 2009 WL 1361536, at *13 (citing Fed. R. Civ. P. 8(a)(2)); *accord ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (applying *Twombly* pleading standard in context of securities fraud claims); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 & n.2 (2d Cir. 2008) (same).

Plaintiffs' claim against OAC is comprised of conclusions and implausible assumptions, not facts. And, as demonstrated below, the law requires more, not less certainty, when seeking to place vicarious liability on one party for another's primary misconduct.

## I.   PLAINTIFFS FAIL TO STATE A SECTION 20(A) CLAIM AGAINST OAC

Section 20(a) of the Exchange Act imposes liability on "persons who 'control' those who violate the [Exchange] Act."[7] *Cohen v. Citibank, N.A.*, 954 F. Supp. 621, 629 (S.D.N.Y. 1996). To establish a Section 20(a) claim, a plaintiff must show: "(1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) 'that the controlling person was in some meaningful sense a culpable participant' in the primary violation." *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (quoting *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)); *accord In re Corning, Inc. Sec. Litig.*, 349 F. Supp. 2d 698, 722 (S.D.N.Y. 2004) (Griesa, J.).

Plaintiffs have failed to plead adequately any of these essential elements of their Section 20(a) claim. Their Section 20(a) claim as against OAC therefore should be dismissed.

### A.   Plaintiffs Have Failed To State A Claim For A Primary Violation Of The Exchange Act By A "Controlled Person"

The first required element of a claim for control person liability under Section 20(a) is sufficient, well-pleaded allegations that the controlled person -- in this case, at least one of the

---

[7]   The statute provides, in relevant part, that "[e]very person who, directly or indirectly, controls any person liable under any provision of [the Exchange Act] or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person." 15 U.S.C. § 78t(a).

Tremont Defendants -- violated Section 10(b) of the Exchange Act. *See, e.g., Klock v. Lehman Bros. Kuhn Loeb Inc.,* 584 F. Supp. 210, 216 (S.D.N.Y. 1984). As set forth in the Tremont Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Meridian Plaintiffs' Complaint, Plaintiffs have failed to plead a primarily violation of Section 10(b) and Rule 10b-5 by any of the Tremont Defendants. Therefore, they also have failed to state a claim for control person liability under Section 20(a) against OAC.

### B. Plaintiffs Have Failed To Adequately Allege That OAC "Controlled" Tremont

Even if Plaintiffs had stated a Section 10(b) claim against any of the Tremont Defendants (which they have not), this Court should dismiss the Section 20(a) claim against OAC because Plaintiffs have failed to allege facts to show that OAC "controlled" any of the Tremont Defendants.

To properly allege "control," Plaintiffs must provide facts sufficient to show that OAC "possessed the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996) (quotation omitted). "*Actual control* over the wrongdoer and the transactions in question is necessary for control person liability." *In re Sotheby's Holdings, Inc. Sec. Litig.*, 00 Civ. 1041, 2000 WL 1234601, at *8 (S.D.N.Y. Aug. 31, 2000) (emphasis added); *see also In re Global Crossing, Ltd. Sec. Litig.*, 02 Civ. 910, 2005 WL 1907005, at *12 (S.D.N.Y. Aug. 8, 2005) (plaintiff must demonstrate that each named defendant possessed "*in fact, rather than in theory*, the ability to direct the actions of the controlled person") (emphasis added). Accordingly, a determination of Section 20(a) accountability "requires an individualized determination of a defendant's control of the primary violator as well as a defendant's particular culpability." *Global Crossing*, 2005 WL 1907005, at *12 (internal citations omitted). Moreover, the "[a]llegations of control must be substantial." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 274 (S.D.N.Y. 2004).

The entirety of Plaintiffs' allegations of control is contained in but one single paragraph of the Complaint.[8] Plaintiffs' conclusorily allege that OAC "had the power, both direct and indirect, to control Tremont Group [] (and its subsidiaries), and it did in fact exercise such control" and then state the purported factual predicate upon which the alleged control by OAC of the Tremont Defendants lies:

"(i)     Tremont Group [] was 100% owned by [OAC];

"(ii)    [OAC] provided extensive support services to the Tremont Defendants, including compliance, audit, finance, and human resources;

"(iii)   [OAC] directed the Tremont Defendants to change its auditors from Ernst & Young to KPMG, which [OAC] engaged for its subsidiaries' audit work; and

"(iv)    [OAC] placed John v. Murphy – President and Director of [OAC] since July 2001, Chairman, Chief Executive Officer, and Director of [OFI] since June 2001, and President of [OFI] from September 2000 through February 2007 – on the Board of Directors of Tremont Group [] (f/k/a Tremont Capital Management) in November 2001."

Compl. ¶ 146. These *de minimis* and conclusory allegations of control are entirely insufficient to state a Section 20(a) claim. *See, e.g., Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 102 (2d Cir. 2001) (holding that vague and conclusory allegations "indicating only that certain employees worked for multiple defendants . . . are insufficient under § 20 as a matter of law"); *Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628, 642 (S.D.N.Y. 1999) (dismissing Section 20 claim where plaintiffs only allegations of control were "the naked assertion that [defendants] were 'officers' of the [controlled entity]" and where the complaint was "devoid of any allegation as to how these [defendants] "controlled" these companies."); *Starr v. AHey, Inc.*, 01 C 6087, 2003 WL 21212596, at *4 (N.D. Ill. May 23, 2003) (dismissing claim and noting that claimant alleged "nothing to support his claim that the individual defendants were control

---

[8]    Indeed, the Complaint only contains a handful of other paragraphs that even mention OAC: the only additional factual allegations found in the Complaint regarding OAC are the unremarkable assertions that (i) OAC acquired Tremont Group in 2001 and (ii) since the time of the acquisition, Tremont Group's annual revenue constitutes 7% of OAC's annual revenue. Compl. ¶¶ 21, 24.

persons other than his sweeping and self-serving statement that the defendants should be liable solely by virtue of shareholder status or directorships").

### 1. The Conclusory Pleading Of A Parent/Subsidiary Relationship Is Inadequate

The mere fact of a parent/subsidiary relationship between OAC and Tremont Group does not suffice to plead the actual control required by statute. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 02 Civ. 3288, 2004 WL 1097786, at *3 (S.D.N.Y. May 18, 2004). In *WorldCom*, Judge Cote considered whether plaintiffs satisfied the minimal Fed. R. Civ. P. 8 pleading requirements for a controlling person claim by asserting that "Holding Company Defendants" were parents of entities that allegedly violated the federal securities laws.[9] Finding that the mere pleading of a parent/subsidiary relationship is factually insufficient to support this contention, the court observed the "well-settled principle of corporate law that . . . a parent corporation and its subsidiary are regarded as legally distinct entities." *WorldCom*, 2004 WL 1097786, at *3. Judge Cote therefore held that merely alleging controlling shareholder status or control by a corporate affiliate was insufficient as a matter of law to demonstrate "control" for purposes of pleading a control person claim under the federal securities laws. *Id.* Here, Plaintiffs' mere invocation of OAC's status as a parent of Tremont Group is equally insufficient as a matter of law.

### 2. The Conclusory Pleading Of OAC Providing Support Services to the Tremont Defendants Is Inadequate

Plaintiffs' general allegation that OAC provided "support services" to the Tremont Defendants (Compl. ¶ 146) is also insufficient to establish control. The sort of back-office support services summarily referenced in the Complaint is not at all probative of the power to control management and policy decisions that a Section 20(a) control person claim is designed to address. *See First Jersey*, 101 F.3d at 1472-73. It is thus no surprise that Plaintiffs fail to allege

---

[9] Although plaintiffs' claims of control in *WorldCom* were brought under Section 15 of the Securities Act of 1933, courts have repeatedly held that the "[e]xamination of control person liability under the Section 15 is governed by the same analysis as that used for control person liability under the Section 20(a) of the [Exchange Act]." *Id.* at *2 n.9; *see also, e.g., In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281, 352 (S.D.N.Y. 2003) (using "control" under Section 15 and Section 20(a) interchangeably).

how these "support services" that OAC purportedly provided to the Tremont Defendants related in any way to the investment management services that the Tremont Defendants performed for the XL Funds or any of the disclosures described in the Complaint. Even assuming, for purposes of this motion, that such services were in fact provided by OAC -- a holding company -- they are the sort of shared services commonplace to affiliated corporate entities and, as such, are essentially redundant of the affiliation itself. Thus, the allegations in the Complaint can not be said to aver "actual control over the transaction in question." *See In re Global Crossing Ltd. Sec. Litig.*, 02 Civ. 910, 2005 WL 1875445, at *3 (S.D.N.Y. Aug. 5, 2005) (citation omitted).

### 3. The Conclusory Pleading Of OAC Directing The Tremont Defendants To Switch Auditors Is Inadequate

The summary allegation that on one occasion, OAC "directed" the Tremont Defendants to retain KPMG rather than Ernst & Young as their auditors (Compl. ¶ 146) is beside the point. First, there are no allegations that the selection of the Tremont Defendants' auditor related to the conduct described in the Complaint. Indeed, it is not the conduct of KPMG as auditor for the Tremont Defendants that Plaintiffs complain of; rather, they allege that KPMG, or alleged affiliates of KPMG, improperly audited the funds they invested in, not the financial status of the Tremont Defendants. Second, while Plaintiffs do assert several claims against the KPMG Defendants, there are no allegations that OAC or the Tremont Defendants' directed, controlled or were in any way involved with the allegedly actionable conduct by the KPMG Defendants.

Finally, OAC's alleged involvement in one determination that the corporate group as a whole should use the same service provider for consolidated financial statements is an ordinary incident of corporate affiliation and does not go to show the type of day-to-day involvement with the Tremont Defendants such that OAC should be presumed to have participated in the Tremont Defendants Madoff-related investment decisions. *Cf. In re Solv-Ex Corp. Sec. Litig.*, 210 F. Supp. 2d 276, 285 (S.D.N.Y. 2000) (finding a Section 20(a) control person claim adequately pled were involved in the "day-to-day operations" of the controlled person and participated in a misrepresentation); *Maywalt v. Parker & Parsley Petroleum Co.*, 808 F. Supp. 1037 1054

(S.D.N.Y. 1992) ("However, where [the defendants] are a narrowly defined group charged with the day-to-day operations of a public corporation, it is reasonable to presume that these officers had the power to control or influence the particular transactions giving rise to the securities violations.").

### 4.     The Conclusory Pleading Of A Common Director Is Inadequate

Finally, Plaintiffs' contention that a director and officer of OAC and its affiliates simultaneously served as a director of the corporate parent of Tremont Partners and Tremont Bermuda does not establish "control" for purposes of Section 20(a). Plaintiffs allege that Murphy, an officer and director of OAC and the Chairman and CEO of OFI, has been a director of Tremont Group since November 2001. Compl. ¶ 146. There is no allegation that any OAC officer or director was also an officer or director of the Tremont entities that managed the funds Plaintiffs invested in, Tremont Partners and Tremont Bermuda. Moreover, Plaintiffs do not even allege that Murphy had any influence on or directed any activity of Tremont Group. A plaintiff cannot satisfy its burden of pleading actual control merely by alleging that the defendant had "representation" on the board of the primary violator. *See In re Flag Telecom*, 308 F. Supp. 2d at 273 (allegations that defendant's predecessor co-founded alleged controlled entity, owned a significant shareholding in that entity, and selected members of entity's board of directors were insufficient to establish control).

Rather, to state a Section 20(a) claim, Plaintiffs must allege specifically how OAC possessed the power (through its appointed director or otherwise) "to direct or cause the direction of the management" of the primary violator. *Kimmel v. Labenski*, 85 Civ. 0804, 1988 WL 19229, at *5 (S.D.N.Y. Feb. 10, 1988). On this critical point, Plaintiffs' allegations are legally insufficient as a matter of law because Plaintiffs fail to allege any facts that would support a reasonable inference that OAC, by virtue of its relationship with the Tremont holding company, Tremont Group, exerted control over any of the other Tremont Defendants' day-to-day affairs, in particular Tremont Partners and Tremont Bermuda, two of multiple subsidiaries of Tremont Group. Plaintiffs have made no attempt "to allege specifically" how Murphy, let alone OAC,

"possessed the power to direct or cause the direction of" the funds' manager. *Id.* at *5. To the contrary, as demonstrated above, Plaintiffs do not even purport to allege that OAC, either directly or indirectly, did any of the following: (a) established the investment strategy for any of the Funds, (b) selected Madoff to manage the Funds, (c) performed due diligence as part of Tremont's selection of Madoff to manage the Funds, (d) monitored Madoff's performance as manager of the Funds, (e) prepared or reviewed any offering materials for any of the Funds, (f) prepared or reviewed account statements for Plaintiffs or any other investor in the XL Funds, (g) entered into any contract with respect to the Funds with any Plaintiff, or (h) communicated with any Plaintiff on any topic, much less with regard to any Plaintiff's investment in a Fund. The absence of any such allegations, especially given the public scrutiny over the Tremont-Madoff connection and the length of time that Plaintiffs have had to prepare their Complaint, could hardly be more striking.

Accordingly, Plaintiffs' bare pleadings concerning Murphy's director position at Tremont Group is insufficient as a matter of law to establish OAC's actual control over any of the Tremont Defendants.

### C. Plaintiffs Have Failed To Adequately Allege "Culpable Participation" By OAC In The Alleged Securities Fraud Committed By The Tremont Defendants

Plaintiffs' Section 20(a) also fails against OAC because they have not alleged properly OAC's "culpable participation" in the Tremont Defendants' supposed securities fraud.

In addition to satisfying the requirement of actual control, Plaintiffs must plead facts demonstrating that OAC "was in some *meaningful sense* a culpable participant in the fraud perpetrated by [the] controlled person." *First Jersey,* 101 F.3d at 1472 (emphasis added; internal quotations omitted); *accord Suez Equity Investors,* 250 F.3d at 101. Culpable participation is a separate element from control and must be satisfied as to each purported "controlling person" on an individual basis. *See Boguslavsky*, 159 F.3d at 720 ("[A] determination of § 20(a) liability requires an individualized determination of a defendant's control of the primary violator as well as a defendant's particular culpability.").

Although the Second Circuit has not specifically addressed the level of detail which a plaintiff must provide to satisfy the "culpable participation" element, the majority of courts in this District have held that plaintiffs must plead a specific factual basis for culpable participation to survive a motion to dismiss. *See, e.g., In re Corning,* 349 F. Supp. 2d at 722 ("In order to make out a prima facie case of liability under § 20(a), plaintiff must show . . . that the controlling entity was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled entity") (Griesa, J.). Indeed, the prevailing view in this District is that to survive a motion to dismiss, a Section 20(a) plaintiff must "plead *with particularity* facts giving rise to a strong *inference*" of scienter. *In re Global Crossing Ltd. Sec. Litig.*, 471 F. Supp. 2d 338, 351 (S.D.N.Y. 2006) (emphasis in original); *accord City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l PLC*, 423 F. Supp. 2d 348, 363 (S.D.N.Y. 2006) ("To withstand a motion to dismiss a Section 20(a) claim, plaintiff must allege . . . particularized facts as to the controlling persons culpable participation in the fraud perpetrated by the controlled person."); *In re Yukos Oil Co. Sec. Litig.*, 04 Civ. 5243, 2006 WL 3026024, at *24 (S.D.N.Y. Oct. 25, 2006).

To satisfy this pleading standard, a plaintiff must plead facts showing that the defendant's conduct with respect to the primary violation amounted, at a minimum, to recklessness. *See, e.g., In re Alstom SA*, 406 F. Supp. 2d 433, 504 (S.D.N.Y. 2005) ("A state of mind of at least recklessness is required to plead culpable participation under Section 20(a)."). And, because a showing of culpable participation implicates defendant's state of mind, the heightened pleading requirements of the Private Securities Litigation Reform Act (the "PSLRA;" *see* 15 U.S.C. § 78u-4(b)(2)) apply. *See, e.g., In re Emex Corp. Sec. Litig.*, 01 Civ. 4886, 2002 WL 31093612, at *10 (S.D.N.Y. Sept. 18, 2002) ("The last element [of a Section 20(a) claim], culpable participation, is subject to the PSLRA's heightened pleading requirements.").

Applying these rigorous standards, Plaintiffs have not come close to alleging "culpable participation" against OAC. Their Complaint alleges that the Tremont Defendants made false and misleading representations that: (1) they performed adequate due diligence of Madoff when they had either not performed the due diligence or they had uncovered evidence of criminality

- 14 -

during the due diligence and not done anything about it (*see, e.g.*, Compl. ¶¶ 40, 41, 42, 49, 50, 51, 52, 74, 75); (2) they were familiar with the operations of Madoff (*see, e.g., id.* ¶¶ 42, 69); (3) they were monitoring the transactions, internal controls and operational risk of Madoff (*see, e.g., id.* ¶¶ 42, 48, 50, 53, 55, 64); (4) Plaintiffs' assets purportedly managed by Madoff existed (*see, e.g., id.* ¶¶ 40, 48, 64, 65, 80-81); and (5) the trades Madoff purportedly made with the XL Funds' assets actually occurred (*see, e.g., id.* ¶¶ 40, 67). Yet, as described below, Plaintiffs have not alleged particularized facts to suggest that <u>OAC</u> had a culpable state of mind with respect to any of the above alleged misrepresentations, nor have they offered any facts to show "conscious misbehavior" by OAC.

First, the only allegations in the Complaint regarding OAC's conduct are that OAC provided certain back-office support to the Tremont Defendants and that OAC once directed the Tremont Defendants to switch their auditors from Ernst & Young to KPMG. *See* Compl. ¶ 146. However, these allegations bear no relation to the management of the XL Funds by the Tremont Defendants, let alone the allegedly improper disclosures with respect to the XL Funds. Plaintiffs have not (and cannot) allege that OAC engaged in *any conduct at all*, much less "culpable conduct," with regard to the Tremont Defendants' disclosures regarding its use of Madoff, its due diligence regarding BMIS, or the investment strategies employed by Madoff. A Section 20(a) claim that fails to plead particularized facts as to the defendant's purported culpable conduct must be dismissed. *See In re Emex Corp.*, 2002 WL 31093612, at *11 (dismissing Section 20(a) claims where complaint "fail[ed] to provide any particularized facts as to what [the defendants] are alleged to have done or failed to do as a participant in [the controlled person's] primary violation"); *Mishkin v. Ageloff*, 97 Civ. 2690, 1998 WL 651065, at *26 (S.D.N.Y. Sept. 23, 1998) ("[T]he Complaint must provide some detail about what [the defendant] is alleged to have done, and when he did it, in order for me to hold that the Complaint provides 'particularized facts' of [the defendant's] culpable participation"); *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 563 (D. Del. 2002) ("[T]he complaint broadly and vaguely alleges that the

individual defendants 'participated' in the purported omissions, but is utterly lacking in any details into when or how this occurred"), *aff'd*, 357 F.3d 322 (3d Cir. 2004).

Second, there are no facts in the Complaint from which a "strong inference" of conscious misbehavior or recklessness by OAC could arise. The Complaint is completely devoid of any allegation of any "awareness" or "knowledge" on the part of OAC; instead it merely alleges that OAC owned Tremont Group, one of its officers and directors sat on the board of Tremont Group, that OAC provided back-office support for the Tremont Defendants and that OAC directed Tremont Group to switch auditors. *See* Compl. ¶ 146.

Because these allegations are pure supposition as to what OAC must have known, there is a total absence of allegations of particularized facts "giving rise to a strong inference that [OAC] knew or should have known that [the Tremont Defendants were] engaging in fraudulent conduct." *Burstyn v. Worldwide Xceed Group, Inc.*, 01 Civ. 1125, 2002 WL 31191741, at *8 (S.D.N.Y. Sept. 30, 2002); *accord In re Deutsche Telekom AG Sec. Litig.*, 00 Civ. 9475, 2002 WL 244597, at *7 (S.D.N.Y. Feb. 20, 2002); *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 484 (S.D.N.Y. 2001). Moreover, Plaintiffs do not allege any facts showing that OAC "permitted" the issuance of such statements with knowledge or reckless disregard of their falsity. *See In re Twinlab Corp. Sec. Litig.*, 103 F. Supp. 2d 193, 208 (E.D.N.Y. 2000) (dismissing Section 20(a) claims despite the complaint's allegations that the defendants had access to financial statements and the capacity to prevent their fraudulent issuance because the complaint failed to "specifically allege facts demonstrating that [the defendants] culpably participated in the scheme, rather than, for example, unknowingly approving credible but fraudulent financial reports prepared by subordinate").

Finally, even if a heightened pleading standard did not apply, the Complaint is completely devoid of any allegation of fact with regard to any participation by OAC in the wrongdoing alleged against the managers of the XL Funds, let alone substantial participation. No pleading standard would permit the instant claims to survive.

Plaintiffs' control person claims at their core are nothing more than the bare assertions that OAC owned the holding company for the Tremont Defendants. This is insufficient to establish "culpable participation" as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant Oppenheimer Acquisition Corp. respectfully submits that its motion to dismiss the Complaint should be granted in its entirety.

Dated: New York, New York
      May 20, 2009

<div style="margin-left:40%">

DECHERT LLP

By:   /s/ William K. Dodds
William K. Dodds
william.dodds@dechert.com
Robert W. Topp
robert.topp@dechert.com
1095 Avenue of the Americas
New York, New York 10036
Tel.: (212) 698-3500
Fax: (212) 698-3599

David A. Kotler
david.kotler@dechert.com
902 Carnegie Center, Suite 500
Princeton, New Jersey 08540
Tel.: (609) 955-3200
Fax: (609) 955-3259

*Attorneys for Oppenheimer Acquisition
Corp.*

</div>