UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MERIDIAN HORIZON FUND, LP,       :     09 CV 3708 (TPG)
MERIDIAN HORIZON FUND II, LP,   :
MERIDIAN DIVERSIFIED FUND, LP,  :
MERIDIAN DIVERSIFIED FUND, LTD., :    ECF CASE
MERIDIAN DIVERSIFIED ERISA FUND, :    Electronically Filed
LTD., MERIDIAN DIVERSIFIED COMPASS :
FUND, LTD., and MERIDIAN ABSOLUTE :
RETURN ERISA FUND, LTD.,       :
                               :
            Plaintiffs,    :
                               :
         -against-      :
                               :
TREMONT GROUP HOLDINGS, INC.,  :
TREMONT PARTNERS, INC., TREMONT :
(BERMUDA) LIMITED, OPPENHEIMER :
ACQUISITION CORPORATION, KPMG :
LLP, AND KPMG (CAYMAN),      :
                               :
           Defendants.  :
                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## THE TREMONT DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

Seth M. Schwartz
Susan L. Saltzstein
Michael H. Gruenglas
Jason C. Vigna
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Tremont Partners, Inc.,
Tremont Group Holdings, Inc., and
Tremont (Bermuda) Limited

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT........................................................................................... 1

SUMMARY OF ALLEGATIONS ....................................................................................... 2

ARGUMENT ....................................................................................................................... 5

I.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 10(b) OF
THE EXCHANGE ACT ............................................................................................ 5

     A.     Plaintiffs Have Not Adequately Pled A Material Misrepresentation.................... 6

     B.     Plaintiffs Have Not Adequately Pled Scienter...................................................... 8

     C.     Plaintiffs' Securities Fraud Claims Are Barred By The "Santa Fe"
Doctrine ...............................................................................................................10

II.    PLAINTIFFS LACK STANDING TO ASSERT STATE LAW CLAIMS
BELONGING TO THE RYE FUNDS ..............................................................................10

III.   OFFSHORE PLAINTIFFS' CLAIMS MUST BE BROUGHT IN THE
CAYMAN ISLANDS ...............................................................................................11

IV.   THE MARTIN ACT PREEMPTS PLAINTIFFS' BREACH OF
FIDUCIARY DUTY AND NEGLIGENCE CLAIMS ...................................................12

V.    PLAINTIFFS' CLAIMS ARE OTHERWISE LEGALLY DEFECTIVE .......................13

     A.     Plaintiffs Cannot Establish That The Tremont Defendants
Proximately Caused Their Losses.......................................................................13

     B.     Plaintiffs Have Not Adequately Pled Common Law Fraud ................................14

     C.     Plaintiffs Fail To State A Breach Of Fiduciary Duty Claim ...............................15

          1.     TGH Owed No Plenary Fiduciary Duties To Plaintiffs............................15

          2.     Plaintiffs Fail To State A Breach Of Fiduciary Duty Claim
Against TPI .............................................................................................15

          3.     Plaintiffs Fail To State A Breach of Fiduciary Duty Claim
Against TBL.............................................................................................16

     D.     Plaintiffs Fail To State A Claim For Negligence.................................................17

    1.      The Onshore Rye Fund's LPA Exculpates Negligence ............................17

    2.      The Offshore Rye Fund's Investment Management
          Agreement Exculpates Negligence..........................................................18

CONCLUSION....................................................................................................................18

# TABLE OF AUTHORITIES

## CASES

ATSI Communications, Inc. v. Shaar Fund, Ltd.,
    493 F.3d 87 (2d Cir. 2007)................................................................. 6

In re Bayou Hedge Fund Litigation,
    534 F. Supp. 2d 405 (S.D.N.Y. 2007) ....................................... 9, 10, 12, 13, 16

Bison Pulp & Paper Ltd. v. M/V Pergamos,
    No. 89 Civ. 1392, 1995 WL 880775 (S.D.N.Y. Nov. 29, 1995)......................................11

Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,
    98 F.3d 13 (2d Cir. 1996)........................................................14

Bui v. Industrial Enterprises of America, Inc.,
    594 F. Supp. 2d 364 (S.D.N.Y. 2009) .............................................................. 9

DDJ Management, LLC v. Rhone Group L.L.C.,
    875 N.Y.S.2d 17 (1st Dep't 2009) .................................................13

ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,
    553 F.3d 187 (2d Cir. 2009) ............................................................. 6

Feiner Family Trust v. VBI Corp.,
    No. 07 Civ. 1914, 2007 WL 2615448 (S.D.N.Y. Sept. 11, 2007)....................................11

Gordon Partners v. Blumenthal,
    293 F. App'x 815, 818 (2d Cir. 2008)..............................................15

Halperin v. eBankerUSA.com, Inc.,
    295 F.3d 352 (2d Cir. 2002) ........................................................... 7

Henneberry v. Sumitomo Corp. of America,
    532 F. Supp. 2d 523 (S.D.N.Y. 2007) ......................................................7, 8

Henry v. Merck & Co.,
    877 F.2d 1489 (10th Cir. 1989).......................................................14

Jana Master Fund, Ltd. v. JPMorgan Chase & Co.,
    19 Misc. 3d 1106, 859 N.Y.S.2d 903 (table),
    2008 WL 746540 (Sup. Ct. N.Y. County Mar. 12, 2008) ................................12

Jordan (Bermuda) Investment Co. v. Hunter Green Investments LLC,
    No. 00 Civ. 9214, 2007 WL 2948115 (S.D.N.Y. Oct. 3, 2007)........................................17

Kalnit v. Eichler,
    264 F.3d 131 (2d Cir. 2001) .......................................................................................... 9

Laub v. Faessel,
    297 A.D.2d 28, 745 N.Y.S.2d 534 (1st Dep't 2002)........................................................13

Lentell v. Merrill Lynch & Co., Inc.,
    396 F.3d 161 (2d Cir. 2005)..........................................................................................13

Litman v. Prudential-Bache Properties, Inc.,
    No. 12137, 1993 WL 5922 (Del. Ch. Jan. 4, 1993)........................................................11

M/S Bremen v. Zapata Off-Shore Co.,
    407 U.S. 1 (1972) ..........................................................................................................11

Medis Investor Group v. Medi Technologies, Ltd.,
    586 F. Supp. 2d 136 (S.D.N.Y. 2008) ............................................................................. 8

Mendes Junior International Co. v. Banco do Brasil,
    15 F. Supp. 2d 332 (S.D.N.Y. 1998) ..............................................................................12

In re Merrill Lynch & Co. Research Reports Securities Litigation,
    273 F. Supp. 2d 351 (S.D.N.Y. 2003) ............................................................................. 2

Morse v. Weingarten,
    777 F. Supp. 312 (S.D.N.Y. 1991) .................................................................................15

In re Optionable Securities Litigation,
    577 F. Supp. 2d 681 (S.D.N.Y. 2008) .........................................................................7, 8

In re PXRE Group, Ltd. Securities Litigation,
    600 F. Supp. 2d 510 (S.D.N.Y. 2009) ............................................................................. 9

Panama v. American Tobacco Co.,
    C.A. No. 05C-07-181, 2006 WL 1933740 (Del. Super. Ct. July 13, 2006) ..............13, 14

People v. Federated Radio Corp.,
    244 N.Y. 33, 154 N.E. 655 (1926) .................................................................................12

Port Authority of New York & New Jersey v. Arcadian Corp.,
    189 F.3d 305 (3d Cir. 1999).........................................................................................14

Santa Fe Industrial, Inc. v. Green,
    430 U.S. 462 (1977).....................................................................................................10

Sedona Corp. v. Ladenburg Thalmann & Co., Inc.,
    No. 03 Civ. 3120, 2005 WL 1902780 (S.D.N.Y. August 09, 2005) ..........................12, 13

Shields v. Citytrust Bancorp., Inc.,
    25 F.3d 1124 (2d Cir. 1994) ........................................................................................6, 8

State of Sao Paulo, Brazil v. American Tobacco Co.,
    919 A.2d 1116 (Del. 2007) ......................................................................................13, 14

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    551 U.S. 308 (2007) ..............................................................................................6, 8, 10

Thorpe by Castleman v. CERBCO, Inc.,
    676 A.2d 436 (Del. 1996) ..............................................................................................13

United States v. Madoff,
    No. 09 Cr. 213 (S.D.N.Y. Mar. 12, 2009) ..................................................................... 4

Ventricelli v. Kinney System Rent a Car, Inc.,
    45 N.Y.2d 950 (1978) ....................................................................................................14

Wallace ex rel. Cencom Cable Income Partners II, L.P. v. Wood,
    752 A.2d 1175 (Del. Ch. 1999) .....................................................................................15

Ward v. State,
    81 Misc. 2d 583, 366 N.Y.S.2d 800 (Ct. Cl. 1975) ......................................................14

## STATUTES

15 U.S.C. § 78u-4(b)(1) ................................................................................................... 7

15 U.S.C. § 78u-4(b)(2) ................................................................................................... 1

N.Y. General Business Law §§ 352, et seq. (McKinney 2009) .....................................12

N.Y. Partnership Law § 121-901 (McKinney 2006) .....................................................17

Del. Code Ann. Tit. 6, § 17-1101(f) (2006) .................................................................17

Defendants Tremont Partners, Inc. ("TPI"), Tremont (Bermuda) Limited ("TBL") and Tremont Group Holdings, Inc. ("TGH") (collectively, the "Tremont Defendants" or "Tremont") respectfully submit this memorandum of law in support of their motion for an Order, pursuant to Rules 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and Section 101(b) of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(2) (the "PSLRA"), dismissing the complaint in this action (the "Complaint") as against Tremont.

## PRELIMINARY STATEMENT

This action asserts federal securities and pendent state law claims nearly identical to those alleged in the consolidated complaints filed in <u>In re Tremont Securities Law, State Law and Insurance Litigation</u>, Master File No. 08 Civ. 11117 (TPG) (the "Consolidated Action"). The primary difference is that plaintiffs here are hedge funds (the "Meridian Funds") that retained their own investment adviser ("Meridian Capital") – unaffiliated with Tremont – to make their investment decisions. As investment adviser to the Meridian Funds, Meridian Capital caused those funds to invest with Bernard Madoff through Rye Select Broad Market XL Fund, L.P. (the "Onshore Rye Fund") and Rye Select Broad Market XL Portfolio Ltd. (the "Offshore Rye Fund") (collectively, the "Rye Funds"). In other words, the Meridian Funds wanted to invest with Madoff but could not do so directly and therefore turned to the Rye Funds, which had direct access to Madoff.

Meridian Capital conducted its own due diligence of Madoff for the Meridian Funds and interviewed him numerous times, both before and after it caused the Meridian Funds to place their capital in Madoff's hands. Nonetheless, the Meridian Funds claim that they were defrauded by Tremont in connection with their Madoff-related investments. As shown below, plaintiffs' claims are legally defective and should be dismissed for substantially the same reasons set forth in Tremont's briefs seeking dismissal of the complaints in the Consolidated Action.

<u>**SUMMARY OF ALLEGATIONS**</u>

<u>**The Plaintiffs**</u>

Plaintiffs Meridian Horizon Fund, L.P., Meridian Horizon Fund II, L.P. and Meridian Diversified Fund, L.P. (collectively, the "Onshore Plaintiffs") are limited partnerships organized under the laws of Delaware that invested in the Onshore Rye Fund.  (Compl. ¶¶ 13, 27-29.) Plaintiffs Meridian Diversified Fund, Ltd., Meridian Diversified ERISA Fund, Ltd., Meridian Diversified Compass Fund, Ltd. and Meridian Absolute Return ERISA Fund, Ltd. (collectively, the "Offshore Plaintiffs") are exempted companies incorporated under the laws of the Cayman Islands that invested in the Offshore Rye Fund.  (<u>Id.</u> ¶ 14.)

<u>**The Rye Funds**</u>

The Onshore Rye Fund is a hedge fund organized under Delaware law as a limited partnership.[1]  (Compl. ¶ 19.)  Defendant TPI, a Connecticut corporation headquartered in Rye, New York, is the general partner of the Onshore Rye Fund.  (<u>Id.</u> ¶ 22.)  The Offshore Rye Fund is a hedge fund organized as a corporation under the laws of the Cayman Islands.  (<u>Id.</u> ¶ 20.)

---

[1]  (Compl. ¶¶ 19, 22; Rye Select Broad Market Fund XL Fund, L.P. Fourth Am. and Restated Ltd. P'ship Agreement ("Onshore LPA"), attached Transmittal Decl. of Jason C. Vigna in Supp. of the Tremont Defendants' Mot. to Dismiss ("Trans. Decl.") as Ex. A, at preamble.)

In deciding a Rule 12(b)(6) motion, the court may consider the following materials:  (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.  <u>See</u> <u>In re Merrill Lynch & Co. Research Reports Sec. Litig.</u>, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003), <u>aff'd sub nom.</u> <u>Lentell v. Merrill Lynch & Co.</u>, 396 F.3d 161 (2d Cir. 2005).

Pursuant to an advisory agreement entered into with the Offshore Rye Fund, TPI acts as the Offshore Rye Fund's investment manager.[2]

The Rye Funds did not invest directly with Madoff. Rather, their returns were derived from leveraged derivative instruments tied to the returns of other TPI-managed funds that invested directly with Madoff.[3] The Onshore Rye Fund sought to mimic the returns of Rye Select Broad Market Fund, L.P. ("Onshore Reference Entity"), and the Offshore Rye Fund sought to mimic the returns of Rye Select Broad Market Portfolio Ltd. (the "Offshore Reference Entity") (collectively, the "Reference Entities").[4]

TBL is a limited company organized under Cayman Islands law. (Compl. ¶ 23.) Plaintiffs do not allege that TBL had any relationship with the Rye Funds, only that TBL served as an investment manager for the Offshore Reference Entity. (Id. ¶ 23.)

TGH is a holding company organized under Delaware law. (Compl. ¶ 21.) It is headquartered in Rye, New York and is the parent corporation of TPI, among other companies. (Id. ¶ 21.)

---

[2]  (Compl. ¶ 22; Rye Select Broad Market XL Portfolio Limited Am. and Restated Information Mem. ("Offshore PPM"), attached to the Trans. Decl. as Ex. B, at 6.)

[3]  (Compl. ¶ 1-2; Offshore PPM (Trans. Decl. Ex. B) at 1-3; Management Agreement – Rye Select Broad Market XL Portfolio Limited ("Management Agreement"), attached to the Trans. Decl. as Ex. C, at ¶ 2(a).)

[4]  (Offshore PPM (Trans. Decl. Ex. B) at 1; Rye Select Broad Market XL Fund, LP Am. and Restated Confidential Private Placement Mem. ("Onshore PPM"), attached to the Trans. Decl. as Ex. D, at 1.) The counterparties to the derivative instruments were expected, but not obligated, to invest directly in the Reference Entities. (See Onshore PPM (Trans. Decl. Ex. D) at 1-2; Offshore PPM (Trans. Decl. Ex. B) at 2.) TPI is the general partner of the Onshore Reference Entity and a sub-adviser to the Offshore Reference Entity. (Compl. ¶ 2; Onshore PPM (Trans. Decl. Ex. D) at 1; Offshore PPM (Trans. Decl. Ex. B) at v.)

**The Investment Disclosures**

The Rye Funds sold limited partnership interests in the Onshore Rye Fund and shares in the Offshore Rye Fund to qualified investors pursuant to private placement memoranda ("PPMs"). (Compl. ¶¶ 56-60.) Because of the significant risks associated with the Rye Funds, investors were required to meet stringent standards of sophistication established by the Securities and Exchange Commission ("SEC").[5]

The PPMs warned that "the amount of publicly available information that may be used by the Reference Entity's general partner in selecting the Manager may be relatively small."[6] The PPMs further warned that "[n]o assurance can be given that the [Fund] will achieve its overall investment objective[;]"[7] "an investment in the [Fund] entails a high degree of risk."[8]

Plaintiffs knew Madoff managed the Rye Funds' assets (Compl. ¶¶ 19, 20) and that he represented that he invested in "a basket of common stocks within the Standard & Poor's 100 Index, a collection of the 100 largest publicly traded companies in terms of their market capitalization."[9]

**Plaintiffs' Claims**

On December 11, 2008 the world first learned that Madoff had not invested any of his clients' assets in S&P 100 stocks, but had instead dissipated the assets in a longstanding and far-

---

[5]   Specifically, investors needed to establish that they were "accredited investors" within the meaning of Regulation D promulgated under Section 4(2) of the Securities Act of 1933 and "qualified purchasers" as defined in Section 2(a)(51) of the Investment Company Act of 1940, as amended. (Onshore PPM (Trans. Decl. Ex. D) at 10-15; Offshore PPM (Trans. Decl. Ex. B) at vi.)

[6]   (Onshore Fund PPM (Trans Decl. Ex. D) at 19; Offshore PPM (Trans. Decl. Ex. B) at 17.)

[7]   (Onshore Fund PPM (Trans. Decl. Ex. D) at 18; Offshore PPM (Trans. Decl. Ex. B) at 16.)

[8]   (Onshore Fund PPM (Trans. Decl. Ex. D) at 24; Offshore PPM (Trans. Decl. Ex. B) at 21.)

[9]   See Plea Allocution of Bernard L. Madoff, United States v. Madoff, No. 09 Cr. 213 (DC) (S.D.N.Y. Mar. 12, 2009) (Docket # 50) ("Madoff Allocution"), attached to the Trans. Decl. as Ex. E, at 2.

reaching Ponzi scheme. (Compl. ¶¶ 5, 19, 20, 82.) Plaintiffs acknowledge that to conceal his fraud, Madoff developed a broad infrastructure to create the appearance of a legitimate investment advisory business. (Id. ¶¶ 5, 39-40, 83-85.) Among other things, Madoff created false trading confirmation and client account statements that appeared to confirm he was executing his trading strategy. (Id. ¶ 84.) He also submitted false audited financial statements to the SEC. (Id.)

Plaintiffs conclusorily assert that the Tremont Defendants' failure to detect Madoff's fraud prior to December 2008 demonstrates that they must not have conducted due diligence of Madoff or monitored the Rye Funds' investments. (See, e.g., Compl. ¶¶ 6, 86, 88.) Nonetheless, plaintiffs must concede both that (i) the SEC also failed to uncover Madoff's fraud, despite being advised in 2005 of twenty-nine "red flags" purportedly indicating that Madoff was operating a Ponzi scheme,[10] and (ii) *plaintiffs themselves* conducted independent due diligence on Madoff – including in-person meetings – and failed to uncover Madoff's fraud. (Id. ¶¶ 41, 43.)

Based on the false premise that any due diligence would have revealed Madoff's Ponzi scheme, plaintiffs assert claims against the Tremont Defendants for (i) violations of Section 10(b) of the Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder (Compl. ¶¶ 122-143); (ii) common law fraud (id. ¶¶ 150-169); (iii) breach of fiduciary duty (id. ¶¶ 170-187); and (iv) negligence (id. ¶¶ 188-201).

## **ARGUMENT**

## **I.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 10(b) OF THE EXCHANGE ACT**

To state a claim under Section 10(b) of the Exchange Act, plaintiffs must allege facts sufficient to show that: (i) in connection with the purchase or sale of securities, (ii) the defendant,

---

[10]     (SEC Division of Enforcement Case Closing Recommendation in Case No. NY-07563 ("SEC Case Closing"), attached to the Trans. Decl. as Ex. F.)

acting with scienter, (iii) made a false material representation or omitted to disclose material information (iv) and that plaintiff's reliance on defendant's action (v) caused injury to plaintiff. See ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 197 (2d Cir. 2009). Under both Rule 9(b) of the Federal Rules of Civil Procedure and Section 101(b) of the PSLRA, such allegations must be made "'with particularity'" and give "'rise to a strong inference that the defendant acted with the required state of mind'" – here, "'to deceive, manipulate, or defraud.'" Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 313-14 (2007) (citations omitted). The Complaint fails adequately to allege any of these essential elements of a Section 10(b) claim.

### A. Plaintiffs Have Not Adequately Pled A Material Misrepresentation

Plaintiffs claim that the Tremont Defendants made two allegedly false representations: (i) TBL and TPI had conducted due diligence on Madoff and were monitoring his activities (Compl. ¶¶ 124, 135), and (ii) the assets managed by Madoff on behalf of the Reference Entities existed and were appreciating. (Id. ¶¶ 124, 135.)

Plaintiffs do not allege, as they must, facts sufficient to show that, at the time of the purported statements, the Tremont Defendants did not believe that TBL and TPI would monitor Madoff. See, e.g., ATSI Commc'ns., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 105-06 (2d Cir. 2007) (representations regarding intentions are not actionable unless the allegations permit a fair inference that the represented intent was not honestly held when made). Merely failing to achieve an objective is not fraud. See, e.g., Shields v. Citytrust Bancorp., Inc., 25 F.3d 1124, 1129 (2d Cir. 1994). The Tremont Defendants did not, and could not, guarantee that their oversight procedures would detect all potential frauds. See ECA & Local 134 IBEW Joint Pension Trust, 553 F.3d at 205-06 (statements about strength of company's risk management procedures were mere "puffery" that provided no basis for securities law claim).

6

To the contrary, TPI repeatedly warned plaintiffs that it would not have access to complete information regarding Madoff's trading and that plaintiffs could lose their entire investment. The PPMs warned that "the amount of publicly available information that may be used . . . in selecting the Manager may be relatively small." (Onshore PPM (Trans. Decl. Ex. D) at 19; Offshore PPM (Trans. Decl. Ex. B) at 17.) No fraud claim may be premised on such statements. See, e.g., Halperin v. eBankerUSA.com, Inc., 295 F.3d 352, 360 (2d Cir. 2002) ("[C]autionary language addresses the relevant risk directly, and therefore neither offering memorandum was misleading.").

To the extent plaintiffs claim that the Tremont Defendants misrepresented their past (as opposed to intended) diligence and oversight, plaintiffs have not alleged, as they must, facts sufficient to show that the Tremont Defendants did not perform the activities at issue. Where, as here, allegations of fraud are pled on information and belief, the PSLRA requires that the complaint "specify each statement alleged to have been misleading . . . and, if an allegation regarding the statement or omission is made on information and belief, . . . *state with particularity all* facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1) (emphasis added). Here, plaintiffs identify no sources at all for their belief that the Tremont Defendants misrepresented their diligence and oversight, and plainly fall short of what is required. See, e.g., In re Optionable Sec. Litig., 577 F. Supp. 2d 681, 691 (S.D.N.Y. 2008).[11] Plaintiffs do not, for example, allege that they learned from a Tremont employee after the fact that no diligence had occurred. See Henneberry v. Sumitomo Corp. of Am., 532 F. Supp. 2d 523, 542 (S.D.N.Y. 2007). Instead, they conclusorily claim that the Madoff fraud was so "obvious" that any diligence would have

---

[11] The Complaint must include "factual allegations . . . based on adequate sources [that] justify plaintiffs' conclusion that defendants' statements were materially misleading." In re Optionable, 577 F. Supp. 2d at 689.

uncovered it.[12]  (Compl. ¶¶ 126, 137.)  This conclusory allegation is unsupported by any facts sufficient to show that Tremont conducted no diligence whatsoever, rendering its alleged representation on the subject of diligence materially false and misleading.  See Henneberry, 532 F. Supp. 2d at 542 ("Henneberry provides absolutely no support for his wholly conclusory allegations that those statements were 'incorrect or should have been known by them to be incorrect.'") (citation omitted); In re Optionable, 577 F. Supp. 2d at 691 ("[A] conclusory assertion that [defendants'] statement was false is not sufficient.").

With the advantage of hindsight, however, it is now apparent that the Rye Funds' performance updates and plaintiffs' account statements were inaccurate as a result of Madoff's well-concealed fraud.  Nonetheless, plaintiffs have not pled any facts demonstrating that the Tremont Defendants knew that the statements were false when disseminated or otherwise intended to mislead plaintiffs.

**B.     Plaintiffs Have Not Adequately Pled Scienter**

To adequately plead scienter, a plaintiff must allege facts showing "both motive and opportunity to commit fraud, or . . . constitut[ing] strong circumstantial evidence of conscious misbehavior or recklessness."  Shields, 25 F.3d at 1128.  Moreover, "'an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.'"  Medis Investor Group v. Medi Techs., Ltd., 586 F. Supp. 2d 136, 141 (S.D.N.Y. 2008) (quoting Tellabs, 551 U.S. at 314).  Otherwise, the claim must be dismissed.  See id.

Here, plaintiffs have not established the requisite "motive" on the part of the Tremont Defendants in that they have not pled, as they must, "concrete and individual gain to each

---

[12]    This bald assertion is belied by plaintiffs' own failure, and that of the SEC, to uncover the fraud.

defendant resulting from the [alleged] fraud." <u>Bui v. Indus. Enters. of Am., Inc.</u>, 594 F. Supp. 2d 364, 372 (S.D.N.Y. 2009). To attempt to show motive, plaintiffs allege only that Tremont purportedly committed fraud in order to attract additional Fund investors and obtain management and administration fees – fees paid by *all* funds managed by the Tremont Defendants regardless of association with Madoff. (Compl. ¶¶ 4, 6, 88.) As discussed in Section I(B) of the brief Tremont is filing today in <u>In re Tremont Securities Law Litigation</u>, 08 Civ. 11212 (TPG) ("Securities Brief"), which is incorporated herein by reference, it is well established that allegations of this type of general financial motive are insufficient to plead scienter. <u>See also</u> <u>Kalnit v. Eichler</u>, 264 F.3d 131, 140 (2d Cir. 2001) ("'[A] generalized motive, one which could be imputed to any . . . for-profit endeavor, is not sufficiently concrete for purposes of inferring scienter.'") (citation omitted).

And plaintiffs cannot establish either recklessness or knowing participation in the fraud simply by repeatedly alleging a failure to perform due diligence. (<u>See, e.g.</u>, Compl. ¶¶ 55, 67, 74-76.) Allegations that a defendant "promised to conduct a uniquely comprehensive brand of due diligence but failed to do so [are] insufficient to establish the requisite strong inference of conscious recklessness." <u>In re Bayou Hedge Fund Litig.</u>, 534 F. Supp. 2d 405, 416 (S.D.N.Y. 2007). "The failure to conduct due diligence is not the same thing as knowing of or closing one's eyes to a known 'danger,' or participating in the fraud." <u>Id.</u> at 417; <u>see also</u> <u>In re PXRE Group, Ltd. Sec. Litig.</u>, 600 F. Supp. 2d 510, 547 (S.D.N.Y. 2009) ("'even an 'egregious' failure to gather information will not establish 10b-5 liability'") (citation omitted).

The absence of scienter is underscored by plaintiffs' own acknowledgement that they met personally with Madoff repeatedly over the course of ten years (Compl. ¶¶ 41, 43) but nevertheless failed to uncover his fraud. It is further confirmed by the undisputed fact that as recently as 2006, the SEC cleared Madoff of specific allegations that he had been conducting a

Ponzi scheme. (SEC Case Closing (Trans. Decl. F).) In light of this widespread failure to detect Madoff's fraud, "[o]ne substantial competing inference this court may draw from these alleged facts is that due diligence would not have uncovered the fraud." In re Bayou, 534 F. Supp. 2d at 418; see Tellabs, 551 U.S. at 314 ("an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent"). As Judge McMahon recently held in substantially similar circumstances when dismissing a securities fraud complaint against a hedge fund manager that allegedly overlooked red flags of a Ponzi scheme:

> I . . . find the inference of recklessness alleged by plaintiff – that the [defendant's] failure to uncover the fraud evidences a reckless lack of due diligence – to be less compelling than an opposing inference – that [defendant's] failure to discover the fraud merely places it alongside the SEC, the IRS, and every other interested party that reviewed [the asset manager's] finances.

In re Bayou, 534 F. Supp. 2d at 417.

### C. Plaintiffs' Securities Fraud Claims Are Barred By The "Santa Fe" Doctrine

The gravamen of the Complaint is mismanagement, not fraud. Accordingly, as further explained in Section I(D) of the Securities Brief, plaintiffs' securities fraud claims should be dismissed pursuant to the "Santa Fe" doctrine. See also Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 479 (1977) ("'Congress by § 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement.'").

## II. PLAINTIFFS LACK STANDING TO ASSERT STATE LAW CLAIMS BELONGING TO THE RYE FUNDS

All of plaintiffs' state law claims are premised on allegations of injury suffered directly by the Rye Funds – i.e., the loss of Fund assets – and only incidentally by plaintiffs and the Rye Funds' other limited partners and shareholders. (E.g., Compl. ¶¶ 34, 164, 185.) As demonstrated in Section IV(A) of the brief filed today in In re Tremont State Law Litigation, 08 Civ. 11183

(TPG) (the "State Law Brief"), which is incorporated herein by reference, all such claims are

derivative or reflective in nature and may be pursued, if at all, solely by or on behalf of the Rye

Funds – and not by plaintiffs directly, as they seek to do here.  Because plaintiffs have not even

attempted to satisfy the prerequisites for seeking derivative relief (including demand on the

general partner or board of directors of the Rye Funds), the state law claims should be dismissed.

See, e.g., Litman v. Prudential-Bache Props., Inc., No. 12137, 1993 WL 5922, at *3 (Del. Ch. Jan.

4, 1993);  Feiner Family Trust v. VBI Corp., No. 07 Civ. 1914, 2007 WL 2615448, at *5-6

(S.D.N.Y. Sept. 11, 2007) (dismissing derivative claims where plaintiffs failed to meet necessary

requirements for bringing a derivative action under Cayman and English law).

### III.    OFFSHORE PLAINTIFFS' CLAIMS MUST BE BROUGHT IN THE CAYMAN ISLANDS

Each of the Offshore Plaintiffs signed Subscription Agreements containing broad,

mandatory forum-selection clauses requiring any Fund-related litigation to be brought in the

Cayman Islands.  The clauses provide that the "Investor agrees that any suit, action or proceeding

('Proceeding') brought by Investor with respect to this Agreement and the Fund shall be brought in

the Cayman Islands."[13]  Consequently, all of the Offshore Plaintiffs' claims should be dismissed.

See Bison Pulp & Paper Ltd. v. M/V Pergamos, No. 89 Civ. 1392, 1995 WL 880775, at *9, 11, 17

(S.D.N.Y. Nov. 29, 1995) (finding that the language "shall be decided" in a forum selection clause

indicated that the clause was mandatory and requiring plaintiff to bring claims in Cyprus); see also

M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 2, 20 (1972) (holding that language of clause

---

[13]    (Meridian Diversified Fund Ltd. Subscription Agreement ("Diversified Subscription Agreement"), attached to the Trans. Decl. as Ex. G, at S-6; Meridian Diversified ERISA Fund Ltd. Subscription Agreement ("Diversified ERISA Subscription Agreement"), attached to the Trans. Decl. as Ex. H, at S-6; Meridian Absolute Return ERISA Fund Ltd. Subscription Agreement ("Absolute Return Subscription Agreement"), attached to the Trans. Decl. as Ex. I, at S-6; Meridian Diversified Compass Fund Ltd. Subscription Agreement ("Compass Subscription Agreement"), attached to the Trans. Decl. as Ex. J, at S-6.)

stating that "'[a]ny dispute arising must be treated before the London Court of Justice'" was "clearly mandatory and all-encompassing"); Mendes Junior Int'l Co. v. Banco do Brasil, 15 F. Supp. 2d 332, 335-41 (S.D.N.Y. 1998) (dismissing claims because forum selection clause required plaintiff to assert them in Brazilian courts).

## IV. THE MARTIN ACT PREEMPTS PLAINTIFFS' BREACH OF FIDUCIARY DUTY AND NEGLIGENCE CLAIMS

Plaintiffs' breach of fiduciary duty and negligence claims against TPI and TGH are preempted by the Martin Act, N.Y. Gen. Bus. Law §§ 352, et seq. (McKinney 2009). As demonstrated in Section II of the State Law Brief, the Martin Act precludes common law claims for acts other than fraud within or from New York that (a) "arise[] in the securities context," In re Bayou, 534 F. Supp. 2d at 422, and (b) may "deceive or mislead the purchasing public." People v. Federated Radio Corp., 244 N.Y. 33, 39, 154 N.E. 655, 657 (1926); see also Jana Master Fund, Ltd. v. JPMorgan Chase & Co., 19 Misc. 3d 1106, 859 N.Y.S.2d 903 (table), 2008 WL 746540, at *5 (Sup. Ct. N.Y. County Mar. 12, 2008).

Plaintiffs' allegations fall squarely within the Martin Act's preemptive scope. Specifically, plaintiffs assert (i) deceit (Compl. ¶¶ 6, 88); (ii) in connection with the purchase of securities, limited partnership interests (id. ¶¶ 27-33, 35) (iii) within and from the State of New York (id. ¶¶ 15, 21, 22, 37, 38). See N.Y. Gen. Bus. Law §§ 352, et seq. (McKinney 2009); see also Sedona Corp. v. Ladenburg Thalmann & Co., Inc., No. 03 Civ. 3120, 2005 WL 1902780, at *21-23 (S.D.N.Y. August 09, 2005) (identifying elements of Martin Act-preempted claims).

The Martin Act's preemption extends to plaintiffs' claims regarding investors in the Offshore Rye Fund. It is well-established that the Martin Act applies when a plaintiff alleges that venue is proper because the defendant is situated in New York or a substantial part of the events or omissions giving rise to the action occurred in New York. See In re Bayou, 534 F. Supp. at 422;

<u>Sedona Corp.</u>, 2005 WL 1902780, at *21-22 (finding complaint's statement regarding proper venue in New York sufficient to establish Martin Act's geographical prong). Here, the plaintiffs allege venue is appropriate in this District because "Plaintiffs were managed from and within the State of New York" (Compl. ¶ 15), "[e]ach of the defendants . . . [regularly transacts] business within the State of New York . . .[,] the Tremont Defendants . . . have their principal place of businesses in New York" (<u>id.</u> ¶ 37) and "a substantial part of the events and omissions giving rise to the claims occurred here" (<u>id.</u> ¶ 38). Since plaintiffs both allege that defendants reside and/or are headquartered in New York and allege Madoff's fraud occurred in New York, their claims as to both the Onshore Rye Fund and the Offshore Rye Fund fall prey to Martin Act preemption and should be dismissed. <u>See, e.g.</u>, <u>In re Bayou Hedge Fund Litig.</u>, 534 F. Supp. 2d at 422.

## V.     PLAINTIFFS' CLAIMS ARE OTHERWISE LEGALLY DEFECTIVE

### A.     Plaintiffs Cannot Establish That The Tremont Defendants Proximately Caused Their Losses

For each claim asserted against the Tremont Defendants, plaintiffs must adequately allege that defendants' purported misconduct was the direct and proximate cause of their alleged losses.[14] Proximate cause exists if "a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred." <u>Panama v. Am. Tobacco Co.</u>, C.A. No. 05C-07-181, 2006 WL 1933740, at *5 (Del. Super. Ct. July 13, 2006) (citation omitted), <u>aff'd sub nom.</u> <u>State of Sao Paulo, Brazil v. Am. Tobacco Co.</u>,

---

[14] <u>See, e.g.</u>, <u>Lentell v. Merrill Lynch & Co., Inc.</u>, 396 F.3d 161, 173 (2d Cir. 2005) (discussing loss causation requirement for securities fraud actions); <u>Thorpe by Castleman v. CERBCO, Inc.</u>, 676 A.2d 436, 444 (Del. 1996) (breach of fiduciary duty); <u>DDJ Mgmt., LLC v. Rhone Group L.L.C.</u>, 875 N.Y.S.2d 17, 19 (1st Dep't 2009) ("[A]lleged misrepresentations or misconduct must have done more than induce[] plaintiffs to enter into the transaction; they must have also been a proximate cause of plaintiffs' loss."); <u>Laub v. Faessel</u>, 297 A.D.2d 28, 30-31, 745 N.Y.S.2d 534, 536 (1st Dep't 2002) (proximate cause is "'[a]n essential element of the plaintiff's cause of action for negligence, or . . . for . . . any tort'") (citation omitted).

919 A.2d 1116 (Del. 2007). Stated alternatively, it is the "immediately effective cause of plaintiff's injuries," <u>Ventricelli v. Kinney Sys. Rent a Car, Inc.</u>, 45 N.Y.2d 950, 952 (1978), the cause that "directly produces the harm." <u>Panama</u>, 2006 WL 1933740, at *5.

Plaintiffs concede that the immediate cause of their loss was Madoff's theft of the assets entrusted to him. (Compl. ¶¶ 5, 83.) As demonstrated in Section V(A) of the State Law Brief, Madoff's intentional criminal act was a "superseding and intervening event[] breaking [any alleged] chain of causation" between the Tremont Defendants and plaintiffs' losses. <u>Port Auth. of N.Y. & N.J. v. Arcadian Corp.</u>, 189 F.3d 305, 319 (3d Cir. 1999) (applying New York law). Absent special circumstances not present here, "no duty is imposed on a party to anticipate and prevent the intentional or criminal acts of a third party." <u>Henry v. Merck & Co.</u>, 877 F.2d 1489, 1492 (10th Cir. 1989); <u>accord</u> <u>Ward v. State</u>, 81 Misc. 2d 583, 588, 366 N.Y.S.2d 800, 807 (Ct. Cl. 1975).

### B. <u>Plaintiffs Have Not Adequately Pled Common Law Fraud</u>

To state a claim for fraud under New York law,[15] plaintiffs must allege, with particularity, facts establishing: "'(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'" <u>Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.</u>, 98 F.3d 13, 19 (2d Cir. 1996) (citation omitted). Because the

---

[15] "A federal court sitting in diversity or adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state." <u>Rogers v. Grimaldi</u>, 875 F.2d 994, 1002 (2d Cir. 1989). Under New York law, the site of the torts alleged in the complaint governs plaintiffs' claims for fraud and negligence. <u>See</u> <u>GlobalNet Financial.com, Inc. v. Frank Crystal & Co.</u>, 449 F.3d 377, 385 (2d Cir. 2006). "Under New York choice-of-law principals, breach of fiduciary duty claims are governed by the place of incorporation." <u>Druck Corp. v. Macro Fund (U.S.) Ltd.</u>, No. 02 Civ. 6164, 2007 WL 258177, at *2 (S.D.N.Y. Jan. 29, 2007), <u>aff'd</u>, 290 F. App'x 441 (2d Cir. 2008). Onshore Plaintiffs' breach of fiduciary duty claims are governed by Delaware law, while Offshore Plaintiffs' breach of fiduciary duty claims are governed by Cayman law.

elements of common law fraud under New York law are substantially identical to the elements of a claim under Section 10(b) of the Exchange Act, the same defects warranting dismissal of plaintiffs' Section 10(b) claim also warrant dismissal of their claim of common law fraud. <u>See</u> <u>Gordon Partners v. Blumenthal</u>, 293 F. App'x 815, 818 (2d Cir. 2008) (dismissing common law fraud claim on same grounds as § 10(b) claim); <u>Morse v. Weingarten</u>, 777 F. Supp. 312, 319 (S.D.N.Y. 1991) ("Because these [New York common law fraud] elements are substantially identical to those governing § 10(b), the identical analysis applies[.]").

C. **Plaintiffs Fail To State A Breach Of Fiduciary Duty Claim**

1. **TGH Owed No Plenary Fiduciary Duties To Plaintiffs**

Plaintiffs fail to allege any relationship between TGH and themselves, much less a fiduciary relationship. As demonstrated in Section V(B) of the State Law Brief, Delaware and Cayman Islands law are clear that TGH, as the majority shareholder of the Rye Funds' general partner and investment adviser, owed at most the limited duty "'not to use [alleged] control over the partnership's property to [its] advantage . . . at the expense of the partnership.'" <u>Wallace ex rel.</u> <u>Cencom Cable Income Partners II, L.P. v. Wood</u>, 752 A.2d 1175, 1180 (Del. Ch. 1999) (citation omitted); (<u>See also</u> May 20, 2009 Decl. of William James Tyre Bagnall ("Bagnall Decl.") ¶ 12.4 ("TGH, if it is the controlling shareholder of Tremont Partners and Tremont Bermuda, would not owe fiduciary duties to those Funds or their shareholders by reason only of being such a controlling shareholder").) Because the Complaint nowhere alleges that TGH breached that limited fiduciary duty, the complaint fails to state a breach of fiduciary duty claim against TGH.

2. **Plaintiffs Fail To State A Breach Of Fiduciary Duty Claim Against TPI**

Under Cayman law, investment advisers, such as TPI, do not owe duties to shareholders of the hedge funds that are the actual clients of the investment adviser. (<u>See</u> Bagnall Decl. ¶¶ 11.4, 11.5.) ("[W]hatever might be the extent of any fiduciary duties of Tremont Partners . . . to the

15

[Offshore Rye Fund], those duties would be owed to the . . . Fund, as a corporate entity. Those duties would not, in the absence of separate fiduciary relationships (and, in my opinion, the facts pled in the Complaints are insufficient to establish the existence of such separate fiduciary relationships), be owed to the shareholders of [the] Fund[].").) Regardless, plaintiffs allege no specific facts sufficient to show that TPI failed to adequately oversee the Rye Funds' assets or otherwise breached any fiduciary duties to plaintiffs or the Rye Funds. Instead, they conclusorily assert that the fact Madoff turned out to be a fraud somehow proves that TPI acted recklessly or in bad faith.[16] (Compl. ¶¶ 6, 86, 88.) As demonstrated in Section V(B) of the State Law Brief, plaintiffs' allegations are insufficient to overcome the business judgment rule or to state a "failure to monitor" claim under Delaware law or any kind of breach of fiduciary duty claim under Cayman Islands law.[17]

### 3. Plaintiffs Fail To State A Breach of Fiduciary Duty Claim Against TBL

Plaintiffs fail to state a claim for breach of fiduciary duty against TBL for the fundamental reason that they have not identified any relationship – much less a fiduciary one – between themselves and TBL. TBL is alleged to have been an investment manager for the Offshore Reference Entity. However, as noted, under applicable Cayman law, investment advisers do not owe duties to shareholders of the hedge funds that are the actual clients of the investment adviser.

---

[16] As noted above, this allegation is undermined by the undisputed facts that the Rye Funds' auditors, the SEC and *plaintiffs themselves* were unable to uncover Madoff's fraud despite conducting their own investigations. (Compl. ¶¶ 8, 41, 43, 89; SEC Case Closing (Trans. Decl. Ex. F).) What these facts show, if anything, is that there were no clear indications that would have led the aforementioned parties to conclude Madoff was a fraud. The allegation that Tremont "would necessarily have uncovered [Madoff's] fraud had it conducted [adequate] due diligence . . . is far from compelling." In re Bayou Hedge Fund Litig., 534 F. Supp. 2d at 418.

[17] In addition, the Offshore Plaintiffs allege that TPI failed to use "reasonable care, or the competence or skill of a professional investment advisor, in performing due diligence[.]" (Compl. ¶ 182.) Such allegations are "expressed in terms of competence and prudence[,]" which are not fiduciary duties owed under Cayman law. (Bagnall Decl. ¶¶ 13.2, 13.3) Cayman law only recognizes the fiduciary duty of loyalty (Bagnall Decl. ¶¶ 10.1 – 10.6), which is not mentioned, much less challenged, in the Complaint.

(See Bagnall Decl. ¶¶ 11.4, 11.5.) Here, the relationship between TBL and plaintiffs is even more attenuated. Plaintiffs are not shareholders of the Offshore Reference Entity. Rather, they are shareholders of the Offshore Rye Fund, which invested in leveraged derivative instruments tied to the returns of the Offshore Reference Entity. Plaintiffs simply have not identified any relationship – much less a fiduciary one – between themselves and TBL. Accordingly, as a matter of law, TBL owed no duty to plaintiffs. See, e.g., Jordan (Berm.) Inv. Co. v. Hunter Green Invs. LLC, No. 00 Civ. 9214,2007 WL 2948115, at *23-24 (S.D.N.Y. Oct. 3, 2007) (plaintiff that was "at most, a client of a client [and] engaged in no direct transaction" with defendant was owed no fiduciary duties).

### D. Plaintiffs Fail To State A Claim For Negligence

### 1. The Onshore Rye Fund's LPA Exculpates Negligence

Plaintiffs' negligence claim is barred by the exculpation provision of the Onshore LPA. In accordance with applicable Delaware law,[18] the Onshore Fund LPA contains an exculpation provision providing that:

> Neither the General Partner nor any Affiliate shall be liable to any Limited Partner or the Partnership for errors of judgment or for action or inaction, whether or not disclosed, which said party reasonably believed to be in the best interests of the Partnership[.]

(Onshore Fund LPA (Trans. Decl. Ex. A) § 2.6.)

As demonstrated in Section I of the State Law Brief, this exculpation provision warrants dismissal of the Onshore Plaintiffs' claims of negligence.

---

[18] The New York legislature has declared that "the laws of the jurisdiction under which a foreign limited partnership is organized govern its organization and internal affairs;" here, Delaware. N.Y. Partnership Law § 121-901 (McKinney 2006). Under Delaware law, "[a] partnership agreement may provide for the limitation or elimination of any and all liabilities for breach of contract and breach of duties (including fiduciary duties) of a partner or other person[.]" Del. Code Ann. Tit. 6, § 17-1101(f) (2006).

## 2. The Offshore Rye Fund's Investment Management Agreement Exculpates Negligence

Plaintiffs' negligence claims involving the Offshore Rye Fund are also exculpated. The Offshore Rye Fund's Investment Management Agreement specifically exculpates negligent acts short of gross negligence:

> The Investment Manager shall not be liable to the Fund or any of the Shareholders for any error of judgment or for any loss suffered by the Fund or Shareholders in connection with the subject matter of this Agreement howsoever any such loss may have occurred unless such loss arises from gross negligence, willful default or fraud in the performance or non-performance by the Investment Manager, or persons designated by it, of its obligations or duties or due to a breach of its fiduciary duties.

(Management Agreement (Trans. Decl. Ex. C) at § 7(a).) This clause is enforceable under Cayman law (See Bagnall Decl. ¶ 14.2), warranting dismissal of the Offshore Plaintiffs' negligence claims.

## CONCLUSION

For all of the foregoing reasons, the Tremont Defendants' motion to dismiss should be granted in its entirety.

Dated: New York, New York
      May 20, 2009

Respectfully submitted,

 /s/ Seth M. Schwartz
Seth M. Schwartz (Seth.Schwartz@Skadden.com)
Susan L. Saltzstein    (Susan.Saltzstein@Skadden.com)
Michael H. Gruenglas (Michael.Gruenglas@Skadden.com)
Jason C. Vigna (Jason.Vigna@Skadden.com)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Tremont Partners, Inc., Tremont Group Holdings, Inc., and Tremont (Bermuda) Limited