## MANAGEMENT AGREEMENT

## RYE SELECT BROAD MARKET XL PORTFOLIO LIMITED

MANAGEMENT AGREEMENT (the "Agreement") dated as of September 1, 2006, by and between Rye Select Broad Market XL Portfolio Limited, an exempted company incorporated under the laws of the Cayman Islands (the "Fund"), and Tremont Partners, Inc., a Connecticut corporation (the "Investment Manager").

W I T N E S S E T H:

WHEREAS, the Fund wishes to retain the Investment Manager to provide investment advice with respect to investing the Fund's assets and otherwise assisting in the implementation of the Fund's investment objectives as described in the Fund's Information Memorandum dated as of September 1, 2006, as the same may from time to time be supplemented, restated or amended (the "Memorandum"); and

WHEREAS, the Investment Manager wishes to accept such retainer upon the terms and conditions herein set forth;

NOW, THEREFORE, in consideration of the mutual premises and covenants herein contained, the parties agree as follows:

1.  Definitions. All capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed to them in the Memorandum.

2.  Investment Management and Administrative Services. Subject to the ultimate supervision of the Board, the Investment Manager shall be responsible for making investment decisions on behalf of the Fund and, at all times in accordance with the investment objectives set forth in the Memorandum, is authorized to:

(a) manage all aspects of the investment of the Fund's assets and make all investment decisions, including, without limitation, entering into one or more options, swaps or other derivative contracts whose value will be derived by one or more hedge funds, investment vehicles, managed accounts or otherwise (including investment vehicles of which the Investment Manager serves as investment manager), and/or selecting and evaluating its direct investments (if any) in various hedge funds, investment vehicles, managed accounts or otherwise (including investment vehicles of which the Investment Manager serves as investment manager);

(b) direct custodians to deliver funds or securities for the purpose of effecting transactions, and instruct custodians to exercise or abstain from exercising any privilege or right attaching to such assets with respect to the Fund's trading activities;

(c) make all decisions relating to the manner, method and timing of investment transactions, and, to the extent necessary, select brokers and dealers for the execution, clearance and settlement of any transactions subject to the provisions of the Memorandum;

(d) enter into, make and perform all contracts, agreements and other undertakings (including, without limitation, subscription agreements, swaps, options and other derivative investments) that, in the opinion of the Investment Manager, may be necessary, advisable or incidental to the carrying out of the

CONFIDENTIAL                                                                                                         TRE-SIPC-0063727

objectives of this Agreement. With regard to any documents or agreements executed in the Fund's name, copies will be promptly provided to the Fund so as to advise the Fund of the existence of such documents and agreements and apprise it of any obligations thereunder; and

    (e)    to the extent necessary, trade on margin, borrow from banks, brokers, and other financial institutions and pledge assets of the Fund in connection therewith.

    3.    <u>Compensation and Expenses</u>.

    (a)    The Investment Manager will not receive compensation directly at the Fund level. Rather, the Investment Manager will receive fees indirectly (i.e. management fees and performance fees) at the Reference Entity level (as the Investment Manager serves as investment manager to the Reference Entity) through the Swap.

    (b)    The Investment Manager and any affiliates retained by it will be reimbursed for certain out-of-pocket expenses incurred on behalf of the Fund. Such reimbursable expenses shall not include any expense attributable to their provision of office personnel and space required for the performance of its services.

    4.    <u>Activities Of The Investment Manager And Allocation Of Investment Opportunities: Certain Conflicts Of Interest</u>.

    (a)    The Fund acknowledges that the services that the Investment Manager renders to the Fund hereunder are not exclusive. The Investment Manager and its affiliates will advise other clients and serve as investment manager or co-investment manager of other investment vehicles engaged in investment activities. In addition, the Investment Manager and/or its affiliates, their principals and employees may invest their own funds in one or more such partnerships or investment vehicles. The Fund acknowledges that all benefits received by the Investment Manager, its affiliates, their principals and employees from such vehicles and activities shall belong to such parties and not the Fund and shall not constitute an adjustment with regard to any amounts due the Investment Manager hereunder. The Fund acknowledges that the Investment Manager may give advice and take action in the performance of their duties with respect to any of their other clients, which advice or action may differ from the advice given to, or the timing or nature of any action taken on behalf of, the Fund. The Investment Manager advises and will continue to advise other clients and will devote such time as may be reasonably required to perform its duties hereunder.

    (b)    The Fund acknowledges that the Investment Manager may invest the Fund's assets in securities or funds that are also purchased by other clients of the Investment Manager or accounts managed by the Investment Manager ("Other Accounts"). The Investment Manager shall, under normal conditions, allocate investment opportunities among the Fund and Other Accounts on a fair and equitable basis, subject to applicable law and client guidelines. The Fund acknowledges that the Investment Manager need not effect all transactions in a specific security for all of its client accounts at the same time or at the same price.

    (c)    The Fund acknowledges that the Investment Manager's principals, members, officers, directors, or employees may serve as directors of companies, including companies in which the Fund or Other Accounts may invest. In so serving, such persons are not acting as nominees or deputies, or otherwise at the request of, the Fund or any Other Account. The Fund further acknowledges and agrees that such members, officers, directors or employees, when serving in such capacity, will have fiduciary duties to such companies that may require the Investment Manager to refer business and investment opportunities to such companies in preference to the Fund or Other Accounts.

    (d)    The Investment Manager from time to time may have contractual, investment management, advisory, or consulting relationships with companies, the securities of which are assets of the Fund. The

CONFIDENTIAL    TRE-SIPC-0063728

Investment Manager may be compensated for such services in any manner. The Fund acknowledges that it will have no interest in, or rights with respect to, such compensation.

(e) The Fund acknowledges that the Investment Manager and its members, officers, directors, or employees from time to time may have positions in, or effect transactions in securities and other investments that it recommends to clients, including the Fund. Such positions or transactions may be inconsistent with the advice given to, or the timing or nature of the Investment Manager's action or actions taken with respect to, the Fund.

(f) Except as otherwise provided herein, the Investment Manager shall bear all of its own costs and expenses incurred in the performance of its services provided pursuant to this Agreement, including those attributable to such office personnel and office space as may be required for the performance of its duties hereunder. Notwithstanding the foregoing, the Fund will pay the out-of-pocket expenses of the Investment Manager, incurred in connection with the performance of its duties for the Fund. Additionally, the Investment Manager will pay the organizational expenses of the Fund.

(g) The Fund shall be responsible for all ongoing costs and expenses associated with its administration and operation. Such costs may included but will not be limited to the cost of maintaining the Fund's registered office, the Fund's annual government registration fee, brokerage commissions, communications, directors' fees and expenses, Fund administration, other service providers, insurance premiums, printing costs, and all tax, accounting (and audit) and legal fees and similar fees in relation to the affairs of the Fund. Fees and expenses that are identifiable with a particular Class will be charged against that Class in computing their Net Asset Value. Other fees and expenses will be allocated pro rata between all Classes based on their respective Net Asset Values, or otherwise in the discretion of the Board.

(h) For the avoidance of doubt, it is hereby agreed and declared that references to the Investment Manager in this Section shall be deemed to include references to the members, officers, servants, employees, agents and delegates of the Investment Manager.

5. <u>Delegation</u>.

(a) Subject to subsection (b), and to any applicable provisions of the Investment Advisers Act of 1940, as amended (the "Advisers Act"), the Investment Manager may, to the extent permissible, delegate the whole or any part of its functions hereunder with respect to the Fund to any person, firm or company. Unless the Fund shall disagree in any particular case, the Investment Manager shall exercise its power of delegation only in a manner that binds the appointee to terms and conditions similar in all respects to those set forth under this Agreement as well as the Memorandum.

(b) Neither the responsibilities nor the liabilities under this Agreement can be assigned by the Investment Manager without the prior written approval of the Fund and any assignment without such approval shall be ineffective.

6. <u>Access to Information</u>. The Investment Manager shall retain for a period of at least five (5) years copies of any documents generated or received by the Investment Manager in the ordinary course of business pertaining to the financial condition of the Fund's assets or to the compensation payable to the Investment Manager. At the request of the Fund, the Investment Manager shall afford the Fund's auditors reasonable access to such documents during customary business hours and shall permit such auditors to make copies thereof or extracts therefrom at the expense of the Fund.

CONFIDENTIAL                                                                                          TRE-SIPC-0063729

7. <u>Scope of Liabilities and Indemnification</u>.

(a) The Investment Manager shall not be liable to the Fund or any of the Shareholders for any error of judgment or for any loss suffered by the Fund or Shareholders in connection with the subject matter of this Agreement howsoever any such loss may have occurred unless such loss arises from gross negligence, willful default or fraud in the performance or non-performance by the Investment Manager, or persons designated by it, of its obligations or duties or due to a breach of its fiduciary duties. The Fund will indemnify the Investment Manager against liabilities to third parties arising in connection with the performance of its services as set forth below.

(b) The Fund, hereby undertakes to hold harmless and indemnify the Investment Manager against all actions, proceedings and claims that may be brought against, and all costs, demands, and expenses that may be suffered or incurred by the Investment Manager by reason of its performance or non-performance of its duties under the terms of this Agreement (other than those due to gross negligence, reckless misfeasance, fraud or any violation of law on the part of the Investment Manager or persons designated by it or due to a breach of its fiduciary duties), including all legal, professional and other expenses incurred by the Investment Manager or persons designated by it in the performance or non-performance of its obligations or duties and all indemnity obligations owed by the Investment Manager to persons designated by it (except such as shall arise from gross negligence, reckless misfeasance, fraud or any violation of law in the performance of such obligations or duties or due to a breach of its fiduciary duties) and, in particular (but without limitation), this protection and indemnity shall extend to any loss occurring as a result of (i) delay, misdelivery or error in the transmission of any telexed or telefaxed communication or (ii) acting upon any forged document or signature.

(c) In the event either party hereto (the "Indemnitee") is or becomes a party to any action or proceeding in respect of which it may be entitled to seek indemnification from the other party hereunder (the "Indemnitor"), the Indemnitee shall promptly notify the Indemnitor thereof. The Indemnitor shall be entitled to participate in any such suit or proceeding and, to the extent that it may wish, assume the defense thereof with counsel reasonably satisfactory to the Indemnitee. After notice of an election by the Indemnitor so to assume the defense thereof, the Indemnitor will not be liable to the Indemnitee hereunder for any legal or other expenses subsequently incurred by the Indemnitee in connection with the defense thereof other than reasonable costs of investigation or reasonable legal expenses incurred as a result of (i) potential conflicts of interest between the Indemnitee and Indemnitor or (ii) the protection of proprietary or privacy interests of other clients of the Indemnitee. The Indemnitor shall advance to the Indemnitee the reasonable costs and expenses of investigating and/or defending such claim, subject to receiving a written undertaking from the Indemnitee to repay such amounts if and to the extent that a court or other tribunal of competent jurisdiction subsequently determines that the Indemnitee was not entitled to indemnification hereunder.

(d) The Indemnitor shall not be liable hereunder for any settlement of any action or claim effected without its written consent thereto.

(e) Notwithstanding any other provision of this Agreement, the Investment Manager shall not be liable to the Fund or Shareholders for any taxation assessed upon or payable by the Fund wheresoever the same may be assessed or imposed and whether imposed directly or indirectly, except for such taxation as shall be attributable to the Investment Manager's, or the Investment Manager's appointees' gross negligence, reckless misfeasance, fraud or any violation of law in the performance or non-performance of its obligations or duties or due to a breach of its fiduciary duties. The Fund shall indemnify the Investment Manager from and against (i) all taxes not attributable to gross negligence, reckless misfeasance, fraud, breach of its fiduciary duties or any violation of law as aforesaid (wheresoever and by whomsoever imposed) on profits or gains of the Fund that may be assessed upon or become payable by the Investment Manager and (ii) all costs, claims, demands, actions, and proceedings in connection therewith.

CONFIDENTIAL                                                                                           TRE-SIPC-0063730

(f) For the avoidance of doubt, it is hereby agreed and declared that references to the Investment Manager in this Section shall be deemed to include references to the members, officers, servants, employees, agents and delegates of the Investment Manager.

(g) Any indemnity expressly given to the Investment Manager in this Agreement is in addition to and without prejudice to any indemnity provided by law.

8. <u>Legal Action by the Investment Manager</u>. Except as otherwise provided by applicable law, the Investment Manager shall not be required to take any legal action on behalf of the Fund unless fully indemnified to its reasonable satisfaction for all costs and liabilities that may be incurred or suffered by the Investment Manager in connection therewith. Moreover, if the Fund requires the Investment Manager to take any action that in the reasonable opinion of the Investment Manager might make the Investment Manager liable for the payment of money, or liable in any other way, the Investment Manager, as a prerequisite to taking such action, shall be indemnified in an amount and form that is reasonable and satisfactory to the Investment Manager as a prerequisite to taking such action.

9. <u>Independent Contractor</u>. For all purposes of this Agreement, the Investment Manager shall be an independent contractor and not an employee, agent, partner or joint venturer of the Fund; nor shall anything herein be construed to make the Fund a partner or co-venturer with the Investment Manager or any of its affiliates.

10. <u>Information Concerning Activities</u>. The Investment Manager shall provide to the Fund, from time to time and on request, information relevant to the Fund regarding activities that (i) have been conducted by the Investment Manager since the inception of this Agreement or since the most recent date on which the Investment Manager provided information to the Fund regarding the activities of the Investment Manager and (ii) have been proposed to be conducted by the Investment Manager.

11. <u>Authority</u>. Each of the parties to this Agreement hereby represents that (i) it is duly authorized and empowered to execute, deliver and perform this Agreement and that such action does not conflict with or violate any provision of law, rule or regulation, contract, deed of trust, or other instrument to which it is a party or to which any of its property is subject, and (ii) this Agreement is a valid and binding obligation enforceable in accordance with its terms.

12. <u>Validity and Accuracy of Representations and Warranties</u>. All representations and warranties of the parties in this Agreement shall be valid and accurate at the time this Agreement is executed and shall continue to be valid and accurate for the entire term of this Agreement unless notice is given to any other party hereto pursuant to Section 14 below.

13. <u>Termination, Renewal, and Notice</u>.

(a) This Agreement has an initial term expiring on December 31, 2007 and is automatically renewed thereafter for successive one-year periods, subject to termination (i) by either party in the event of the other party's willful default or fraudulent conduct in connection with the performance of this Agreement or (ii) by any party at anytime upon not less than thirty (30) days' prior written notice to the other party. In the event of termination, the provisions of this Section, as well as Sections 4 (to the extent compensation earned up to the effective termination date remains unpaid), 6, 7 and 8 shall survive.

(b) Notices by one party to this Agreement to any other party to this Agreement shall be made by facsimile, certified mail return receipt requested, or by nationally recognized private courier (*e.g.*, Federal Express, Airborne Express, etc.) at the usual business location of such other party or parties unless otherwise notified in writing.

CONFIDENTIAL                                                                                    TRE-SIPC-0063731

   (c) In the event a notice of termination is given hereunder to the Investment Manager, any action by the Investment Manager with regard to the Fund after the date of such notice shall require the Board's prior written consent.

   (d) The parties understand and agree that the Fund has no ownership in the name "Rye." Upon the termination of this Agreement, the Fund shall immediately cause its name to be changed such that it no longer contains the word "Rye" or any variation thereof unless the Fund receives the Investment Manager's prior written consent to the use of such word.

   14. <u>Modification; Waiver</u>.  Except as otherwise expressly provided herein, this Agreement shall not be amended, nor shall any provision of this Agreement be considered modified or waived, unless such amendment, modification or waiver is evidenced in writing and signed by the parties hereto. Notwithstanding the foregoing, the Investment Manager may amend the provisions of this Agreement with respect to any issue, without the consent of the Fund or the Shareholders, to the extent necessary to comply with any applicable regulatory requirements provided that notice is given to the Fund.

   15. <u>Binding Effect; Assignment</u>.  This Agreement shall be binding upon the parties to this Agreement and their respective successors.  The rights and obligations created hereunder shall not be assignable, transferable or delegable without the written consent of the other parties hereto.  Any attempt of assignment, transfer or delegation hereof without such consent or notice, as the case may be, shall be void.

   16. <u>Governing Law</u>.  This Agreement shall be governed by, and construed in accordance with, the substantive laws of the Cayman Islands applicable to contracts made and to be performed entirely therein, and the parties hereto hereby consent to the non-exclusive jurisdiction of the Cayman Island courts.

   17. <u>Headings</u>.  Headings and captions in this Agreement are for convenience of reference only and shall not be given any effect in the interpretation of this Agreement.

   18. <u>Counterparts</u>.  This Agreement may be signed in any number of counterparts.  Any single counterpart or a set of counterparts signed in either case by the parties hereto shall constitute a full and original Agreement for all purposes.

   19. <u>Form ADV</u>.  The Fund acknowledges that it has received the Investment Manager's Form ADV Part II a minimum of forty-eight hours prior to entering into this Agreement.

CONFIDENTIAL TRE-SIPC-0063732

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

Tremont Partners, Inc.
(the "Investment Manager")

By: _____
Name: Stuart Polon
Title: SVP

Rye Select Broad Market XL Portfolio Limited

By: _____
Name: Darren Johnston
Title: Director

CONFIDENTIAL                                                    TRE-SIPC-0063733