UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                  :

MERIDIAN HORIZON FUND, LP, MERIDIAN :
HORIZON FUND II, LP, MERIDIAN DIVERSIFIED :
FUND, LP, MERIDIAN DIVERSIFIED FUND, LTD., :   No. 09 Civ. 3708 (TPG)
MERIDIAN DIVERSIFIED ERISA FUND, LTD., :
MERIDIAN DIVERSIFIED COMPASS FUND, LTD., :
and MERIDIAN ABSOLUTE RETURN ERISA FUND, :   ECF CASE
LTD., :   Electronically Filed
                  :

             Plaintiffs,   :

         - against -   :

TREMONT GROUP HOLDINGS, INC., TREMONT :
PARTNERS, INC., TREMONT (BERMUDA) :
LIMITED, OPPENHEIMER ACQUISITION :
CORPORATION, KPMG LLP, and KPMG :
(CAYMAN), :

           Defendants.   :

-------------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE TREMONT DEFENDANTS' MOTION TO DISMISS

FRIEDMAN KAPLAN SEILER &
  ADELMAN LLP
1633 Broadway
New York, NY 10019-6708
(212) 833-1100

July 14, 2009         *Attorneys for Plaintiffs*

756084.2

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

GLOSSARY OF TERMS .................................................................................... ix

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS .................................................................................... 3

ARGUMENT ........................................................................................................ 4

I.  THE COMPLAINT PROPERLY PLEADS CLAIMS UNDER
    SECTION 10(B) ........................................................................................... 4

    A.  The Complaint Pleads a Material Misrepresentation .................................. 4

        1.  The Complaint Sufficiently Pleads That Tremont
            Misrepresented the Existence and Appreciation of Assets .............. 4

        2.  The Complaint Sufficiently Pleads That Tremont
            Misrepresented the Due Diligence and Monitoring It
            Claimed to Have Done and Would Continue to Do ........................ 5

            a.  Tremont's Misstatements About Past Due Diligence .......... 6

            b.  Tremont's Misstatements About Future Monitoring .......... 6

    B.  The Complaint Sufficiently Alleges That Tremont's
        Misrepresentations Were Made Recklessly ................................................. 8

    C.  The "*Santa Fe*" Doctrine Is Inapplicable Here ......................................... 11

II.  PLAINTIFFS' STATE LAW CLAIMS ARE DIRECT CLAIMS ....................... 12

III.  PLAINTIFFS' CLAIMS ARE PROPERLY BROUGHT IN THIS FORUM ....... 14

IV.  THE MARTIN ACT DOES NOT PREEMPT PLAINTIFFS' BREACH
     OF FIDUCIARY DUTY AND NEGLIGENCE CLAIMS ................................. 15

V.  PLAINTIFFS' CLAIMS ARE OTHERWISE PROPERLY PLED ...................... 17

    A.  The Complaint Properly Pleads Proximate Cause ..................................... 17

    B.  The Complaint Properly Pleads Common Law Fraud ................................ 20

    C.  The Complaint Properly Pleads Breach of Fiduciary Duty ........................ 20

1. New York Has the Most Significant Relationship with Plaintiffs' Breach of Fiduciary Duty Claims ........................ 20

2. Plaintiffs Have Properly Pleaded Breach of Fiduciary Duty Claims ................................................................. 22

D. The Complaint Properly Pleads Negligence. ............................................. 23

CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abrams v. Donati,*
    66 N.Y.2d 951 (1985) ...................................................................................13

*In re Accredo Health Inc., Sec. Litig.,*
    2005 U.S. Dist. LEXIS 46923 (W.D. Tenn. Apr. 11, 2005).......................11

*Ace Novelty Co. Inc. v. Vijuk Equip., Inc.,*
    1991 U.S. Dist. LEXIS 10713 (N.D. Ill. July 31, 1991)............................14

*Appleton Acquisition, LLC v. Nat'l Hous. P'ship,*
    10 N.Y.3d 250 (2008) ..................................................................................22

*In re Atlas Air Worldwide Holdings Inc., Sec. Litig.,*
    324 F. Supp. 2d 474 (S.D.N.Y. 2004)........................................................12

*In re Bayou Hedge Fund Litig.,*
    534 F. Supp. 2d 405 (S.D.N.Y. 2007)...................................................10, 16

*Biesenbach v. Guenther,*
    588 F.2d 400 (3d Cir. 1978).........................................................................12

*Bullmore v. Banc of Am. Sec. LLC,*
    485 F. Supp. 2d 464 (S.D.N.Y. 2007)........................................................19

*Carruthers v. Flaum,*
    388 F. Supp. 2d 360 (S.D.N.Y. 2005)........................................................22

*Caspian Invs., Ltd. v. Vicom Holdings, Ltd.,*
    770 F. Supp. 880 (S.D.N.Y. 1991) .......................................................14, 15

*Ceribelli v. Elghanayan,*
    990 F.2d 62 (2d Cir. 1993)...........................................................................13

*In re Citigroup, Inc. Sec. Litig.,*
    330 F. Supp. 2d 367 (S.D.N.Y. 2004)........................................................12

*Collins v. Esserman & Pelter,*
    681 N.Y.S.2d 399 (3d Dep't 1998).............................................................19

*CPC Int'l Inc. v. McKesson Corp.,*
    70 N.Y.2d 268 (1987) ..................................................................................16

*Derdiarian v. Felix Contractor Corp.,*
  51 N.Y.2d 308 (1980) ..................................................................17, 18, 20

*Dillon v. Motorcycle Safety School, Inc.,*
  872 N.Y.S.2d 669 (1st Dep't 2009) ...........................................................23

*Drenis v. Haligiannis,*
  452 F. Supp. 2d 418 (S.D.N.Y. 2006).........................................................21

*ECA & Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.,*
  553 F.3d 187 (2d Cir. 2009).................................................................7, 8

*Eos Partners SBIC, L.P. v. Levine,*
  839 N.Y.S.2d 729 (1st Dep't 2007) ...........................................................13

*Fed. Ins. Co. v. Honeywell, Inc.,*
  641 F. Supp. 1560 (S.D.N.Y. 1986)........................................................23, 24

*First Interstate Credit Alliance, Inc. v. Arthur Andersen & Co.,*
  541 N.Y.S.2d 433 (1st Dep't 1989) ...........................................................24

*Fogarazzo v. Lehman Bros., Inc.,*
  341 F. Supp. 2d 274 (S.D.N.Y. 2004).......................................................5, 6

*Food Pageant, Inc. v. Consol. Edison Co.,*
  54 N.Y.2d 167 (1981) .......................................................................24

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC,*
  376 F. Supp. 2d 385 (S.D.N.Y. 2005)..............................................12, 13, 22, 23

*GlobalNet Financial.com, Inc. v. Frank Crystal & Co.,*
  449 F.3d 377 (2d Cir. 2006)..................................................................24

*Greenspun v. Lindley,*
  36 N.Y.2d 473 (1975).........................................................................21

*Halperin v. eBankerUSA.com, Inc.,*
  295 F.3d 352 (2d Cir. 2002)...................................................................8

*Henry v. Merck & Co.,*
  877 F.2d 1489 (10th Cir. 1989) ...............................................................18

*James v. Getty Oil Co. (Eastern Operations), Inc.,*
  472 A.2d 33 (Del. Super. Ct. 1983), *reaffirmed and clarified,* 472 A.2d 33
  (Del. Super. Ct. 1984) .......................................................................23

*Jana Master Fund, Ltd. v. JPMorgan Chase & Co.,*
  2008 N.Y. Misc. LEXIS 1435 ................................................................16

iv

*JP Morgan Chase Bank v. Winnick,*
  406 F. Supp. 2d 247 (S.D.N.Y. 2005)..................................................20

*Kamen v. Kemper Fin. Servs.,*
  500 U.S. 90 (1991)........................................................................13

*Kruse v. Wells Fargo Home Mortgage, Inc.,*
  383 F.3d 49 (2d Cir. 2004).............................................................15

*LaSala v. E*TRADE Sec. LLC,*
  2005 U.S. Dist. LEXIS 25880 (S.D.N.Y. Oct. 31, 2008) ......................14, 15

*Lentell v. Merrill Lynch & Co.,*
  396 F.3d 161 (2d Cir. 2005)...........................................................19

*Louros v. Kreicas,*
  367 F. Supp. 2d 572 (S.D.N.Y. 2005)...........................................16, 17

*Luce v. Edelstein,*
  802 F.2d 49 (2d Cir. 1986)..............................................................7

*M/S Bremen v. Zapata Off-Shore Co.,*
  407 U.S. 1 (1972)........................................................................14

*Mylan Pharms., Inc. v. Am. Safety Razor Co.,*
  265 F. Supp. 2d 635 (N.D. W. Va. 2002) ........................................14, 15

*In re Nat'l Century Fin. Enters., Inc. Inv. Litig.,*
  604 F. Supp. 2d 1128 (S.D. Oh. 2009) .............................................19

*Nathel v. Siegal,*
  592 F. Supp. 2d 452 (S.D.N.Y. 2008)................................................9

*New York Islanders Hockey Club v. Comerica Bank-Texas,*
  71 F. Supp. 2d 108 (E.D.N.Y. 1999) .............................................18, 19

*Nippon Fire & Marine Ins. Co. v. M/V Spring Wave,*
  92 F. Supp. 2d 574 (E.D. La. 2000) ................................................15

*Novak v. Kasaks,*
  216 F.3d 300 (2d Cir. 2000)........................................................8, 9, 10

*In re Openwave Sys. Sec. Litig.,*
  528 F. Supp. 2d 236 (S.D.N.Y. 2007)...........................................9, 10

*In re Optionable Sec. Litig.,*
  577 F. Supp. 2d 681 (S.D.N.Y. 2008)...............................................6

756084.2

v

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of*
  *Am. Sec., LLC*, 446 F. Supp. 2d 163 (S.D.N.Y. 2006)............................20, 21

*People v. Federated Radio Corp.*,
  244 N.Y. 33 (1926) .....................................................................................16

*People v. Grasso*,
  858 N.Y.S.2d 23 (1st Dep't 2008) ............................................................22

*Podany v. Robertson Stephens, Inc.*,
  318 F. Supp. 2d 146 (S.D.N.Y. 2004)..........................................................5

*Port Auth. v. Arcadian Corp.*,
  189 F.3d 305 (3d Cir. 1999) .......................................................................18

*Primavera Familienstiftung v. Askin*,
  130 F. Supp. 2d 450 (S.D.N.Y. 2001)........................................................12

*In re PXRE Group, Ltd. Sec. Litig.*,
  600 F. Supp. 2d 510 (S.D.N.Y. 2009).........................................................10

*Raider v. Friedman*,
  556 N.Y.S.2d 66 (1st Dep't 1990) .............................................................20

*Rand & Paseka Mfg. Co., Inc. v. Holmes Prot., Inc.*,
  515 N.Y.S.2d 468 (1st Dep't 1987) ...........................................................24

*Republic of Panama v. Am. Tobacco Co.*,
  2006 WL 1933740 (Del. Super. July 13, 2006) ..........................................18

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989).......................................................................20

*Rolf v. Blyth*,
  570 F.2d 38 (2d Cir. 1978)............................................................................9

*Santa Fe Indus., Inc. v. Green*,
  430 U.S. 462 (1977).....................................................................................11

*Sedona Corp. v. Ladenburg Thalmann & Co.*,
  2005 U.S. Dist. LEXIS 16382 (S.D.N.Y. Aug. 9, 2005) ......................16, 17

*In re Sept. 11 Prop. Damage & Bus. Loss Litig.*,
  468 F. Supp 2d 508 (S.D.N.Y. 2006).........................................................20

*Seybold v. Groenink*,
  2007 U.S. Dist. LEXIS 16994 (S.D.N.Y. Mar. 12, 2007) ..........................13

*Shields v. Citytrust Bancorp.,*
    25 F.3d 1124 (2d Cir. 1994)..................................................................7

*In re Sirrom Capital Corp. Sec. Litig.,*
    84 F. Supp. 2d 933 (M.D. Tenn. 1999).................................................12

*Solutia Inc. v. FMC Corp.,*
    385 F. Supp. 2d 324 (S.D.N.Y. 2005)...................................................13

*Sommer v. Fed. Signal Corp.,*
    79 N.Y.2d 540 (1992) ..........................................................................23

*South Cherry Street, LLC v. Hennessee Group LLC,*
    No. 07-3658-cv, slip op. (2d Cir. July 14, 2009)...........................10, 11, 16

*Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC,*
    423 F. Supp. 2d 348 (S.D.N.Y. 2006)...................................................11

*Sterling Nat'l Bank v. Ernst & Young, LLP,*
    2005 N.Y. Misc. LEXIS 2546, 2005 NY Slip Op. 51850U (Sup. Ct. N.Y.
    County Jan. 7, 2005) ............................................................................18

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank,*
    250 F.3d 87 (2d Cir. 2001)...................................................................11

*Taylor Inv. Corp. v. Weil,*
    169 F. Supp. 2d 1046 (D. Minn. 2001).................................................15

*Terry v. Danisi Fuel Oil Co.,*
    837 N.Y.S.2d 256 (2d Dep't 2007)......................................................20

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,*
    676 F. Supp. 458 (S.D.N.Y. 1987) .......................................................7

*Ventricelli v. Kinney Sys. Rent a Car, Inc.,*
    45 N.Y.2d 950 (1978) ..........................................................................18

*Ward v. State,*
    366 N.Y.S.2d 800 (Ct. Cl. 1975) .........................................................18

*Wallace ex rel. Cencom Cable Income Partners II, L.P. v. Wood,*
    752 A.2d 1175 (Del. Ch. 1999).............................................................23

*Waxman v. Evipco Pick Up & Processing Servs., Inc.,*
    2003 U.S. Dist. LEXIS 19295 (S.D.N.Y. Oct. 28, 2003) ...................12

*Weiss v. Wittcoff,*
    966 F.2d 109 (2d Cir. 1992)...................................................................7

**STATUTES AND RULES**

15 U.S.C. § 78u-4 ...................................................................................................5

Fed. R. Civ. P. 8 ...................................................................................................15

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 448..................................................................18

Kara Scannell, "Crisis on Wall Street: SEC Chief Pledges Effort to Bolster
    Enforcement," Wall St. J. (Feb. 7, 2009)......................................................6

15 Williston Contracts, 3rd ed. § 1750A ...........................................................23

<u>Glossary of Terms</u>

| | |
|---|---|
| BMIS | Bernard L. Madoff Investment Securities, LLC |
| Br. | The Tremont Defendants' Memorandum of Law in Support of Their Motion to Dismiss |
| Complaint or Compl. | The complaint filed by plaintiffs in this action |
| IMA | The Rye Select Broad Market XL Portfolio Limited Information Memorandum |
| LPA | The Rye Select Broad Market XL Fund, L.P. Limited Partnership Agreement |
| Madoff | Bernard L. Madoff |
| Offshore Plaintiffs | Meridian Diversified Fund, Ltd., Meridian Diversified ERISA Fund, Ltd., Meridian Diversified Compass Fund, Ltd., and Meridian Absolute Return ERISA Fund, Ltd. |
| Offshore Reference Entity | Rye Select Broad Market Portfolio Limited |
| Offshore XL Fund | Rye Select Broad Market XL Portfolio Limited |
| Onshore Plaintiffs | Meridian Horizon Fund, LP, Meridian Horizon Fund II, LP, and Meridian Diversified Fund, LP |
| Onshore Reference Entity | Rye Select Broad Market Fund, LP |
| Onshore XL Fund | Rye Select Broad Market XL Fund, LP |
| Plaintiffs | The Onshore Plaintiffs and the Offshore Plaintiffs, together |
| Reference Entities | The Onshore Reference Entity and Offshore Reference Entity, together |
| RIM | Rye Investment Management, a division of Tremont Group Holdings |
| Trans. Decl. | The Transmittal Declaration of Jason C. Vigna in Support of the Tremont Defendants' Motion to Dismiss |

| | |
|---|---|
| Tremont | Tremont Group Holdings, Inc., Tremont Partners, Inc., and Tremont (Bermuda) Limited, collectively |
| Tremont's State Law Brief | The Tremont Defendants' Memorandum of Law in Support of Their Motion to Dismiss, filed in *In re Tremont Securities Law, State Law, and Insurance Litigation*, Master File No. 08 Civ. 11117, relating to *State Law Actions*, No. 08 Civ. 11183 |
| Tremont Bermuda | Tremont (Bermuda) Limited |
| Tremont Group Holdings | Tremont Group Holdings, Inc. |
| Tremont Partners | Tremont Partners, Inc. |
| XL Funds | The Onshore XL Fund and the Offshore XL Fund, together |

Plaintiffs respectfully submit this memorandum of law in opposition to Tremont's motion to dismiss plaintiffs' claims against it.

## PRELIMINARY STATEMENT

Plaintiffs invested and lost more than $116 million in the XL Funds as a result of Tremont's materially false and misleading statements, and Tremont's breaches of duties owed to plaintiffs in their management and oversight of plaintiffs' investments. (Compl. ¶¶ 1, 19-20, 27-33.)

Tremont's motion to dismiss is baseless. It argues that plaintiffs' fraud claims fail to identify a material misrepresentation or to plead scienter adequately. First, Tremont admits that the performance updates and account statements it sent to plaintiffs were "inaccurate" and "false" – *i.e.*, they were misrepresentations. (Br. at 8.) Second, plaintiffs allege (i) that all investment advisory, brokerage, and custodial functions were concentrated with Madoff and BMIS, and Tremont relied exclusively on Madoff and BMIS for all of the asset and trade information reported to plaintiffs (Compl. ¶¶ 2, 17, 19-20, 39), and (ii) that *none* of the assets or trades reported to plaintiffs existed or occurred. (*Id.* ¶¶ 5, 83.)

Tremont's exclusive reliance on Madoff and BMIS made it critical that Tremont seek corroboration of this information with independent third parties. Madoff has admitted that there were no assets or trades. These facts support plaintiffs' inference either that Tremont never sought independent corroboration, because otherwise Tremont would have uncovered the fraud, or that it uncovered evidence of Madoff's Ponzi scheme while misrepresenting that the XL Funds' assets existed and were appreciating. Thus, Tremont either failed to perform the due diligence and monitoring of Madoff and BMIS it promised, and was reckless in misrepresenting to plaintiffs that it had, or it intentionally

lied about what it found. Because plaintiffs allege that Tremont's reckless misrepresentations deceived plaintiffs into investing with Madoff and BMIS, their securities fraud claims are not barred by the *Santa Fe* doctrine.

Tremont's attempts to avoid the merits of plaintiffs' other claims are equally unavailing. These claims are direct, not derivative, because each is based on breaches by Tremont of duties owed to plaintiffs independent of duties it owed to the XL Funds. Forcing the Offshore Plaintiffs to bring their claims in the Cayman Islands, while this action and the related class actions go forward in this Court, would result in parallel proceedings with the same parties, witnesses, and evidence, and a danger of inconsistent results – precisely the circumstances in which courts have declined to enforce forum selection clauses. The Martin Act does not preempt plaintiffs' breach of fiduciary duty or negligence claims, because they are based on Tremont's failure to exercise due care in managing and overseeing plaintiffs' investments – *not* on deceptive conduct; nor does it preempt plaintiffs' common law fraud claim, which requires scienter.

Finally, Tremont's arguments on the merits of plaintiffs' state law claims fail as well. The Complaint properly pleads proximate cause by alleging that Tremont's misstatements concealed the risk that Madoff was operating a Ponzi scheme, which resulted in plaintiffs' losses when they purchased and/or retained interests in the XL Funds – a foreseeable and natural result of Tremont's misstatements. Each Tremont defendant owed fiduciary duties to plaintiffs, and breached those duties. And the exculpation clauses in the XL Funds' governing documents do not, and cannot under the law, exculpate Tremont's gross negligence alleged in the Complaint.

## STATEMENT OF FACTS

Plaintiffs are managed from and within the State of New York. (Compl. ¶ 15.) The XL Funds were sold and managed by Tremont from Rye, New York. (*Id.* ¶¶ 1, 21-23, 39, 56-61, 73-76.)

The XL Funds' returns were derived from the Reference Entities, leveraged investments in other funds that also were sold and managed by Tremont. (*Id.* ¶¶ 1, 21-23, 39, 56-60, 79-80.) The Onshore XL Fund also made direct investments in the Onshore Reference Entity. (*Id.* ¶ 19.) The Reference Entities were single-manager investment vehicles. (*Id.* at ¶¶ 2, 39, 41.) Tremont served as investment manager, but delegated all asset management decisions to Madoff and to BMIS, a securities broker-dealer and investment advisor registered with the SEC, with its principal office in New York City. (*Id.* ¶¶ 2, 16-17, 19-20, 39, 60.) Madoff, through BMIS, purportedly executed all trades on behalf of the Reference Entities, and custodied their securities. (*Id.* ¶¶ 2, 17, 19-20, 39.)

Plaintiffs invested in the XL Funds because Tremont – in offering materials, responses to due diligence questionnaires, and direct conversations – represented that it was intimately familiar with Madoff's and BMIS's operations, and that it closely monitored Madoff's and BMIS's transactions, internal controls, and operational risk. (*Id.* ¶¶ 3, 40-78.) Tremont – through monthly performance reports, yearly financial statements, and direct conversations – also represented to plaintiffs that the assets Madoff and BMIS claimed to hold for the Reference Entities existed and were appreciating, and that the trades Madoff and BMIS claimed to have made for these funds actually occurred. (*Id.* ¶¶ 3, 45-46, 62-65, 68-72, 77-81.) Tremont positioned itself as gatekeeper of all Madoff-related information, in exchange for substantial "management" fees. (*Id.* ¶¶ 4,

39-78, 88.) Plaintiffs relied on these representations in making and retaining their investments in the XL Funds. (*Id.* ¶¶ 4, 41, 128, 139, 156, 166.)

In December 2008, it was revealed that Madoff was operating a massive Ponzi scheme, and that the Reference Entities whose assets he purportedly managed held no assets. (*Id.* ¶¶ 5, 82-85.) Madoff pled guilty to criminal charges on March 12, 2009, admitted to perpetrating this fraud since at least the early 1990s, and admitted that he never invested his investment advisory clients' assets. (*Id.* ¶¶ 5, 83.) Instead, he deposited client funds in, and paid redemptions from, an account at Chase Manhattan Bank. (*Id.*)

Tremont would have been aware of these facts if it actually had conducted the due diligence and monitoring as it claimed. (*Id.* ¶¶ 6, 86-88.) Tremont either failed to perform this due diligence and monitoring, or it uncovered evidence of Madoff's Ponzi scheme and knowingly or recklessly misrepresented to plaintiffs' representatives that the XL Funds' assets existed and were appreciating. (*Id.*)

## ARGUMENT[1]

### I.
### THE COMPLAINT PROPERLY PLEADS CLAIMS UNDER SECTION 10(b)

**A.**     <u>The Complaint Pleads a Material Misrepresentation</u>

     **1.**     **The Complaint Sufficiently Pleads That Tremont Misrepresented the Existence and Appreciation of Assets**

Tremont concedes, as it must, that the performance updates and account statements it conveyed to plaintiffs were "inaccurate" and "false." (Br. at 8.) In other

---

[1] Plaintiffs incorporate by reference their recitation of the standard on a motion to dismiss at pages 5-6 of the Onshore Plaintiffs' brief opposing KPMG LLP's motion to dismiss.

words, *they were misrepresentations*, satisfying this element. *See* 15 U.S.C. § 78u-4(b)(1)(A) (plaintiffs must plead "an untrue statement of a material fact"); *Fogarazzo v. Lehman Bros., Inc.*, 341 F. Supp. 2d 274, 294 (S.D.N.Y. 2004) ("A statement is objectively misleading – and thus satisfies the requirement of paragraph (b)(1) – simply by virtue of being false."). That should end the inquiry as to these misrepresentations.

Nonetheless, Tremont conflates the misrepresentation pleading requirement with the separate scienter pleading requirement, arguing that plaintiffs plead no facts demonstrating that they "*knew*" these misrepresentations were false, or that they "otherwise *intended* to mislead plaintiffs" in making them.[2] (Br. at 8 (emphasis added).) This is improper. Scienter is a separate element, and is not required to plead adequately that misrepresentations of fact were made. *See, e.g., Podany v. Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 154 (S.D.N.Y. 2004) ("the falsity and scienter requirements present *separate inquiries* .... subjective intent to commit fraud is a *wholly separate inquiry* from whether the statement is objectively true") (emphasis added); *Fogarazzo*, 341 F. Supp. 2d at 294 ("[E]ach of [misrepresentation, scienter, and reliance] are distinct elements of securities fraud and ought not be confused or combined. Paragraph (b)(1) of the PSLRA requires only that a statement be *objectively* false or otherwise misleading.").

### 2. The Complaint Sufficiently Pleads That Tremont Misrepresented the Due Diligence and Monitoring It Claimed to Have Done and Would Continue to Do

Tremont asserts that plaintiffs have insufficiently alleged that its statements (a) that it *had* conducted due diligence on Madoff and BMIS, and (b) that it *would continue* to monitor them, were all false when made. Both arguments are baseless.

---

[2] In fact, plaintiffs do plead such facts. (*See infra* § I.B.)

### a. Tremont's Misstatements About Past Due Diligence

Prior to and at the time of each of plaintiff's investments and thereafter, Tremont stated that it had performed regular due diligence on Madoff and BMIS for at least the past ten years. These statements were false every time they were made because either Tremont had not actually done so, or it had uncovered evidence of Madoff's Ponzi scheme while continuing to misrepresent that the XL Funds' assets existed and were appreciating. (Compl. ¶¶ 86-88.) Plaintiffs infer that Tremont's statements were false from the following facts: (i) none of the assets existed, and none of the trades occurred (*id.* ¶¶ 82-85); and (ii) Madoff's fraud could have been uncovered if Tremont had conducted due diligence and monitoring, including seeking independent corroboration of the assets and trades.[3] (*Id.* ¶¶ 86-88.)

### b. Tremont's Misstatements About Future Monitoring

Plaintiffs allege also that Tremont knew that its repeated promises to *continue* monitoring Madoff and BMIS, made to induce plaintiffs to invest in the XL Funds, were false every time they were made. Tremont misrepresented for at least the

---

[3] That plaintiffs and the SEC failed to uncover Madoff's Ponzi scheme does not, as Tremont asserts (Br. at 8 n.12), undermine plaintiffs' assertion that Tremont would have succeeded in doing so: plaintiffs did not have Tremont's access to Madoff and BMIS (Compl. ¶¶ 39, 42-43, 46), and the SEC's inadequacy in handling this matter has now been well-documented. *See, e.g.*, Kara Scannell, "Crisis on Wall Street: SEC Chief Pledges Effort to Bolster Enforcement," Wall St. J., at B2 (Feb. 7, 2009) ("The Bernard Madoff scandal … ha[s] battered the agency's reputation.").

In addition, Tremont asserts that plaintiffs fail to identify a source for these misstatements. (Br. at 7.) This assertion is wrong, and misstates what the law requires. As articulated in *In re Optionable Securities Litigation*, 577 F. Supp. 2d 681, 689 (S.D.N.Y. 2008), plaintiffs are required to identify the statements that were false, identify the facts that form the basis for their allegation that the statements were false, and identify the source of those supporting facts. Plaintiffs do all three in the Complaint. As described herein, the facts that form the basis of plaintiffs' allegation that Tremont's statements were false are that Tremont would have uncovered the fraud if it had done any due diligence or monitoring because there were no assets or trades. The source for these supporting facts is Madoff's public admissions when his fraud was uncovered, and Madoff's plea allocution. (*See* Compl. ¶¶ 82-85.)

6

decade preceding plaintiffs' first XL Fund investments that it had been conducting due diligence on Madoff and BMIS. These allegations provide a sufficient basis for plaintiffs' allegation that Tremont secretly did not intend to perform these same tasks going forward. *See Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) ("making a specific promise to perform a particular act in the future while secretly intending not to perform that act may violate Section 10(b) where the promise is part of the consideration for the transfer of securities"); *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 676 F. Supp. 458, 478 (S.D.N.Y. 1987) (same); *Weiss v. Wittcoff*, 966 F.2d 109, 112 (2d Cir. 1992) (defendants promised continued employment to plaintiff after he sold them the shares of his company, but instead secretly intended to sell his company in the near future and had no intention of honoring the promise). Moreover, these misrepresentations were not mere "puffery," or an "objective" Tremont "failed to achieve" (Br. at 6), but rather were highly particularized, describing its purported process for choosing and monitoring Madoff and BMIS.[4] (Compl. ¶¶ 3-4, 39-43, 46, 58, 74-76.)

    Finally, Tremont makes three assertions that are beside the point. First, it asserts that Tremont did not "*guarantee* that [its] oversight procedures would detect *all* potential frauds*" (Br. at 6 (emphasis added)), whereas plaintiffs assert that the due diligence and monitoring that Tremont promised would have uncovered *this* fraud. (Compl. ¶¶ 82-88.) Second, it asserts that plaintiffs were warned that Tremont would not "have access to *complete* information regarding Madoff's trading." (Br. at 7 (emphasis

---

  [4] As such, they are easily distinguishable from "merely generalizations regarding [a bank's] business practices" and related to its "reputation," *ECA & Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.*, 553 F.3d 187, 205-06 (2d Cir. 2009), and from statements "predicting a prosperous future." *Shields v. Citytrust Bancorp.*, 25 F.3d 1124, 1129 (2d Cir. 1994).

added).)  But if Tremont had conducted *any* meaningful, corroborating due diligence, it would have uncovered that no assets existed or trades had occurred.  (Compl. ¶¶ 82-88.) Finally, it asserts that the PPMs state that "'the amount of *publicly* available information that may be used ... in selecting the Manager [Madoff] may be relatively small.'"[5]  (Br. at 7 (emphasis added).)  However, plaintiffs allege that Tremont was supposed to have unique access to *non*-public information about Madoff and BMIS, which was the basis for Tremont's so-called "management" fees.  (Compl. ¶¶ 4, 39, 42-43, 46, 69, 74-76.)

## B.      The Complaint Sufficiently Alleges That Tremont's Misrepresentations Were Made Recklessly

In this Circuit, recklessness is a sufficiently culpable mental state for securities fraud.  *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).  Recklessness can be pled by alleging "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."  *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000) (quotations and citation omitted).  Allegations of a "fail[ure] to check information [the defendants] had a duty to monitor" can support a strong inference of scienter.  *Id.*

All information that Tremont reported to plaintiffs concerning the XL Funds' purported assets and trades came from Madoff and BMIS, with whom Tremont concentrated all investment advisor, prime broker, and custodian functions for those and

---

[5] This cautionary language in the PPMs, unlike the language in *Halperin v. eBankerUSA.com, Inc.*, 295 F.3d 352 (2d Cir. 2002), "did not expressly warn of or did not directly relate to the risk that brought about plaintiffs' loss." *Id.* at 359.

related funds. (Compl. ¶¶ 2, 17, 39, 45, 57, 60.) Madoff and BMIS were the *only source* for this critical information, for which Tremont knew it was the sole conduit to plaintiffs. (*Id.*) These known dangers made it critical that Tremont seek corroboration of this information with independent third parties. Without such corroborating evidence, Tremont could not have gained a sufficient basis to provide plaintiffs with reports reflecting positive returns and Tremont's active and effective oversight of plaintiffs' invested capital – *especially* in light of the extensive vetting and monitoring of Madoff and BMIS that Tremont claimed to do. (*See id.* ¶¶ 86-88.)

Nonetheless, Tremont neither claims to have sought corroboration from anyone other than Madoff or BMIS, nor refutes plaintiffs' assertions that it had a responsibility to do so. Instead, Tremont argues only that the Complaint's allegations do not create an inference of recklessness because it did not close its eyes to a known danger. (Br. at 9.) But Tremont *did* close its eyes to the known dangers arising from the concentration of functions with, and exclusive reliance on, Madoff and BMIS. These facts create a strong inference of recklessness. *See Rolf v. Blyth*, 570 F.2d 38, 47-48 (2d Cir. 1978) (allegations that the defendant had undertaken the obligation to supervise an investment advisor, had "ample opportunity" to do so, and had constantly reassured plaintiff that the investment advisor was adequately managing his investments even though "[t]hese representations were conclusorily made to [plaintiff] without investigation and with utter disregard for whether there was a basis for the assertions," adequately pleaded recklessness) (cited with approval by *Novak*, 216 F.3d at 308-09); *Nathel v. Siegal*, 592 F. Supp. 2d 452, 465 (S.D.N.Y. 2008) (allegations that advisor "assured Plaintiffs of the tax benefits and likelihood of oil and gas profits," but "did not investigate the tax deductions or the wells" were sufficient to plead recklessness); *In re*

*Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 250 (S.D.N.Y. 2007) (allegations that compensation committee members "charged with a specific 'duty to monitor' the exercise dates of the options" failed to do so "gives rise to an inference of scienter").[6]

Tremont asserts that a plausible competing inference is that "'due diligence would not have uncovered [Madoff's] fraud.'" (Br. at 10 (quoting *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 418 (S.D.N.Y. 2007), *aff'd sub nom.*, *South Cherry Street, LLC v. Hennessee Group LLC*, No. 07-3658-cv, slip op. (2d Cir. July 14, 2009).) But Tremont would have uncovered Madoff's Ponzi scheme if it had sought independent corroboration, because *none* of the assets existed, and *none* of the trades occurred (alternatively, Tremont uncovered Madoff's fraud and simply lied about it). (Compl. ¶¶ 86-88.) Tremont's recklessness or knowledge are the only plausible inferences.[7]

---

[6] In *In re PXRE Group, Ltd. Securities Litigation*, 600 F. Supp. 2d 510 (S.D.N.Y. 2009), which Tremont cites, plaintiffs failed to allege that defendants had access to information that specifically informed them that their statements were misleading. *Id.* at 536. Here, in contrast, the Complaint alleges that Tremont represented that it had conducted and would continue to conduct due diligence and monitoring, while at the same time Tremont knew that it relied entirely on Madoff and BMIS for the asset and trade information it reported to plaintiffs, and knew that it had not corroborated the accuracy of this information with independent third parties. (Comp. ¶¶ 2, 17, 39, 42, 57, 64, 86-88.)

[7] The affirmance of *Bayou* in *South Cherry* does not undermine this conclusion:

- The Second Circuit emphasized plaintiff's failure to allege "any fact" known to the one-off due diligence provider defendant (Hennessee) that should have alerted Hennessee that the fund's representations were dubious. *South Cherry*, No. 07-3658-cv, slip op. at 30. Here, by contrast, plaintiffs allege specific facts that should have alerted Tremont that none of the assets existed and none of the trades occurred. (*See supra* p. 9 ("But Tremont *did* close its eyes to the known dangers arising from the concentration of functions with, and exclusive reliance on, Madoff and BMIS."); Compl. ¶¶ 2, 17, 39, 86-88.)

- The Second Circuit explained that the *South Cherry* appeal involved no claim that Hennessee or its principals owed plaintiff a fiduciary duty, but rather "[a]t bottom, this was a contract case." *South Cherry*, No. 07-3658-cv, slip op. at 35-36. Plaintiffs

10

**C.** **The "*Santa Fe*" Doctrine Is Inapplicable Here**

In *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462 (1977), the Supreme Court held that, although ordinary claims of breach of fiduciary duty and mismanagement are not actionable under § 10(b), the statute provides a cause of action "if the conduct alleged can be fairly viewed as 'manipulative or deceptive' within the meaning of the statute." 430 U.S. at 473-74. The Complaint satisfies this standard by alleging that, through intentional or reckless misrepresentations, Tremont deceived plaintiffs into investing with Madoff and BMIS through Tremont. (*See* Compl. ¶ 42, 45-88.)

Numerous courts have held that similar allegations state a claim for securities fraud under *Santa Fe*. *See, e.g., Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 93, 99 (2d Cir. 2001) (defendants made knowing misrepresentations regarding due diligence and background reports); *Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*, 423 F. Supp. 2d 348, 355, 359-63 (S.D.N.Y. 2006) (defendants made knowing or reckless misrepresentations concerning portfolio risk and steps taken to decrease that risk); *In re Accredo Health Inc., Sec. Litig.*, 2005 U.S. Dist. LEXIS 46923, at *20-21, 26-27, 32-33, 44 (W.D. Tenn. Apr. 11, 2005) (defendants

---

here, by contrast, assert fiduciary duties owed and breached by Tremont. (Compl. at ¶¶ 170-201.)

- The Second Circuit states that Hennessee's diverse business, which included evaluating over 550 different hedge funds, made it implausible that it knowingly risked its business for fees associated with one fraudulent fund. *South Cherry*, No. 07-3658-cv, slip op. at 32-33. Tremont, by contrast, sold, managed, and reported on an entire family of "single-manager" funds, for which it created an entire division – RIM. (Compl. at ¶¶ 1, 3-4, 34, 39-81.)

- The Second Circuit distinguished Hennessee from the defendants in *Novak*, where the claims were brought by shareholders against company officials who issued fraudulently inflated financial statements – just like the limited partner and shareholder plaintiffs' claims here that Tremont (the XL Funds' managers) issued false financial statements and performance updates. *Compare South Cherry*, No. 07-3658-cv, slip op. at 34 (citing *Novak*, 216 F.3d at 305) *with* Compl. ¶¶ 3, 40, 79-81.

11

knowingly or recklessly misrepresented and omitted results of due diligence); *In re Atlas Air Worldwide Holdings Inc., Sec. Litig.*, 324 F. Supp. 2d 474, 491-92, 494 & n.11 (S.D.N.Y. 2004) (defendants knew of or recklessly ignored red flags concerning impairments to company finances, and misrepresented company's financial condition); *In re Sirrom Capital Corp. Sec. Litig.*, 84 F. Supp. 2d 933, 941-42 (M.D. Tenn. 1999) (defendants engaged in deceptive conduct and made material misrepresentations concerning value of loan portfolio and shareholder equity).[8]

## II.
## PLAINTIFFS' STATE LAW CLAIMS ARE DIRECT CLAIMS

Tremont's argument that plaintiffs lack standing to bring their state law claims directly (rather than derivatively) is wrong. Since Tremont offers no reason why plaintiffs' fraud and negligence claims may not be brought directly (*see* Br. at 10-11 (citing Tremont's State Law Brief at 12-14)), its assertions as to those claims should be ignored.[9]

---

[8] The cases cited by Tremont are factually different. *See In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 376 (S.D.N.Y. 2004) (complaint alleged only that Citigroup had not followed its internal management policies in a manner consistent with plaintiffs' view of those policies); *Biesenbach v. Guenther*, 588 F.2d 400, 401-02 (3d Cir. 1978) (complaint alleged no deception or misrepresentations); *Waxman v. Evipco Pick Up & Processing Servs., Inc.*, 2003 U.S. Dist. LEXIS 19295, at *30-31 (S.D.N.Y. Oct. 28, 2003) (same).

[9] Plaintiffs' fraud claim alleges that plaintiffs were injured when they invested in reliance upon Tremont's misrepresentations. (Compl. ¶¶ 156-157, 166-167) Accordingly, Tremont could not make even a plausible argument that plaintiffs' cannot bring their fraud claims directly. *See Primavera Familienstiftung v. Askin*, 130 F. Supp. 2d 450, 495 (S.D.N.Y. 2001) ("the Investors may assert a fraud claim based on the theory that they were induced to make and/or retain their investments"); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, 376 F. Supp. 2d 385, 409 (S.D.N.Y. 2005) (same).

As for plaintiffs' breach of fiduciary claim, under New York law[10] a shareholder or limited partner in a limited partnership may sue directly "'when the wrongdoer has breached a duty owed to the shareholder [or limited partner] independent of any duty owing to the corporation [or partnership] wronged.'" *Fraternity Fund*, 376 F. Supp. 2d at 409 (quoting *Abrams v. Donati*, 66 N.Y.2d 951, 953 (1985)).

Here, Tremont owed fiduciary duties to plaintiffs directly (*see infra* § II), and the alleged wrongs were breaches of duties owed to them, not duties owed solely to the XL Funds. These breaches are proper bases for plaintiffs' direct claim against Tremont for breach of fiduciary duty. *See Ceribelli v. Elghanayan*, 990 F.2d 62, 63 (2d Cir. 1993) ("a shareholder may bring an individual suit if the defendant has violated an independent duty to the shareholder, whether or not the corporation may also bring an action") (internal citation omitted); *Solutia*, 385 F. Supp. 2d at 332 ("[W]here a defendant breaches an independent duty to a shareholder that also harms the corporation, the conduct constitutes a wrong against the shareholder for which it can recover individually, even if the harm is only to the value of its investment.").

---

[10] As Tremont concedes, New York law governs plaintiffs' fraud claim. (*See* Br. at 14-15.) And as described herein, New York law governs plaintiffs' breach of fiduciary duty and negligence claims. (*See infra* § V.C.1., V.D.) Accordingly, New York law governs plaintiffs' standing to bring these claims directly. *See Fraternity Fund*, 376 F. Supp. 2d at 408 (New York law governed whether investors in funds organized in foreign jurisdictions could bring direct claims under New York law); *Solutia Inc. v. FMC Corp.*, 385 F. Supp. 2d 324, 330-32 (S.D.N.Y. 2005) (same). The cases Tremont cites do not hold otherwise. *See Seybold v. Groenink*, 2007 U.S. Dist. LEXIS 16994, at *18 (S.D.N.Y. Mar. 12, 2007) (parties agreed that New York's internal affairs doctrine would apply Dutch law concerning a Dutch company); *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 108 (1991) (looking to state law in cases examining allocation of corporate governing powers between directors and shareholders); *Eos Partners SBIC, L.P. v. Levine*, 839 N.Y.S.2d 729, 730 (1st Dep't 2007) (plaintiffs brought a derivative action accusing directors of disloyalty to LLC).

## III.
## PLAINTIFFS' CLAIMS ARE PROPERLY BROUGHT IN THIS FORUM

"[Forum selection] clauses are not enforceable if enforcement is 'unreasonable' or violates principles of ... judicial efficiency." *Caspian Invs., Ltd. v. Vicom Holdings, Ltd.*, 770 F. Supp. 880, 885 n.5 (S.D.N.Y. 1991) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). *See also LaSala v. E*TRADE Sec. LLC*, 2005 U.S. Dist. LEXIS 25880, at *28-29 (S.D.N.Y. Oct. 31, 2008). It is far from clear whether the forum selection clause in the subscription agreements between the Offshore XL Fund and its investors would even apply to claims against the fund managers. Even if such claims are encompassed by this clause, enforcement would be unreasonable, because it would waste the parties' and judicial resources.

All of plaintiffs' claims arise out of the same operative facts and pose virtually identical legal issues. Much of the same documentary evidence and testimony will pertain to these claims. In addition, the related class actions against Tremont are pending in this Court. Proceeding in two separate countries would be redundant and wasteful. *See Ace Novelty Co. Inc. v. Vijuk Equip., Inc.*, 1991 U.S. Dist. LEXIS 10713, at *19-20 (N.D. Ill. July 31, 1991) (resolution of one party's claim would resolve the closely-related claim of another party, and same discovery would apply to both parties' claims). Moreover, this Court will have a unique, comprehensive mastery of the Tremont-related actions, and the resulting judicial efficiencies would be diminished by dismissal of the Offshore Plaintiffs' claims. *See LaSala*, 2005 U.S. Dist. LEXIS 25880, at *28-29 (court was "uniquely familiar with underlying facts common" to all the related actions); *Mylan Pharms., Inc. v. Am. Safety Razor Co.*, 265 F. Supp. 2d 635, 639-40 (N.D. W. Va. 2002) (enforcement would "be a gross waste of the parties' and the Court's

resources"); *Caspian Invs.*, 770 F. Supp. at 885 n.5 (judicial efficiencies justified not

enforcing forum selection clause where related proceedings already underway).

In addition, the Offshore Plaintiffs (against KPMG Cayman) and Tremont

Group Holdings and Tremont Partners (against the Onshore Plaintiffs and in the related

*In re Tremont* actions) will remain before this Court even if the Court enforces the forum

selection clause. In similar circumstances, courts have found enforcement of a forum

selection clause to be unreasonable. *See LaSala*, 2005 U.S. Dist. LEXIS 25880, at *28-

29; *Mylan Pharms.*, 265 F. Supp. 2d at 639-40; *Taylor Inv. Corp. v. Weil*, 169 F. Supp.

2d 1046, 1061 (D. Minn. 2001); *Nippon Fire & Marine Ins. Co. v. M/V Spring Wave*, 92

F. Supp. 2d 574, 577 (E.D. La. 2000).

## IV.
## THE MARTIN ACT DOES NOT PREEMPT PLAINTIFFS' BREACH OF FIDUCIARY DUTY AND NEGLIGENCE CLAIMS

Tremont mischaracterizes plaintiffs' breach of fiduciary duty and

negligence claims, which do not assert that Tremont engaged in deceptive acts. Rather,

plaintiffs allege that Tremont breached its duties to plaintiffs as managers of plaintiffs'

investments.[11] (Compl. ¶¶ 170-201.) For example, the Onshore Plaintiffs assert that:

> Tremont Partners and Tremont Group Holdings breached
> the fiduciary duties they owed to the Onshore Plaintiffs,
> and acted in bad faith, with gross negligence and in utter
> disregard for due care and reasonable and prudent
> investment standards, by failing to use reasonable care, or
> the competence or skill of a professional investment
> advisor, in performing due diligence, managing plaintiffs'
> investments, providing accurate financial disclosures, and

---

[11] Tremont points to allegations of deceit in the Complaint (Br. at 12), but these allegations support plaintiffs' fraud claims, which *are* based on deceptive conduct. Plaintiffs' breach of fiduciary duty and negligence claims are pleaded in the alternative to plaintiffs' fraud claims. *See* Fed. R. Civ. P. 8(d)(2) (alternative pleading allowed); *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 55 (2d Cir. 2004).

overseeing Madoff's and BMIS's management of the
Onshore Plaintiffs' assets.

(*Id.* ¶ 173; *see also id.* ¶ 190.) The Offshore Plaintiffs' allegations are similar. (*See id.* at

¶¶ 179-187, 195-207.)

The Martin Act does not preempt claims that are *not* based on deceptive

conduct. As the court held in *Louros v. Kreicas*, 367 F. Supp. 2d 572 (S.D.N.Y. 2005):

> [t]he reach of the [Martin] Act … cannot be unlimited. A
> claim of breach of duty that involves securities *but does not*
> *allege any kind of dishonesty or deception* implicates
> neither the plain language of the statute nor its policies.
> Such a claim therefore is not foreclosed by the absence of a
> private right of action under the Martin Act.

*Id.* at 595-96 (emphasis added). The *Louros* court distinguished between plaintiff's

misrepresentation claims, which alleged that defendant had made deceptive

misrepresentations, and his negligence and breach of fiduciary duty claims, which alleged

that defendant had breached a duty to manage plaintiff's account appropriately, and thus

"d[id] not allege deception, deliberate or otherwise." *Id.* at 596. Based on this

distinction, the Court sustained plaintiff's negligence and breach of fiduciary duty claims.

*Id.* Similarly, plaintiffs' breach of fiduciary duty and negligence claims here assert that

Tremont breached its duty to manage and oversee plaintiffs' investments; they are not

based on allegations that Tremont made false statements to plaintiffs.[12]

---

[12] No case Tremont cites, except *Sedona Corp. v. Ladenburg Thalmann & Co.*, 2005 U.S.
Dist. LEXIS 16382 (S.D.N.Y. Aug. 9, 2005), holds that negligence or breach of fiduciary duty
claims not based on deception are preempted by the Martin Act. *See CPC Int'l Inc. v. McKesson*
*Corp.*, 70 N.Y.2d 268 (1987) (no implied private cause of action arises from the Martin Act);
*People v. Federated Radio Corp.*, 244 N.Y. 33, 37 (1926) (action brought by Attorney General to
restrain fraudulent practices); *Jana Master Fund, Ltd. v. JPMorgan Chase & Co.*, 2008 N.Y.
Misc. LEXIS 1435, at * 6 (Sup. Ct. N.Y. County Mar. 12, 2008) (negligent misrepresentation and
aiding and abetting breach fiduciary duty claims involving deception); *In re Bayou*, 534 F. Supp.
at 421-22 (breach of fiduciary claim alleged deception), *aff'd on other grounds sub nom., South*

Even if the conduct underlying these claims somehow falls within the scope of the Martin Act, Tremont's preemption argument should be rejected because, as intermediate New York appellate courts have held, the Martin Act does not preempt such claims. (*See* Section of III.A the Onshore Plaintiffs' brief opposing KPMG LLP's motion to dismiss, which is incorporated here by reference.)

## V.
## PLAINTIFFS' CLAIMS ARE OTHERWISE PROPERLY PLED

**A.** **The Complaint Properly Pleads Proximate Cause**

Tremont's argument that Madoff's Ponzi scheme is a superseding event breaking the chain of causation between Tremont and plaintiffs' losses (Br. at 13-14) is wrong. Under New York law,[13] "[w]here the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed." *Derdiarian v. Felix Contractor Corp.*, 51 N.Y.2d 308, 315 (1980). Instead, "liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence" or other tortious conduct. *Id.* To break the causal nexus, a superseding act must be "extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct ...."[14] *Id.*

---

*Cherry*, slip op. at 35 (plaintiff did not appeal dismissal of breach of fiduciary duty claim). *Sedona*, in which the court failed to make the same distinction between the deceptive and non-deceptive alleged misconduct that Judge Kaplan did in *Louros*, was decided wrongly.

[13] New York law governs plaintiffs' state law claims for fraud, negligence and breach of fiduciary duty against Tremont. (*See infra* §§ V.B, V.C.1, V.D.) Indeed, Tremont cites New York law in its brief. (Br. at 13-14.) Apparently contending that Delaware law governs its breach of fiduciary duty claims, Tremont also cites Delaware law. (*Id.*) Under either New York or Delaware law however, plaintiffs have pleaded proximate causation.

[14] The cases cited by Tremont are distinguishable, and in each the intervening event was "extraordinary under the circumstances, not foreseeable in the normal course of events, or

A similar argument was advanced and rejected in *Sterling National Bank v. Ernst & Young, LLP*, 2005 N.Y. Misc. LEXIS 2546, 2005 NY Slip Op. 51850U (Sup. Ct. N.Y. County Jan. 7, 2005). There, the plaintiff alleged that Allied Deals was a Ponzi scheme, but the auditors had issued a clean audit opinion of the company's financial statements. *Id.* at *1. The auditors argued that Allied Deals' criminal conduct constituted an intervening cause of plaintiffs' harm. *Id.* at *6. The court rejected the argument, finding that plaintiff's harm was a foreseeable result of the auditors' misstatements. *Id.*

Likewise, in *New York Islanders Hockey Club v. Comerica Bank-Texas*, 71 F. Supp. 2d 108 (E.D.N.Y. 1999), the Islanders received false representations from a bank that Spano, who sought to acquire the team, had adequate assets. In reliance on those representations, the Islanders allowed themselves to be acquired by Spano, who then looted the team. Even though Spano's theft was separate from the bank's

---

independent of or far removed from the defendant's conduct." *Derdiarian*, 51 N.Y.2d at 315. *See Republic of Panama v. Am. Tobacco Co.*, 2006 WL 1933740, at *7 (Del. Super. July 13, 2006) (no direct cause of action in tort exists against tobacco companies who injure a health care provider's beneficiary); *Ventricelli v. Kinney Sys. Rent a Car, Inc.*, 45 N.Y.2d 950, 952 (1978) (plaintiff injured in a collision while trying to close defective car trunk might have been standing by the trunk independent of any negligence of defendant); *Port Auth. v. Arcadian Corp.*, 189 F.3d 305, 318-19 (3d Cir. 1999) (the 1993 World Trade Center bombing was not a natural or probable consequence of any design defect in the fertilizer manufactured by the defendants and used in the bomb); *Henry v. Merck & Co.*, 877 F.2d 1489, 1490 (10th Cir. 1989) (no proximate cause where employee stole defendant's sulfuric acid and deliberately threw it in the face of the plaintiff); *Ward v. State*, 366 N.Y.S.2d 800, 807 (Ct. Cl. 1975) (police officer's injuries sustained during investigation of a complaint at a state hospital were not foreseeable to State). And Section 448 of the Restatement (Second) of Torts supports plaintiffs, not Tremont. That section provides that a tortfeasor is not relieved of liability where "at the time of his negligent conduct [he] realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime." The Complaint plainly meets these requirements. (*See, e.g.*, Compl. ¶ 153-154.)

misrepresentations, the court held that a jury could find it foreseeable to the bank that Spano would harm the team. *Id.* at 118.[15]

Here, Tremont falsely claimed that it had conducted extensive due diligence on Madoff and BMIS and was monitoring them, that plaintiffs' assets existed and were appreciating, and that the trades actually occurred. (*See* Compl. ¶ 3, 39-88.) Plaintiffs relied on Tremont's misrepresentations in purchasing and/or retaining their partnership interests or shares in the XL Funds. (*Id.* ¶ 128, 139, 156, 166, 192, 199.) Had Tremont actually conducted due diligence on Madoff as it claimed, the Ponzi scheme would have been revealed, and plaintiffs would not have purchased and/or retained the interests in the XL Funds, and lost their entire investment. Stated another way, Tremont's misstatements concealed the risk that Madoff was operating a Ponzi scheme, which resulted in plaintiffs' losses when they purchased and/or retained interests in the XL Funds. Thus, plaintiffs' harm from Madoff's Ponzi scheme was a foreseeable and natural result of Tremont's misstatements.[16]

---

[15] *See also In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*, 604 F. Supp. 2d 1128, 1147 (S.D. Oh. 2009) (rejecting argument that underlying fraud relieved defendant of liability for breach of fiduciary duty); *Bullmore v. Banc of Am. Sec. LLC*, 485 F. Supp. 2d 464, 468 (S.D.N.Y. 2007) (foreseeable that plaintiff would suffer losses due to defendant's actions, permitting overvaluation of hedge fund's portfolio); *Collins v. Esserman & Pelter*, 681 N.Y.S.2d 399, 401-02 (3d Dep't 1998) (accountant's failure to discover employee embezzlement scheme proximately caused company's losses, even where company failed to adhere to its own internal controls, disregarded employee's history of embezzlement, and refused to fire employee after learning she failed to make required tax payments, falsified corporate records, and lied).

[16] Although Tremont does not appear to contend that plaintiffs have failed to allege proximate causation for their federal securities claims (Br. at 13-14), federal law provides that a misstatement or omission is the proximate cause of an investment loss if the risk causing the loss was within the zone of risk concealed by the misrepresentation or omission, or if the relationship between the misstatements and plaintiffs' loss is sufficiently direct. *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005). The allegations against Tremont plainly meet this standard: Tremont's misstatements concealed the risk that Madoff was operating a Ponzi scheme.

In all events, proximate cause should not be decided on the pleadings. "Because questions concerning what is foreseeable and what is normal may be the subject of varying inferences ... these issues generally are for the fact finder to resolve." *Derdiarian*, 51 N.Y.2d at 315.[17]

**B.      The Complaint Properly Pleads Common Law Fraud**

As Tremont states, the elements of common law fraud under New York are essentially the same as the elements for federal securities fraud.  (Br. at 14-15.)  Since the complaint sufficiently alleges federal securities fraud (*see supra* § I), the Complaint also sufficiently alleges common law fraud.

**C.      The Complaint Properly Pleads Breach of Fiduciary Duty**

**1.      New York Has the Most Significant Relationship with Plaintiffs' Breach of Fiduciary Duty Claims**

A federal court adjudicating pendent state law claims must apply the forum state's choice of law rules.  *See Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989).  Under New York law, the law of the jurisdiction where the breach of fiduciary duty occurred generally applies.  *See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 192-95 (S.D.N.Y. 2006).[18]

---

[17] *See also Raider v. Friedman*, 556 N.Y.S.2d 66, 67 (1st Dep't 1990) ("issues of negligence, foreseeability, and proximate cause involve the kinds of judgment variables which have traditionally, and soundly, been left to the triers of fact to resolve even where the facts are essentially undisputed"); *Terry v. Danisi Fuel Oil Co.*, 837 N.Y.S.2d 256, 257 (2d Dep't 2007) (same); *In re Sept. 11 Prop. Damage & Bus. Loss Litig.*, 468 F. Supp 2d 508, 531 (S.D.N.Y. 2006) ("the issue of proximate cause is fact laden and inappropriate for a motion to dismiss at the pleadings stage"); *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 257, 258-59 (S.D.N.Y. 2005) (same).

[18] New York law applies an "interest analysis" to identify the jurisdiction with the greatest interest in the claim based on the occurrences within, or the contacts of the parties with, each jurisdiction, that relate to the purpose of the particular law in conflict.  *See Pension Comm.*, 446 F. Supp. 2d at 192.

Here, Tremont concedes that the "site of the torts alleged in the complaint" is New York. (Br. at 14 n.15.) Moreover, there are numerous other New York contacts: (a) plaintiffs were managed from New York (Compl. ¶ 15); (b) Tremont managed the XL Funds from New York (*id.* ¶¶ 21-22); (c) the assets were invested and lost in New York (*id.* ¶¶ 2, 5, 17, 39, 82-84); and (d) the underlying fraud by Madoff and BMIS was carried out in New York. (*Id.* ¶ 17, 82-84.)[19]

By contrast, the interests of Delaware and the Cayman Islands in this litigation stem solely from the fact that the non-party funds in which plaintiffs invested and defendants Tremont Group Holdings and Tremont Bermuda were incorporated in those jurisdictions. Tremont nonetheless argues that under the "internal affairs" doctrine, plaintiffs' breach of fiduciary duty claims should be governed by the laws of those jurisdictions. (Br. at 14 n.15.) But the New York Court of Appeals long ago rejected the automatic application of the internal affairs doctrine to determine the law applicable to a breach of fiduciary duty claim.[20] *See Greenspun v. Lindley,* 36 N.Y.2d 473, 478 (1975). Here, the internal-affairs doctrine does not apply since the plaintiffs are not suing as shareholders of the defendant entities, and the internal management of the entities sued is not the subject of the plaintiffs' claims. *See Pension Comm.,* 446 F. Supp. 2d at 194

---

[19] Tremont further recognizes New York's interest in arguing (albeit incorrectly) that New York's Martin Act preempts plaintiffs' breach of fiduciary duty and negligence claims. (Br. at 12-13.)

[20] The internal-affairs doctrine is designed to ensure that a corporation's management are subject to only one state's rules so that they can guide their conduct and not be subject to conflicting rules. *See Drenis v. Haligiannis,* 452 F. Supp. 2d 418, 427 (S.D.N.Y. 2006). This objective is irrelevant here, since the non-party funds in which plaintiffs invested are defunct. *See Pension Comm.,* 446 F. Supp. 2d at 194.

(New York law applied to breach of fiduciary duty claims brought by investors in foreign hedge fund against fund administrator and directors).

### 2. Plaintiffs Have Properly Pleaded Breach of Fiduciary Duty Claims

The elements of a claim for breach of fiduciary duty are: (a) the existence of a fiduciary duty, (b) a breach thereof, and (c) resulting damages. *See Carruthers v. Flaum*, 388 F. Supp. 2d 360, 381 (S.D.N.Y. 2005); *People v. Grasso*, 858 N.Y.S.2d 23, 32 (1st Dep't 2008). New York law imposes fiduciary duties on investment managers. *Fraternity Fund*, 376 F. Supp. 2d at 408-10. Similarly, in a limited partnership, the general partner owes a fiduciary duty to the limited partners. *See, e.g., Appleton Acquisition, LLC v. Nat'l Hous. P'ship*, 10 N.Y.3d 250, 258 (2008).

It cannot be disputed that Tremont Partners owed a fiduciary duty to the investors of the XL Funds by virtue of its status as both funds' investment manager, and to the investors of the Onshore XL Fund as that fund's general partner. Indeed, Tremont Partners explicitly acknowledged its fiduciary duties in offering materials, and stated that it "'exercise[d] ultimate authority over the Partnership.'" (Compl. ¶ 58.)

Tremont Bermuda, which was the investment manager for the Offshore Reference Entity (*id.* ¶¶ 23, 59), knew that the Offshore XL Fund's returns were derived entirely from its management of the Offshore Reference Entity (and that the Offshore XL Fund was marketed that way). (*Id.* ¶ 57.) Tremont Bermuda thus owed a fiduciary duty as investment manager to the Offshore Plaintiffs. (*Id.* ¶¶ 23, 57, 59, 180-181.)

And a division of Tremont Group Holdings, RIM, sold, managed, and reported on the XL Funds, the Reference Entities, and other related funds. (Compl. ¶¶ 34, 56, 64, 73-76.) By undertaking this role, Tremont Group Holdings participated and was interchangeable with Tremont Partners and Tremont Bermuda in the

management and oversight of plaintiffs' investments, and thus similarly owed fiduciary duties to plaintiffs.[21] *See Fraternity Fund*, 376 F. Supp. 2d at 413-14 ("A fiduciary relationship arises when one has reposed trust or confidence in the integrity or fidelity on another who thereby gains a resulting superiority of influence over the first ....") (quotation omitted).

## D. The Complaint Properly Pleads Negligence.

Tremont's argument that plaintiffs' negligence claims are barred by clauses in the Onshore Fund's LPA and the Offshore Fund's IMA mischaracterize the Complaint and misapply the law. Gross negligence is not exculpated by either clause, nor could it be under applicable law. (Br. at 17-18.) The IMA explicitly states that losses arising due to gross negligence are not exculpated. (*See* Trans. Decl. Ex. C at § 7(a); Br. at 18.) And although the terms of the LPA do not contain a similar limitation, contracts that exculpate gross negligence are unenforceable under both Delaware and New York law. *See James v. Getty Oil Co. (Eastern Operations), Inc.*, 472 A.2d 33, 38 (Del. Super. Ct. 1983), *reaffirmed and clarified*, 472 A.2d 33 (Del. Super. Ct. 1984) (citing 15 Williston Contracts, 3rd ed. § 1750A); *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 554 (1992); *Dillon v. Motorcycle Safety School, Inc.*, 872 N.Y.S.2d 669, 669 (1st Dep't 2009); *Fed. Ins. Co. v. Honeywell, Inc.*, 641 F. Supp. 1560, 1562 (S.D.N.Y. 1986).

---

[21] Tremont's argument misstates *Wallace ex rel. Cencom Cable Income Partners II, L.P. v. Wood*, 752 A.2d 1175 (Del. Ch. 1999). The full quotation from that case is: "Chancellor Allen did not attempt to delineate the *full extent of these duties*, but they must surely entail 'the duty not to use control over the partnership's property to advantage the corporate director at the expense of the partnership.'" *Id.* at 1180 (emphasis added).

Under New York law,[22] "gross negligence had been termed as the failure to exercise even slight care." *Food Pageant, Inc. v. Consol. Edison Co.*, 54 N.Y.2d 167, 172 (1981). Put another way, "gross negligence occurs when a party proceeds in reckless disregard of the consequences of its acts." *Rand & Paseka Mfg. Co., Inc. v. Holmes Prot., Inc.*, 515 N.Y.S.2d 468, 470 (1st Dep't 1987).[23]

Applying this standard, plaintiffs have sufficiently pleaded that Tremont acted "with *gross negligence*" through a total failure "to use reasonable care, or the competence or skill of a professional investment advisor, in performing due diligence, managing plaintiffs' investments, providing accurate financial disclosures, and overseeing Madoff's and BMIS's management" of plaintiffs' assets. (Compl. ¶¶ 173, 182.) Absent its grossly negligent conduct, Tremont "would have realized that the assets BMIS purportedly held and the trades BMIS purportedly executed for the benefit of the Reference Entities and the XL Funds could not be corroborated with sources independent of Madoff and BMIS." (*Id.* ¶¶ 188, 195.)

In any event, whether the conduct described in the complaint ultimately is found to rise to the level of gross negligence – as opposed to ordinary negligence – is a question of fact for jury determination, and should not be resolved on a motion to dismiss. *See Food Pageant*, 54 N.Y.2d at 173.

---

[22] Tremont concedes that plaintiffs' gross negligence claims are governed by New York. (*See* Br. at 14 n.15.) *See also GlobalNet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 385 (2d Cir. 2006); *First Interstate Credit Alliance, Inc. v. Arthur Andersen & Co.*, 541 N.Y.S.2d 433, 434 (1st Dep't 1989). Accordingly, Tremont may not rely on Delaware law. (Br. at 17-18.)

[23] *See also Fed. Ins. Co.*, 641 F. Supp. at 1563 ("the failure to exercise even slight care, scant care, or *slight diligence* constitutes gross negligence") (emphasis added).

## CONCLUSION

For the foregoing reasons, Tremont's motion to dismiss plaintiffs' claims against it should be denied in its entirety.

Dated: New York, New York
July 14, 2009

Respectfully submitted,

FRIEDMAN KAPLAN SEILER &
ADELMAN LLP

Scott M. Berman (sberman@fklaw.com)
Anne E. Beaumont
John N. Orsini
Steven E. Frankel
Kevin L. Oberdorfer
1633 Broadway
New York, NY 10019-6708
(212) 833-1100

*Attorneys for Plaintiffs*