UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
:
MERIDIAN HORIZON FUND, LP, MERIDIAN :
HORIZON FUND II, LP, MERIDIAN DIVERSIFIED :
FUND, LP, MERIDIAN DIVERSIFIED FUND, LTD., : No. 09 Civ. 3708 (TPG)
MERIDIAN DIVERSIFIED ERISA FUND, LTD., :
MERIDIAN DIVERSIFIED COMPASS FUND, LTD., :
and MERIDIAN ABSOLUTE RETURN ERISA FUND, : ECF CASE
LTD., :
: Electronically Filed
:
                    Plaintiffs, :
:
          - against - :
:
TREMONT GROUP HOLDINGS, INC., TREMONT :
PARTNERS, INC., TREMONT (BERMUDA) :
LIMITED, OPPENHEIMER ACQUISITION :
CORPORATION, KPMG LLP, and KPMG :
(CAYMAN), :
:
                    Defendants. :
:
------------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT OPPENHEIMER ACQUISITION CORP.'S MOTION TO DISMISS THE COMPLAINT

FRIEDMAN KAPLAN SEILER &
    ADELMAN LLP
1633 Broadway
New York, NY 10019-6708
(212) 833-1100

July 14, 2009                 *Attorneys for Plaintiffs*

756015.1

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| STATEMENT OF FACTS | 2 |
| ARGUMENT | 5 |
| I. PLAINTIFFS NEED ONLY PLEAD AN UNDERLYING VIOLATION AND CONTROL IN ORDER TO STATE A SECTION 20(a) CLAIM | 6 |
| II. PLAINTIFFS HAVE PROPERLY PLEADED A SECTION 20(a) CLAIM AGAINST OAC | 10 |
|     A. Plaintiffs Have Pleaded a Primary Violation of Section 10(b) | 10 |
|     B. Plaintiff's Have Properly Alleged that OAC "Controlled" Tremont | 10 |
| CONCLUSION | 15 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ...................................................................................................... 6

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) .................................................................................................. 7

*Baxter v. A.R. Baron & Co.*,
   1996 U.S. Dist. LEXIS 15098 (S.D.N.Y. Oct. 11, 1996) ................................................. 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................ 6

*In re Bisys Sec. Litig.*,
   2005 U.S. Dist. LEXIS 28343 (S.D.N.Y. Nov. 16, 2005) ................................................. 7

*Borden, Inc. v. Spoor Behrins Campbell & Young, Inc.*,
   735 F. Supp. 587 (S.D.N.Y. 1990) ................................................................................... 11

*Brown v. Enstar Group, Inc.*,
   84 F.3d 393 (11th Cir. 1996) .............................................................................................. 9

*Central Bank, N.A. v. First Interstate Bank, N.A.*,
   511 U.S. 164 (1994) ............................................................................................................ 9

*Cohen v. Citibank, N.A.*,
   954 F. Supp. 621 (S.D.N.Y. 1996) ..................................................................................... 6

*In re Corning*,
   349 F. Supp. 2d 698 (S.D.N.Y. 2004) ................................................................................ 9

*First Interstate Bank of Denver, N.A. v. Pring*,
   969 F.2d 891 (10th Cir. 1992) ............................................................................................ 9

*G.A. Thompson & Co. v. Partridge*,
   636 F.2d 945 (5th Cir. 1981) .............................................................................................. 8

*In re Global Crossing, Ltd. Sec. Litig.*,
   2005 WL 1875445 (S.D.N.Y. Aug. 5, 2005) ............................................................. 11, 13

*In re Global Crossing, Ltd. Sec. Litig.*,
   2005 U.S. Dist. LEXIS 16228 (S.D.N.Y. Aug. 8, 2005) ................................................. 10

*Harrison v. Dean Witter Reynolds, Inc.*,
  974 F.2d 873 (7th Cir. 1992) ............................................................................................8

*Hollinger v. Titan Capital Corp.*,
  914 F.2d 1564 (9th Cir.) (en banc), *as amended*, 1990 U.S. App. LEXIS
  19892 (9th Cir. 1990)......................................................................................................8

*Katz v. Image Innovations Holdings, Inc.*,
  542 F. Supp. 2d 269 (S.D.N.Y. 2008)............................................................................10

*In re Leslie Fay Cos. Sec. Litig.*,
  918 F. Supp. 749 (S.D.N.Y. 1996) ................................................................................14

*Marbury Mgmt., Inc. v. Kohn*,
  629 F.2d 705 (2d Cir. 1980)............................................................................................8

*Metge v. Baehler*,
  762 F.2d 621 (8th Cir. 1985) ..........................................................................................8

*Mishkin v. Ageloff*,
  1998 U.S. Dist. LEXIS 14890 (S.D.N.Y. Sept. 23, 1998).......................................13, 14

*In re Parmalat Sec. Litig.*,
  375 F. Supp. 2d 278 (S.D.N.Y. 2005).................................................................7, 10, 11

*In re Parmalat Sec. Litig.*,
  497 F. Supp. 2d 526 (S.D.N.Y. 2007).............................................................................7

*In re Parmalat Sec. Litig.*,
  594 F. Supp. 2d 444 (S.D.N.Y. 2009)...........................................................................13

*In re Parmalat Sec. Litig.*,
  599 F. Supp. 2d 535 (S.D.N.Y. 2009).............................................................................7

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  592 F. Supp. 2d 608 (S.D.N.Y. 2009)...........................................................................12

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC*,
  __ F.3d __, 2009 U.S. App. LEXIS 12329 (2d Cir. June 9, 2009).................................5

*Pollack v. Laidlaw Holdings, Inc.*,
  1995 U.S. Dist. LEXIS 5909 (S.D.N.Y. May 3, 1995).................................................14

*Rich v. Maidstone Fin., Inc.*,
  2002 U.S. Dist. LEXIS 24510 (S.D.N.Y. Dec. 20, 2002) .......................................11, 14

*SEC v. First Jersey Sec., Inc.*,
  101 F.3d 1450 (2d Cir. 1996)......................................................................................7, 9

*SEC v. Pentagon Capital Mgmt. PLC*,
  2009 U.S. Dist. LEXIS 9632 (S.D.N.Y. Feb. 9, 2009) ................................................6

*In re WorldCom, Inc. Sec. Litig.*,
  294 F. Supp. 2d 392 (S.D.N.Y. 2003) ........................................................................8

*In re WorldCom, Inc. Sec. Litig.*,
  2004 U.S. Dist. Lexis 8661 (S.D.N.Y. May 18, 2004) ........................................12, 13


**STATUTES AND RULES**

15 U.S.C. § 78t ..............................................................................................................6, 12

17 C.F.R. § 240.12b-2 ......................................................................................................11

Fed. R. Civ. P. 12 ...............................................................................................................5

Plaintiffs Meridian Horizon Fund, LP, Meridian Horizon Fund II, LP, and Meridian Diversified Fund, LP (collectively, the "Onshore Plaintiffs"), Meridian Diversified Fund, Ltd., Meridian Diversified ERISA Fund, Ltd., Meridian Diversified Compass Fund, Ltd., and Meridian Absolute Return ERISA Fund, Ltd. (collectively, the "Offshore Plaintiffs," and together with the Onshore Plaintiffs, "plaintiffs") respectfully submit this memorandum of law in opposition to the motion of Oppenheimer Acquisition Corp. ("Oppenheimer Acquisition" or "OAC") to dismiss plaintiffs' claims against OAC.

## PRELIMINARY STATEMENT

Plaintiffs invested and lost more than $116 million in Rye Select Broad Market XL Fund, LP (the "Onshore XL Fund") and Rye Select Broad Market XL Portfolio Limited (the "Offshore XL Fund," and together with the Onshore XL Fund, the "XL Funds"), as a result of materially false and misleading statements made by Tremont Group Holdings, Inc. ("Tremont Group Holdings"), Tremont Partners, Inc. ("Tremont Partners"), and Tremont (Bermuda) Limited (collectively, "Tremont"). (Compl. ¶¶ 1, 19-20, 27-33.)[1] For the reasons set forth in plaintiffs' brief opposing Tremont's motion to dismiss, plaintiffs have stated a claim under Section 10(b) of the Exchange Act against each of the Tremont defendants.

Plaintiffs' claim against OAC is simple and straightforward – OAC, as a "control person" of all three of the Tremont defendants, is liable under Section 20(a) of the Exchange Act, which imposes liability on those who control primary violators of Section 10(b). Plaintiffs' allegations that (1) Tremont Group Holdings was 100% owned

---

[1] Citations to "Complaint" and "Compl." refer to the complaint filed by plaintiffs in this action.

by OAC, (2) OAC provided extensive support services to Tremont, (3) OAC directed Tremont to change its auditors from Ernst & Young to KPMG, and (4) OAC placed one of its high level executives/directors on the Board of Directors of Tremont Group Holdings, are consistent with allegations that courts in this Circuit have held to be sufficient to plead control under Section 20(a).

While OAC attempts to shift the focus to numerous hypothetical indicia of control that have not been pleaded in the Complaint, plaintiffs are not required to plead all such indicia. Moreover, whereas OAC addresses each of these indications of control separately, arguing that each alone is insufficient to plead control, these allegations in the aggregate are sufficient to plead control.

OAC also argues that plaintiffs do not allege that OAC was a culpable participant in the fraud perpetrated by Tremont. Courts in this district as well as the Circuits are split on whether a plaintiff must plead culpable participation, and the issue has not been resolved by the Second Circuit. As a number of courts have reasoned, since a plain reading of Section 20(a) indicates that the burden is on defendants to establish that they acted in good faith, plaintiffs are not required to allege culpable participation to state a claim.

## STATEMENT OF FACTS

The XL Funds were sold and managed by Tremont. (Compl. ¶¶ 1, 21-23, 39, 56-61, 73-76.) These funds' returns were derived from leveraged investments in other funds that also were sold and managed by Tremont (the "Reference Entities"). (*Id.* ¶¶ 1, 21-23, 39, 56-60.) The Reference Entities were the Rye Select Broad Market Fund, LP (the "Onshore Reference Entity") and Rye Select Broad Market Portfolio Limited (the

"Offshore Reference Entity"). (*Id.* ¶¶ 19-20.) The Onshore XL Fund also made direct investments in the Onshore Reference Entity. (*Id.* ¶ 19.) The Reference Entities were single-manager investment vehicles. (*Id.* ¶¶ 2, 39, 41.) Tremont served as investment manager, but delegated all investment decisions to Bernard L. Madoff ("Madoff") and Bernard L. Madoff Investment Securities, LLC ("BMIS"), a securities broker-dealer and investment advisor registered with the SEC, with its principal office in New York City. (*Id.* ¶¶ 2, 16-17, 19-20, 39, 60.) Madoff, through BMIS, purportedly executed all trades on behalf of the Reference Entities, and custodied their securities. (*Id.* ¶¶ 2, 17, 19-20, 39.)

Plaintiffs invested in the XL Funds because Tremont – in offering materials, responses to due diligence questionnaires, and direct conversations – represented that it was intimately familiar with Madoff's and BMIS's operations, and that it closely monitored Madoff's and BMIS's transactions, internal controls, and operational risk. (*Id.* ¶¶ 3, 40-78.) Tremont – through monthly performance reports, yearly financial statements, and direct conversations – also represented to plaintiffs that the assets Madoff and BMIS claimed to hold for the Reference Entities existed and were appreciating, and that the trades Madoff and BMIS claimed to have made for these funds actually occurred. (*Id.* ¶¶ 3, 45-46, 63-65, 68, 70-72, 77-81.) Tremont positioned itself as the gatekeeper of all Madoff-related information, in exchange for substantial "management" fees. (*Id.* ¶¶ 4, 39-78, 88.) Plaintiffs relied on these representations in making and retaining their investments in the XL Funds. (*Id.* ¶¶ 4, 41, 128, 139, 156, 166.)

In December 2008, it was revealed that Madoff was operating a massive Ponzi scheme, and that the Reference Entities he purportedly managed held no assets.

(*Id.* ¶¶ 5, 82-85.) Madoff pled guilty on March 12, 2009 to criminal charges, admitted to perpetrating this fraud since at least the early 1990s, and admitted that he never invested his investment advisory clients' assets in securities. (*Id.* ¶¶ 5, 83.) Instead, he deposited client funds in, and paid redemptions from, an account at Chase Manhattan Bank. (*Id.*)

Tremont would have been aware of these facts if it actually had conducted the due diligence and monitoring as it claimed. (*Id.* ¶¶ 6, 86-88.) Tremont either failed to perform this due diligence and monitoring, or it uncovered evidence of Madoff's Ponzi scheme and knowingly or recklessly misrepresented to plaintiffs' representatives that the XL Funds' assets existed and were appreciating. (*Id.*)

OAC is a corporation organized under the State of Delaware, with its principal place of business in New York, New York. (*Id.* ¶ 24.) OAC acquired defendant Tremont Group Holdings in 2001. (*Id.*) The Complaint alleges that,

> At all relevant times, Oppenheimer Acquisition had the power, both direct and indirect, to control Tremont Group Holdings (and its subsidiaries), and it did in fact exercise such control:
>
> (i) Tremont Group Holdings was 100% owned by Oppenheimer Acquisition;
>
> (ii) Oppenheimer Acquisition provided extensive support services to the Tremont Defendants, including compliance, audit, finance, and human resources;
>
> (iii) Oppenheimer Acquisition directed the Tremont Defendants to change its auditors from Ernst & Young to KPMG, which

      Oppenheimer Acquisition engaged for its
      subsidiaries' audit work;[2] and

(vi) Oppenheimer Acquisition placed John V. Murphy – President and Director of Oppenheimer Acquisition since July 2001, Chairman, Chief Executive Officer, and Director of OppenheimerFunds since June 2001, and President of OppenheimerFunds from September 2000 through February 2007 – on the Board of Directors of Tremont Group Holdings (f/k/a Tremont Capital Management) in November 2001.

(*Id.* ¶ 146.)[3]

## ARGUMENT

"The allegations of the ... Complaint ... in the adjudication of a motion to dismiss under Rule 12(b)(6) must be accepted as true, drawing all inferences from the pleaded facts in Plaintiffs' favor ...." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC*, __ F.3d __, 2009 U.S. App. LEXIS 12329, at *3 (2d Cir. June 9, 2009). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an

---

[2] As is now evident from the Redacted letter to Anthony Marcello of Tremont Group Holdings from Christine M. Buchanan of KPMG, dated Oct. 6, 2006 (annexed to the Declaration of R. Corey Worcester in Support of Defendant KPMG LLP's Motion to Dismiss the Complaint or to Stay the Action, filed on May 20, 2009), the XL Funds also began to use KPMG as their auditors in lieu of Ernst & Young.

[3] OAC contends that "[t]here is no allegation that any Plaintiff purchased as a result of, or even after, the OAC acquisition of Tremont Group." (Defendant Oppenheimer Acquisition Corp.'s Memorandum of Law in Support of Its Motion to Dismiss the Complaint ("Br.") at 6.) However, the Complaint alleges that each plaintiff invested in the XL Funds between October 1, 2006 and August 1, 2008. (*See* Compl. ¶¶ 27-33.) These dates are obviously after the 2001 OAC acquisition of Tremont Group. Moreover, since the only claim against OAC is for Section 20(a) control person liability, it is irrelevant whether any plaintiff purchased "as a result of ... the OAC acquisition of Tremont Group." The crux of plaintiffs' Section 20(a) claim is that OAC controlled the Tremont defendants, who were the primary violators, and that plaintiffs sustained significant losses as a result of Tremont's improper conduct.

entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009). The plausibility standard is not akin to a "probability requirement." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Rather, "the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *SEC v. Pentagon Capital Mgmt. PLC*, 2009 U.S. Dist. LEXIS 9632, at *32 (S.D.N.Y. Feb. 10, 2009) (internal quotations omitted).

## I.
## PLAINTIFFS NEED ONLY PLEAD AN UNDERLYING VIOLATION AND CONTROL IN ORDER TO STATE A SECTION 20(a) CLAIM

OAC argues that plaintiffs' claim fails because the Complaint does not allege "culpable participation" by OAC. This contention is irrelevant, however, because culpable participation need not be pleaded to state a claim under Section 20(a), which states:

> Every person who, directly or indirectly, controls any person liable under any provision of this *title* or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). In other words, and as OAC recognizes, Section 20(a) of the Exchange Act imposes liability on "'persons who "control" those who violate the [Exchange] Act.'" (Br. at 7 (quoting *Cohen v. Citibank, N.A.*, 954 F. Supp. 621, 629 (S.D.N.Y. 1996).) As discussed below, plaintiffs have pleaded a primary violation of Section 10(b) by Tremont, and that OAC had the actual ability to, and in fact did, control Tremont at all relevant times. (*See infra* Section II; *see also* Compl. ¶¶ 145-148.)

There is a split among district courts in this Circuit, as well as between the Circuits, as to whether a plaintiff must plead culpable participation in order to survive a motion to dismiss under Section 20(a). *See In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 308 (S.D.N.Y. 2005) ("[W]hether culpable participation must be pleaded as well as proven is an interesting question on which courts, both within and outside this circuit are deeply divided.") (internal quotations and citations omitted); *In re Parmalat Sec. Litig.*, 599 F. Supp. 2d 535, 537-38 (S.D.N.Y. 2009) (same); *In re Bisys Sec. Litig.*, 2005 U.S. Dist. LEXIS 28343, at *4 (S.D.N.Y. Nov. 16, 2005) (same). Judge Kaplan noted in *Parmalat* that, for example, the Seventh, Eighth, Ninth, and Eleventh Circuits all have held that culpable participation need not be alleged, while the Third and Fourth Circuits disagreed. *See In re Parmalat*, 375 F. Supp. 2d at 308 n.198. The Second Circuit has not yet rendered a holding deciding this issue:

> The Court notes that the Second Circuit recently listed culpable participation as an element of liability under Section 20(a), citing *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996). *ATSI Commc'ns, Inc. [v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007)]. The statement in *ATSI*, however, was *dictum*, as indeed was the statement in *First Jersey* to which it referred. While the Court gives careful attention even to *dicta* of the Court of Appeals, it respectfully declines to follow these, which appear to be at odds with the language of Section 20(a) of the Exchange Act.

*In re Parmalat Sec. Litig.*, 497 F. Supp. 2d 526, 532 n.42 (S.D.N.Y. 2007).

Judge Kaplan in *Parmalat* explained that plaintiffs are not required to plead culpable participation because a plain reading of Section 20(a) supports the conclusion that "the defendant bears the burden of establishing good faith and lack of inducement, not that the plaintiff must allege the opposite in its pleadings." *In re*

*Parmalat*, 375 F. Supp. 2d at 308. This conclusion is consistent with *Marbury Management, Inc. v. Kohn*, 629 F.2d 705 (2d Cir. 1980), in which the Second Circuit, in evaluating a Section 20(a) claim, held that once plaintiff had established control, the burden of proving good faith shifted to the defendant. *Id.* at 716. Similarly, in *In re WorldCom, Inc. Securities Litigation*, 294 F. Supp. 2d 392 (S.D.N.Y. 2003), Judge Cote stated:

> From this review it appears that a plaintiff must plead only the existence of a primary violation by a controlled person and the direct or indirect control of the primary violator by the defendant in order to state a claim under *Section 20(a)*.
>
> \* \* \*
>
> Although previous opinions of this Court have imposed a greater burden on plaintiffs at the pleading stage, this Court now finds that plaintiffs need not meet the PSLRA's heightened pleading standard in alleging a violation of Section 20(a), or separately allege culpable participation.

294 F. Supp. 2d at 415.

Other Circuits have similarly reasoned that Section 20(a) itself does not impose a burden on a plaintiff to allege or prove culpable participation by the controlling person. *See G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 958 (5th Cir. 1981) ("the plain meaning of the statute [indicates that l]ack of participation and good faith constitute an affirmative defense for a controlling person"); *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992) (Section 20(a) "provides an affirmative defense for controlling persons, one which the defendant bears the burden of proving."); *Metge v. Baehler*, 762 F.2d 621, 631 (8th Cir. 1985) (adopting the Fifth Circuit's reasoning that the plain meaning of the "statute and regulation ... does not require participation in the wrongful transaction."); *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir.)

(en banc), *as amended*, 1990 U.S. App. LEXIS 19892 (9th Cir. 1990) ("Now, we make clear that in an action based on § 20(a), the defendant who is a controlling person, and not the plaintiff, bears the burden of proof as to defendant's good faith. Thus, a plaintiff need not make a showing as to defendant's culpable participation ...."); *First Interstate Bank of Denver, N.A. v. Pring*, 969 F.2d 891, 897 (10th Cir. 1992), *rev'd on other grounds sub nom.*, *Central Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164 (1994) ("Placing the burden of establishing the [good faith] defense on the defendant makes sense because there would be little reason for the controlling person provision unless it differed in some meaningful ways from the standards for noncontrolling person liability.") (quotation and citation omitted); *Brown v. Enstar Group, Inc.*, 84 F.3d 393, 396 n.6 (11th Cir. 1996) (rejecting the culpable participation requirement).[4]

Thus, to properly state a claim under Section 20(a) against OAC, plaintiffs need only plead facts alleging that Tremont violated Section 10(b) and that OAC controlled Tremont.[5]

---

[4] The cases cited by OAC in which courts granted *summary judgment* due to plaintiffs' failure to *show*, *demonstrate*, or *prove* that the controlling entity was a culpable participant in the fraud perpetrated by the primary violator are inapposite. *See S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996) (an appeal from a judgment); *In re Corning*, 349 F. Supp. 2d 698, 722 (S.D.N.Y. 2004) (Griesa, J.) (decided on a motion for summary judgment). At this stage, the issue is not whether culpable participation must be *proven* as part of plaintiffs' *prima facie* case at trial, but whether plaintiffs must allege it in their complaint.

[5] If the Court finds that plaintiffs must plead culpable participation and that plaintiffs in the Securities Actions and/or State Law Actions in *In re Tremont Securities Law, State Law and Insurance Litig.*, Master File No. 08-cv-11117, have sufficiently pleaded culpable participation, plaintiffs respectfully request leave to amend the Complaint to add similar allegations.

# II.
# PLAINTIFFS HAVE PROPERLY PLEADED A
# SECTION 20(a) CLAIM AGAINST OAC

## A. Plaintiffs Have Pleaded a Primary Violation of Section 10(b)

In order to state a claim under Section 20(a), a complaint must plead facts sufficient to state a Section 10(b) claim against at least one of the "controlled persons," *i.e.*, one of the Tremont defendants. As addressed in Plaintiffs' Memorandum of Law in Opposition to The Tremont Defendants' Motion to Dismiss the Complaint at Section I, the Complaint properly alleges a primary violation of Section 10(b) by all three of the Tremont defendants.

## B. Plaintiff's Have Properly Alleged that OAC "Controlled" Tremont

The fact-intensive issue of whether someone is a "controlling person" is one that courts have been reluctant to resolve on a motion to dismiss:

> For the purposes of Section 20(a), a person has control if that person possesses direct or indirect ... power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise. Whether a person is a controlling person is a fact-intensive inquiry, and generally should not be resolved on a motion to dismiss.

*Katz v. Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269, 276 (S.D.N.Y. 2008) (quotations and citations omitted). *See also In re Parmalat*, 375 F. Supp. 2d at 310 (same). Plaintiffs have alleged facts sufficient to establish that OAC possessed such power over Tremont.[6]

---

[6] OAC cites *In re Global Crossing, Ltd. Securities Litigation*, 2005 U.S. Dist. LEXIS 16228, at *40 (S.D.N.Y. Aug. 8, 2005), for the proposition that "a determination of Section 20(a) accountability 'requires an individualized determination of a defendant's control of the primary violator as well as a defendant's particular culpability.'" (Br. at 8.) But the court held that

First, plaintiffs aver that Tremont Group Holdings was 100% owned by OAC. (Compl. ¶¶ 21, 146.) Courts have long recognized stock ownership as one of the most significant indicators of control for Section 20(a) purposes. *See In re Global Crossing, Ltd. Sec. Litig.*, 2005 WL 1875445, at *4 (S.D.N.Y. Aug. 5, 2005) (collecting "persuasive authority in which courts have sustained Section 15 claims" – which OAC concedes are analyzed the same as Section 20(a) claims (*see* Br. at 10 n.9.) – "against a parent corporation for the acts of a subsidiary"); *Rich v. Maidstone Fin., Inc.*, 2002 U.S. Dist. LEXIS 24510, at *36-37 (S.D.N.Y. Dec. 20, 2002) ("Plaintiff has alleged that [defendant] owned 50-75% of the Maidstone stock during the time of the alleged fraud. Such a large interest is sufficient to support a 'reasonable inference' of control."); *Borden, Inc. v. Spoor Behrins Campbell & Young, Inc.*, 735 F. Supp. 587, 590-91 (S.D.N.Y. 1990) (finding "[p]laintiffs' allegations that defendants were sole shareholders" of the primary violator sufficient to allege control status for a Section 20(a) claim); *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d at 310; *see also* 17 C.F.R. § 240.12b-2 (under the Exchange Act, "control ... means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the *ownership of voting securities*, by contract, or otherwise") (emphasis added). Not only does the Complaint allege that Tremont Group Holdings was a wholly-owned and controlled subsidiary of OAC (Compl. ¶¶ 21, 146),[7] but OAC concedes that

---

plaintiffs must allege culpable participation, and this quotation was taken from the section dealing with that element, rather than control status. Because culpable participation need not, in fact, be pleaded, this citation is inapposite.

[7] OAC notes that "OAC is two levels removed from Tremont Partners on the corporate organization chart." (Br. at 1.) This is irrelevant. Here, the Complaint alleges Tremont Group

its sole business is "to own the stock of two other entities," one of which is Tremont Group Holdings. (Br. at 1). This is itself sufficient to aver control.

The single case OAC cites on this point – *In re WorldCom, Inc. Securities Litigation*, 2004 U.S. Dist. Lexis 8661 (S.D.N.Y. May 18, 2004) – is easily distinguishable. In dismissing the second amended complaint in that case, the court specifically noted that the plaintiffs had already enjoyed the benefit of "extensive discovery," and that their failure to provide fair notice of their theory of control beyond the parent/subsidiary relationship at that point therefore "must be understood as a concession that they have no basis for an assertion of control." *Id.* at *11-12. Moreover, the court there focused on the fact that the complaint did "not allege any ownership of voting securities" or other basis for asserting control. *Id.* at *10-11. Here, in contrast, plaintiffs allege that "Tremont Group Holdings was 100% owned by Oppenheimer Acquisition," as well as several additional indicia of control. (Compl. ¶ 146.) *See, e.g., Baxter v. A.R. Baron & Co.*, 1996 U.S. Dist. LEXIS 15098, at *17 (S.D.N.Y. Oct. 11,

---

Holdings was a wholly-owned and controlled subsidiary of OAC (Compl. ¶¶ 21, 146), and that "Tremont Partners is the chief operating subsidiary of defendant Tremont Group Holdings." (*Id.* ¶ 22.) The fact that Tremont Group Holdings is an intermediary wholly-owned subsidiary of OAC between OAC and Tremont Partners does not defeat the plaintiffs' allegations of control over Tremont Partners. To the contrary, the plain language of Section 20(a) provides that indirect control is sufficient to confer liability:

> Every person who, directly *or indirectly*, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall *also be liable jointly and severally* with and to the same extent as such controlled person to any person to whom such controlled person is liable ....

15 U.S.C. § 78t(a) (emphasis added); *see also Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 592 F. Supp. 2d 608, 637 (S.D.N.Y. 2009) (denying motion for partial summary judgment where issues of fact existed as to a control person claim against an indirect parent).

1996) ("Stock can be a means of control over a corporate entity but it is not the exclusive means of exercising control for purposes of § 20(a). Other means include 'other business relationships, interlocking directors, family relationships and a myriad of other factors.'") (citation omitted). In addition, plaintiffs have not yet had an opportunity to take any – let alone *extensive* – discovery of either OAC or Tremont, and thus cannot be held to have conceded the non-existence of other bases for an assertion of control by OAC.[8]

Even though 100% ownership would itself be sufficient to aver control, plaintiffs have also alleged additional facts which, when considered in conjunction with OAC's ownership interest, state a claim for control person liability. Specifically, the Complaint additionally alleges (1) that OAC provided extensive support services to Tremont, (2) that OAC directed Tremont to change the auditors they used (including for the funds they managed) from Ernst & Young to KPMG, and (3) that OAC placed one of its high level executives/directors on the Board of Directors of Tremont Group Holdings. (*Id.* ¶ 146.) These facts indicate that OAC could, and did, dictate Tremont's decision-making in significant areas, and that it played an important role in Tremont's ongoing operations.

In an attempt to minimize these additional indicia of control, OAC improperly addresses each allegation individually, and asserts that each one is insufficient to aver control. (*See* Br. at 10-13.) But plaintiffs' enumerated allegations of control

---

[8] The court in *In re Global Crossing*, cited by OAC (Br. at 11), distinguished *In re WorldCom* on similar grounds. *See* 2005 WL 1875445 at *4 ("In *WorldCom*, Judge Cote dismissed a Section 15 claim against a parent corporation as a control person for its subsidiary, but only after the plaintiffs 'had the benefit of extensive discovery' … but plaintiffs have pled more than that.").

cannot each be evaluated in isolation; rather, the court should "[c]onsider[] the totality of the circumstances .... " *See In re Parmalat Sec. Litig.*, 594 F. Supp. 2d 444, 459-60 (S.D.N.Y. 2009); *see also Mishkin v. Ageloff*, 1998 U.S. Dist. LEXIS 14890, at *78-79 (S.D.N.Y. Sept. 23, 1998) (reviewing the "facts from which a 'reasonable inference' of control can be made" from "the Complaint as a whole," rather than in the "piecemeal fashion" adopted by the defendant).

The totality of plaintiffs' allegations sufficiently plead that OAC had the ability to – and did in fact – control Tremont's businesses. *See, e.g., In re Leslie Fay Cos. Sec. Litig.*, 918 F. Supp. 749, 763 (S.D.N.Y. 1996) (although defendant "attempts to isolate various indicia of control and argue that each, by itself, does not establish control person liability ... we must consider the total effect of the various indicia of control in combination.");[9] *Pollack v. Laidlaw Holdings, Inc.*, 1995 U.S. Dist. LEXIS 5909, at *58 (S.D.N.Y. May 3, 1995) (finding sufficient plaintiffs' allegations that holding company controlled primary violators "through one hundred percent stock ownership and through common officers and directors.").[10]

---

[9] Although plaintiffs disagree with the courts' holdings in *Mishkin*, *Rich*, and *In re The Leslie Fay Cos.* that culpable participation must be pleaded, plaintiffs agree with those courts' well-reasoned approach to pleading control.

[10] If the Court should find that plaintiffs have not alleged sufficient indicia of control and that plaintiffs in the Securities Actions and/or State Law Actions in *In re Tremont Securities Law, State Law and Insurance Litig.*, Master File No. 08-cv-11117, have sufficiently pleaded OAC's control status, plaintiffs respectfully request leave to amend the Complaint to add similar allegations.

## CONCLUSION

For the foregoing reasons, the Court should deny OAC's motion to dismiss plaintiffs' claims against OAC.

Dated: New York, New York
July 14, 2009

>Respectfully submitted,
>
>FRIEDMAN KAPLAN SEILER &
>ADELMAN LLP
>
>*[signature]*
>
>Scott M. Berman (sberman@fklaw.com)
>Anne E. Beaumont
>John N. Orsini
>Steven E. Frankel
>Kevin L. Oberdorfer
>1633 Broadway
>New York, NY 10019-6708
>(212) 833-1100
>
>*Attorneys for Plaintiffs*