UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                             :

MERIDIAN HORIZON FUND, LP, MERIDIAN   :
HORIZON FUND II, LP, MERIDIAN DIVERSIFIED  :
FUND, LP, MERIDIAN DIVERSIFIED FUND, LTD., :   No. 09 Civ. 3708 (TPG)
MERIDIAN DIVERSIFIED ERISA FUND, LTD.,  :
MERIDIAN DIVERSIFIED COMPASS FUND, LTD., :
and MERIDIAN ABSOLUTE RETURN ERISA FUND,:   ECF CASE
LTD.,                                :   Electronically Filed
                             :
                   Plaintiffs,   :
                             :
           - against -        :
                             :
TREMONT GROUP HOLDINGS, INC., TREMONT  :
PARTNERS, INC., TREMONT (BERMUDA)    :
LIMITED, OPPENHEIMER ACQUISITION    :
CORPORATION, KPMG LLP, and KPMG     :
(CAYMAN),                          :
                             :
                   Defendants.  :
                             :
------------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT KPMG LLP'S MOTION TO DISMISS OR TO STAY THE ACTION IN FAVOR OF ARBITRATION

FRIEDMAN KAPLAN SEILER &
  ADELMAN LLP
1633 Broadway
New York, NY 10019-6708
(212) 833-1100

July 14, 2009          *Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT .......................................................................... 1

STATEMENT OF FACTS ................................................................................... 3

ARGUMENT ........................................................................................................ 5

I.    THE COMPLAINT PROPERLY PLEADS CLAIMS UNDER
      SECTION 10(B) ......................................................................................... 6

      A.    The Complaint Sufficiently Alleges That KPMG LLP Was
            Reckless in Misrepresenting That It Had Conducted GAAS Audits ........... 6

            1.    The Complaint Sets Forth Specific Facts Giving Rise to
                  a Strong Inference of Scienter ....................................................... 6

            2.    The Inference of KPMG LLP's Recklessness Is at Least as
                  Compelling as Any Plausible Competing Inference ..................... 11

      B.    The Complaint Sets Forth Specific Allegations of Reliance .................... 13

      C.    Plaintiffs Properly Allege Loss Causation ............................................... 15

II.   THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION ........ 17

III.  THE STATE LAW CLAIMS ARE PROPERLY PLED ...................................... 18

      A.    The Martin Act Does Not Preempt Claims for Negligence ....................... 18

      B.    The Martin Act Does Not Preempt Claims for Fraud ................................ 21

      C.    The Complaint Properly Pleads Common Law Fraud. .............................. 21

      D.    The Complaint Properly Pleads Negligence. ............................................ 22

IV.   PLAINTIFFS' CLAIMS ARE NOT SUBJECT TO ARBITRATION ................. 23

CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Achtman v. Kirby, McInerney & Squire, LLP,*
    464 F.3d 328 (2d Cir. 2006)........................................................................................17

*AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC,*
    2005 U.S. Dist. LEXIS 21605 (S.D.N.Y. Sept. 26, 2005).........................................19

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.,*
    381 F. Supp. 2d 192 (S.D.N.Y. 2004).......................................................................10

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009)..................................................................................................5

*In re Bayou Hedge Fund Litig.,*
    534 F. Supp. 2d 405 (S.D.N.Y. 2007)...........................................................12, 13, 19

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 549 (2007)......................................................................................................5

*Berk v. Moore, Clayton & Co.,*
    2006 U.S. Dist. LEXIS 90119 (S.D.N.Y. Dec. 11, 2006) ....................................19, 20

*Butvin v. Doubleclick, Inc.,*
    2000 U.S. Dist. LEXIS 8772 (S.D.N.Y. June 26, 2000)............................................19

*Caboara v. Babylon Cove Dev., LLC,*
    862 N.Y.S.2d 535 (2d Dep't 2008)............................................................................20

*Cabrera v. New York City,*
    2004 U.S. Dist. LEXIS 18402 (S.D.N.Y. Sept. 15, 2004)..........................................17

*Castellano v. Young & Rubicam, Inc.,*
    257 F.3d 171 (2d Cir. 2001).......................................................................................19

*CBS, Inc. v. Snyder,*
    798 F. Supp. 1019 (S.D.N.Y. 1992)...........................................................................24

*Cent. Bank, N.A. v. First Interstate Bank, N.A.,*
    511 U.S. 164 (1994)....................................................................................................13

*In re Colonial P'ship Litig.,*
    896 F. Supp. 250 (D. Conn. 1995).........................................................................15, 16

*In re Complete Mgmt. Sec. Litig.*,
   153 F. Supp. 2d 314 (S.D.N.Y. 2001).......................................................................10, 11

*Credit Alliance Corp. v. Arthur Andersen & Co.*,
   65 N.Y.2d 536 (1985) ..................................................................................................22

*Cromer Fin. Ltd. v. Berger*,
   2001 U.S. Dist. LEXIS 14744 (S.D.N.Y. Sept. 19, 2001)..........................................21

*In re Doral Finance Corp. Sec. Litig.*,
   563 F. Supp. 2d 461 (S.D.N.Y. 2008)..........................................................................10

*Dover Ltd. v. A.B. Watley, Inc.*,
   423 F. Supp. 2d 303 (S.D.N.Y. 2006)..........................................................................19

*Dujardin v. Liberty Media Corp.*,
   359 F. Supp. 2d 337 (S.D.N.Y. 2005)..........................................................................19

*ECA & Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009)...........................................................................................6

*Faulkner v. Beer*,
   2007 N.Y. Misc. LEXIS 8829 (Sup. Ct. N.Y. County Dec. 21, 2007).......................20

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*,
   376 F. Supp. 2d 385 (S.D.N.Y. 2005).............................................................14, 15, 16

*Gagliardi v. Universal Outdoor Holdings, Inc.*,
   137 F. Supp. 2d 374 (S.D.N.Y. 2001)..........................................................................17

*Hamlet on Olde Oyster Bay Home Owners Ass'n, Inc. v. Holiday Org., Inc.*,
   874 N.Y.S.2d 508 (2d Dep't 2009)...............................................................................20

*In re IMAX Sec. Litig.*,
   587 F. Supp. 2d 471 (S.D.N.Y. 2008)............................................................................7

*Jana Master Fund, Ltd. v. JPMorgan Chase & Co.*,
   2008 N.Y. Misc. LEXIS 1435 (Sup. Ct. N.Y. County Mar. 12, 2008) .......................19

*Kassover v. UBS AG*,
   2008 U.S. Dist. LEXIS 103211 (S.D.N.Y. Dec. 19, 2008) ...................................19, 20

*Katz v. Image Innovations Holdings, Inc.*,
   542 F. Supp. 2d 269 (S.D.N.Y. 2008)..........................................................................10

*Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship*,
   12 N.Y.3d 236, 2009 N.Y. LEXIS 138 (Apr. 2, 2009)................................................21

*Kramer v. W10Z/515 Real Estate Ltd. P'ship*,
    844 N.Y.S.2d 18 (1st Dep't 2007) ............................................................21

*Kruse v. Wells Fargo Home Mortgage, Inc.*,
    383 F.3d 49 (2d Cir. 2004)......................................................................18

*Lattanzio v. Deloitte & Touche LLP*,
    476 F.3d 147 (2d Cir. 2007).....................................................................16

*Lennon v. Seaman*,
    2001 U.S. Dist. LEXIS 2798 (S.D.N.Y. Mar. 16, 2001) .............................17

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005).................................................................14, 15

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006).................................................................21, 22

*Lewin v. Lipper Convertibles, L.P.*,
    2004 U.S. Dist. LEXIS 8484 (S.D.N.Y. May 12, 2004)...........................9, 14

*Louros v. Kreicas*, ·
    367 F. Supp. 2d 572 (S.D.N.Y. 2005)...................................................18, 19

*Marcus v. Frome*,
    329 F. Supp. 2d 464 (S.D.N.Y. 2004)........................................................19

*In re Marsh & McLennan Co., Inc. Sec. Litig.*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006)........................................................19

*In re Methyl Tertiary Butyl Ether [MTBE] Prods. Liab. Litig.*,
    510 F. Supp. 2d 299 (S.D.N.Y. 2007)........................................................17

*Mfrs. Life Ins. Co. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    2000 U.S. Dist. LEXIS 7444 (S.D.N.Y. June 1, 2000)................................19

*Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*,
    2002 U.S. Dist. LEXIS 16995 (S.D.N.Y. Sept. 10, 2002)............................19

*Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*,
    2003 U.S. Dist. LEXIS 15206 (S.D.N.Y. Sept. 2, 2003)........................20, 21

*Nathel v. Siegal*,
    592 F. Supp. 2d 452 (S.D.N.Y. 2008)........................................................13

*In re New Century*,
    588 F. Supp. 2d 1206 (C.D. Cal. 2008) ......................................................10

*Noz v. Value Investing Partners, Inc.,*
  1999 U.S. Dist. LEXIS 8836 (S.D.N.Y. June 14, 1999)..............................19

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC,*
  __ F.3d __, 2009 U.S. App. LEXIS 12329 (2d Cir. June 9, 2009)................................5

*Pro Bono Invs., Inc. v. Gerry,*
  2005 U.S. Dist. LEXIS 22348 (S.D.N.Y. Sept. 30, 2005)............................19

*Rothman v. Gregor,*
  220 F.3d 81 (2d Cir. 2000)......................................................................11

*In re Salomon Inc. Shareholders' Derivative Litig.,*
  1994 U.S. Dist. LEXIS 13874 (S.D.N.Y. Sept. 28, 1994).........................23

*Scalp & Blade, Inc. v. Advest, Inc.,*
  722 N.Y.S.2d 639 (4th Dep't 2001)..........................................................20

*SEC v. Pentagon Capital Mgmt. PLC,*
  2009 U.S. Dist. LEXIS 9632 (S.D.N.Y. Feb. 10, 2009)...............................6

*Sedona Corp. v. Ladenburg Thalmann & Co.,*
  2005 U.S. Dist. LEXIS 16382 (S.D.N.Y. Aug. 9, 2005)......................19, 20

*South Cherry Street, LLC v. Hennessee Group LLC,*
  No. 07-3658-cv, slip op. (2d Cir. July 14, 2009).............................12, 13, 19

*Spirit Partners, L.P. v. Audiohighway.com,*
  2000 U.S. Dist. LEXIS 7236 (S.D.N.Y. May 25, 2000).............................19

*Sterling National Bank v. Ernst & Young, LLP,*
  2005 N.Y. Misc. LEXIS 2546, 2005 NY Slip Op. 51850U (Sup. Ct. N.Y.
  County Jan. 7, 2005)...............................................................................16

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.,*
  2003 U.S. Dist. LEXIS 7869 (S.D.N.Y. May 12, 2003).............................10

*Thompson v. Parkchester Apartments Co.,*
  670 N.Y.S.2d 858 (1st Dep't 1998)......................................................20, 21

*Whitehall Tenants Corp. v. Estate of Olnick,*
  623 N.Y.S.2d 585 (1st Dep't 1995)..........................................................21

*In re Winstar Commc'ns,*
  2006 U.S. Dist. LEXIS 7618 (S.D.N.Y. Feb. 27, 2006).............................10

*Zuckerman v. Harnischfeger Corp.*,
    591 F. Supp. 112 (S.D.N.Y. 1984) ........................................................................13, 14

## STATUTES AND RULES

28 U.S.C. § 1367.........................................................................................................17

Fed. R. Civ. P. 8.........................................................................................................18

Fed. R. Civ. P. 12.........................................................................................................5

## OTHER AUTHORITIES

Kara Scannell, *Crisis on Wall Street:  SEC Chief Pledges Effort to Bolster*
    *Enforcement*, Wall St. J. (Feb. 7, 2009)..........................................................................8

Plaintiffs Meridian Horizon Fund, LP, Meridian Horizon Fund II, LP, and Meridian Diversified Fund, LP (collectively, the "Onshore Plaintiffs"), and Meridian Diversified Fund, Ltd., Meridian Diversified ERISA Fund, Ltd., Meridian Diversified Compass Fund, Ltd., and Meridian Absolute Return ERISA Fund, Ltd. (collectively, the "Offshore Plaintiffs," and together with the Onshore Plaintiffs, "plaintiffs") respectfully submit this memorandum of law in opposition to the motion of KPMG LLP to dismiss the claims against KPMG LLP or alternatively to stay the action in favor of arbitration.

## PRELIMINARY STATEMENT

Plaintiffs invested and lost more than $116 million in Rye Select Broad Market XL Fund, LP (the "Onshore XL Fund") and Rye Select Broad Market XL Portfolio Limited (the "Offshore XL Fund," and together with the Onshore XL Fund, the "XL Funds"). (Compl. ¶¶ 1, 19-20, 27-33.)[1] The XL Funds were managed from Rye, New York by defendants Tremont Group Holdings, Inc., Tremont Partners, Inc., and Tremont (Bermuda) Limited (collectively, "Tremont") (*id.* ¶¶ 1, 21-23, 56-59, 61, 73-76), and were audited by KPMG LLP and its affiliate KPMG Cayman. (*Id.* ¶¶ 7, 89.) Plaintiffs lost over $43 million in the Onshore XL Fund as a result of KPMG LLP's materially false and misleading statements in its audit reports. (*Id.* ¶ 35.)

KPMG LLP's motion to dismiss is baseless. Plaintiffs adequately plead scienter to support their fraud claims. Tremont concentrated with Bernard L. Madoff ("Madoff") and Bernard L. Madoff Investment Securities, LLC ("BMIS") all investment advisory, brokerage, and custodial functions for the reference entity fund upon which the

---

[1] Citations to "Complaint" and "Compl." refer to the complaint filed by plaintiffs in this action.

Offshore XL Fund's returns were derived. (*Id.* ¶¶ 2, 7, 19-20, 39, 60.) Accordingly, Tremont relied exclusively on Madoff and BMIS for all of the asset and trade information reported to plaintiffs. (*Id.*)

Given the "significant risks" under generally accepted audit standards ("GAAS") associated with these circumstances, GAAS required KPMG LLP to obtain sufficient appropriate audit evidence to support (i) the existence of the assets Madoff and BMIS claimed to hold and invest for the Onshore Reference Entity, and (ii) the occurrence of the purported trades that generated the income reported in both funds' financial statements. (*Id.* ¶¶ 7, 90-98.) KPMG LLP, by its own admission (*see* Br. at 8),[2] failed to do so, meaning its audits were so deficient that they amounted to no audit at all. (Compl. ¶¶ 10, 104-113.) Nonetheless, KPMG LLP issued audit reports in which it stated it had conducted GAAS-compliant audits. (*Id.* ¶¶ 11, 25, 115, 117.) These facts support a strong inference of KPMG LLP's recklessness.

In addition, KPMG LLP's arguments on reliance and loss causation are baseless. Its assertion that plaintiffs cannot have relied on both its audit reports and Tremont's statements ignores well-settled law that there can be multiple violators of the securities laws. As for loss causation, plaintiffs allege that KPMG LLP misrepresented that it had conducted GAAS-compliant audits, which induced plaintiffs to purchase interests in the XL Funds. (*Id.* ¶¶ 114-121.) If KPMG LLP had conducted GAAS-compliant audits, Madoff's Ponzi scheme would have been revealed, and plaintiffs would not have so purchased. (*Id.* ¶¶ 11, 112, 120.) It was therefore foreseeable to KPMG LLP

---

[2] Citations to "Br." refer to the Memorandum of Law in Support of Defendant KPMG LLP's Motion to Dismiss Plaintiffs' Complaint, filed by KPMG LLP in this action.

that plaintiffs would suffer losses if Madoff was actually running a Ponzi scheme. (*Id.* ¶¶ 11, 119-120.)

This court should exercise supplemental jurisdiction over plaintiffs' state law claims, even if it dismisses plaintiffs' federal securities fraud claim against KPMG LLP, if it sustains a federal claim against *any* defendant in this action – which it should.

The Martin Act does not preempt plaintiffs' negligence claim because it is based on KPMG LLP's failure to exercise due care in conducting its audits – *not* on deceptive conduct; and it does not preempt plaintiffs' fraud claim, which requires scienter. The Complaint otherwise states a claim for negligence: it explains that KPMG LLP had a duty to use reasonable professional care, or the competence or skill of a professional independent auditor, in conducting its audits; identifies the relevant GAAS requirements; explains how KPMG LLP acted improperly; and asserts that plaintiffs justifiably relied on KPMG LLP's performance of its duties when they decided to invest in the Offshore XL Fund, and were damaged by KPMG LLP's wrongful conduct.

Finally, plaintiffs' claims are direct, not derivative, and are not subject to arbitration, because plaintiffs are not parties to KPMG LLP's engagement letters with the Onshore XL Fund containing the arbitration clause.

## STATEMENT OF FACTS

The XL Funds' returns were derived from leveraged investments in other funds that also were sold and managed by Tremont: Rye Select Broad Market Fund, LP (the "Onshore Reference Entity") and Rye Select Broad Market Portfolio Limited (the "Offshore Reference Entity," and together with the Onshore Reference Entity, the "Reference Entities"). (Compl. ¶¶ 1, 19-23, 56-60.) The Onshore XL Fund also made direct investments in the Onshore Reference Entity. (*Id.* ¶ 19.) The Reference Entities

were single-manager investment vehicles. (*Id.* at ¶¶ 2, 39, 41.) Tremont served as investment manager, but delegated all investment decisions to Madoff and to BMIS, a securities broker-dealer and investment advisor registered with the SEC, with its principal office in New York, New York. (*Id.* ¶¶ 2, 16-17, 19-20, 39, 60.) Madoff, through BMIS, purportedly executed all trades on behalf of the Reference Entities and custodied their securities. (*Id.* ¶¶ 2, 17, 19-20, 39.)

In December 2008, it was revealed that Madoff was operating a massive Ponzi scheme, and that the Reference Entities whose assets he purportedly managed in fact held little or no assets. (*Id.* ¶¶ 5, 82-85.) Madoff pled guilty to criminal charges on March 12, 2009, admitted to perpetrating this fraud since at least the early 1990s, and admitted that he never invested his investment advisory clients' assets in securities. (*Id.* ¶¶ 5, 83.) Instead, he deposited client funds in an account at Chase Manhattan Bank, and paid redemptions from that account. (*Id.*) Because Madoff held no assets for his investment advisory clients, and made no trades, KPMG LLP could not have obtained corroboration of these assets or trades from sources independent of BMIS. (*Id.* ¶¶ 10, 106-113.)

BMIS's auditor, Friehling & Horowitz, C.P.A., P.C. ("F&H"), failed to perform audit procedures to corroborate the existence of the assets BMIS purportedly held for Madoff's investment advisory clients and the occurrence of trades BMIS purportedly executed for these clients. (*Id.* ¶¶ 9, 18, 99-101.) F&H's reputation and the inadequacy of its work made its audit reports unreliable.[3] (*Id.*)

---

[3] F&H was a three-person firm that had not been "peer-reviewed," and had only one active accountant, David Friehling. (*Id.* ¶¶ 9, 18, 99.) Friehling worked out of a small storefront office, and reported to the American Institute of Certified Public Accountants that he did not

KPMG LLP sent to the Onshore Plaintiffs its unqualified audit opinions on the Onshore XL Fund's and the Onshore Reference Entity's 2006 and 2007 financial statements, and on the American Masters Broad Market Prime Fund, LP's (the "Prime Fund") 2005 financial statements. (*Id.* ¶¶ 25, 115.) In each opinion, KPMG LLP falsely claimed to have conducted a GAAS-compliant audit. (Id. ¶¶ 11, 26, 89, 114.) KPMG LLP knew that investors in the Onshore XL Fund would rely on these audit opinions. (Id. ¶¶ 11, 119.) Had KPMG LLP issued anything other than an unqualified audit opinion with respect to any of these related funds, the Onshore Plaintiffs would not have invested in the Onshore XL Fund, and immediately would have redeemed any existing investments. (*Id.* ¶¶ 11, 120-121.)

## ARGUMENT

"The allegations of the … Complaint … in the adjudication of a motion to dismiss under Rule 12(b)(6) must be accepted as true, drawing all inferences from the pleaded facts in Plaintiffs' favor …." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC*, __ F.3d __, 2009 U.S. App. LEXIS 12329, at *3 (2d Cir. June 9, 2009). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009). The plausibility standard is not akin to a "probability requirement." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 549, 556 (2007)). Rather, "the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence

---

conduct audits. (*Id.*) KPMG LLP would have discovered, if it had asked to review F&H's work papers, that F&H's audits of BMIS were a sham. (*Id.* ¶¶ 9, 18, 101.)

which might be offered in support thereof." *SEC v. Pentagon Capital Mgmt. PLC*, 2009

U.S. Dist. LEXIS 9632, at *32 (S.D.N.Y. Feb. 10, 2009) (internal quotations omitted).

### I.
### THE COMPLAINT PROPERLY PLEADS
### CLAIMS UNDER SECTION 10(b)

A.     **The Complaint Sufficiently Alleges That KPMG LLP Was**
       **Reckless in Misrepresenting That It Had Conducted GAAS Audits**

KPMG LLP fundamentally misconstrues plaintiffs' scienter allegations. It

asserts that they "consist entirely of allegations that KPMG LLP failed to comply with

various requirements of GAAS" (Br. at 7), and argues that such alleged GAAS violations,

if true, do not create a strong inference that KPMG LLP "was in on" or knew about

Madoff's fraud. (*Id.* at 10, 12.)

However, plaintiffs do not allege that KPMG LLP knew about Madoff's

fraud, or that its GAAS violations created an inference of such knowledge. Rather, the

Complaint alleges that, in the face of known dangers, KPMG LLP failed to conduct the

critical audit procedures GAAS required to verify the reported assets and trades. (Compl.

¶¶ 89-113.) This failure resulted in KPMG LLP conducting what amounted to a

meaningless audit. (*Id.*) Nevertheless, KPMG LLP issued unqualified audit opinions in

which it stated that it had conducted GAAS audits. (Compl. ¶¶ 114-117.) Accordingly,

the Court should infer that KPMG LLP's misrepresentations that it *had* conducted

GAAS-compliant audits were made at least recklessly.

1.     **The Complaint Sets Forth Specific Facts**
       **Giving Rise to a Strong Inference of Scienter**

In this Circuit, recklessness is a sufficiently culpable mental state for

securities fraud. *ECA & Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.*,

553 F.3d 187, 198 (2d Cir. 2009). To plead recklessness by an outside auditor, "a

plaintiff must allege that the [t]he accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts." *In re IMAX Sec. Litig.*, 587 F. Supp. 2d 471, 483 (S.D.N.Y. 2008) (internal quotations omitted).

The Complaint alleges that KPMG LLP knew that *all* of the reported information concerning the Onshore XL Fund's purported assets and trades came from Madoff and BMIS, with whom the functions of investment advisor, prime broker, and custodian were concentrated. (Compl. ¶¶ 97-98.) Accordingly, Madoff and BMIS were the *only source* for this critical information reported to plaintiffs and purportedly audited by KPMG LLP. (*Id.* ¶ 98.)

Given the "significant risks" under GAAS associated with this exclusive reliance on Madoff and BMIS for this information and these functions,[4] GAAS required KPMG LLP to do more than simply perform audit procedures on the Onshore XL Fund, the Onshore Reference Entity, or the Prime Fund. (*Id.*) Instead, it was required to gain comfort that the asset and trade information generated by Madoff and BMIS and reported by these funds was not the result of fraud. (*Id.* ¶¶ 90-113.) To do so, KPMG LLP was required to determine that a reputable auditor had conducted adequate procedures to satisfy itself either that BMIS's internal controls were effective, or that, in fact, the reported assets existed and trades occurred. (*Id.* ¶¶ 98, 103.) Had a reputable auditor

---

[4] This exclusive reliance on Madoff and BMIS and the concentration of functions are precisely the so-called "red flags" KPMG LLP accuses plaintiffs of failing to allege. (Br. at 8 n.10.)

(and not F&H) done so, KPMG LLP's responsibility to inquire further might have ended.[5]

But by its own admission, KPMG LLP failed to consider the reliability of any audit procedures F&H performed.[6] The indicia of F&H's unreliability, which were easily discoverable,[7] meant that KPMG LLP could not properly gain comfort from F&H's purported audit of BMIS. (*Id.* ¶¶ 99-102.) Instead, KPMG LLP was required by GAAS either to perform audit procedures on BMIS itself or to require that some other reputable auditor be engaged to perform these procedures. (*Id.* ¶¶ 102-103.) KPMG LLP, again by its own admission,[8] failed to do either, and thereby failed, among other things, to seek independent corroboration of the assets and trades.[9] (Br. at 9 n.12.)

---

[5] KPMG LLP asserts that it is "utterly novel" for plaintiffs to suggest that an auditor must conduct audit procedures on third parties. (Br. at 8.) But plaintiffs' allegations are based on GAAS requirements *in these circumstances*, and do not suggest such procedures are required in connection with *every* audit. Moreover, plaintiffs do not allege, as KPMG LLP suggests, that it was required to perform a full-fledged GAAS-compliant audit on BMIS's financial statements. (*Id.*) Rather, GAAS required KPMG LLP to perform appropriate audit procedures to confirm the asset and trade information generated by Madoff and BMIS, and to address the risk of fraud arising from this reliance and the concentration of functions at BMIS. (Compl. ¶¶ 90-113.)

[6] KPMG LLP asserts that there is no allegation in the Complaint that it knew anything about F&H. (Br. at 9 n.12.) That is exactly the point: KPMG LLP was required by GAAS to consider the reputation and standing of F&H, but failed to do so. (Compl. ¶¶ 98-101.) Rather than argue that a plausible competing inference is that KPMG LLP attempted, but failed, to uncover the indicia of F&H's unreliability, KPMG LLP argues that it was not required to even try (Br. at 9 n.12) – tantamount to an admission that it failed to perform these procedures. KPMG LLP also asserts that the SEC's acceptance of BMIS's financial statements demonstrates that F&H's size was not suspicious. (*Id.*) But had KPMG LLP performed any inquiry into F&H's reputation and standing, it would have easily discovered the indicia of F&H's unreliability. (Compl. ¶¶ 99-101.) These indicia easily trump whatever comfort KPMG LLP may have derived from the SEC's acceptance of BMIS's financial statements. Moreover, the SEC has been accused of inadequately handling its review of Madoff and BMIS. *See, e.g.*, Kara Scannell, *Crisis on Wall Street: SEC Chief Pledges Effort to Bolster Enforcement*, Wall St. J., at B2 (Feb. 7, 2009) ("The Bernard Madoff scandal … ha[s] battered the agency's reputation.").

[7] See *supra* p. 4.

[8] Rather than argue that a plausible competing inference is that it attempted to independently corroborate the assets and trades but failed to uncover the fraud, KPMG LLP

KPMG LLP should not have derived any comfort from receiving "confirmations" from Madoff and BMIS. (*Id.* at 9.) KPMG LLP knew that *all* of the reported asset and trade information *came from Madoff and BMIS*. (Compl. ¶¶ 97-98.) Thus, "confirmations" received from Madoff and BMIS confirmed nothing.[10]

The question, thus, is not (as KPMG LLP asserts) whether the Court should infer that KPMG LLP knew of or was reckless in not discovering Madoff's fraud. Rather, the question is whether this Court should infer that KPMG LLP recklessly misrepresented to plaintiffs that its audits were conducted in accordance with GAAS. KPMG LLP's flagrantly inadequate audits, particularly in light of the known "significant risks," were not mere violations of "various" GAAS requirements. Rather, KPMG LLP failed to conduct *any* meaningful audit procedures to determine whether the critical asset and trade information reported was the result of fraud.[11]

Even though it failed to do so, KPMG LLP reported to plaintiffs that it *had* conducted GAAS-compliant audits. These facts raise a strong, cogent, and compelling inference that KPMG LLP recklessly made these misrepresentations. *See, e.g., Lewin v. Lipper Convertibles, L.P.*, 2004 U.S. Dist. LEXIS 8484, at *4-5 (S.D.N.Y.

---

argues that GAAS did not require it to even try – again tantamount to an admission that it failed to perform these procedures. (Br. at 8.)

[9] If it had tried, it would have failed to receive such corroboration because the assets did not exist and the trades never occurred. *See supra* p. 4.

[10] KPMG LLP emphasizes that plaintiffs knew about the concentration of functions at BMIS. (Br. at 8-9.) But it was KPMG LLP – not plaintiffs – who undertook the responsibility to perform GAAS-required audit procedures in connection with these financial statements. Plaintiffs were reassured by, and relied upon, KPMG LLP's audit reports, given this concentration of functions. (Compl. ¶¶ 119-120.)

[11] KPMG LLP seeks to hide behind the fact that similar allegations have been leveled against Ernst & Young – another "Big Four" accounting firm. (Br. at 9 n.13.) All this shows is that two sets of auditors misrepresented that they had conducted GAAS-compliant audits.

May 12, 2004) (auditor failed to check for corroborative support of valuations that, had

they done so, would have enabled auditor to question other management representations);

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, 381 F. Supp. 2d 192, 239-40

(S.D.N.Y. 2004) (auditor committed numerous GAAP and GAAS violations and ignored

red flags concerning revenue that was "central[]" to the financial statements); *Teachers'*

*Ret. Sys. v. A.C.L.N., Ltd.*, 2003 U.S. Dist. LEXIS 7869, at *34-38 (S.D.N.Y. May 12,

2003) (auditor ignored red flags and committed numerous GAAS violations, including by

"fail[ing] to obtain all corroborating information necessary to support the financial

statements being audited," and "fail[ing] to establish and perform a confirmation process

with third parties to verify information utilized in the audit"); *Katz v. Image Innovations*

*Holdings, Inc.*, 542 F. Supp. 2d 269, 275 (S.D.N.Y. 2008) (allegations went "well beyond

simply alleging violations of accounting principles, but instead point to red flags that

alerted or should have alerted" the auditor to the risk of fraud); *In re New Century*, 588 F.

Supp. 2d 1206, 1233-36 (C.D. Cal. 2008) (auditor "did nothing" and there was an

"absence of a meaningful investigation" in response to known risks of fraud).[12]

    *In re Complete Management Securities Litigation*, 153 F. Supp. 2d 314

(S.D.N.Y. 2001), which KPMG LLP cites, is instructive.  There, Arthur Andersen was

sued for fraud in issuing clean audit reports for a medical practice management

corporation (CMI) that provided services to a medical practice (GMMS) in exchange for

---

[12] The cases KPMG LLP cites to the contrary do not support a different conclusion.  In *In re Doral Finance Corp. Securities Litigation*, 563 F. Supp. 2d 461, 465-66 (S.D.N.Y. 2008), the auditor confirmed valuation data *generated by the audit client* with two seemingly independent third parties who were in on the audit client's fraud.  Here, *Madoff and BMIS* generated the asset and trade information, which KPMG LLP confirmed with no one.  And in *In re Winstar Communications*, 2006 U.S. Dist. LEXIS 7618, at *33-38 (S.D.N.Y. Feb. 27, 2006), allegations that the audit was so deficient as to amount to conducting no audit at all *were sufficient* to allege recklessness.

a portion of GMMS's accounts receivables. However, GMMS engaged in excessive and unnecessary billings, and its receivables were often uncollectible. The court, in holding that plaintiffs' allegations of Arthur Andersen's scienter were sufficient, focused on what plaintiffs alleged Arthur Andersen failed to do vis-à-vis GMMS:

> [T]he centrality of GMMS to CMI's overall financial health suggests that Andersen could have taken much greater pains to investigate the *bona fides* of the GMMS receivables .... [I]f Andersen were conducting any kind of audit at all, they would have seen the potential problems with the GMMS receivables and the need to investigate further .... [T]he failure to do so in light of GMMS's critical importance to CMI raises significant questions.

*Id.* at 334. The same reasoning applies here.

In short, the alarming confluence described above – (i) the complete reliance on Madoff and BMIS for all asset and trade information and investment functions, and (ii) F&H's easily discoverable unreliability – should have caused KPMG LLP to view with suspicion BMIS's role as custodian. In response to this suspiciousness, rather than seek GAAS-required independent corroboration, KPMG LLP did *nothing*, and continues to argue to this day that doing nothing was actually *reasonable*. These practices are the type of "pretend audit" KPMG LLP acknowledges amounts to auditor recklessness. (Br. at 10 (quoting *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000).)

### 2. The Inference of KPMG LLP's Recklessness Is at Least as Compelling as Any Plausible Competing Inference

KPMG LLP asserts that a plausible competing inference is that it "did *not* discover or participate in Madoff's fraud." (Br. at 10 (emphasis in original).) But plaintiffs are not suggesting that KPMG LLP *did* discover or participate in Madoff's fraud. The fraud perpetrated by KPMG LLP were its reckless misrepresentations to plaintiffs that it had conducted GAAS-compliant audits when, in fact, its audit practices

were so deficient that they amounted to no audit at all. Accordingly, KPMG LLP's assertions about Madoff's reputation and standing in the industry, BMIS's registration with and regulation by the SEC, and Madoff's ability to elude detection (*id.* at 10) have no bearing on whether KPMG LLP was reckless in telling plaintiffs it had conducted GAAS-compliant audits when it clearly had not done so.

Moreover, KPMG LLP's assertion that it had only limited access to Madoff and BMIS (*see id.*) *supports*, rather than negates, the inference of recklessness. The only potentially plausible competing inference (which KPMG LLP does not even offer) is that KPMG LLP, when misrepresenting that it had conducted GAAS-compliant audits, did so innocently or negligently. These funds, KPMG LLP knew, were merely conduits for the asset and trade information generated exclusively by Madoff and BMIS. (*See* Compl. ¶¶ 97-98.) And yet KPMG LLP now admits its inability to gain access to the source of the asset and trade information most critical to its audit. (Br. at 10.) Thus, there is simply no plausible inference that KPMG LLP acted innocently when it told plaintiffs it had conducted GAAS audits.

*In re Bayou Hedge Fund Litigation*, 534 F. Supp. 2d 405 (S.D.N.Y. 2007), *aff'd sub nom.*, *South Cherry Street, LLC v. Hennessee Group LLC*, No. 07-3658-cv, slip op. (2d Cir. July 14, 2009), which KPMG LLP cites, does not undermine this conclusion. There, plaintiff argued that defendant Hennessee would have uncovered the fraud if it had conducted the due diligence it promised to do, and that this failure raised a sufficient inference of recklessness. The Court held that this inference was not as compelling as the competing inference that Hennessee was duped by Bayou just like many others. *Id.* at 417-18.

The allegations here, by contrast, are not that KPMG LLP's recklessness should be inferred from its failure to uncover the fraud. Rather, plaintiffs allege that KPMG LLP misrepresented that it had conducted GAAS-compliant audits, and that its recklessness in making these misrepresentations can be inferred from the fact that its (now admitted) failure to perform critical audit procedures, in the face of known dangers, so blatantly violated GAAS that its "audit" amounted to no audit at all.[13]  Moreover, the responsibilities of a one-off due diligence provider – like Hennessee in *Bayou* – are far surpassed by the responsibilities of an auditor like KPMG LLP.

**B.     The Complaint Sets Forth Specific Allegations of Reliance**

KPMG LLP posits that because plaintiffs allege that they relied on statements by Tremont when making their investments, plaintiffs could not also rely on statements made by KPMG LLP.  (Br. at 12.)  This argument has no support in the law. *See, e.g., Cent. Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 191 (1994) ("Any person or entity, including a lawyer, accountant, or bank, who ... makes a material misstatement ... on which a purchaser ... of securities relies may be liable as a primary violator under 10b-5 . . . . In any complex securities fraud, moreover, there are *likely to be multiple* violators . . . .") (emphasis added); *Nathel v. Siegal*, 592 F. Supp. 2d 452, 466 (S.D.N.Y. 2008) (rejecting accountant's claim that plaintiffs' reliance on it in connection with their investments was negated by their reliance on statements by other defendants).[14]

---

[13] The Second Circuit's affirmance of *Bayou*, by contrast, emphasized plaintiff's failure to allege "any fact" known to Hennessee that should have alerted Hennessee that the fund's representations were dubious. *South Cherry*, No. 07-3658-cv, slip op. at 30.

[14] The only authority KPMG LLP cites for this proposition, *Zuckerman v. Harnischfeger Corp.*, 591 F. Supp. 112 (S.D.N.Y. 1984), is inapposite.  The court there addressed the issue of whether the plaintiff was required to allege reliance on what plaintiff characterized as a non-

Plaintiffs allege that they were sent KPMG LLP's audit reports, and never

would have invested in the Onshore XL Fund if KPMG LLP had not issued unqualified

audit opinions, stating that it had conducted GAAS-compliant audits. (Compl. ¶¶ 114-

121.) The Complaint thus adequately pleads reliance. *See Lewin*, 2004 U.S. Dist. LEXIS

8484, at *2 (denying auditor's motion to dismiss plaintiffs' claim that they relied on

audited financial statements in making initial and subsequent investments); *Fraternity*

*Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, 376 F. Supp. 2d 385, 403 (S.D.N.Y. 2005)

(complaint adequately pled that plaintiffs purchased securities in reliance on

misrepresentations).

KPMG LLP also argues that plaintiffs could not rely on its audit report for

their investments in the XL Fund that preceded KPMG LLP's first audit report on *that*

fund. However, KPMG LLP ignores plaintiffs' allegations that they relied on KPMG

LLP's 2005 audit report on the Prime Fund, which was dated March 6, 2006, and issued

before each of plaintiffs' initial investments in the XL Fund. (*Compare* Compl. ¶¶ 27-33

*with id.* ¶¶ 80, 115, 119-21.) The Prime Fund, KPMG LLP knew, employed an

investment strategy that was identical to the XL Fund and the Reference Entity: all three

depended upon the returns supposedly generated by Madoff and BMIS using his split-

strike conversion strategy. (*Id.* ¶¶ 25, 41, 60, 119.) Given the close relationship of these

funds, a clean audit of one fund verified the legitimacy of Madoff's and BMIS's

investment advisory, custodial, and brokerage services provided to the other funds.[15]

---

disclosure. *See id.* at 120-21. The issue of reliance on statements by multiple defendants was
neither raised nor discussed.

[15] Plaintiffs' assertion that they *retained* their partnership interests in reliance on KPMG
LLP's statements are made not as to plaintiffs' federal securities fraud claim, as KPMG LLP

## C.    Plaintiffs Properly Allege Loss Causation

"[A] misstatement or omission is the 'proximate cause' of an investment loss if the risk that caused the loss was within the zone of risk *concealed* by the misrepresentations and omissions alleged ...." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005) (internal quotation marks and citation omitted) (italics in original). Thus, the loss must be (1) foreseeable and (2) caused by the materialization of the concealed risk. *Id.* at 173. Put another way, "loss causation has to do with the relationship between the plaintiff's investment loss and the information misstated or concealed by the defendant." *Id.* at 174. "If that relationship is sufficiently direct, loss causation is established." *Id.*

For example, in *Fraternity Fund*, investors in three hedge funds brought claims based on inflated performance information disseminated by the funds' manager. 376 F. Supp. 2d at 390-93. Plaintiffs alleged that they purchased and retained their investments in reliance upon this information, which concealed ongoing losses. *Id.* at 402-03, 407-08. The court held that plaintiffs had properly alleged loss causation. *See id.* at 402-03.

Similarly, in *In re Colonial Partnership Litigation*, 896 F. Supp. 250 (D. Conn. 1995), the plaintiffs lost over $1.4 million after purchasing limited partnership interests sold as part of a Ponzi scheme. *Id.* at 252. The court held that plaintiffs had sufficiently alleged loss causation by asserting that Arthur Andersen knew its statements were false and would be used to induce plaintiffs' investment. *Id.* at 257.

---

suggests (Br. at 12 n.15), but only as to plaintiffs' common law fraud claim. (*Compare* Compl. ¶¶ 205-206, 208 *with id.* ¶¶ 223-225.)

Likewise, in *Sterling National Bank v. Ernst & Young, LLP*, 2005 N.Y. Misc. LEXIS 2546, 2005 NY Slip Op. 51850U (Sup. Ct. N.Y. County Jan. 7, 2005), the plaintiff claimed that Allied Deals was a Ponzi scheme designed to defraud banks, and sued its auditors. *Id.* at *2. The court held that the defendants' "representations gave the impression that Allied Deals was a bona fide business, when in fact Allied Deals was a criminal enterprise that had little or no actual business from its inception." *Id.* The court explained that, had defendants' audit fairly represented Allied Deals' financial condition, it would have been evident that Allied Deals would never have been able to repay a loan. *Id.* The court thus held that "it is foreseeable that Sterling would suffer losses once it was induced by defendants' representations to transact with Allied Deals." *Id.*

Here, as in *Fraternity Fund*, *Colonial Partnership* and *Sterling National Bank*, plaintiffs have alleged loss causation. KPMG LLP's misrepresentations that it had conducted GAAS-compliant audits induced plaintiffs to purchase partnership interests in the Onshore XL Fund. (Compl. ¶¶ 114-21.) If KPMG LLP had actually conducted GAAS-compliant audits, Madoff's Ponzi scheme would have been revealed, and plaintiffs would not have purchased worthless interests in the Onshore XL Fund. It was therefore foreseeable to KPMG LLP that plaintiffs would suffer losses if Madoff was actually operating a Ponzi scheme.[16] In other words, plaintiffs have alleged a direct connection between KPMG LLP's misstatements and their losses.

---

[16] KPMG LLP's reliance on *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147 (2d Cir. 2007) (*see* Br. at 13), is misplaced. In *Lattanzio*, the plaintiffs failed to allege a sufficient connection between Deloitte's misstatements and their losses resulting from Warnaco's bankruptcy because Deloitte accurately warned of the risk of Warnaco's bankruptcy. *Id.* at 157. Here, by contrast, KPMG LLP provided no warning of Madoff's Ponzi scheme, and provided no information that the assets were not held and trades not made on plaintiffs' behalf.

## II.
## THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION

KPMG LLP argues that if the Court dismisses the federal securities fraud claim against it, then the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. Because plaintiffs' federal securities fraud claim against KPMG LLP should not be dismissed (*see supra* § I), that disposes of this argument.

Even if the federal claim is dismissed, the Court can and should exercise supplemental jurisdiction over plaintiffs' remaining state law claims if it sustains any of plaintiffs' federal claims against *any* defendant. "Federal and state claims form 'one case or controversy,' and thus satisfy [28 U.S.C. § 1367(a)], if they 'derive from a common nucleus of operative facts or when both claims would normally be expected to be tried in a single judicial proceeding.'" *In re Methyl Tertiary Butyl Ether [MTBE] Prods. Liab. Litig.*, 510 F. Supp. 2d 299, 321 (S.D.N.Y. 2007) (quoting *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006)). All of plaintiffs' federal and common law claims against all defendants derive from defendants' misrepresentations in connection with, and breaches of duties arising from, plaintiffs' investments in the XL Funds. Thus, they all "involve the same nucleus of operative fact," and "[t]rying them together would further the interests of judicial efficiency and economy." *Gagliardi v. Universal Outdoor Holdings, Inc.*, 137 F. Supp. 2d 374, 380 (S.D.N.Y. 2001). Moreover, the plaintiffs will rely upon much of the same evidence against all of the defendants. *See In re MTBE Prods. Liab. Litig.*, 510 F. Supp. 2d at 325.

Accordingly, as long as a federal claim against any defendant survives, the Court can and should exercise its supplemental jurisdiction over plaintiffs' state law claims against KPMG LLP. *See Gagliardi*, 137 F. Supp. 2d at 380; *Cabrera v. New York*

*City*, 2004 U.S. Dist. LEXIS 18402, at *26-28 (S.D.N.Y. Sept. 15, 2004); *Lennon v.*

*Seaman*, 2001 U.S. Dist. LEXIS 2798, at *17 (S.D.N.Y. Mar. 16, 2001) ("The standard is

construed generously, requiring only a loose factual connection among the claims.")

(internal quotations and citations omitted).

## III.
## THE STATE LAW CLAIMS ARE PROPERLY PLED

### A.    The Martin Act Does Not Preempt Claims for Negligence

       In support of its Martin Act preemption argument, KPMG LLP

mischaracterizes plaintiffs' negligence claim as one for *negligent misrepresentation.*

(*Compare* Br. at 14 *with* Compl. ¶¶ 236-242.)  Rather than asserting that KPMG LLP

engaged in deceptive acts, plaintiffs' negligence claim alleges that KPMG LLP

negligently – but not deceptively – conducted its audits.[17]  (Compl. ¶¶ 237-242.)

Specifically, the Complaint alleges that

> KPMG LLP failed to exercise reasonable care by
> negligently and/or grossly negligently failing to conduct
> audits ... in accordance with GAAS, and by addressing and
> disseminating to the Onshore Plaintiffs unqualified audit
> opinions that should have been qualified or disclaimed.  In
> the course of this conduct, KPMG LLP failed to inquire
> into many crucial facts, which, in the exercise of ordinary
> care, they should not have ignored and should have
> investigated.

(*Id.* ¶ 238.)

       The Martin Act does not preempt claims that are not based on deceptive

conduct.  As the court held in *Louros v. Kreicas*, 367 F. Supp. 2d 572 (S.D.N.Y. 2005):

---

[17] Plaintiffs' claim for negligence is pleaded in the alternative to their securities fraud and common law fraud claims. *See* Fed. R. Civ. P. 8(d)(2) (alternative pleading allowed); *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 55 n.3 (2d Cir. 2004) (same).

> [t]he reach of the [Martin] Act ... cannot be unlimited. A claim of breach of duty that involves securities *but does not allege any kind of dishonesty or deception* implicates neither the plain language of the statute nor its policies. Such a claim therefore is not foreclosed by the absence of a private right of action under the Martin Act.

*Id.* at 595-96 (emphasis added). The court distinguished between plaintiff's misrepresentation claims, which were deception-based, and his non-deception-based negligence claim, which alleged that the defendant had breached a duty to manage his account appropriately. Based on this distinction, the court sustained the negligence claim as not preempted by the Martin Act. *Id.* at 596. Similarly, plaintiffs' negligence claim here asserts that KPMG LLP negligently breached its duty to conduct GAAS-compliant audits; it is not based on allegations that KPMG LLP made false statements to plaintiffs, a crucial distinction.[18]

---

[18] In most of the cases KPMG LLP cites (Br. at 14 n.16.), the claims held to be preempted were not for negligence. *See Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 190 (2d Cir. 2001) (breach of fiduciary duty); *Jana Master Fund, Ltd. v. JPMorgan Chase & Co.*, 2008 N.Y. Misc. LEXIS 1435, at *6 (Sup. Ct. N.Y. County Mar. 12, 2008) (negligent misrepresentation and aiding and abetting breach fiduciary duty); *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 422 (S.D.N.Y. 2007) (breach of fiduciary duty), *aff'd on other grounds sub nom.*, *South Cherry Street, LLC v. Hennessee Group LLC*, No. 07-3658-cv, slip op., at 35 (2d Cir. July 14, 2009) (plaintiff did not appeal dismissal of the fiduciary duty claim); *In re Marsh & McLennan Co., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 495 (S.D.N.Y. 2006) (negligent misrepresentation); *Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 330 (S.D.N.Y. 2006) (same); *AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC*, 2005 U.S. Dist. LEXIS 21605, at *51-52 (S.D.N.Y. Sept. 26, 2005) (same); *Dujardin v. Liberty Media Corp.*, 359 F. Supp. 2d 337, 355 (S.D.N.Y. 2005) (same); *Marcus v. Frome*, 329 F. Supp. 2d 464, 476 (S.D.N.Y. 2004) (same); *Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*, 2002 U.S. Dist. LEXIS 16995, at *28-29 (S.D.N.Y. Sept. 10, 2002) (breach of fiduciary duty and negligent misrepresentation); *Butvin v. Doubleclick, Inc.*, 2000 U.S. Dist. LEXIS 8772, at *32 (S.D.N.Y. June 26, 2000) (negligent misrepresentation); *Mfrs. Life Ins. Co. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 2000 U.S. Dist. LEXIS 7444, at *17 (S.D.N.Y. June 1, 2000) (same); *Spirit Partners, L.P. v. Audiohighway.com*, 2000 U.S. Dist. LEXIS 7236, at *18 (S.D.N.Y. May 25, 2000) (same); *Noz v. Value Investing Partners, Inc.*, 1999 U.S. Dist. LEXIS 8836, at *7 (S.D.N.Y. June 14, 1999) (same). *Sedona Corp. v. Ladenburg Thalmann & Co.*, 2005 U.S. Dist. LEXIS 16382 (S.D.N.Y. Aug. 9, 2005), *Kassover v. UBS AG*, 2008 U.S. Dist. LEXIS 103211 (S.D.N.Y. Dec. 19, 2008), *Berk v. Moore, Clayton & Co.*, 2006 U.S. Dist. LEXIS 90119 (S.D.N.Y. Dec. 11, 2006), and *Pro Bono Investments, Inc. v. Gerry*, 2005 U.S. Dist. LEXIS 22348 (S.D.N.Y. Sept. 30, 2005) were decided wrongly. In

Even if the conduct underlying these claims somehow falls within the scope of the Martin Act – which it does not – the New York Court of Appeals has not decided whether such claims are preempted by the Martin Act. In fact, recent intermediate New York state appellate authority has held that the Martin Act does not preempt otherwise well-pleaded common law causes of action even if the underlying conduct falls within the Martin Act's scope:

> The Legislature is presumed to be aware of the law in existence at the time of an enactment and to have abrogated the common law only to the extent that the clear import of the language of the statute requires. Further, [t]he general rule is and long has been that when the common law gives a remedy, and another remedy is provided by statute, the latter is cumulative, unless made exclusive by the statute.

*Caboara v. Babylon Cove Dev., LLC*, 862 N.Y.S.2d 535, 539 (2d Dep't 2008); *see also Hamlet on Olde Oyster Bay Home Owners Ass'n, Inc. v. Holiday Org., Inc.*, 874 N.Y.S.2d 508, 512 (2d Dep't 2009) (quoting *Carboara* in reversing dismissal of fraud and negligent misrepresentation claims); *Scalp & Blade, Inc. v. Advest, Inc.*, 722 N.Y.S.2d 639, 640 (4th Dep't 2001).[19] As Judge Cote has held, "there is nothing in ... the text of the Martin Act itself to indicate an intention to abrogate common law causes of action .... There does not appear to be any basis in the Martin Act's provisions for a distinction between claims of fraud and claims of negligent misrepresentation ...."

---

*Sedona, Kassover,* and *Pro Bono Investments*, the court failed to distinguish between the deceptive and non-deceptive alleged misconduct (in contrast to Judge Kaplan in *Louros*). In *Berk*, the court wrongly stated that the Second Circuit had determined that the Martin Act preempts negligence claims.

[19] *See also Faulkner v. Beer*, 2007 N.Y. Misc. LEXIS 8829, at *16-17 (Sup. Ct. N.Y. County Dec. 21, 2007) (rejecting argument that breach of fiduciary duty and negligent misrepresentation claims, even though based on deception, were preempted by the Martin Act).

*Cromer Fin. Ltd. v. Berger*, 2001 U.S. Dist. LEXIS 14744, at \*15 (S.D.N.Y. Sept. 19, 2001) (Cote, J.).

**B.      The Martin Act Does Not Preempt Claims for Fraud**

KPMG LLP asserts, in one sentence and without discussion, that plaintiffs' common law fraud claim is precluded by the Martin Act. (Br. at 14.) This is simply not the law. Rather, and as recognized even by those courts that have held the Martin Act's preclusive effect to be broad, it does not preclude claims for common law fraud. *Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, 2003 U.S. Dist. LEXIS 15206, at \*14 (S.D.N.Y. Sept. 2, 2003) (collecting cases).[20]

**C.      The Complaint Properly Pleads Common Law Fraud.**

As KPMG LLP states, the elements of common law fraud under New York are essentially the same as those required to state a Section 10(b) claim. (*See* Br. at 15.) As set forth above in Section I, the Complaint sufficiently alleges federal securities fraud, and thus also sufficiently alleges common law fraud in connection with the Onshore Plaintiffs' purchase and retention of partnership interests in the Onshore XL Fund.

---

[20] Reliance and scienter were not pled in *Whitehall Tenants Corp. v. Estate of Olnick*, 623 N.Y.S.2d 585 (1st Dep't 1995), and, thus, the claim was not for fraud. *See id.* at 585. The First Department later recanted its interpretation of *Whitehall* in *Thompson v. Parkchester Apartments Co.*, 670 N.Y.S.2d 858 (1st Dep't 1998), that *Whitehall* applied to common law fraud claims. *See Kramer v. W10Z/515 Real Estate Ltd. P'ship*, 844 N.Y.S.2d 18, 19-20 (1st Dep't 2007), *rev'd on other grounds sub nom., Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship*, 12 N.Y.3d 236, 2009 N.Y. LEXIS 138 (Apr. 2, 2009) ("[t]he reasoning of *Whitehall* … has erroneously been extended to cases in which there is no legitimate reason to question at the pleading stage the ability of the plaintiff to prove all of the essential elements of common-law fraud."). The New York Court of Appeals reversed *Kramer* because plaintiff's "fraud" claim was actually a claim for omission in a condominium offering plan of disclosures mandated only by specific provisions of the Martin Act. *See Kerusa*, 12 N.Y.3d 236, 2009 N.Y. LEXIS 138, at \*10-12.

**D.** **The Complaint Properly Pleads Negligence.**

KPMG LLP argues that plaintiffs have not stated a claim for negligent misrepresentation. (Br. at 15.) That is not surprising, because plaintiffs assert a claim for negligence, not negligent misrepresentation. (*See* Compl. ¶¶ 236-49.) To plead negligence under New York law, "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (citation omitted). The Complaint plainly meets this standard.

First, where the parties are not bound by contractual privity, a duty of care will arise where the parties are in a relationship "so close as to approach that of privity." *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 546 (1985). To establish such a relationship, a plaintiff must allege (1) the audit firm's awareness that the financial reports were to be used for a "particular purpose"; (2) in furtherance of which plaintiffs were intended to rely; and (3) some conduct linking the two parties that "evinces the accountant's understanding of [plaintiff's] reliance." *Id.* at 551. The Complaint establishes that KPMG LLP knew that plaintiffs would rely on the audit opinions it sent to them when they made and retained investments in the XL Funds, and that plaintiffs did in fact rely on those audit opinions. (Compl. ¶¶ 119-20.) The "linking conduct" evincing KPMG LLP's understanding of plaintiffs' reliance is established here as well, as KPMG LLP addressed its audit reports to plaintiffs as shareholders of the XL Funds. (*Id.* ¶ 114-116, 237-238.) Accordingly, KPMG LLP owed plaintiffs a duty to use reasonable professional care, or the competence or skill of a professional independent auditor, in conducting its audits. (*Id.* ¶¶ 89-103.)

Second, as explained above, the Complaint describes how KPMG LLP breached that duty – by failing to conduct its audits in accordance with GAAS, yet sending to plaintiffs unqualified reports. (*Id.* ¶¶ 104-18.) Third, also as explained above, plaintiffs justifiably relied on KPMG LLP's audit opinions in deciding to buy and retain partnership interests in the Onshore XL Fund, and were damaged when they lost all their investments when the Funds collapsed. (*Id.* ¶¶ 119-21.) Accordingly, the Complaint adequately pleads negligence.

## IV.
## PLAINTIFFS' CLAIMS ARE NOT SUBJECT TO ARBITRATION

KPMG LLP argues that plaintiffs' claims against it are subject to mediation and arbitration, citing "Dispute Resolution Procedures" in an October 6, 2006 engagement letter between KPMG LLP and Tremont Group Holdings. KPMG LLP argues that plaintiffs should be bound by the Dispute Resolution Procedures, because plaintiffs' claims are derivative, or, alternatively, because plaintiffs are third-party beneficiaries of the engagement letter. These arguments are baseless.[21]

As explained in Section I of plaintiffs' brief in opposition to Tremont's motion to dismiss, plaintiffs' claims are not, in fact, derivative claims. For this reason, *In re Salomon Inc. Shareholders' Derivative Litigation*, 1994 U.S. Dist. LEXIS 13874 (S.D.N.Y. Sept. 28, 1994), which KPMG LLP cites, and which addresses only the arbitrability of a derivative action, is inapposite.

KPMG LLP's argument that plaintiffs are bound by the arbitration clauses in the engagement letters fares no better. A party cannot be required to arbitrate a dispute

---

[21] KPMG LLP also suggests that plaintiffs can be "otherwise subject to the arbitration agreement" (Br. at 16), but does not articulate any basis for that suggestion.

that it has not agreed to arbitrate. *See CBS, Inc. v. Snyder,* 798 F. Supp. 1019, 1024 (S.D.N.Y. 1992). To bind a non-signatory to arbitrate its claims, the party invoking the arbitration agreement must show that the non-signatory has in some way agreed to be bound by the agreement. *See id.* at 1027.

KPMG LLP makes no such showing, nor could it. Not only did plaintiffs not sign the engagement letters between Tremont Group Holdings and KPMG LLP, but there is no suggestion that plaintiffs had copies of those letters or knew any of their terms before KPMG LLP proffered them in this action. Indeed, plaintiffs still do not know any of the letters' terms other than those that KPMG LLP has chosen to reveal on this motion, since the letters have been placed before the Court (and plaintiffs) only in redacted form.

## CONCLUSION

For the foregoing reasons, KPMG LLP's motion to dismiss plaintiffs'

claims against it should be denied in its entirety, and its request to stay plaintiffs' claims

pending arbitration should be rejected.

Dated:  New York, New York
        July 14, 2009

                    Respectfully submitted,

                    FRIEDMAN KAPLAN SEILER &
                      ADELMAN LLP

                    Scott M. Berman (sberman@fklaw.com)
                    Anne E. Beaumont
                    John N. Orsini
                    Steven E. Frankel
                    Kevin L. Oberdorfer
                    1633 Broadway
                    New York, NY 10019-6708
                    (212) 833-1100

                    *Attorneys for Plaintiffs*