UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

MERIDIAN HORIZON FUND, LP, MERIDIAN : 
HORIZON FUND II, LP, MERIDIAN DIVERSIFIED :
FUND, LP, MERIDIAN DIVERSIFIED FUND, LTD., : No. 09 Civ. 3708 (TPG)
MERIDIAN DIVERSIFIED ERISA FUND, LTD., :
MERIDIAN DIVERSIFIED COMPASS FUND, LTD., :
and MERIDIAN ABSOLUTE RETURN ERISA FUND, : ECF CASE
LTD., : Electronically Filed
 :
               Plaintiffs, :
 :
      - against - :
 :
TREMONT GROUP HOLDINGS, INC., TREMONT :
PARTNERS, INC., TREMONT (BERMUDA) :
LIMITED, OPPENHEIMER ACQUISITION :
CORPORATION, KPMG LLP, and KPMG :
(CAYMAN), :
 :
            Defendants. :
 :

-------------------------------------------------------------------x


## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT KPMG CAYMAN'S MOTION TO DISMISS


FRIEDMAN KAPLAN SEILER &
  ADELMAN LLP
1633 Broadway
New York, NY 10019-6708
(212) 833-1100

July 14, 2009             *Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF FACTS ...................................................................................3

ARGUMENT .......................................................................................................5

I.    THIS COURT HAS SUBJECT MATTER JURISDICTION OVER
PLAINTIFFS' CLAIMS AGAINST KPMG CAYMAN ...............................5

    A.    The Conduct Test Is Satisfied ....................................................6

    B.    The Effects Test Is Satisfied ......................................................8

    C.    An Admixture of the Two Tests Demonstrates That Federal
Subject Matter Jurisdiction Exists .............................................9

II.    THIS COURT SHOULD NOT EXERCISE ITS DISCRETION TO
DISMISS THE ACTION FOR *FORUM NON CONVENIENS*............................10

    A.    Plaintiffs' Choice of Forum Is Entitled to Substantial Deference .............11

    B.    The Cayman Islands Is Not an Adequate Forum As to All Defendants ....14

    C.    The Public Interest Factors Weigh in Plaintiffs' Favor .............................15

    D.    The Private Interest Factors Weigh in Plaintiffs' Favor .............................16

III.    THE COMPLAINT PLEADS FACTS RAISING A STRONG
INFERENCE OF SCIENTER .................................................................17

IV.    THE COMPLAINT PROPERLY PLEADS COMMON LAW FRAUD
AND NEGLIGENCE AGAINST KPMG CAYMAN..........................................23

    A.    The Complaint Adequately Pleads Fraud ....................................23

    B.    The Complaint Adequately Pleads Negligence ..........................23

CONCLUSION....................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Achtman v. Kirby, McInerney & Squire, LLP,*
    464 F.3d 328 (2d Cir. 2006)...................................................................................10

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,*
    381 F. Supp. 2d 192 (S.D.N.Y. 2004)...................................................................20

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009).............................................................................................5

*Bank of Am. Corp. v. Braga Lemgruber,*
    385 F. Supp. 2d 200 (S.D.N.Y. 2005) ..................................................................12

*In re Bayer AG Sec. Litig.,*
    423 F. Supp. 2d 105 (S.D.N.Y. 2005)......................................................................8

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 549 (2007)..................................................................................................5

*Bersch v. Drexel Firestone, Inc.,*
    519 F.2d 974 (2d Cir. 1975).................................................................................7, 8

*Bullmore v. Ernst & Young Cayman Islands,*
    2006 WL 4682212 (N.Y. Sup. Ct. N.Y. County Apr. 12, 2006) ..........................16, 17

*Cabrera v. New York City,*
    2004 U.S. Dist. LEXIS 18402 (S.D.N.Y. Sept. 15, 2004)...................................10

*In re Complete Mgmt. Sec. Litig.,*
    153 F. Supp. 2d 314 (S.D.N.Y. 2001)...................................................................21

*Concesionaria DHM, S.A., v. Int'l Fin. Corp.,*
    307 F. Supp. 2d 553 (S.D.N.Y. 2004)...................................................................14

*Credit Alliance Corp. v. Arthur Andersen & Co.,*
    65 N.Y.2d 536 (1985) ............................................................................................24

*Cromer Fin. Ltd. v. Berger,*
    137 F. Supp. 2d 452 (S.D.N.Y. 2001)............................................................7, 8, 9

*Cromer Fin. Ltd. v. Berger,*
    158 F. Supp. 2d 347 (S.D.N.Y. 2001)..................................................11, 13, 15, 17

*DiRienzo v. Philip Servs. Corp.*,
    294 F.3d 21 (2d Cir. 2002) ...................................................................13

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
    822 F.2d 1242 (2d Cir. 1987)................................................................22

*ECA & Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)..................................................................17

*Euro Trade & Forfaiting, Inc. v. Vowell*,
    2002 U.S. Dist. LEXIS 5385 (S.D.N.Y. Mar. 29, 2002) ......................8

*Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London*,
    147 F.3d 118 (2d Cir. 1998)....................................................................9

*Gagliardi v. Universal Outdoor Holdings, Inc.*,
    137 F. Supp. 2d 374 (S.D.N.Y. 2001).....................................................10

*Georgiadis v. First Boston Corp.*,
    1994 U.S. Dist. LEXIS 10263 (S.D.N.Y. July 27, 1994) .....................16

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947)........................................................................11, 16

*In re IMAX Sec. Litig.*,
    587 F. Supp. 2d 471 (S.D.N.Y. 2008).....................................................17

*Iragorri v. United Techs. Corp.*,
    274 F.3d 65 (2d Cir. 2001).........................................11, 12, 13, 15, 16

*Irwin v. ZDF Enters. GmbH*,
    2006 U.S. Dist. LEXIS 6156 (S.D.N.Y. Feb. 17, 2006).......................13

*Itoba Ltd. v. Lep Group PLC*,
    54 F.3d 118 (2d Cir. 1995)................................................................5, 10

*Katz v. Image Innovations Holdings, Inc.*,
    542 F. Supp. 2d 269 (S.D.N.Y. 2008).....................................................20

*Lennon v. Seaman*,
    2001 U.S. Dist. LEXIS 2798 (S.D.N.Y. Mar. 16, 2001) ......................10

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)...................................................................24

*Lewin v. Lipper Convertibles, L.P.*,
    2004 U.S. Dist. LEXIS 8484 (S.D.N.Y. May 13, 2004)........................20

*In re Livent, Inc. Sec. Litig.*,
    78 F. Supp. 2d 194 (S.D.N.Y. 1999)................................................................17

*Manela v. Garantia Banking*,
    940 F. Supp. 584 (S.D.N.Y. 1996) ...............................................................17

*In re Methyl Tertiary Butyl Ether [MTBE] Prods. Liab. Litig.*,
    510 F. Supp. 2d 299 (S.D.N.Y. 2007)..........................................................10

*Morrison v. Nat'l Austl. Bank Ltd.*,
    547 F.3d 167 (2d Cir. 2008)...........................................................5, 6, 7, 8

*In re New Century*,
    588 F. Supp. 2d 1206 (C.D. Cal. 2008) .......................................................20

*Norex Petrol., Ltd. v. Access Indus., Inc.*,
    416 F.3d 146 (2d Cir. 2005)...........................................................10, 11, 13

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of
    Am. Sec., LLC*, 446 F. Supp. 2d 163 (S.D.N.Y. 2006)..............................12, 13, 14, 24

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of
    Am. Sec., LLC*, 592 F. Supp. 2d 608 (S.D.N.Y. 2009)................................7, 9

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of
    Am. Sec. LLC*,__ F.3d __, 2009 U.S. App. LEXIS 12329 (2d Cir.
    June 9, 2009).....................................................................................5

*Peregrine Myanmar v. Segal*,
    89 F.3d 41 (2d Cir. 1996)............................................................................16

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981).............................................................................10, 16

*PT United Can Co. v. Crown Cork & Seal Co.*,
    138 F.3d 65 (2d Cir. 1998)...........................................................................14

*Ramirez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc.*,
    448 F. Supp. 2d 520 (S.D.N.Y. 2006)..........................................................13

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)...........................................................................21

*SEC v. Berger*,
    322 F.3d 187 (2d Cir. 2003).........................................................................5

*SEC v. Pentagon Capital Mgmt. PLC*,
    2009 U.S. Dist. LEXIS 9632 (S.D.N.Y. Feb. 10, 2009)................................5

iv

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
549 U.S. 422 (2007)..................................................................10, 17

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
2003 U.S. Dist. LEXIS 7869 (S.D.N.Y. May 12, 2003).............................20

*Warter v. Boston Sec., S.A.*,
380 F. Supp. 2d 1299 (S.D. Fla. 2004) .......................................14

*Wyndham Assocs. v. Bintliff*,
398 F.2d 614 (2d Cir. 1968)..................................................14

*Zucker v. Sasaki*,
963 F. Supp. 301 (S.D.N.Y. 1997) ...........................................21

## STATUTES AND RULES

28 U.S.C. § 1367.......................................................................10

Fed R. Civ. P. 9.......................................................................22

Fed. R. Civ. P. 12......................................................................5

Plaintiffs Meridian Horizon Fund, LP, Meridian Horizon Fund II, LP, and Meridian Diversified Fund, LP (collectively, the "Onshore Plaintiffs"), and Meridian Diversified Fund, Ltd., Meridian Diversified ERISA Fund, Ltd., Meridian Diversified Compass Fund, Ltd., and Meridian Absolute Return ERISA Fund, Ltd. (collectively, the "Offshore Plaintiffs," and together with the Onshore Plaintiffs, "plaintiffs") respectfully submit this memorandum of law in opposition to the motion of KPMG (Cayman) ("KPMG Cayman") to dismiss the claims against KPMG Cayman.

## PRELIMINARY STATEMENT

Plaintiffs invested and lost more than $116 million in Rye Select Broad Market XL Fund, LP (the "Onshore XL Fund") and Rye Select Broad Market XL Portfolio Limited (the "Offshore XL Fund," and together with the Onshore XL Fund, the "XL Funds"). (Compl. ¶¶ 1, 19-20, 27-33.)[1] The XL Funds were managed from Rye, New York by defendants Tremont Group Holdings, Inc., Tremont Partners, Inc., and Tremont (Bermuda) Limited (collectively, "Tremont") (*id.* ¶¶ 1, 21-23, 56-59, 61, 73-76), and were audited by KPMG Cayman and its affiliate KPMG LLP. (*Id.* ¶¶ 7, 89.) Plaintiffs lost over $74 million in the Offshore XL Fund as a result of KPMG Cayman's materially false and misleading statements in its audit reports. (*Id.* ¶ 35.)

KPMG Cayman's motion to dismiss plaintiffs' claims is baseless. First, its attempts to avoid having this Court preside over plaintiffs' claims should be rejected. This Court has subject matter jurisdiction over plaintiffs' claims because KPMG Cayman's wrongful conduct both occurred in the U.S., and had a substantial effect in the

---

[1] Citations to "Complaint" and "Compl." refer to the complaint filed by plaintiffs in this action.

U.S. and upon U.S. citizens. KPMG Cayman's motion on *forum non conveniens* grounds should be denied because plaintiffs' choice of forum is entitled to substantial deference, KPMG Cayman fails to establish that the Cayman Islands is an adequate forum, and the public and private interest factors weigh in plaintiffs' favor.

On the merits, plaintiffs have adequately pleaded scienter to support their fraud claims. Tremont concentrated with Bernard L. Madoff ("Madoff") and Bernard L. Madoff Investment Securities, LLC ("BMIS") all investment advisory, brokerage, and custodial functions for the reference entity fund upon which the Offshore XL Fund's returns were derived. (*Id.* ¶¶ 2, 7, 19-20, 39, 60.) Thus, Tremont relied exclusively on Madoff and BMIS for all asset and trade information reported to plaintiffs. (*Id.*)

Given the "significant risks" under generally accepted audit standards ("GAAS") associated with these circumstances, GAAS required KPMG Cayman to obtain sufficient appropriate audit evidence to support (i) the existence of the assets Madoff and BMIS claimed to hold and invest for the Offshore Reference Entity, and (ii) the occurrence of the purported trades that generated the income reported in both funds' financial statements. (*Id.* ¶¶ 7, 89-98.) KPMG Cayman, by its own admission (Br. at 19),[2] failed to do so, meaning its audits were so deficient that they amounted to no audit at all. (Compl. ¶¶ 10, 104-113.) Nonetheless, KPMG Cayman issued audit reports in which it stated it had conducted GAAS-compliant audits. (*Id.* ¶¶ 11, 26, 89, 116-117.) These facts support a strong inference of KPMG Cayman's recklessness.

---

[2] Citations to "Br." refer to the Memorandum of Law in Support of Defendant KPMG Cayman's Motion to Dismiss Plaintiffs' Complaint, filed by KPMG Cayman in this action.

Finally, the Complaint explains that KPMG Cayman had a duty to use reasonable professional care, or the competence or skill of a professional independent auditor, in conducting its audits; identifies the relevant GAAS requirements; and explains how KPMG Cayman acted improperly. Plaintiffs justifiably relied on KPMG Cayman's performance of its duties when deciding to invest in the Offshore XL Fund, and were damaged by KPMG Cayman's wrongful conduct.

## STATEMENT OF FACTS

Plaintiffs are managed from and within the State of New York. (Compl. ¶ 15.) The XL Funds' returns were derived from leveraged investments in other funds that also were sold and managed by Tremont: Rye Select Broad Market Fund, LP (the "Onshore Reference Entity") and Rye Select Broad Market Portfolio Limited (the "Offshore Reference Entity," and together with the Onshore Reference Entity, the "Reference Entities"). (*Id.* ¶¶ 1, 19-23, 56-60.) The Reference Entities were single-manager investment vehicles. (*Id.* at ¶¶ 2, 39, 41.) Tremont served as investment manager, but delegated all investment decisions to Madoff and to BMIS, a securities broker-dealer and investment advisor registered with the SEC with its principal office in New York, New York. (*Id.* ¶¶ 2, 16-17, 19-20, 39, 60.) Madoff, through BMIS, purportedly executed all trades on behalf of the Reference Entities and custodied their securities. (*Id.* ¶¶ 2, 17, 19-20, 39.)

In December 2008, it was revealed that Madoff was operating a massive Ponzi scheme, and that the Reference Entities whose assets he purportedly managed in fact held little or no assets. (*Id.* ¶¶ 5, 82-85.) Madoff pled guilty to criminal charges on March 12, 2009, admitted to perpetrating this fraud since at least the early 1990s, and admitted that he never invested his investment advisory clients' assets in securities. (*Id.*

¶¶ 5, 83.) Instead, he deposited client funds in, and paid redemptions from, an account at Chase Manhattan Bank. (*Id.* ¶¶ 5, 83.) Because Madoff held no assets for his investment advisory clients and made no trades, KPMG Cayman could not have obtained corroboration of these assets or trades from sources independent of BMIS. (*Id.* ¶¶ 10, 106-113.)

BMIS's auditor, Friehling & Horowitz, C.P.A., P.C. ("F&H"), failed to perform audit procedures to corroborate the existence of the assets BMIS purportedly held for Madoff's investment advisory clients and the occurrence of trades BMIS purportedly executed for these clients. (*Id.* ¶¶ 9, 18, 99-101.) F&H's reputation and the inadequacy of its work made its audit reports unreliable.[3] (*Id.*)

KPMG Cayman sent to the Offshore Plaintiffs its unqualified audit opinions on the Offshore XL Fund's and the Offshore Reference Entity's 2006 and 2007 financial statements. (*Id.* ¶¶ 26, 116.) In each it falsely claimed to have conducted a GAAS-compliant audit. (*Id.*) KPMG Cayman knew that investors in the Offshore XL Fund would rely on these audit opinions. (*Id.* ¶¶ 11, 119.) Had KPMG Cayman issued anything other than an unqualified audit opinion with respect to either of these funds, the Offshore Plaintiffs would not have invested in the Offshore XL Fund, and immediately would have redeemed any existing investments. (*Id.* ¶¶ 11, 120-121.)

---

[3] F&H was a three-person firm that had not been "peer-reviewed," and had only one active accountant, David Friehling. (*Id.* ¶¶ 9, 18, 99.) Friehling worked out of a small storefront office, and reported to the American Institute of Certified Public Accountants that he did not conduct audits. (*Id.*) KPMG Cayman would have discovered if it had asked to review F&H's work papers that F&H's audits of BMIS were a sham. (*Id.* ¶¶ 9, 18, 101.)

# ARGUMENT

"The allegations of the ... Complaint ... in the adjudication of a motion to dismiss under Rule 12(b)(6) must be accepted as true, drawing all inferences from the pleaded facts in Plaintiffs' favor ...." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC*, __ F.3d __, 2009 U.S. App. LEXIS 12329, at *3 (2d Cir. June 9, 2009). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009). The plausibility standard is not akin to a "probability requirement." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 549, 556 (2007)). Rather, "the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *SEC v. Pentagon Capital Mgmt. PLC*, 2009 U.S. Dist. LEXIS 9632, at *32 (S.D.N.Y. Feb. 10, 2009) (internal quotations omitted).

## I.
## THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS AGAINST KPMG CAYMAN

Subject matter jurisdiction exists (1) if the wrongful conduct occurred in the U.S., or (2) if the wrongful conduct had a substantial effect in the U.S. or upon U.S. citizens. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 171 (2d Cir. 2008) ("*NAB*"). Satisfying either test can provide a basis for subject matter jurisdiction; both need not be satisfied. *SEC v. Berger*, 322 F.3d 187, 195 (2d Cir. 2003). In addition, applying a combination of ingredients from both tests often gives a better picture of whether there is sufficient U.S. involvement for federal subject matter jurisdiction. *See, e.g.*, *Itoba Ltd. v. Lep Group PLC*, 54 F.3d 118, 124 (2d Cir. 1995).

KPMG Cayman argues that the federal securities laws do not apply, because it issued audit reports from outside the U.S., and no U.S. shareholder or investor suffered losses as a result of its conduct. (Br. at 7-10.) KPMG Cayman is wrong.

## A.    The Conduct Test Is Satisfied

"Under the 'conduct' test, subject matter jurisdiction exists if activities in this country were more than merely preparatory to a fraud and culpable acts or omissions occurring here directly caused losses to investors abroad." *NAB*, 547 F.3d at 171. The court must determine "what conduct comprises the heart of the fraud." *Id.* at 175.

Here, the heart of the fraud occurred in the U.S. Both Madoff and BMIS were located in New York City. (Compl. ¶ 16-17.) The assets Madoff and BMIS claimed to hold for their investment advisory clients were purportedly held in New York, and the trades he purportedly made were from New York. (*Id.* ¶ 2, 17.) Madoff operated his Ponzi scheme from an account at Chase Manhattan Bank. (*Id.* ¶ 109.) Consequently, the audit procedures that KPMG Cayman failed to conduct should have occurred in the U.S. (*Id.* ¶¶ 7-11, 104-113.)

For example, KPMG Cayman should have reviewed F&H's work papers, which if they existed, would have been located in New York. (*Id.* ¶ 18.) In addition, KPMG Cayman should have sought corroboration of assets and trades from independent sources, many of which were located in the U.S. (*Id.* ¶¶ 107-109.) Further, KPMG Cayman had to interact with Tremont, located in Rye, New York. (*Id.* ¶¶ 21-23, 97.) In short, had KPMG Cayman actually performed GAAS-compliant audits in New York, Madoff's Ponzi scheme would have been revealed. (*Id.* ¶¶ 107-113.) Thus, activities in this country were more than merely preparatory to KPMG Cayman's fraud. *See NAB*,

547 F.3d at 172. Rather, KPMG Cayman's "culpable acts or omissions occurring here directly caused losses to investors abroad." *Id.*

*Cromer Finance Ltd. v. Berger*, 137 F. Supp. 2d 452 (S.D.N.Y. 2001), and *Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities, LLC*, 592 F. Supp. 2d 608 (S.D.N.Y. 2009), decided on similar facts, are instructive. In *Cromer*, foreign hedge fund investors sued the fund's foreign administrator and auditor. 137 F. Supp. 2d at 480. The court found that the federal securities laws applied, because the underlying fraudulent scheme was perpetrated in the U.S. by the fund's U.S.-based manager, and the administrator and auditor had business meetings and regular communication and correspondence with the fund's U.S.-based manager. *Id.* at 480-81.

In *Pension Committee*, U.S. and foreign hedge fund investors claimed that the fund's administrator disseminated fraudulent net asset value statements (NAVs) to them. The administrator argued that the federal securities law did not apply because the calculation of the NAVs was performed in, and the statements were sent from, Curacao. 592 F. Supp. 2d at 626. The court rejected this argument, because the underlying fraud was conducted by the funds' manager in the U.S. *Id.* The court also noted that significant communications took place between the administrator and the fund manager in the U.S. with respect to calculation of the NAVs. *Id.* at 627.

Here, as in *Cromer* and *Pension Committee*, the underlying fraud took place in New York, and KPMG Cayman's misconduct occurred at least in part in New York. Thus, the federal securities laws apply.

KPMG Cayman's reliance on *NAB* and *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974 (2d Cir. 1975), is misplaced. In *NAB*, a U.S. subsidiary of NAB prepared

fraudulent information in Florida, which NAB included in its public statements compiled and disseminated from Australia. *See* 547 F.3d at 175-76. There was no allegation of any effect on U.S. investors or U.S. capital markets. *See id.* at 176. The court held that NAB's actions and inaction in Australia were more directly responsible for the harm to investors than the manipulation of the information in Florida; it noted that NAB in Australia, not the U.S. subsidiary, was responsible for the corporation's public filings; and it noted the "lengthy chain of causation" between what the U.S. subsidiary did and the harm to investors. *Id.* at 175-77. Here, in contrast, KPMG Cayman's culpable conduct was its failure to perform a GAAS-compliant audit *in the U.S.*

*Bersch* involved the offering of shares in a Canadian mutual fund to non-Americans via a prospectus distributed outside the U.S., which allegedly contained false and misleading statements. 519 F.2d at 987. The activities in the U.S. – meetings involving underwriters, lawyers and accountants – were merely preparatory or constituted culpable nonfeasance, were "relatively small in comparison to those abroad," and thus were insufficient to establish subject matter jurisdiction. *Id.* at 987 & 985 n.24. Here, the actions central to the fraud took place in the U.S.[4] (Compl. ¶¶ 104-113.)

**B.     The Effects Test Is Satisfied**

The allegations of the Complaint also amply satisfy the effects test, which depends on the impact of overseas activity on U.S. investors and securities traded on U.S. securities exchanges. *See Cromer*, 137 F. Supp. 2d at 479-480.

---

[4] The misstatements in *In re Bayer AG Securities Litigation*, 423 F. Supp. 2d 105 (S.D.N.Y. 2005), originated from Bayer AG in Germany, and only later were included in, *inter alia*, Bayer's SEC filing of its annual report. *Id.* at 111-12. In *Euro Trade & Forfaiting, Inc. v. Vowell*, 2002 U.S. Dist. LEXIS 5385 (S.D.N.Y. Mar. 29, 2002), the court held that the "actual fraud" was a "pledge and payment of shares to MFC Merchant Bank," which was not alleged to have occurred in the U.S. *Id.* at *22-23, 27-28.

First, the Offshore Plaintiffs, which were managed in New York, decided whether to make and retain investments in the Offshore XL Fund from New York. (Compl. ¶¶ 15, 119-21.) Moreover, KPMG Cayman's false and misleading audit reports were sent to, and reviewed and relied upon by, the Offshore Plaintiffs' managers in New York. (*Id.* ¶¶ 15, 116.) Similarly, in *Cromer*, recipients of the administrator's monthly NAV statements included U.S. investors. 137 F. Supp. 2d at 480-81.

Second, KPMG Cayman's conduct affected securities traded on U.S. exchanges. Madoff's purported investment strategy required investment in U.S. Treasuries as well as other securities traded on the U.S. stock exchange. (*See, e.g.*, Compl. ¶¶ 60, 108-109.) On similar facts, the court in both *Pension Committee* and *Cromer* found federal subject matter jurisdiction existed. *See Pension Committee*, 592 F. Supp. 2d at 626 (investments in securities traded on various U.S. stock exchanges); *Cromer*, 137 F. Supp. 2d at 480-81 (securities listed on U.S. exchanges and transactions cleared and assets held in the U.S.).

*Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118 (2d Cir. 1998), cited by KPMG Cayman, is distinguishable from this case. There, the only connection to the U.S. was an offer to sell foreign securities made by telephone and facsimile to a Canadian national when he was in Florida at his vacation home – contacts the court characterized as merely "fortuitous and personal." *Id.* at 126-27. Here, by contrast, KPMG Cayman's connections to the U.S. are far more substantial.

## C. An Admixture of the Two Tests Demonstrates That Federal Subject Matter Jurisdiction Exists

Although each test is satisfied, application of a combination of the tests also demonstrates that subject matter jurisdiction exists. KPMG Cayman's culpable

failures to act in the U.S. directly caused plaintiffs' losses, and KPMG Cayman's fraudulent representations were sent to, and relied upon by, the Offshore Plaintiffs' New York-based manager. These facts, and the others identified above, are more than sufficient to justify the exercise of federal subject matter jurisdiction over KPMG Cayman. *See Itoba*, 54 F.3d at 124 (a "sufficient combination of ingredients of the conduct and effects tests is present ... to justify the exercise of jurisdiction").[5]

## II.
## THIS COURT SHOULD NOT EXERCISE ITS DISCRETION TO DISMISS THE ACTION FOR *FORUM NON CONVENIENS*

"Any review of a *forum non conveniens* motion starts with 'a strong presumption in favor of the plaintiff's choice of forum.'" *Norex Petrol., Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 154 (2d Cir. 2005) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)). "A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).

There are three steps in adjudicating a *forum non conveniens* motion: *first*, the court assesses the degree of deference to accord to plaintiff's choice of forum;

---

[5] Even if the federal claim against KPMG Cayman is dismissed, the Court can and should exercise supplemental jurisdiction over plaintiffs' remaining state law claims if it sustains any of plaintiffs' federal claims against *any* defendant. All of plaintiffs' federal and common law claims against all defendants derive from defendants' misrepresentations in connection with, and breaches of duties arising from, plaintiffs' investments in the XL Funds. Thus, all of plaintiffs' claims arise from "'one case or controversy,'" and thus satisfy 28 U.S.C. § 1367(a) because they all "'derive from a common nucleus of operative facts,'" and "'would normally be expected to be tried in a single judicial proceeding.'" *In re Methyl Tertiary Butyl Ether [MTBE] Prods. Liab. Litig.*, 510 F. Supp. 2d 299, 321 (S.D.N.Y. 2007) (quoting *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006)); *see also Gagliardi v. Universal Outdoor Holdings, Inc.*, 137 F. Supp. 2d 374, 380 (S.D.N.Y. 2001); *Cabrera v. New York City*, 2004 U.S. Dist. LEXIS 18402, at *26-28 (S.D.N.Y. Sept. 15, 2004); *Lennon v. Seaman*, 2001 U.S. Dist. LEXIS 2798, at *17 (S.D.N.Y. Mar. 16, 2001) ("The standard is construed generously, requiring only a loose factual connection among the claims.") (internal quotations and citations omitted).

*second*, the court considers whether the alternative forum proposed by the defendant is adequate to adjudicate the parties' dispute; and, only if one exists, *third*, the court weighs the public and private interests implicated by the choice of forum. *See Norex*, 416 F.3d at 153; *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

KPMG Cayman's motion should be rejected because plaintiffs' choice of forum is entitled to substantial deference, KPMG Cayman fails to establish that the Cayman Islands is an adequate forum, and the public and private interest factors weigh in plaintiffs' favor.

## A. <u>Plaintiffs' Choice of Forum Is Entitled to Substantial Deference</u>

"It is well settled that every plaintiff's selection of forum receives deference, although the degree of deference increases as the plaintiff's ties to the forum increase." *Cromer Fin. Ltd. v. Berger*, 158 F. Supp. 2d 347, 353 (S.D.N.Y. 2001) (internal quotation marks omitted). "'[T]he degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale, depending on the degree of convenience reflected by the choice in a given case.'" *Norex*, 416 F.3d at 154 (quoting *Iragorri*, 274 F.3d at 71). "The more it appears that a ... foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference ... given to the plaintiff's choice." *Iragorri*, 274 F.3d at 71-72. That is:

> the greater the plaintiff's or the lawsuit's *bona fide* connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*.

*Id.* at 72.   Plaintiffs' and this lawsuit's *bona fide* connections to the chosen forum and the

consideration of convenience must be balanced against any evidence of forum-shopping.

Here, plaintiffs have a *bona fide* connection to New York, because they

are managed from New York. (Compl. ¶ 15.)   As such, plaintiffs' residence should be

treated as New York for *forum non conveniens* purposes, and their forum choice given

substantial deference. *See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc

of Am. Sec., LLC*, 446 F. Supp. 2d 163, 177 n.79 (S.D.N.Y. 2006) (although defendant

funds were registered offshore, funds' operative location for *forum non conveniens*

analysis was New York because funds' manager was located there); *Bank of Am. Corp. v.

Braga Lemgruber*, 385 F. Supp. 2d 200, 235 (S.D.N.Y. 2005) (while plaintiffs were not

residents of New York, presence of "offices and significant operations in the Southern

District of New York" warranted significant deference).

This lawsuit, including the claims against KPMG Cayman, also has a *bona

fide* connection with New York:  defendants Tremont Group Holdings, Inc., Tremont

Partners, Inc., Oppenheimer Acquisition Corporation (Tremont's parent), and KPMG

LLP are located in New York, and their defendants' wrongful conduct occurred in New

York (Compl. ¶¶ 6-10, 21-22, 24-25); plaintiffs' assets purportedly were custodied and

were misappropriated in New York (*id.* ¶¶ 5, 17); the audit procedures GAAS required

KPMG Cayman and KPMG LLP to perform should have occurred in New York (*id.* ¶¶

17-18, 22, 92-113); the audit reports were sent to plaintiffs' manager in New York, where

they were reviewed and relied upon in making and retaining plaintiffs' investments (*id.*

¶¶ 15, 119-21); and New York law governs plaintiffs' common law tort claims against

KPMG Cayman.[6] *See Pension Comm.*, 446 F. Supp. 2d at 177 & n.79 (significant deference granted where "majority of events in th[e] case occurred in New York"); *Irwin v. ZDF Enters. GmbH*, 2006 U.S. Dist. LEXIS 6156, at *37 (S.D.N.Y. Feb. 17, 2006) (*bona fide* connection where three of four defendants had offices in New York and wrongful conduct occurred in U.S.); *Cromer*, 158 F. Supp. 2d at 356, 363 ("strong connection between New York and the underlying facts" of fraud claims against offshore auditors); *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28, 32-33 (2d Cir. 2002) (U.S. interest in enforcing securities law established a *bona fide* connection).

This forum also is convenient because (1) for *forum non conveniens* purposes, plaintiffs reside in New York; (2) witnesses and evidence from virtually all parties and key non-parties are located in New York (Compl. ¶¶ 15, 17-18, 21-22, 24-25); (3) all defendants are amenable to suit in New York; (4) each party has appropriate legal counsel in New York; and (5) related Tremont actions with similar issues and defendants are pending before this court.[7] *See DiRienzo*, 294 F.3d at 29 (deference accorded because related cases were pending); *Pension Comm.*, 446 F. Supp. 2d at 177 (forum convenient due to presence of witnesses and evidence); *Ramirez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc.*, 448 F. Supp. 2d 520, 526 (S.D.N.Y. 2006) (amenability to suit and availability of counsel and witnesses factors weighed in plaintiffs' favor).

---

[6] *See Pension Comm.*, 446 F. Supp. 2d at 194 ("Because occurrences in New York and the parties' contacts with that forum bear the most relation to the torts at issue here, New York has the greatest interest in applying its law.").

[7] Factors relevant to assessing convenience include "'[1] the convenience of the plaintiff's residence in relation to the chosen forum, [2] the availability of witnesses or evidence to the forum district, [3] the defendant's amenability to suit in the forum district, [4] the availability of appropriate legal assistance, and [5] other reasons relating to convenience or expense.'" *Norex*, 416 F.3d at 155 (quoting *Iragorri*, 274 F.3d at 72).

In contrast, KPMG Cayman does not – and cannot – argue that plaintiffs selected New York merely for forum-shopping reasons. *See, e.g.*, *Pension Comm.*, 446 F. Supp. 2d at 177 (granting significant deference where there was no showing of forum shopping, even though the action "involve[d] investments in BVI funds by predominantly non-U.S. residents."). Accordingly, plaintiffs' choice of forum should be given substantial deference.

**B.**    **The Cayman Islands Is Not an Adequate Forum As to All Defendants**

A forum is not adequate unless *all* defendants are subject to the jurisdiction of the proposed foreign forum. *See Concesionaria DHM, S.A., v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 563 (S.D.N.Y. 2004) (citing *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir. 1998)).   KPMG Cayman's motion should be denied because it has not shown that all defendants are amenable to process in the Cayman Islands. (*See* Br. 13-14.) *See Concesionaria*, 307 F. Supp. 2d at 563.

KPMG Cayman cites *Warter v. Boston Securities, S.A.*, 380 F. Supp. 2d 1299 (S.D. Fla. 2004) and *Wyndham Associates v. Bintliff*, 398 F.2d 614 (2d Cir. 1968), in support of its argument that the claims against it should be severed and litigated separately in the Cayman Islands. (Br. at 15.) But these cases state that severance of certain defendants is permissible "if they are alleged to be only *indirectly* connected to the conduct forming the primary basis of the action." *Warter*, 380 F. Supp. 2d at 1307 (emphasis added); *accord Wyndham*, 398 F.2d at 618. That is not the case here. The Complaint alleges that KPMG Cayman (and KPMG LLP) perpetrated a fraud on plaintiffs. Moreover, their fraudulent or negligent audits validated Tremont's misrepresentations regarding the XL Funds. (*See* Compl. ¶¶ 4-5, 7, 117, 119-121.) If the

audits had been properly performed, Madoff's Ponzi scheme would have been revealed. (*See id.* ¶¶ 106-112.)

Severance is also inappropriate here because it would result in inconvenience, increased costs to the parties, and judicial inefficiency. *See Cromer*, 158 F. Supp. 2d at 364. Plaintiffs' claims against KPMG Cayman and KPMG LLP are virtually identical. (*See* Compl. ¶¶ 89-121; *compare id.* ¶¶ 202-08, 220-25, 236-40 *with id.* ¶¶ 211-17, 228-33, 243-47.) Resolution of plaintiffs' claims against both KPMG entities will likely involve testimony by experts regarding the relevant GAAS provisions and their application, by Tremont about its communications with the KPMG entities, and by the KPMG entities about communications with each other.

## C. The Public Interest Factors Weigh in Plaintiffs' Favor

The public interest factors are: (1) having local disputes settled locally; (2) avoiding burdening jurors with cases that have no impact on their community; (3) avoiding problems of applying foreign law; and (4) the administrative burden placed on the court. *See Iragorri*, 274 F.3d at 74.

As discussed above, the claims against KPMG Cayman (as well as the other defendants) are strongly connected to New York. As such, resolution of this dispute here is of local interest, and will not burden jurors with matters lacking local importance. *See Cromer*, 158 F. Supp. 2d at 356-57, 358 (fraud claims against foreign defendants of importance to New York jurors where action connected to New York).

The application of foreign law factor is essentially a non-issue. Several claims will require application of the federal securities laws and U.S. GAAS principles, which this Court is better suited to apply than a Cayman Islands court. *See id.* at 357 (denying *forum non conveniens* motion where U.S. securities laws and GAAS principles

were at issue). The same analysis is true for plaintiffs' common law claims, which are governed by New York law. Even if Cayman Islands law were to apply, the "need to apply foreign law ... alone is not sufficient to warrant dismissal" where, as here, the other factors balance in plaintiffs' favor. *Piper Aircraft*, 454 U.S. at 260 n. 29; *see also Peregrine Myanmar v. Segal*, 89 F.3d 41, 47 (2d Cir. 1996) (denying *forum non conveniens* motion because other factors weighed for plaintiff despite potential application of foreign law to some claims). Indeed, U.S. courts regularly apply Cayman Island law. *See Bullmore v. Ernst & Young Cayman Islands*, 2006 WL 4682212, at *15 (N.Y. Sup. Ct. N.Y. County Apr. 12, 2006) (the need to apply Cayman Island law was "of no import" to deciding a *forum non conveniens* motion because "the Court is fully capable of applying Cayman Island law").

Finally, because this Court must adjudicate claims against KPMG LLP and Tremont in this and the related class actions, the adjudication of plaintiffs' claims against KPMG Cayman here promotes judicial efficiency. *See Georgiadis v. First Boston Corp.*, 1994 U.S. Dist. LEXIS 10263, at *13 (S.D.N.Y. July 27, 1994).

### D.     The Private Interest Factors Weigh in Plaintiffs' Favor

The private interest factors include: "'[1] the relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and, [3] all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Iragorri*, 274 F.3d at 73-74 (quoting *Gilbert*, 330 U.S. at 508).

Although KPMG Cayman states that relevant documents and witnesses are located in the Cayman Islands, it does not assert that it or such witnesses would be unwilling to participate in discovery or trial here. (*See* Br. at 15.) Accordingly, only the

first and third factors need be analyzed here. *See Manela v. Garantia Banking*, 940 F. Supp. 584, 592 (S.D.N.Y. 1996) (absent allegation that witnesses would be unwilling to testify, compulsory process not at issue).

That KPMG Cayman's documents are in the Cayman Islands is effectively irrelevant because scanner technology "makes the documentary evidence factor far less important than ... in the past." *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 211 (S.D.N.Y. 1999) (weighing factor in plaintiff's favor). Moreover, KPMG Cayman has not, and cannot, show that the costs and burden of travel to New York to testify establishes "oppressiveness and vexation ... out of all proportion" to plaintiffs' convenience, or that proceeding in this forum is inappropriate. *Sinochem*, 549 U.S. at 429; *see also Cromer*, 158 F. Supp. 2d at 360 (factor weighed in plaintiffs' favor as there was "no serious inconvenience for any Bermuda witness to travel to New York ....").

Finally, as to the third factor, the significant costs of two separate and redundant proceedings are far greater than the marginal cost of litigating the claims against KPMG Cayman together here with the rest of plaintiffs' claims. *See Cromer*, 158 F. Supp. 2d at 362 ("multiplicitous global litigation . . . would exponentially increase the cost and burden on all of the parties."); *Bullmore*, 2006 WL 4682212, at *15 (granting motion would require litigating two related actions in two forums).

### III.
### THE COMPLAINT PLEADS FACTS RAISING A STRONG INFERENCE OF SCIENTER

In this Circuit, recklessness is a sufficiently culpable mental state for securities fraud. *ECA & Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). To plead recklessness by an outside auditor, "a plaintiff must allege that the [t]he accounting practices were so deficient that the audit

amounted to no audit at all, or an egregious refusal to see the obvious, or investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts." *In re IMAX Sec. Litig.*, 587 F. Supp. 2d 471, 483 (S.D.N.Y. 2008) (internal quotations omitted).

The Complaint alleges that KPMG Cayman knew that *all* of the reported information concerning the XL Funds' purported assets and trades came from Madoff and BMIS, with whom the functions of investment advisor, prime broker, and custodian were concentrated. (Compl. ¶¶ 97-98.) Accordingly, Madoff and BMIS were the *only source* for this critical information reported to plaintiffs and purportedly audited by KPMG Cayman. (*Id.* ¶ 98.)

Given the "significant risks" under GAAS associated with this exclusive reliance on Madoff and BMIS for this information and these functions, GAAS required KPMG Cayman to do more than simply perform audit procedures on the Offshore XL Fund or Offshore Reference Entity. (*Id.*) Instead, it was required to gain comfort that the asset and trade information generated by Madoff and BMIS and reported by these funds was not the result of fraud. (*Id.* ¶¶ 96-98.) To do so, KPMG Cayman was required to determine that a reputable auditor had conducted adequate procedures to satisfy itself either that BMIS's internal controls were effective, or that, in fact, the reported assets existed and trades occurred. (*Id.* ¶¶ 98, 103.) Had a reputable auditor (and not F&H) done so, KPMG Cayman's responsibility to inquire further might have ended.

But by its own admission,[8] KPMG Cayman failed to consider the reliability of any audit procedures F&H performed. The indicia of F&H's unreliability, which were easily discoverable,[9] meant that KPMG Cayman could not properly gain comfort from F&H's purported audit of BMIS. (*Id.* ¶¶ 99-102.) Instead, KPMG Cayman was required by GAAS either to perform audit procedures on BMIS itself or to require that some other reputable auditor be engaged to perform these procedures. (*Id.* ¶¶ 102-03.) KPMG Cayman, again by its own admission,[10] failed to do either, and thereby failed, among other things, to seek independent corroboration of the assets and trades.[11] Thus, in response to this alarming confluence – (i) the complete reliance on Madoff and BMIS for all asset and trade information and investment functions, and (ii) F&H's easily discoverable unreliability – KPMG Cayman asserts it was required to do *nothing*, despite GAAS's requirement that it do more.

Accordingly, the Court should infer, based on these pleaded facts, that KPMG Cayman recklessly misrepresented to plaintiffs that its audits were conducted in accordance with GAAS. KPMG Cayman's flagrantly inadequate audits, particularly in light of the known "significant risks," constituted a complete failure to conduct *any*

---

[8] KPMG Cayman asserts that "[n]one of the provisions of GAAS that Plaintiffs cite suggests that ... an auditor has any obligation to second-guess the audit work performed on a third-party, such as BMIS" – tantamount to an admission that it did not inquire about F&H's reputation and standing. (Br. at 19-20.)

[9] See *supra* p. 4.

[10] KPMG Cayman asserts that "nothing in any of Foreign Plaintiffs' allegations suggests why KPMG Cayman would have any duty to, in essence, conduct an audit of BMIS, or that it knew or should have known of such a duty" – again, tantamount to an admission that it performed no audit procedures in connection with BMIS. (Br. at 19.)

[11] If it had tried, it would have failed to receive such corroboration because the assets did not exist and the trades never occurred. See *supra* p. 4.

meaningful audit procedures to determine whether the critical asset and trade information reported was the result of fraud.

Even though it failed to do so, KPMG Cayman reported to plaintiffs that it *had* conducted GAAS-compliant audits. These facts raise a strong, cogent, and compelling inference that KPMG Cayman recklessly made these misrepresentations. *See, e.g., Lewin v. Lipper Convertibles, L.P.*, 2004 U.S. Dist. LEXIS 8484, at *4-5 (S.D.N.Y. May 13, 2004) (auditor failed to check for corroborative support of valuations that, had they done so, would have enabled auditor to identify and question other management representations); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 239-40 (S.D.N.Y. 2004) (auditor committed numerous GAAP and GAAS violations and ignored red flags concerning revenue that was "central[]" to the audit client's financial statements); *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, 2003 U.S. Dist. LEXIS 7869, at *34-38 (S.D.N.Y. May 12, 2003) (auditor ignored red flags and committed numerous GAAS violations, including by "fail[ing] to obtain all corroborating information necessary to support the financial statements being audited," and "fail[ing] to establish and perform a confirmation process with third parties to verify information utilized in the audit"); *Katz v. Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269, 275 (S.D.N.Y. 2008) (allegations went "well beyond simply alleging violations of accounting principles, but instead point to red flags that alerted or should have alerted" the auditor to the risk of fraud); *In re New Century*, 588 F. Supp. 2d 1206, 1233-36 (C.D.

Cal. 2008) (auditor "did nothing" to correct flawed accounting methods, and there was an "absence of a meaningful investigation" in response to known risks of fraud).[12]

*In re Complete Management Securities Litigation*, 153 F. Supp. 2d 314 (S.D.N.Y. 2001), which KPMG Cayman cites, is instructive. There, Arthur Andersen was sued for fraud in issuing clean audit reports for a medical practice management corporation (CMI) that provided services to a medical practice (GMMS) in exchange for a portion of GMMS's accounts receivables. However, GMMS engaged in excessive and unnecessary billings, and its receivables were often uncollectible. The court, in holding that plaintiffs' allegations of Arthur Andersen's scienter were sufficient, focused on what plaintiffs alleged Arthur Andersen failed to do vis-à-vis GMMS:

> [T]he centrality of GMMS to CMI's overall financial health suggests that Andersen could have taken much greater pains to investigate the *bona fides* of the GMMS receivables .... [I]f Andersen were conducting any kind of audit at all, they would have seen the potential problems with the GMMS receivables and the need to investigate further .... [T]he failure to do so in light of GMMS's critical importance to CMI raises significant questions.

*Id.* at 334. The same reasoning applies here.

KPMG Cayman argues that plaintiffs "do not cite a single fact to support" the "information and belief" that KPMG Cayman "knew that Tremont Partners ... engaged Madoff and BMIS to perform the functions of investment advisor, prime broker, and custodian ...." (Br. at 19.) But the Complaint complies with Rule 9(b), which

---

[12] The cases KPMG Cayman cites do not support a different conclusion. *See Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000) (no factual basis pled supporting an inference that the auditor should have questioned how its clients accounted for royalty advances); *Zucker v. Sasaki*, 963 F. Supp. 301, 305-10 (S.D.N.Y. 1997) (complaint, alleging only that the auditor had access to its client's financial information, failed to allege any factual support or basis for the claim that the auditor was reckless in not predicting the subsequent failure of an acquired company).

provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

In addition, when facts are peculiarly within the opposing party's knowledge, they may be alleged upon information and belief, so long as they are accompanied by a statement of the facts upon which the belief is based. *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). The Complaint satisfies this rule. Plaintiffs' allegation that KPMG Cayman, as auditor, had to be aware of the operating structure of these funds is based on the following facts: (i) Tremont delegated *all* investment decisions to Madoff and BMIS, while at the same time Madoff and BMIS acted as prime broker and custodian for all trades and assets (*id.* ¶ 2, 17, 39); (ii) Tremont marketed these funds to investors as a gateway to Madoff and BMIS (*id.* ¶ 39, 60); and (iii) KPMG Cayman and KPMG LLP audited these financial statements for the years 2005 through 2008. (*Id.* ¶¶ 114-116.)

Further, the Complaint describes in extensive detail the GAAS requirements and facts demonstrating that KPMG Cayman should have obtained additional audit evidence relating to the functions BMIS performed. (*Id.* ¶ 102; *see generally id.* ¶¶ 89-103.) These detailed factual allegations specifically explain why KPMG Cayman had a duty to investigate the activities of BMIS, and they fully comply with Rule 9(b)'s heightened pleading standards.

Lastly, the inference of scienter is at least as compelling as the only potentially plausible competing inference (which KPMG Cayman does not even offer): that KPMG Cayman, when misrepresenting that it had conducted GAAS-compliant audits, did so innocently or negligently, rather than recklessly. But KPMG Cayman knew that the Offshore XL Fund and the Offshore Reference Entity were merely conduits for

the asset and trade information generated exclusively by Madoff and BMIS. (*Id.* ¶ 97-98.) In the face of the GAAS requirements applicable to this context, KPMG Cayman's failure to make any inquiry into the reliability of F&H's audit work, or to seek any independent corroboration of the information Madoff and BMIS generated, is so flagrant that an inference of innocence or negligence is not plausible, let alone compelling.

## IV.
## THE COMPLAINT PROPERLY PLEADS COMMON LAW FRAUD AND NEGLIGENCE AGAINST KPMG CAYMAN

**A.      The Complaint Adequately Pleads Fraud**

KPMG Cayman's argument that the complaint fails to allege scienter for plaintiffs' common law fraud claim fails for the same reason that its challenge to plaintiffs' federal securities claim fails. (*See supra* § III.)

KPMG Cayman also argues that plaintiffs have failed to plead facts specific to KPMG Cayman and KPMG LLP. (Br. at 21.) But the fact that both KPMG entities engaged in similar wrongdoing is not grounds for dismissal. Moreover, the Complaint contains detailed factual allegations linking KPMG Cayman in particular with specific fraudulent representations. (*See* Compl. ¶¶ 114, 116.)

**B.      The Complaint Adequately Pleads Negligence**

KPMG Cayman argues that "[t]he Complaint is devoid of any factual allegations to support the claim that KPMG Cayman" acted negligently. (Br. at 22.) This argument is baseless, given the extensive substantive allegations explaining the factual bases for plaintiffs' claims against KPMG Cayman. To plead negligence under New

York law,[13] "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (citation omitted). The Complaint plainly meets this standard.

First, where the parties are not bound by contractual privity, a duty of care will arise where the parties are in a relationship "so close as to approach that of privity." *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 546 (1985). To establish such a relationship, a plaintiff must allege (1) awareness by the audit firm that the financial reports were to be used for a "particular purpose"; (2) in furtherance of which plaintiffs were intended to rely; and (3) some conduct linking the two parties that "evinces the accountant's understanding of [plaintiff's] reliance." *Id.* at 551. The Complaint establishes that KPMG Cayman knew that plaintiffs would rely on the audit opinions it sent to them when they made and retained investments in the XL Funds, and that plaintiffs did in fact rely on those audit opinions. (Compl. ¶¶ 119-20.) The "linking conduct" evincing KPMG Cayman's understanding of plaintiffs' reliance is established here as well, as KPMG Cayman addressed its audit reports to plaintiffs as shareholders of the XL Funds. (*Id.* ¶ 114-16, 244-245) Accordingly, KPMG LLP owed plaintiffs a duty to use reasonable professional care, or the competence or skill of a professional independent auditor, in conducting its audits. (*Id.* ¶¶ 89-103.)

---

[13] KPMG Cayman asserts that Cayman Islands law will most likely apply to plaintiffs' negligence claim "based on conduct that took place in the Cayman Islands." (Br. at 20 n.5.) But as described above, plaintiffs' claims are based on conduct that took place *in New York*. (*See supra* §§ I, II.) Thus, New York law governs plaintiffs' negligence claim. *See Pension Comm.*, 446 F. Supp. 2d at 194.

Second, as explained above, the Complaint describes how KPMG Cayman breached that duty – by failing to conduct its audits in accordance with GAAS, yet sending to plaintiffs unqualified reports. (*Id.* ¶¶ 104-18.) Third, also as explained above, plaintiffs justifiably relied on KPMG Cayman's audit opinions in deciding to buy and retain shares in the Offshore XL Fund, and were damaged when they lost all their investments when the Funds collapsed. (*Id.* ¶¶ 119-21.) Accordingly, the Complaint adequately pleads negligence.

## CONCLUSION

For the foregoing reasons, KPMG Cayman's motion to dismiss should be denied in its entirety.

Dated:  New York, New York
        July 14, 2009

Respectfully submitted,

FRIEDMAN KAPLAN SEILER &
ADELMAN LLP

Scott M. Berman (sberman@fklaw.com)
Anne E. Beaumont
John N. Orsini
Steven E. Frankel
Kevin L. Oberdorfer
1633 Broadway
New York, NY 10019-6708
(212) 833-1100

*Attorneys for Plaintiffs*