UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MERIDIAN HORIZON FUND, LP, MERIDIAN HORIZON FUND II, LP, MERIDIAN DIVERSIFIED FUND, LP, MERIDIAN DIVERSIFIED FUND, LTD., MERIDIAN DIVERSIFIED ERISA FUND, LTD., MERIDIAN DIVERSIFIED COMPASS FUND, LTD., and MERIDIAN ABSOLUTE RETURN ERISA FUND, LTD., <br><br> Plaintiffs, <br><br> -against- <br><br> TREMONT GROUP HOLDINGS, INC., TREMONT PARTNERS, INC., TREMONT (BERMUDA) LIMITED, OPPENHEIMER, ACQUISITION CORPORATION, KPMG LLP, and KPMG (CAYMAN), <br><br> Defendants. | 09 Civ. 3708 (TPG) <br><br> **ECF FILED** <br><br> **ORAL ARGUMENT REQUESTED** |

## REPLY MEMORANDUM IN SUPPORT OF KPMG LLP'S MOTION TO DISMISS OR ALTERNATIVELY TO STAY THE ACTION IN FAVOR OF ARBITRATION

HOWREY LLP
Gary F. Bendinger
(bendingerg@howrey.com)
Gregory G. Ballard
(ballardg@howrey.com)
R. Corey Worcester
(worcesterc@howrey.com)
601 Lexington Avenue, 54th Floor
New York, NY 10022
Telephone: (212) 896-6500
Facsimile: (212) 896-6501

WILLIAMS & CONNOLLY LLP
John K. Villa (pro hac vice)
(jvilla@wc.com)
David A. Forkner (pro hac vice)
(dforkner@wc.com)
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

**Attorneys for defendant KPMG LLP**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .....................................................................................................................2

POINT I      THE COMPLAINT FAILS TO PLEAD SEVERAL ESSENTIAL
ELEMENTS OF A CAUSE OF ACTION UNDER SECTION 10(B) ...................2

     A.    Plaintiffs do not allege particularized facts giving rise
to a "strong inference" of scienter on the part of KPMG LLP ................................2

         1.    The applicable scienter standards ...............................................2

         2.    Plaintiffs' allegations of GAAS violations ...................................2

         3.    Plaintiffs' newly asserted purported "red flags" .........................6

         4.    Compelling nonfraudulent inferences.........................................10

     B.    Plaintiffs do not allege reliance..........................................................12

     C.    Plaintiffs do not allege loss causation ................................................13

POINT II     THE STATE LAW CAUSES OF ACTION MUST BE DISMISSED .................14

     A.    The Court should decline to exercise supplemental jurisdiction ..........................14

     B.    The Martin Act precludes the state law claims....................................................14

     C.    Each of the state law claims fails to state a claim................................................17

         1.    Common law fraud ................................................................17

         2.    Negligent misrepresentation .....................................................17

POINT III    PLAINTIFFS' CLAIMS ARE SUBJECT TO MANDATORY ARBITRATION
AND SHOULD BE STAYED IF THEY ARE NOT DISMISSED ......................17

CONCLUSION................................................................................................................18

# TABLE OF AUTHORITIES

**Page**

## Cases

Am. Bureau of Shipping v. Tencara Shipyard S.P.A.,
  170 F.3d 349 (2d Cir. 1999)...........................................................................17, 18

Azrielli v. Cohen Law Offices,
  21 F.3d 512 (2d Cir. 1994).........................................................................................12

Blue Chip Stamps v. Manor Drug Stores,
  421 U.S. 723 (1975)....................................................................................................12

Chill v. Gen. Elec. Co.,
  101 F.3d 263 (2d Cir. 1996)..........................................................................................6

ECA, Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.,
  553 F.3d 187 (2d Cir. 2009).........................................................................................6

Ernst & Ernst v. Hochfelder,
  425 U.S. 185 (1976)......................................................................................................2

Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC,
  376 F. Supp. 2d 385 (S.D.N.Y. 2005).......................................................................13

Granite Partners, L.P. v. Bear, Stearns & Co. Inc.,
  17 F. Supp. 2d 275 (S.D.N.Y. 1998).........................................................................15

In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,
  381 F. Supp. 2d 192 (S.D.N.Y. 2004)..............................................................3, 5, 6, 7

In re Bayou Hedge Fund Litig.,
  534 F. Supp. 2d 405 (S.D.N.Y. 2007).....................................................................6, 11

In re Colonial P'ship Litig.,
  896 F. Supp. 250 (D. Conn. 1995)........................................................................13, 14

In re Complete Mgmt. Inc. Sec. Litig.,
  153 F. Supp. 2d 314 (S.D.N.Y. 2001).......................................................................3, 5

In re Doral Fin. Corp. Sec. Litig.,
  563 F. Supp. 2d 461 (S.D.N.Y. 2008) ..........................................................................6

In re New Century,
  588 F. Supp. 2d 1206 (C.D. Cal. 2008) ....................................................................3, 5

In re Spiegel, Inc. Sec. Litig.,
  382 F. Supp. 2d 989 (N.D. Ill. 2004) ............................................................................3

In re Sunterra Corp. Sec. Litig.,
  199 F. Supp. 2d 1308 (M.D. Fla. 2002) ...............................................................3, 6, 7

In re Winstar Commune'ns,
   2006 WL 473885 (S.D.N.Y. Feb. 27, 2006)..................................................6

Kassover v. UBS AG,
   619 F. Supp. 2d 28 (S.D.N.Y. 2008)..............................................15, 16

Katz v. Image Innovations Holdings, Inc.,
   542 F. Supp. 2d 269 (S.D.N.Y. 2008)..............................................4, 5

Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship.,
   906 N.E. 2d 1049 (N.Y. 2009) ......................................................16

Lattanzio v. Deloitte & Touche LLP,
   476 F.3d 147 (2d Cir. 2007)..........................................................13

Lewin v. Lipper Convertibles, L.P.,
   2004 WL 1077930 (S.D.N.Y. May 13, 2004) ................................4, 5

Louros v. Kreicas,
   367 F. Supp. 2d 572 (S.D.N.Y. 2005) ...........................................15

Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC,
   2003 WL 22052894 (S.D.N.Y. Sept. 2, 2003)................................16

Nappier v. Pricewaterhouse Coopers LLP,
   227 F. Supp. 2d 263 (D.N.J. 2002) ..................................................7

Novak v. Kasaks,
   216 F.3d 300 (2d Cir. 2000)..............................................................8

Sedona Corp. v. Ladenburg Thalmann & Co., Inc.,
   2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005) ..................................16

Sterling Nat'l Bank v. Ernst & Young, LLP,
   2005 WL 3076341 (N.Y. Cty. Jan. 7, 2005) ...................................14

Teachers' Ret. Sys. of La v. A.C.L.N., Ltd.,
   2003 WL 21058090 (S.D.N.Y. May 12, 2003) .................................5

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
   551 U.S. 308 (2007)...................................................................2, 10

Thompson v. Parkchester Apartments Co.,
   670 N.Y.S.2d 858 (1st Dep't 1998) ...............................................16

Van De Velde v. Coopers & Lybrand,
   899 F. Supp. 731 (D. Mass. 1995) ...................................................7

Whitehall Tenants Corp. v. Estate of Olnick,
   623 N.Y.S.2d 585 (1st Dep't 1995) ..........................................15, 16

Zucker v. Sasaki,
   963 F. Supp. 301 (S.D.N.Y. 1997) ...................................................6

Zuckerman v. Harnischfeger Corp.,
   591 F. Supp. 112 (S.D.N.Y. 1984) ...................................................................12

## **Statutes**

15 U.S.C. § 78u-4(b)(2) ...................................................................................2

KPMG LLP submits this reply memorandum in further support of its motion to dismiss or to stay the claims against KPMG LLP in favor of arbitration.

## PRELIMINARY STATEMENT

As described in KPMG LLP's opening memorandum ("Opening Mem."), Plaintiffs seek to impose liability on defendants, including KPMG LLP, for the Ponzi scheme orchestrated by Bernard Madoff and his SEC-registered broker-dealer BMIS. In their opposition ("Pl. Mem."), the plaintiffs who sue KPMG LLP (the Onshore Plaintiffs) base their claims on the theory that KPMG LLP committed securities fraud by stating that it "conducted a GAAS-compliant audit" in (i) audit opinions dated March 26, 2007 and March 24, 2008 on the financial statements of the Onshore XL Fund and (ii) an audit opinion dated March 6, 2006 on the financial statements of the Prime Fund, in which they did not invest. (Pl. Mem. at 5.) Plaintiffs argue that in auditing these hedge funds, KPMG LLP was "required by GAAS either to perform audit procedures on BMIS itself or to require that some other reputable auditor be engaged to perform those procedures." (Id. at 8.)

Plaintiffs' arguments are without merit. As a matter of law, allegations that an auditor issued an audit opinion incorrectly stating that its audit complied with GAAS do not amount to securities fraud. Also, the theory that KPMG LLP was required to perform audit procedures on a non-audit client (BMIS) is devoid of support in either the auditing literature or law. The cases Plaintiffs cite address alleged deficiencies in procedures on audit clients; the cases do not purport to require auditors to conduct audit procedures on non-audit clients. Under these circumstances, Plaintiffs have not established a "strong inference" that KPMG LLP had the scienter required to support a securities fraud claim. Further undermining their claim, Plaintiffs do not dispute the facts and circumstances supporting a contrary inference, including that Madoff was a well-respected financial professional, that BMIS was a SEC-registered and regulated broker-dealer, and that Madoff's fraud was well-hidden and escaped detection by regulators, sophisticated investors, and at least one other prominent accounting firm that audited the Rye Funds.

Plaintiffs' other arguments are also without merit for the reasons set forth below.

## ARGUMENT

## POINT I

## THE COMPLAINT FAILS TO PLEAD SEVERAL ESSENTIAL ELEMENTS OF A CAUSE OF ACTION UNDER SECTION 10(B)

A.    **Plaintiffs do not allege particularized facts giving rise to a "strong inference" of scienter on the part of KPMG LLP**

1.    The applicable scienter standards

Plaintiffs do not contest the applicable legal standards. Plaintiffs must plead specific facts giving rise to a "strong inference," 15 U.S.C. § 78u-4(b)(2), that KPMG LLP acted with an "intent to deceive, manipulate or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193-94 n.12 (1976). In the Second Circuit, recklessness suffices only if it approximates actual intent. (Opening Mem. at 6.) Plaintiffs do not dispute that they allege no cognizable motive by KPMG LLP to commit fraud, and consequently their pleading burden is "correspondingly greater." (Id.) Nor do Plaintiffs dispute that, as courts have recognized, it would be "economically irrational" for auditors such as KPMG LLP to condone a client's fraud. (Opening Mem. at 6 n.7.) Finally, Plaintiffs concede that the Supreme Court's decision in Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 323 (2007), requires consideration of "plausible opposing inferences," including "nonculpable explanations for the defendant's conduct." (Opening Mem. at 7.)

Additionally, Plaintiffs acknowledge that the scienter standard for auditors is so strict that they must allege "practices so deficient that the audit amounted to no audit at all" or that the audit opinions were such that "no reasonable accountant would have made the same decisions if confronted with the same facts." (Opening Mem. at 9 (citing cases); Pl. Mem. at 7 (same).)

2.    **Plaintiffs' allegations of GAAS violations**

As set forth in KPMG LLP's opening memorandum, alleged GAAS violations standing alone do not give rise to the required "strong inference" of scienter. (Opening Mem. at 8.) Plaintiffs do not dispute this proposition, but nonetheless base their scienter argument on alleged GAAS violations. Plaintiffs argue that (i) KPMG LLP was required to conduct certain audit procedures on BMIS, (ii) KPMG LLP did not conduct those procedures, and (iii) the statement in

2

KPMG LLP's audit opinions that its audits were conducted in accordance with GAAS was incorrect. (Pl. Mem. at 6-10.) The case law regarding such allegations, however, is clear and consistent; courts regularly reject attempts to base securities fraud claims on such allegations. (See Opening Mem. at 8 (citing cases).)[1] The cases cited by Plaintiffs are consistent on this point as well.[2] Thus, while KPMG LLP's audits in fact complied fully with GAAS (see infra at 4), even if they did not, such allegations do not satisfy the applicable scienter standard.

Plaintiffs' attempt to avoid the import of the case law by focusing on the statement in the audit opinions that the audits complied with GAAS (Pl. Mem. at 6) is misguided. The cases rejecting attempts to base securities fraud claims on mere GAAS violations involved audit opinions containing this language. See, e.g., In re Sunterra, 199 F. Supp. 2d at 1333.[3]

Furthermore, Plaintiffs' allegations do not suggest that KPMG LLP violated GAAS. Plaintiffs' contention that GAAS required KPMG LLP, in auditing the Rye Funds' financial statements, to "perform audit procedures on BMIS itself or to require some other reputable auditor be engaged" (Pl. Mem. at 8; see also Pl. Mem. at 1-2, 7, 9) is incorrect. Plaintiffs cite no accounting literature or case law supporting the assertion that auditors are required under GAAS to perform audit procedures, or ensure another firm performs audit procedures, on an independent third party that was unaffiliated with the audit client. (See Pl. Mem. at 8 n.5.) Plaintiffs cite five cases (Pl. Mem. at 9-10), none of which support that proposition.

---

[1] See also, e.g., In re Sunterra Corp. Sec. Litig., 199 F. Supp. 2d 1308, 1333 (M.D. Fla. 2002) ("GAAP and GAAS violations alone are not enough to establish a strong inference of scienter on the part of an independent auditor even if the auditor is grossly negligent"); In re Spiegel, Inc. Sec. Litig., 382 F. Supp. 2d 989, 1035 (N.D. Ill. 2004).

[2] See, e.g., In re AOL Time Warner, Inc. Sec. & "ERISA" Litig., 381 F. Supp. 2d 192, 239 (S.D.N.Y. 2004) ("allegations of GAAP and GAAS violations fail to satisfy the scienter requirement") (cited at Pl. Mem. at 10); In re Complete Mgmt. Inc. Sec. Litig., 153 F. Supp. 2d 314, 334 (S.D.N.Y. 2001) ("allegations of a violation of GAAP and GAAS are, without more, insufficient to survive a motion to dismiss") (cited at Pl. Mem. at 10); In re New Century, 588 F. Supp. 2d 1206, 1233-36 (C.D. Cal. 2008) ("to plead scienter allegations against an auditor . . . a plaintiff must show 'more than a misapplication of accounting principles'") (cited at Pl. Mem. at 10).

[3] Plaintiffs attempt to frame "the question" as "whether this Court should infer that KPMG LLP recklessly misrepresented to plaintiffs that its audits were conducted in accordance with GAAS" when it "issued unqualified audit opinions in which it stated that it had conducted GAAS audits." (Pl. Mem. at 9; see also Pl. Mem. at 6.) Under the established case law in this circuit as set forth above, the answer to Plaintiffs' question is no.

In <u>Lewin v. Lipper Convertibles, L.P.</u>, 2004 WL 1077930 (S.D.N.Y. May 13, 2004) (Pl. Mem. at 9), the plaintiffs criticized PricewaterhouseCoopers ("PwC"), for accepting representations from the audit client's management without seeking additional confirmation. Specifically, the <u>Lewin</u> plaintiffs alleged that although "the partnership represented that the investment valuations reflected fair values" and that "PwC, in violation of GAAP and GAAS, failed to check for corroborative support of those valuations." <u>Id.</u> at *2. The <u>Lewin</u> court did not state that GAAS required PwC to perform audit procedures on a non-audit client. Rather, <u>Lewin</u> stands for the proposition that GAAS may require an auditor to conduct procedures to corroborate representations of the client's management about asset valuations. <u>Id.</u> In the present case, Plaintiffs do not allege any such failure on the part of KPMG LLP to obtain confirmation of the representations of the management of the Rye Funds (including the Onshore XL Fund); to the contrary, Plaintiffs contend that information from an independent third party, BMIS, confirmed the existence of the positions the hedge fund's management reported on its financial statement.[4] (Cmpl. ¶ 84.)

Similarly, in <u>Katz v. Image Innovations Holdings, Inc.</u>, 542 F. Supp. 2d 269, 275 (S.D.N.Y. 2008) (Pl. Mem. at 10), the plaintiffs criticized the company's outside auditors for failing to seek validation of financial information provided by management. There, the accounting firm, GGK, was allegedly "in a position at the time of the original audit to validate sales based on shipping documentation, invoices, and other available information," but failed to do so. In contrast, Plaintiffs in the present action do not accuse KPMG LLP of blindly following the representations given by the management of the Rye Funds. Rather, Plaintiffs concede that

---

[4] There is no merit to Plaintiffs' argument that "KPMG LLP should not have derived any comfort from receiving 'confirmations' from Madoff and BMIS" (Pl. Mem. at 9) because "all of the reported information concerning the Onshore XL Fund's purported assets and trades came from Madoff and BMIS." (Pl. Mem. at 7) Plaintiffs fundamentally miss the point of a "confirmation." KPMG LLP was retained to audit the financial statements of the Onshore Funds. The financial statements of the Onshore Funds represented that the Onshore Funds had assets under management that were held in custody by BMIS. In order to determine whether Tremont was lying or mistaken about the existence or the amount of those assets, as Plaintiffs acknowledge, KPMG LLP obtained confirmation from a third party that was independent of Tremont's management—in this case, BMIS, a broker-dealer which was registered with the SEC, which had been in business for 45 years, which was separate from and unaffiliated with the audit client, and whose manager was well known and respected in the financial community.

the positions reflected in the financial statements of the Rye Funds (including the Onshore XL Fund) were corroborated by information from the SEC-registered broker-dealer, BMIS. Like Lewin, Katz does not support Plaintiffs' contention that KPMG LLP had a duty to perform an additional audit on the independent firm that confirmed management's representations.

In Teachers' Retirement System of La. v. A.C.L.N., Ltd., 2003 WL 21058090, at * 11 (S.D.N.Y. May 12, 2003) (Pl. Mem. at 10), the plaintiffs alleged 20 separate "red flags" that the auditors ignored. Among the 20 red flags was BDO Seidman's failure to "perform a confirmation process with third parties to verify information utilized in the audit." Id. Again, Plaintiffs make no such allegations here; they acknowledge that a third party confirmed the information supplied by the funds' management that was contained in the financial statements.

In each of the other cases cited by Plaintiffs, the plaintiffs alleged that auditors ignored red flags relating to the conduct of the audit client. In none of the cases was the red flag related to a third party non-audit client such as BMIS. Nor did the plaintiffs allege the auditors were reckless for failing to "perform audit procedures" on a third party who was unaffiliated with the audit client. See In re AOL Time Warner, 381 F. Supp. 2d at 239-40 (allegations that auditor ignored AOL's suspicious accounting, including transactions late in the quarter and complex "barter" transactions); In re New Century, 588 F. Supp. 2d at 1233-36 (allegations that auditor actually knew its client was using a faulty method for calculating reserves).[5]

As stated in KPMG LLP's opening brief, "[n]o court or other authority has ever recognized such a principle as a basis for liability under Section 10(b)." (Opening Mem. at 8.) Plaintiffs are asking this Court to be the first court to do so. Acknowledging the novelty of their

---

[5] Plaintiffs also cite In re Complete Management (Pl. Mem. at 10-11) in arguing that KPMG LLP should have performed audit procedures on Madoff and BMIS, but Complete Management stands for no such proposition. In that case, CMI, a partnership, had a business relationship with GMMS, a corporation 95% owned by one of CMI's partners. The plaintiffs in that case specifically alleged that "GMMS's owner was a significant shareholder in CMI, thereby creating the potential for collusive self-dealing on the part of the two organizations." Id. at 334. The court, while noting that "there may have been no requirement" that the auditors audit GMMS as a related-party, because of the possibility of self-dealing they should have done so. Id. Thus, there was a concern that the two entities were not operating at arms length because of the overlapping ownership. Here, there is no allegation that BMIS was related to Tremont or any of the Rye Funds. BMIS was an entirely separate entity, unaffiliated and sharing no common ownership with KPMG LLP's audit client.

theory, Plaintiffs suggest that they are not arguing "such procedures are required in connection with every audit" (Pl. Mem. at 8 n.5), but that argument misses the point. They have not pointed to authority requiring such procedures with respect to any audit. It cannot be "an extreme departure from the standards of ordinary care" to fail to do something that no court has ever required an auditor to do. See ECA, Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co., 553 F.3d 187, 198 (2d Cir. 2009).[6] Because Plaintiffs have failed to establish that KPMG LLP was reckless, their Section 10(b) and Rule 10b-5 claims should be dismissed.

### 3.  Plaintiffs' newly asserted purported "red flags"

To qualify as a red flag, the allegation must reflect an attention-grabbing smoking gun that put the auditor "on notice that the audited company was engaged in wrongdoing to the detriment of its investors." In re AOL Time Warner, 381 F. Supp. 2d at 240 n.51 (emphasis added) (quoting In re Sunterra, 199 F. Supp. 2d at 1333); see In re Doral Fin. Corp. Sec. Litig., 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008) (standing alone, allegations of GAAS are insufficient to establish scienter); In re Winstar Commc'ns, 2006 WL 473885, at * 11 (S.D.N.Y. Feb. 27, 2006) (same); Zucker v. Sasaki, 963 F. Supp. 301, 307 (S.D.N.Y. 1997). Plaintiffs made no such allegation. Nor have they argued that KPMG LLP was on notice of wrongdoing by its audit client (the Onshore XL Fund), or even BMIS. Rather, Plaintiffs concede that KPMG LLP did not know of Madoff's fraud: "plaintiffs do not allege that KPMG LLP knew about Madoff's fraud, or that its GAAS violations created an inference of such knowledge." (Pl. Mem. at 6.)

As noted in KPMG LLP's opening memorandum, Plaintiffs here (unlike the plaintiffs in the related lawsuits pending before this Court) do not attempt to allege any "red flags" in their complaint. (Opening Mem. at 8 n.10.) Apparently realizing that their allegations of mere GAAS violations are, without more, inadequate, Plaintiffs now attempt to recharacterize the allegations

---

[6] The recklessness standard is difficult to meet, and KPMG LLP's alleged failure to audit BMIS (regardless of whether GAAS required KPMG LLP to undertake such an audit) does not come close. See Chill v. Gen. Elec. Co., 101 F.3d 263, 270 (2d Cir. 1996) (noting the "significant burden" on a plaintiff trying to state a claim for recklessness); In re Bayou Hedge Fund Litig., 534 F. Supp. 2d 405, 415 (S.D.N.Y. 2007) ("strength of the recklessness allegations must be greater than that of allegations of garden-variety fraud").

of their complaint as allegations of red flags. In particular, Plaintiffs contend that they have alleged two red flags: (1) "the concentration of functions" at BMIS and (2) the "exclusive reliance on Madoff and BMIS." (Pl. Mem. at 7 n.4.) Plaintiffs are wrong.

First, the alleged "red flags" do not put KPMG LLP on notice of any fraud at Tremont or the Rye Funds, let alone the Ponzi scheme that Madoff secretly operated for decades. See In re AOL Time Warner, 381 F. Supp. 2d at 240 n.51 (red flag must put auditor "on notice that the audited company was engaged in wrongdoing to the detriment of its investors"); Nappier v. Pricewaterhouse Coopers LLP, 227 F. Supp. 2d 263, 278 (D.N.J. 2002) (red flags must be "closer to 'smoking guns' than mere warning signs"). Indeed, as described above, Plaintiffs concede that KPMG LLP was not on notice of Madoff's fraud. (Pl. Mem. at 6.)[7]

"'Red flags' are those facts which come to the attention of an auditor which would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors." In re Sunterra, 199 F. Supp. at 1333 (emphasis added). Nowhere in Plaintiffs' opposition brief do they argue that the knowledge that Madoff was acting as the investment manager for the Rye Funds while BMIS acted as their custodian should have put KPMG LLP on notice of the potential that the Rye Funds—KPMG LLP's audit client—was committing a fraud. Nor do Plaintiffs argue that KPMG LLP was on notice that Madoff—who was not KPMG LLP's client—was committing a fraud. But that is what a red flag must do; it must put the auditor on notice of the potential fraud. See Van De Velde v. Coopers & Lybrand, 899 F. Supp. 731, 735-36 (D. Mass. 1995) ("a complaint will usually survive a motion to dismiss if plaintiffs have alleged the existence of 'red flags' sufficiently attention-grabbing to have alerted a reasonable auditor to the audited company's shenanigans").

---

7 The knowledge that Madoff was the investment advisor of the Rye Funds, while BMIS, a broker-dealer registered with the SEC, was the broker and custodian of the assets under management, could not alert anyone to the fact that Madoff was running the largest Ponzi scheme in history. In this instance, we do not need to formulate a guess as to whether this fact, if known, might have alerted a hypothetical reasonable person to Madoff's fraud. The fact is, Madoff's dual role was well-known to his real world investors and regulators, none of whom detected the fraud. Plaintiffs are arguing that alleged circumstances would have caused a reasonable person to suspect fraud, even though those circumstances were widely known to investors and regulators who did not view them with suspicion.

Second, the two newly asserted purported red flags do not constitute legitimate red flags for additional reasons:

*Concentration of functions*. The first of Plaintiffs' newly devised red flags—that the functions of advisor, broker, and custodian were concentrated with Madoff and BMIS (Pl. Mem. at 7 & n.4)—is not a red flag. That BMIS performed brokerage and custodial functions while Madoff served as advisor was not suspicious. This fact was specifically disclosed to investors including Plaintiffs. The financial statements for the Rye Funds stated that the single manager who managed the funds' assets, "through its affiliated registered broker-dealer, also acts as custodian for the Partnership assets it manages."[8]

Furthermore, with respect to KPMG LLP's audits of the financial statements of the Rye Funds, BMIS was an independent third party that confirmed that the Rye Funds, including the Onshore XL Fund, were not lying or mistaken about their assets; BMIS was separate from and unaffiliated with the Rye Funds that were KPMG LLP's audit clients. Moreover, BMIS was a well-established company that had been in business since 1960. It was a registered broker-dealer, subject to on-going regulation by the SEC. (Cmpl. ¶ 17, 39.) Plaintiffs point to no rule barring a broker-dealer from serving as broker and custodian for customer assets managed by an affiliated person. In short, absent improper resort to hindsight, it is not reasonable to conclude that BMIS's service as broker and custodian was suspicious, much less a red flag. See, e.g., Novak v. Kasaks, 216 F.3d 300, 308-09 (2d Cir. 2000).

*Exclusive reliance on Madoff and BMIS*. Plaintiffs' second newly asserted purported red flag—that "all of the reported information concerning the Onshore XL Fund's purported assets and trades came from Madoff and BMIS" (Pl. Mem. at 7)—is also not a red flag. As an initial matter, the contention that all information on the Onshore XL Fund's assets and trades came from Madoff and BMIS is demonstrably false. The financial statements of the Rye Funds were

---

[8] See Ex. 4 at 7, Ex. 7 at 7, Ex. 8 at 7, Ex. 9 at 7, Ex. 10 at 7, Ex. 11 at 7, Ex. 12 at 7, Ex. 13 at 7. All "Ex." cites are to the Declaration of Corey Worcester submitted in this action on May 20, 2009. All "Ballard Declaration" cites are to the declaration of Gregory Ballard, dated August 14, 2009, submitted with this Reply Memorandum.

prepared by management of the funds. (See, e.g., Ex. 4 at 7 (the "preparation of financial statements in conformity with U.S. generally accepted accounting principles requires management to make estimates and assumptions" (emphasis added); Ex. 6 at 1 ("These financial statements are the responsibility of the Partnership's management.") Thus, the management of the Rye Funds was the initial source of information on the funds' assets.

Moreover, that there were not additional sources of confirmation beyond Madoff and BMIS was not surprising given that the Rye Funds invested all or the overwhelming majority of their assets directly or indirectly with Madoff and BMIS. There was nothing suspicious about the funds' decision to invest only with Madoff, and this fact was disclosed to Plaintiffs. The private placement memoranda for the Rye Funds disclosed that although it was permissible for the funds' assets to be invested with one or more managers, as a matter of fact, each fund's "portfolio is presently allocated to one Investment Advisor."[9] The Funds' financial statements, including the financial statements of the Broad Market Fund, which were available to Plaintiffs because it was the "reference entity" for the XL Funds (Opening Mem. at 4), and the Prime Fund, on which Plaintiffs claim to have relied (Cmpl. ¶ 115, 119-21), disclosed that the funds were managed by "a single portfolio manager."[10] In these circumstances, where the offering materials and the financial reports of the Rye Funds represented that the funds were placed with a single manager, it could not be considered suspicious that the funds were invested as promised.

Finally, given that BMIS directly or indirectly handled all of the assets for the Rye Funds, confirmation from this SEC-registered financial institution of the assets and trades reported by the funds' management constituted complete confirmation of the positions held by the funds. If

---

[9] See Ballard Decl. Ex. 1 at 2 (2006 Broad Market Fund private placement memorandum); see also id. at 9, 10; Ballard Decl. Ex. 2 at ii (2006 Prime Fund private placement memorandum: "Partnership's investment portfolio is presently allocated to one Investment Advisor"); id. at iii ("This is presently a single investment advisor fund"); Ballard Decl. Ex. 3 at 3 (2006 XL Fund private placement memorandum). The Broad Market Fund was the Onshore Reference Entity for the XL Fund that Plaintiffs invested in. (Opening Mem. at 1, 4.)

[10] See Ex. 7 at 7 (Broad Market Fund, 2007); Ex. 8 at 7 (Prime Fund, 2007); Ex. 9 at 7 (Broad Market Fund, 2006); Ex. 10 at 7 (Prime Fund, 2006); Ex. 11 at 7 (Broad Market Fund, 2005); Ex. 4 at 7 (Prime Fund, 2005); Ex. 12 at 7 (Broad Market Fund, 2004); Ex. 13 at 7 (Prime Fund, 2004).

an audit firm were auditing the financial statements of an individual who represented that his sole asset was the contents of a bank account held at Citibank, then the audit firm's receipt of confirmation of the account's contents from Citibank, a regulated financial institution unaffiliated with the audit client, would similarly constitute strong audit evidence. The same is true here, where, by Plaintiffs' own admission, BMIS—a regulated financial institution unaffiliated with KPGM LLP's audit client—confirmed the existence of the assets at issue.

### 4.    **Compelling nonfraudulent inferences**

For the reasons described above, Plaintiffs' allegations are inadequate to plead scienter even without considering competing inferences. When competing inferences are considered, as required under <u>Tellabs</u>, the fact that dismissal is required becomes even clearer.

Plaintiffs do not dispute the circumstances supporting an inference that KPMG LLP did not intend to commit securities fraud, including that Madoff was well-respected, that BMIS was a regulated by the SEC, and that Madoff hid his fraudulent activities, which went undetected by regulators, investors, and others, including at least one other accounting firm that audited the Rye Funds, for years. (Opening Mem. at 3-5.) The most plausible inference to be drawn is that KPMG LLP did not know of Madoff's fraud and acted innocently.

Plaintiffs' argument that "there is simply no plausible inference that KPMG LLP acted innocently when it told plaintiffs it had conducted GAAS audits" (Pl. Mem. at 12) rings hollow. Indeed, Plaintiffs concede that KPMG LLP was not aware of Madoff's fraud. (Pl. Mem. at 6, 9, 11.) In the circumstances of this case, the much more plausible inference is that KPMG LLP did not believe that a fraud was being committed by its audit client or anyone else and that KPMG LLP believed that its audits complied with GAAS. Plaintiffs have offered no support for the suggestion that KPMG LLP believed or knew that its audits failed to comply with GAAS. To suggest that KPMG LLP believed it was required to "perform audit procedures on BMIS itself" (Pl. Mem. at 8), given that BMIS was not an audit client, and that there is no accounting literature or case law to suggest such a requirement, is not plausible, much less "cogent" or "compelling." <u>Tellabs</u>, 551 U.S. at 324.

As explained in KPMG LLP's opening brief, In re Bayou Hedge Fund Litigation, 534 F. Supp. 2d 405 (S.D.N.Y. 2007), is instructive. (Opening Mem. at 11.) In that case, the plaintiff investor sued the investment advisor who had failed to detect that the hedge fund was being run as a Ponzi scheme. The court ruled that there could be no inference of scienter "[g]iven that [the hedge fund managers] managed to deceive the entire investing community for nearly a decade, [the investor's] allegation that [the investment advisor] would necessarily have uncovered the fraud had it conducted the due diligence it promised is far from compelling." Id. at 418.

Plaintiffs argue that Bayou is inapposite because "plaintiffs allege that KPMG LLP misrepresented that it had conducted GAAS-compliant audits, and that its recklessness in making these misrepresentations can be inferred from the fact [of] its (now admitted) failure to perform critical audit procedures." (Pl. Mem. at 13.) But KPMG LLP has not admitted any such thing. In fact, KPMG LLP's audits of the Rye Funds, including the Onshore XL Fund, complied fully with GAAS, and nothing in Plaintiffs' opposition papers contradicts this fact. Moreover, the reasoning of Bayou is directly applicable here. The "inference of recklessness alleged by plaintiff—that the [defendant's] failure to uncover the fraud evidences a reckless lack of due diligence—[is] less compelling than an opposing inference—that [the defendant's] failure to discover the fraud merely places it alongside the SEC, the IRS, and every other interested party" that also failed to detect the well-hidden fraud. In re Bayou, 534 F. Supp. 2d at 418. If anything, the facts here are even more compelling. In Bayou, the hedge fund itself was allegedly run as a Ponzi scheme. In the present case, it was Madoff and BMIS who are alleged to have run the Ponzi scheme, not the hedge fund client that KPMG LLP audited.

The most compelling inference that can be drawn in this case is that KPMG LLP was not aware of any fraud by Madoff or BMIS and did not believe that there was any reason (or GAAS requirement) for it to take the unprecedented step of attempting to perform audit procedures on a non-audit client, BMIS. Therefore, Plaintiffs have failed to plead scienter.

## B.     Plaintiffs do not allege reliance

Plaintiffs' argument that they "never would have invested in the Onshore XL Fund if KPMG LLP had not issued unqualified audit opinions, stating that it had conducted GAAS-compliant audits" (Pl. Mem. at 14) is belied by Plaintiffs' own statements. Plaintiffs do not deny that they began investing in hedge funds managed by Tremont that invested with Madoff in 1994, before KPMG LLP began auditing the financial statements of Tremont funds. (Opening Mem. at 3-4.) Plaintiffs also concede that they invested in reliance on "the years of history they had with the Tremont Defendants" (Cmpl. ¶¶ 41) and that they relied on numerous written and oral communications with the Tremont Defendants over many years (Cmpl. ¶¶ 3, 41-88). (Opening Mem. at 4.) Plaintiffs do not dispute that KPMG LLP had no involvement in these alleged misstatements. (Opening Mem. at 4-5.) In these circumstances, which are evident from the face of the complaint and are not disputed by Plaintiffs', it is clear that Plaintiffs did not rely on KPMG LLP's audit opinions in deciding to invest in the Onshore XL Fund.[11] This failure to adequately plead reliance is a separate ground for dismissal. Zuckerman v. Harnischfeger Corp., 591 F. Supp. 112, 120 (S.D.N.Y. 1984) (reliance is an element of a 10(b) claim).

Plaintiffs admit that some of the Onshore Plaintiffs invested in the Onshore XL Fund before KPMG LLP began auditing it. In an attempt to salvage a claim with respect to those investments, Plaintiffs argue they relied on KPMG LLP's audit of the Prime Fund, a completely separate fund, when investing in the XL Fund. (Pl. Mem. at 14.) That argument fails. It is hornbook law that reliance must be reasonable in order to be justified. Azrielli v. Cohen Law Offices, 21 F.3d 512, 517-18 (2d Cir. 1994). Plaintiffs could not have reasonably relied on KPMG LLP's audit opinion of the financial statements of the Prime Fund in deciding to invest in the Onshore XL Fund. The Prime Fund and the Onshore XL Fund were separately incorporated limited liability partnerships, subject to different partnership agreements and marketed pursuant

---

[11] Plaintiffs do not dispute that a Section 10(b) claim cannot be based on the allegations that they "retained" previously acquired partnership interests in reliance on KPMG LLP's statements, because under Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 754-755 (1975), Plaintiffs must have purchased or sold (not merely held) securities in reliance on the alleged misstatement. (Opening Mem. at 12 n.15.)

to different offering documents.  (See Ballard Decl. Exs. 2 and 3.)  KPMG LLP's audit opinion on the financial statements of the Prime Fund was addressed to the partners of the Prime Fund; it was not addressed to the partners of the Onshore XL Fund or anyone else.  (See, e.g., Ex. 4 at 1.)

## C.   Plaintiffs do not allege loss causation

Plaintiffs argue that KPMG LLP's representations that it performed a GAAS audit were the proximate cause of their investment losses because Madoff's fraud was within the zone of risk "concealed by the misrepresentations." (Pl. Mem. at 15.)  The argument twists binding precedent beyond recognition.  In Lattanzio v. Deloitte & Touche LLP, 476 F.3d 147, 157-58 (2d Cir. 2007), the Second Circuit upheld the dismissal of securities claims against a bankrupt company's auditors for alleged misstatements in an audit opinion.  Plaintiffs' complaint lacked the necessary component that the auditor's alleged misrepresentations concealed the risk of the corporation's bankruptcy.  Likewise, here, Plaintiffs' losses from Madoff's Ponzi scheme were not within the "zone of risk" concealed by any representation by KPMG LLP.[12]

Plaintiffs attempt to counter that conclusion by relying solely on inapposite cases.  In Fraternity Fund Ltd. v. Beacon Hill Asset Management. LLC, 376 F. Supp. 2d 385 (S.D.N.Y. 2005) (Pl. Mem. at 16), alleged misstatements were made by the troubled funds' managers, not its auditors.  Those statements actually concealed the company's losses, expressly overstated the net asset values of the funds, and misrepresented that those values were based on independent prices.  In In re Colonial Partnership Litigation, 896 F. Supp. 250 (D. Conn. 1995) (Pl. Mem. at 15), misstatements were made to investor plaintiffs by their own accountants, not the accountants for the limited partnership in which plaintiffs invested.  Those statements were recommendations to invest in the partnership without disclosing the accountants' relationship with the partnership

---

[12] While the accountants in Lattanzio issued a going-concern warning, that point was not the focus of the court's reasoning and holding.  Rather, the court noted that the warning appeared in only one of several documents approved by the auditors and was accompanied by inaccurate financial data so that plaintiffs there could not properly evaluate the "precise gravity" of the risk.  Id. at 158.  The court faulted plaintiffs for not showing that the "[auditor's] misstatements, among others . . . that were much more consequential and numerous, were the proximate cause of plaintiffs' loss; nor have they alleged facts that would allow a fact finder to ascribe some rough proportion of the whole loss to the [auditors'] misstatements."  Id.

in which the plaintiffs were investing. Id. at 253. Finally, <u>Sterling National Bank v. Ernst & Young, LLP</u>, 2005 WL 3076341 (N.Y. Cty. Jan. 7, 2005) (Pl. Mem. at 16), was not brought or decided under Section 10(b) and did not analyze loss causation under the statute. Furthermore, in <u>Sterling</u>, the alleged fraud was committed by the audit client—not an independent third party.

Because it is not possible to place Madoff's perpetration of a secret Ponzi scheme within the zone of risk concealed by KPMG LLP's statement that it performed a GAAS audit of the financial statements of <u>the Onshore XL Fund</u>, Plaintiffs' Section 10(b) claim must be dismissed.

**POINT II**

**<u>THE STATE LAW CAUSES OF ACTION MUST BE DISMISSED</u>**

**A.**   **<u>The Court should decline to exercise supplemental jurisdiction</u>**

Plaintiffs concede that if the federal claims are dismissed against all parties this Court should not retain supplemental jurisdiction. (Pl. Mem. at 17-18.)

**B.**   **<u>The Martin Act precludes the state law claims</u>**

Plaintiffs attempt to avoid the application of the Martin Act to their state law claims by arguing that they did not bring a negligent misrepresentation claim, but rather a negligence claim. (Pl. Mem. at 18). Plaintiffs are mistaken about the law and mischaracterize their claim.

<u>First</u>, the substance of the allegations, not the title of the claim, is determinative—and the substance here is negligent misrepresentation.[13] The paragraph of the Complaint that Plaintiffs quote to "show" that the claim is for negligence makes clear that the claim is based on alleged misrepresentations:

> "KPMG LLP failed to exercise reasonable care by negligently and/or grossly negligently failing to conduct audits . . . in accordance with GAAS, and <u>by addressing and disseminating to the Onshore Plaintiffs unqualified audit opinions that should have been qualified or disclaimed</u>. . . ."

(Pl. Mem. at 18 (quoting Cmpl. ¶ 238) (emphasis added).)

---

[13] Indeed, the myriad allegations of misrepresentation throughout the complaint, which Plaintiffs repeat and reallege in their "negligence" claim (Cmpl. ¶ 236), belie Plaintiffs' characterization. (See, e.g., Cmpl. ¶¶ 11, 203-07, 221-24 (discussing KPMG LLP's alleged "misstatements," "untrue statements" and "false and misleading representations".)

It is well-settled law that "a plaintiff cannot convert a nonexistent Martin Act claim into another state law cause of action by artful pleading." Granite Partners, L.P. v. Bear, Stearns & Co. Inc., 17 F. Supp. 2d 275, 291 (S.D.N.Y. 1998); see also Kassover v. UBS AG, 619 F. Supp. 2d 28, 38 (S.D.N.Y. 2008) (preempting, inter alia, a negligence claim that plaintiffs attempted to package as a non-preempted claim) (citing Whitehall Tenants Corp. v. Estate of Olnick, 623 N.Y.S.2d 585, 585 (1st Dep't 1995)). Here, Plaintiffs' label of "negligence" is a thinly veiled attempt to obscure the obvious—that Plaintiffs' allegations are based on alleged misstatements and are therefore precluded by the Martin Act. See Kassover, 619 F. Supp. 2d at 38.

Second, even if Plaintiffs did attempt to plead a claim for negligence, their claim is still preempted by the Martin Act. Plaintiffs do not dispute that the Martin Act preempts claims that are predicated on deceptive conduct in connection with the purchase or sale of securities, or that KPMG LLP's alleged conduct related to the purchase and sale of securities. Rather, they contend that their "negligence" claim is not covered—and thus not preempted—by the Martin Act because "[r]ather than asserting that KPMG LLP engaged in deceptive acts, plaintiffs' negligence claim alleges that KPMG LLP negligently—but not deceptively—conducted its audits." (Pl. Mem. at 18.) This position, however, cannot withstand scrutiny.

Plaintiffs rely on Louros v. Kreicas, 367 F. Supp. 2d 572 (S.D.N.Y. 2005), to support the proposition that if a claim is not based on deception, then it is not preempted by the Martin Act. However, even accepting and applying Louros's standard, which is the minority view, Plaintiffs' claim is preempted. The factual allegations in the complaint clearly allege "deception," including in connection with their negligence claims. (See e.g. Cmpl. ¶¶ 11, 114, 203-07, 221-24.) In Louros itself, the court granted defendant's summary judgment motion, dismissing one portion of the negligence claim that was based on "the same misrepresentations alleged in connection with the securities and common law fraud claims," even though in that count, the misrepresentations allegedly were negligent, finding that those facts "deal[t] with deception and therefore [came] within the purview of the Martin Act." Id. at 596.

Moreover, the overwhelming majority of courts to interpret the Martin Act have held that it preempts negligence claims. (Opening Mem. at 14.) When confronted with recent Southern District cases preempting negligence claims, Plaintiffs, unable to distinguish those cases, label them as "decided wrongly." (Pl. Mem. at 19 n.18.) If any cases are "decided wrongly," however, it is the handful of cases cited by Plaintiffs. Though Plaintiffs fail to identify their case law as constituting the often-criticized, minority view, courts have denounced their holdings, both generally and specifically. See e.g., Kassover, 619 F. Supp. 2d at 39 (describing reliance on Caboara v. Babylon Cove Dev., LLC as "unavailing") and Sedona Corp. v. Ladenburg Thalmann & Co., Inc., 2005 WL 1902780, at *22 (S.D.N.Y. Aug. 9, 2005) (quoting Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC, 2003 WL 22052894, at *14 (S.D.N.Y. Sept. 2, 2003) (noting that Plaintiffs' cases "stand as solitary islands in a stream of contrary opinion")).

Furthermore, and contrary to Plaintiffs' argument that fraud claims are not prohibited by the Martin Act (Pl. Mem. at 97-101), the New York Court of Appeals recently dismissed a fraud claim brought under the Martin Act. See Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship., 906 N.E. 2d 1049, 1055-56 (N.Y. 2009). Although the fraud claim was based on a failure to comply with provisions of the Martin Act, there is every reason to believe the holding will be extended to cover all fraud claims once an appropriate case is before the court. In any event, other New York courts have also dismissed common law fraud claims where they are "the sort of wrong given over to the Attorney General" by the Martin Act. See Whitehall Tenants Corp. v. Estate of Olnick, 623 N.Y.S.2d 585 (1st Dep't 1995), lv. denied, 655 N.E.2d 705 (N.Y. 1995); Thompson v. Parkchester Apartments Co., 670 N.Y.S.2d 858, 858-59 (1st Dep't 1998), lv. denied, 704 N.E.2d 229 (N.Y. 1998) (finding that to the extent the complaint alleged common law fraud, it was an attempt to press a claim based on the sort of wrong given over to the Attorney General under the Martin Act). The Thompson court, in dismissing the common law fraud claim found that "[i]n order to establish a viable independent claim for deception and false representation, plaintiff must plead, within the appropriate period of limitations . . . a unique set of circumstances whose remedy is not already available to the Attorney General." Id.

### C. Each of the state law claims fails to state a claim

#### 1. Common law fraud

Plaintiffs agree that their fraud claim fails if their § 10(b) claim fails. (Pl. Mem. at 21.)

#### 2. Negligent misrepresentation

As discussed above, Plaintiffs' claim is functionally one for negligent misrepresentation and fails for the reasons described in KPMG LLP's opening brief, including the failure to plead a fiduciary duty, a relationship of privity or near privity, or reliance. Plaintiffs' opposition papers make clear that they have failed to state a claim for negligence because their complaint lacks any proper allegation of actionable wrongdoing. Based on hindsight, Plaintiffs would impose upon KPMG LLP a duty to have audited Madoff and BMIS, but they cite no authority to support the existence of that duty. See supra at Point I.A.2.

### POINT III

### PLAINTIFFS' CLAIMS ARE SUBJECT TO MANDATORY ARBITRATION AND SHOULD BE STAYED IF THEY ARE NOT DISMISSED

Plaintiffs argue that they are not subject to the mandatory arbitration clauses contained within the Engagement Agreement between KPMG LLP and the Rye Funds, because it was the Rye Funds, not Plaintiffs themselves who agreed to arbitrate. (Pl. Mem. at 23-24.) Plaintiffs should not, however, be permitted to have their cake and eat it. Plaintiffs are asserting claims against KPMG LLP on the ground that they had a relationship with KPMG LLP "so close as to approach that of privity" and because KPMG LLP "owed plaintiffs a duty to use reasonable professional care." (Pl. Mem. at 22.) That alleged relationship and that alleged duty, if they exist at all, must arise from the Engagement Agreement. Consequently, although baseless, Plaintiffs' claims against KPMG LLP necessarily are predicated on Plaintiffs purportedly being third-party beneficiaries to the Engagement Agreement. As such, for purposes of any claims they might be allowed to pursue against KPMG LLP, they are subject to the arbitration provisions contained therein. Am. Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d

349, 353 (2d Cir. 1999) ("A party is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause").[14]

## CONCLUSION

For the reasons set forth above and in KPMG LLP's opening brief, and those advanced by other defendants as applicable, KPMG LLP respectfully requests that the Court dismiss the claims against it with prejudice, or alternatively stay them pending arbitration.

Dated: August 14, 2009

Respectfully submitted,

Gary F. Bendinger
(bendingerg@howrey.com)
Gregory G. Ballard
(ballardg@howrey.com)
R. Corey Worcester
(worcesterc@howrey.com)
HOWREY LLP
601 Lexington Avenue, 54th Floor
New York, NY 10022
Telephone:  (212) 896-6500
Facsimile:  (212) 896-6501

John K. Villa (pro hac vice)
(jvilla@wc.com)
David A. Forkner (pro hac vice)
(dforkner@wc.com)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

**Attorneys for defendant KPMG LLP**

---

[14] Plaintiffs do not dispute the argument that because their claims are based on KPMG LLP's audit, the relevant facts "aris[e] out of or relat[e] to" the engagement agreement.  (Opening Mem. at 15-16.)