MERIDIAN HORIZON FUND, LP, MERIDIAN, HORIZON FUND II, LP, MERIDIAN, DIVERSIFIED FUND, LP, MERIDIAN, DIVERSIFIED FUND, LTD., MERIDIAN, DIVERSIFIED ERISA FUND, LTD., MERIDIAN DIVERSIFIED COMPASS FUND, LTD., and MERIDIAN ABSOLUTE RETURN, ERISA FUND, LTD.

:   09-Civ-3708 (TPG)

:   **ECF FILED**

:   **ORAL ARGUMENT REQUESTED**

Plaintiffs,

- against -

TREMONT GROUP HOLDINGS, INC., TREMONT PARTNERS, INC., TREMONT, (BERMUDA) LIMITED, OPPENHEIMER, ACQUISITION CORPORATION, KPMG LLP, and KPMG (CAYMAN),

Defendants.

------------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT KPMG CAYMAN'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

George A. Salter
(GASalter@hhlaw.com)
W. Sidney Davis
(WSDavis@hhlaw.com)
Katie M. Lachter
(KMLachter@hhlaw.com)
Sabrina H. Cochet
(SHCochet@hhlaw.com)

HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
Tel: (212) 918-3000
Fax: (212) 918-3100

Dated: August 14, 2009

*Attorneys for Defendant
KPMG Cayman*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 2

I.  FOREIGN PLAINTIFFS FAIL TO CARRY THEIR BURDEN OF
    SHOWING THAT SUBJECT MATTER JURISDICTION EXISTS FOR
    THEIR CLAIMS BASED ON A FOREIGN TRANSACTION BETWEEN
    FOREIGN PARTIES ..................................................................................................... 2

    1)  Foreign Plaintiffs Have Failed To Plead Facts Showing That KPMG
        Cayman's Alleged Wrongful Conduct Had Any Link With The U.S. ................ 3

    2)  Foreign Plaintiffs Have Failed To Plead Facts Showing That KPMG
        Cayman's Alleged Wrongful Conduct Had Any Effect Within The
        U.S. ...................................................................................................................... 6

II. THE COURT SHOULD DISMISS THIS CASE UNDER THE DOCTRINE
    OF *FORUM NON CONVENIENS* ................................................................................ 8

III. FOREIGN PLAINTIFFS' CLAIMS MUST ALSO BE DISMISSED
     BECAUSE FOREIGN PLAINTIFFS FAIL TO PLEAD ADEQUATELY
     BOTH THEIR FEDERAL AND STATE CLAIMS ..................................................... 11

    1)  Foreign Plaintiffs Have Failed To Plead Facts Raising a Strong
        Inference of Scienter ......................................................................................... 11

    2)  Foreign Plaintiffs Have Failed to Satisfy the Pleading Requirements
        of their State Law Claims .................................................................................. 13

CONCLUSION .................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
   129 S.Ct. 1937 (2009)......................................................................................................13

*Bersch v. Drexel Firestone Inc.*,
   519 F.2d 974 (2d Cir. 1975) .....................................................................................3, 4, 5, 6

*Cromer Fin. v. Berger*,
   137 F. Supp. 2d 452 (S.D.N.Y. 2001) ...............................................................................5

*DiVittorio v. Equidyne Extrative Indus., Inc.*,
   822 F.2d 1242 (2d Cir. 1987) ........................................................................................11-12

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004) ..............................................................................................11

*In re Alstom SA Sec. Litig.*,
   406 F. Supp. 2d 346 (S.D.N.Y. 2005) ...............................................................................6

*In re Bayer AG Sec. Litig.*,
   423 F. Supp. 2d 105 (S.D.N.Y. 2005) ...............................................................................4

*In re Complete Mgmt. Sec. Litig.*,
   153 F. Supp. 2d 314 (S.D.N.Y. 2001) .............................................................................12

*In re Nat'l Australia Bank Sec. Litig.*,
   No. 03 CTV 6537 (BS3), 2006 WL 3844465 (S.D.N.Y. Oct. 25, 2006) ............................2

*In re Parmalat Sec. Litig.*,
   376 F. Supp. 2d (S.D.N.Y. 2005) .......................................................................................6

*In re Rhodia S.A. Sec. Litig.*,
   531 F. Supp. 2d 527 (S.D.N.Y. 2007) ............................................................................4, 6

*In re SCOR Holding (Switzerland) AG Litig*,
   537 F. Supp. 2d 556 (S.D.N.Y. 2008) ......................................................................6, 7, 11

*In re Vivendi, S.A.*,
   No. 02 Civ. 5571(RJH), 2004 WL 2375830 (S.D.N.Y. 2007) ..........................................4

*Interbrew S.A. v. Edperbrascan Corp.*,
   23 F. Supp. 2d 425 (S.D.N.Y. 1998) .................................................................................6

*Lothian Pension Fund v. Vodafone Group Public Co.*,
    No. 07 Civ. 9921 (PKC), 2008 WL 5062669 (S.D.N.Y. Nov. 24, 2008) ............................. 11

*Morrison v. Nat'l Australia Bank, Ltd.*,
    547 F.3d 167 (2008) ............................................................................................. 3, 4, 6

*Novack v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000) ............................................................................. 11, 12

*Pension Comm. Of Univ. of Montreal Pension Plan v. Banc of America Sec., LLC*,
    446 F. Supp. 2d 163 (S.D.N.Y. 2006) ....................................................................... 9

*Pension Comm. Of Univ. of Montreal Pension Plan v. Banc of America Sec., LLC*,
    592 F. Supp. 2d 608 (S.D.N.Y. 2009) ....................................................................... 5

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
    329 F.3d 64 (2d Cir. 2003) ................................................................................... 8, 9

*SEC v. Price Waterhouse*,
    797 F. Supp. 1217 (S.D.N.Y. 1992) ........................................................................ 12

*Societe Nationale D'Exploitation Industrielle Des Tabacs Et Allumettes v. Salomon Bros. Int'l Ltd.*,
    928 F. Supp. 398 (S.D.N.Y. 1996) ........................................................................... 5

*Stechler v. Sidley, Austin Brown & Wood, LLP*,
    382 F. Supp. 2d 580 (S.D.N.Y. 2005) ..................................................................... 11

*Zucker v. Sasaki*,
    963 F. Supp. 301 (S.D.N.Y. 1997) .................................................................... 11, 13

**STATUTES**

15 U.S.C. § 78u-4(b) ........................................................................................................ 1

Defendant KPMG Cayman[1] submits this reply memorandum in further support of its motion, pursuant to Rules 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and the provisions of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b), to dismiss the claims asserted by Foreign Plaintiffs[2] in the Complaint dated April 10, 2009 (the "Complaint").

## PRELIMINARY STATEMENT

The case against KPMG Cayman belongs in a Cayman Islands court. It concerns the actions of a foreign defendant regarding alleged activity that took place outside the U.S. and affects only non-U.S. entities. Foreign Plaintiffs try mightily to get around this fact by insisting that the fraud underlying their Complaint is Madoff's fraud. It is not. Neither Madoff nor his investment company is a defendant in this action. According to the Complaint, the fraud alleged against KPMG Cayman is its issuance of allegedly false audit reports on the financial statements of foreign funds, which reports were allegedly relied upon by Foreign Plaintiffs in making the decision to invest in one of the foreign funds. Accordingly, neither the conduct, nor the effects of such conduct, alleged in the Complaint against KPMG Cayman took place in the U.S.

Ironically, Foreign Plaintiffs seek to assert their claims against KPMG Cayman in the U.S. after having specifically agreed, as a condition of their investment in the foreign fund on which they allege they suffered losses, to bring any claims arising out of their investment in the Cayman Islands. (*See* Exs. G-J to the declaration of Jason C. Vigna in support of the Tremont Defendants' Motion to Dismiss the Complaint, dated May 20, 2009 ("Vigna Decl.").) The fact

---

[1] KPMG Cayman is a Cayman Islands partnership and a member of the network of independent KPMG member firms. (Compl. ¶ 24.)

[2] Plaintiffs Meridian Diversified Fund, Ltd., Meridian Diversified ERISA Fund, Ltd., Meridian Diversified Compass Fund, Ltd., and Meridian Absolute Return ERISA Fund, Ltd. are exempted companies with limited liability under the laws of the Cayman Islands (collectively "Foreign Plaintiffs"). (Compl. ¶ 14.) Only the Foreign Plaintiffs allege claims against KPMG Cayman.

that the foreign fund allegedly lost Foreign Plaintiffs' investments because they were allegedly defrauded in certain transactions by Madoff is not sufficient to change their agreement. That is especially so when, as with KPMG Cayman, the defendant's alleged misfeasance all occurred outside the U.S. and allegedly caused damage only to foreign, not U.S., investors.

Given Foreign Plaintiffs' allegations in the Complaint, this Court lacks subject-matter jurisdiction and the Complaint should be dismissed as to KPMG Cayman. Accordingly, Foreign Plaintiffs' arguments with respect to *forum non conveniens* and their pleadings, while insufficient, are moot.

## ARGUMENT

### I. FOREIGN PLAINTIFFS FAIL TO CARRY THEIR BURDEN OF SHOWING THAT SUBJECT MATTER JURISDICTION EXISTS FOR THEIR CLAIMS BASED ON A FOREIGN TRANSACTION BETWEEN FOREIGN PARTIES

In an attempt to assert that subject matter jurisdiction exists, Foreign Plaintiffs strain to reinterpret the plain meaning of their Complaint and list any possible link between what is in essence a purely foreign transaction and the U.S. Foreign Plaintiffs, however, only succeed in underscoring that, in the context of their claims against KPMG Cayman, any so-called contacts with the U.S. are secondary to the foreign conduct and effects that took place and, consequently, do not implicate the provisions of the U.S. securities laws. *See In re Nat'l Australia Bank Sec. Litig.*, No. 03 CTV 6537 (BS3), 2006 WL 3844465, at *8 (S.D.N.Y. Oct. 25, 2006) ("[o]n balance, it is the foreign acts – not any domestic ones – that 'directly caused' the alleged harm here.") Foreign Plaintiffs specifically chose to structure their investment so that their transactions would take place outside the U.S. and agreed to a foreign forum to resolve all disputes related to their investment in the foreign fund. (*See* Subscription Agreements signed by Foreign Plaintiffs requiring any fund-related litigation to be brought in the Cayman Islands, Exs. G-J to Vigna Decl.) They cannot now avail themselves of the U.S. courts when the Complaint

alleges no specific harm suffered by a U.S. party nor any substantial U.S. conduct by foreign defendant KPMG Cayman.

### 1) Foreign Plaintiffs Have Failed To Plead Facts Showing That KPMG Cayman's Alleged Wrongful Conduct Had Any Link With The U.S.

In *Morrison v. Nat'l Australia Bank, Ltd. ("NAB")*, the Second Circuit explained that the conduct test should be applied through a two step inquiry: (1) "identify which action or actions constituted the fraud and directly caused harm" and (2) "determine if that act or those actions emanated from the United States." 547 F.3d 167, 173 (2008).

Foreign Plaintiffs describe KPMG Cayman's alleged fraud in their Complaint and in their Opposition. (Compl. at ¶¶ 114-121, 211-219, 228-235; Opp. Br. at 4.) They allege that KPMG Cayman sent Foreign Plaintiffs its unqualified audit opinions, which falsely claimed to have conducted a GAAS-compliant audit on foreign funds. The Foreign Plaintiffs allegedly relied upon the audit of those foreign funds to make their investment decisions to invest in the fund in which they allegedly suffered losses. (*Id.*) Foreign Plaintiffs cannot escape the fact that, based upon their own allegations, the conduct by KPMG Cayman that directly caused their harm was the act of providing to Foreign Plaintiffs the allegedly false and misleading audit opinions – conduct purely outside of the U.S. *See Bersch v. Drexel Firestone Inc.*, 519 F.2d 974, 987 (2d Cir. 1975); *NAB*, 547 F.3d at 173.

Foreign Plaintiffs attempt to circumvent this fatal flaw in their subject matter jurisdiction claim by essentially imputing Madoff's and BMIS' U.S. conduct to KPMG Cayman. (Opp. Br. at 6-7.) However, the fraud at issue in this action is not that of Madoff or BMIS, who are not even defendants here. Plaintiffs argue that if KPMG Cayman had performed a GAAS-compliant audit, it would have uncovered Madoff's fraud. Even if that were true (which we do not concede), Madoff's fraud does not become KPMG Cayman's. Plaintiffs can only succeed on a

claim against KPMG Cayman by proving that KPMG Cayman issued knowingly or recklessly false audit opinions. Those alleged misrepresentations are the frauds at issue, and Plaintiffs' attempt to conflate KPMG's conduct with that of Madoff is highly misleading. Madoff's conduct is irrelevant to the analysis of subject matter jurisdiction in this case.

The Second Circuit and the Southern District of New York have repeatedly found that in cases of fraudulent misrepresentation, the conduct relevant to establishing jurisdiction is the alleged misrepresentations distributed to the plaintiffs, not the underlying acts. *See Bersch*, 519 F.2d at 987 (the action constituting the fraud and directly causing harm was the act of placing the allegedly false and misleading prospectus in the purchasers' hands); *NAB*, 547 F.3d at 176 (the dissemination of the false information outside of the United States was "more central to the fraud and more directly responsible for the harm to investors than the manipulation of the numbers in Florida")[3]; *In re Bayer AG Sec. Litig.*, 423 F. Supp. 2d 105, 111 (S.D.N.Y. 2005) ("'courts assessing subject matter jurisdiction under the conduct test often have focused on the location from where allegedly false statements emanated and the circumstances of the statements' dissemination, since this conduct ... typically embodies the heart of the alleged fraud.'") (citing *In re Vivendi, S.A.*, No. 02 Civ. 5571(RJH), 2004 WL 2375830 at *5 (S.D.N.Y. Oct. 22, 2004)); *In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 539-540 (S.D.N.Y. 2007) (the alleged activities in the U.S. were only the objects of the fraudulent representations made abroad and did not satisfy the conduct test, even if the U.S. acts could be considered in and of themselves a

---

[3] Foreign Plaintiffs' attempt to distinguish both *NAB* and *Bersch* is unpersuasive at best. In *NAB*, as here, a U.S. party conducted a fraud in the U.S. and the false information was disseminated by the foreign defendant to the foreign plaintiffs outside the U.S. The Second Circuit found that the central conduct at issue was not the original fraud which took place in the U.S. but the dissemination through public statements of the false information. *NAB*, 547 F.3d at 176. In this case, just as in *NAB*, the "lengthy chain of causation" between Madoff's alleged fraud and KPMG Cayman's alleged false statements in the audit opinions distributed to Foreign Plaintiffs necessitates dismissal of Foreign Plaintiffs' claims based on a lack of subject matter jurisdiction. Similarly, the Second Circuit's decision in *Bersch* holds that the conduct relevant to establishing jurisdiction is the alleged misrepresentations distributed to the plaintiffs, not the underlying acts. *Bersch*, 519 F.2d at 987.

securities fraud); *Societe Nationale D'Exploitation Industrielle Des Tabacs Et Allumettes v. Salomon Bros. Int'l Ltd.*, 928 F. Supp. 398, 405 (S.D.N.Y. 1996) (subject matter jurisdiction was not established although "'acts in the United States helped to make the gun whence the bullet was fired from places abroad,'" ) (citing *Bersch*, 519 F.2d at 987).

The *Cromer* and *Pension* cases cited by Foreign Plaintiffs are inapposite. In *Cromer*, the court specifically noted that subject matter jurisdiction existed as to the claims against the foreign auditor because the auditor had frequent and regular contacts with the U.S., the fund was marketed to U.S. investors and the auditor "understood that its allegedly fraudulent audits would be mailed to the Fund's shareholders and would reach United States residents." *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 491 (S.D.N.Y. 2001). There is no such allegation in the Complaint; indeed, the only parties alleged to have relied on KPMG Cayman's conduct are the Foreign Plaintiffs. Similarly, in *Pension*, the court found that it had subject matter jurisdiction over the claims against the foreign administrator of the fund primarily because the funds were invested and traded in various stock exchanges in the U.S. *Pension Comm. Of Univ. of Montreal Pension Plan v. Banc of America Sec., LLC*, 592 F. Supp. 2d 608, 626-627 (S.D.N.Y. 2009). The court noted that the fact that the foreign fund administrator had regular and substantial communications with the U.S. fund manager who committed the fraud also supported jurisdiction. *Id.* at 627. In contrast to the facts in *Pension*, there is no allegation that the foreign fund in question here was invested in any stock exchanges in the U.S., on the contrary, the fund allegedly made swap transactions not offered in the U.S. (*See* Compl. ¶¶ 20, 57.) Nor is there any allegation in the Complaint that KPMG Cayman had any contact with Madoff or BMIS.

Foreign Plaintiffs can only point to one potential link to the U.S.: the Tremont defendant that was located in New York served as an investment manager to the foreign fund. (Compl. ¶

22; Opp. Br. at 1.) However, the conduct test is not satisfied by merely showing instances of contacts or links to the U.S., but by showing that the U.S. activity was the conduct which <u>directly</u> harmed plaintiffs. *NAB*, 547 F.3d at 176. Foreign Plaintiffs have wholly failed to show that the conduct "more central to the fraud and more directly responsible for the harm..." took place in the U.S. To the contrary, by their own allegations in the Complaint, KPMG Cayman's creation and issuance of its audit reports took place in the Cayman Islands, and the reports were disseminated solely to foreign investors.

> 2) **Foreign Plaintiffs Have Failed To Plead Facts Showing That KPMG Cayman's Alleged Wrongful Conduct Had Any Effect Within The U.S.**

"The 'effects test' is only meant to shield domestic investors and domestic markets from the effects of securities fraud perpetrated elsewhere." *In re Rhodia*, 531 F. Supp. 2d at 538 (citing *In re Parmalat Sec. Lit.*, 376 F. Supp. 2d 472, 511, 511 n. 194 (S.D.N.Y. 2005)). It is undisputed that the claims made by Foreign Plaintiffs against KPMG Cayman did not involve U.S. investors or any U.S. stock exchanges.

Foreign Plaintiffs' claim that the effects test is satisfied because "KPMG Cayman's conduct affected securities traded on U.S. exchanges," (Opp. Br. at 9), has systematically been rejected by the courts as being overbroad and too vague. *See Bersch*, 519 F.2d at 988 (Generalized effects on the U.S. stock market are not sufficient to confer subject matter jurisdiction); *Interbrew S.A. v. Edperbrascan Corp.*, 23 F. Supp. 2d 425, 429 (S.D.N.Y. 1998) (U.S. securities laws should not be used to address general market conditions but to redress specific harm); *In re Alstom SA Sec. Litig*, 406 F. Supp. 2d 346, 369 (S.D.N.Y. 2005) (The "generalized adverse consequences" of foreign defendant's fraud on the U.S. markets do not support the exercise of subject matter jurisdiction); *In re SCOR Holding (Switzerland) AG Litig*,

537 F. Supp. 2d 556, 562 (S.D.N.Y. 2008) (generalized effects on U.S. securities markets do not suffice to permit subject matter jurisdiction).

Foreign Plaintiffs' attempt to argue "effects" on U.S. securities is attenuated at best; and, in fact, flies in the face of the allegations in the Complaint. Foreign Plaintiffs allege that they invested in a foreign fund, which allegedly made swap transactions not offered on any U.S. securities exchange. The fund's financial statements were later audited by a foreign auditor. The losses allegedly suffered were entirely suffered by Foreign Plaintiffs. There simply were no "effects" alleged in the Complaint that were felt in the U.S.

The attempt to cloud those truths with the constant focus on Madoff's fraud is a transparent effort to avoid the obvious. This Court lacks subject matter jurisdiction over the foreign claims of Foreign Plaintiffs against a foreign defendant for acts that took place outside the U.S. and, allegedly, resulted in damages that were suffered entirely outside the U.S. Foreign Plaintiffs fail as a matter of law to show that their claim satisfies the effects test.

Finally, even analyzing an admixture of the two tests, this Court lacks subject matter jurisdiction over Foreign Plaintiffs' claims against KPMG Cayman. As the court in *In re SCOR Holding* noted, "consideration of the effects test alongside the conduct test is unlikely to provide any additional benefit to foreign plaintiffs ... who purchased a foreign company's stock on a foreign exchange." 537 F. Supp. 2d at 562. Foreign Plaintiffs' claims against KPMG Cayman are based on audits conducted by a foreign auditor on a foreign fund and distributed to foreign investors. Foreign Plaintiffs' allegations of U.S. contacts and conduct related to KPMG Cayman are, even if credited, insufficient to support the Court's exercise of subject matter jurisdiction in this case.

## II. THE COURT SHOULD DISMISS THIS CASE UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*

This lawsuit belongs in a Cayman Islands court. Foreign Plaintiffs are exempted companies incorporated with limited liability under the laws of the Cayman Islands. (Compl. ¶ 14.) They are sophisticated entities who made a strategic choice to structure their investment so that it was located in the Cayman Islands. The foreign fund in which Foreign Plaintiffs invested and allegedly suffered losses is a Cayman Island exempted company. (Compl. ¶ 20.) The foreign fund chose KPMG Cayman, a Cayman Island partnership, as its auditor. (Compl. ¶ 26.) Each of the Foreign Plaintiffs also knowingly signed a Subscription Agreement with a forum-selection clause requiring all litigations related to the fund to be brought in the Cayman Island courts. (*See* Exs. G-J to the Vigna Decl.) For example, one of the Rye Select Broad Market XL Portfolio Limited (the foreign fund) Subscription Agreements for Non-US Subscribers states that "Subscriber agrees that any suit, action or proceeding ("Proceeding") brought by Subscriber with respect to the agreement and the fund shall be brought in the Cayman Islands. Subscriber irrevocably submits to the jurisdiction of the Cayman Islands courts with respect to any Proceeding." (Meridian Diversified Fund Limited Subscription Agreement at S-6 , Ex. G to the Vigna Decl.)

When a court in the Second Circuit analyzes whether to dismiss a claim based on the doctrine of *forum non conveniens*, it begins by determining how much weight to give to plaintiff's choice of forum. That Court has held that a foreign plaintiff's choice of forum deserves less deference. *See Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003) ("when a foreign plaintiff sues in a United States forum such choice is entitled to less deference because one may not easily presume that choice is convenient.")

Foreign Plaintiffs nonetheless argue that the Court should ignore all the facts linking this litigation to the Cayman Islands, treat the Foreign Plaintiffs as residents of New York for *forum non conveniens* purposes and give their choice substantial deference. (Opp. Br. at 12.) Foreign Plaintiffs cite to *Pension Comm. Of Univ. of Montreal Pension Plan* to support their position. However, in that case, the court found that the bulk of the conduct and most of the evidence and witnesses were located in New York, which made the New York courts a more convenient forum. *Pension Comm. Of Univ. of Montreal Pension Plan v. Banc of America Sec., LLC*, 446 F. Supp. 2d 163, 177-178 (S.D.N.Y. 2006). Here, according to Foreign Plaintiffs' claims in the Complaint, all the relevant conduct, and most of the evidence and the witnesses, are located in the Cayman Islands, which makes the Cayman Islands courts the more convenient courts for these foreign claims against KPMG Cayman. The Cayman Island courts are also the proper forum as Foreign Plaintiffs have knowingly entered an agreement which states that all disputes related to the foreign fund must be resolved in the Cayman Island courts. (*See* Subscription Agreements, Exs. G-J to the Vigna Decl.) Foreign Plaintiffs are attempting to shop for what they think will be a better forum and that choice should be given no deference. *See Pollux Holding Ltd.*, 329 F.3d at 71, 74.

In an attempt to bolster their position, Foreign Plaintiffs list in their opposition all the alleged connections between their claims against KPMG Cayman and New York. (Opp. Br. at 12). The list, however, is overbroad and unpersuasive as Foreign Plaintiffs primarily describe the New York connections of other U.S plaintiffs and U.S. defendants. (*Id.*) The list of the Foreign Plaintiffs' claims' alleged connections to New York can be reduced to KPMG Cayman's alleged communications with the New York manager of the fund, the bald assertion that New York law governs Foreign Plaintiffs' claims against KPMG Cayman, and Foreign Plaintiffs'

repeated attempt to impute Madoff's and BMIS' conduct to KPMG Cayman. (*Id.*) As discussed previously, most of these claimed connections are unsupported by the allegations in the Complaint and, in any event, they are too tenuous to allow Foreign Plaintiffs any deference for their choice of forum.

Foreign Plaintiffs also attempt to avoid the fact that the Cayman Islands are the proper forum for their claims against KPMG Cayman by asserting that all defendants are somehow connected to the conduct forming the basis of the action and as such the claims against KPMG Cayman cannot be severed. (Opp. Br. at 14.) This is a blatant attempt by Foreign Plaintiffs to reinterpret the Complaint to serve their purpose. The Complaint does not allege a conspiracy between defendants, nor does it allege a claim of aiding or abetting. (*See* Compl. generally.) In fact, Foreign Plaintiffs' claims against KPMG Cayman are pled as fully separate claims. (*See* Compl. ¶¶ 211-219, 228-235, 243-249.) As discussed above, the locus of the entire transaction and of the conduct is in the Cayman Islands, by and through Cayman Islands entities (Compl. ¶¶ 14, 20, 26).

The professional conduct at issue here is that of the auditors at KPMG Cayman. The financial statements at issue are those of a foreign fund. The investment decisions and alleged losses are those of Foreign Plaintiffs. The fact that some U.S. discovery may become relevant to the foregoing is not a basis for the claim that New York is the more appropriate forum.

As KPMG Cayman explained in detail in its moving brief, an analysis of both the public and private interests shows that the Cayman Island courts are the proper forum to resolve these claims. (Mov. Br. at 14-16.) The Court should, assuming that it is not already convinced that it

lacks subject matter jurisdiction, dismiss Foreign Plaintiffs' attempt to forum shop and dismiss the case against KPMG Cayman pursuant to the doctrine of *forum non conveniens*.[4]

## III. FOREIGN PLAINTIFFS' CLAIMS MUST ALSO BE DISMISSED BECAUSE FOREIGN PLAINTIFFS FAIL TO PLEAD ADEQUATELY BOTH THEIR FEDERAL AND STATE CLAIMS

### 1) Foreign Plaintiffs Have Failed To Plead Facts Raising a Strong Inference of Scienter

In order to survive KPMG Cayman's Motion to Dismiss, Foreign Plaintiffs must show that the Complaint has adequately pled facts constituting "strong circumstantial evidence of … recklessness." *Novack v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000). And, "where motive is not alleged and plaintiff relies entirely on allegations of recklessness in asserting scienter", as they do here[5], "the evidence presented must be proportionally greater." *Zucker v. Sasaki*, 963 F. Supp. 301, 309 (S.D.N.Y. 1997). Instead of detailed allegations, the Complaint offers inadequate conclusory statements. Additionally, the allegations at the core of Foreign Plaintiffs' claim of recklessness against KPMG Cayman are based upon "information and belief" without any additional facts to substantiate that belief. Compare (Compl. ¶ 97) with *DiVittorio v. Equidyne*

---

[4] Although Foreign Plaintiffs fail to state a claim for supplemental jurisdiction in their Opposition Brief, KPMG Cayman will note that the case law is clear that courts regularly reject the idea of exercising supplemental jurisdiction over jurisdictionally deficient federal claims asserted together with another jurisdictionally-proper federal claim. *See In re SCOR Holding*, 537 F. Supp. 2d at 569, 569 n.19 (it is "highly doubtful" that the exercise of supplemental jurisdiction over federal claims that failed to satisfy the conduct test would be appropriate); *Lothian Pension Fund v. Vodafone Group Public Co.*, No. 07 Civ. 9921 (PKC), 2008 WL 5062669, at *7 (S.D.N.Y. Nov. 24, 2008) (noting that courts have systematically refused to exercise supplemental jurisdiction over foreign purchaser's jurisdictionally deficient claims simply because U.S. purchasers are part of the same case and have jurisdictionally proper claims). Similarly, this court should decline to exercise supplemental jurisdiction over the state claims once the federal claims are found jurisdictionally deficient: the litigation is only just beginning, Foreign Plaintiffs are forum shopping, the federal and state claims against KPMG Cayman were deliberately pled as entirely independent claims and the transaction and the parties at issue are all foreign. *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182-3 (2d Cir. 2004) (declining to exercise supplemental jurisdiction when federal claims were dismissed at an early stage and many litigants are foreign nationals); *Stechler v. Sidley, Austin Brown & Wood, LLP*, 382 F. Supp. 2d 580, 598 n. 125 (S.D.N.Y. 2005) (declining to exercise supplemental jurisdiction when federal claims were dismissed at an early stage).

[5] Foreign Plaintiffs did not dispute the that they have not pled any motive on the part of KPMG to commit fraud. (Opp. Br. at 17.)

*Extrative Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (in the case of fraud allegations, "Rule 9(b) pleadings cannot be based upon information and belief ... [unless] accompanied by a statement of the facts upon which the belief is based.")

As Foreign Plaintiffs admit, the pleading standard for recklessness of an auditor is stringent. A plaintiff must properly allege that the audit was so deficient as to constitute no audit at all. (*See* Opp Br. at 17-18); *In re Complete Mgmt. Sec. Litig*, 153 F. Supp. 2d 314, 334 (S.D.N.Y. 2001) (citing *SEC v. Price Waterhouse*, 797 F. Supp. 1217, 1240 (S.D.N.Y.1992)). Foreign Plaintiffs' recital of general GAAS requirements, without more, simply fails to meet such a high standard. *Compare* (Opp. Br. at 22; Compl. at ¶¶ 90-96) to *Novack*, 216 F.3d at 309 ("allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim.")

Foreign Plaintiffs' reliance on *In re Complete Mgmt. Sec. Litig* is inapposite. (Opp. Br. at 21). In that case, the court found that there was no duty, as a matter of law, that Arthur Andersen audit a related entity (GMMS) to their client (CMI), but nonetheless found a strong inference of scienter because plaintiffs made the critical allegations that:

> Andersen was aware that: (1) GMMS's owner was a significant shareholder in CMI, thereby creating the potential for collusive self-dealing on the part of the two organizations; (2) that CMI was almost entirely dependent on GMMS well into 1996; (3) that collecting on workers' compensation and no-fault claims entails extended bureaucratic or arbitral processes that have uncertain outcomes; and (4) that a significant number of GMMS claims were being arbitrated, and the outcomes of those arbitrations were as yet unclear.

*In re Complete Mgmt. Sec. Litig.*, 153 F. Supp. 2d at 334.

Foreign Plaintiffs have not pled anywhere near that level of detailed "red flags," which is the only reason plaintiffs' complaint was not dismissed against Arthur Andersen in *In re Complete Management Securities Litigation*. *Id.*

Foreign Plaintiffs' final attempt to bolster their inadequate pleadings asserts that KPMG Cayman "admitted" in its Motion to Dismiss that it "failed to consider the reliability of any audit procedures F&H performed," that it was required by GAAS to perform audit procedures on BMIS or request some other reputable auditor to do so and failed to do either, and that it failed "to seek independent corroboration of the assets and trades." (Opp. Br. at 19.) There are no such admissions.

Foreign Plaintiffs rely on conclusory statements that KPMG Cayman somehow had the duty to audit a non-client third party unaffiliated with the foreign fund that it was engaged to audit. Plaintiffs' allegations in general and especially those based upon "information and belief" simply do not amount to the very strong circumstantial evidence that must be pled in order for the Complaint to adequately raise a necessary strong inference of scienter. *See Zucker*, 963 F. Supp. at 306.

### 2) Plaintiffs Have Failed to Satisfy the Pleading Requirements of their State Law Claims

Foreign Plaintiffs allege common law fraud and negligence claims against KPMG Cayman. For the reasons stated above, Foreign Plaintiffs' allegations against KPMG Cayman fail to satisfy the necessary pleading standard for their fraud claim pursuant to Rule 9(b).

Foreign Plaintiffs' negligence claim also fails to satisfy the general pleading standard of Rule 12(b)(6), which requires sufficient factual allegations to "nudge" the Foreign Plaintiffs' negligence claim "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1953 (2009) (internal citations omitted). Foreign Plaintiffs only offer "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" and, consequently, their negligence claim should be dismissed. *Id.* at 1940.

## CONCLUSION

For the foregoing reasons, this Court should grant KPMG Cayman's motion to dismiss the Complaint.

Dated: August 14, 2009

Respectfully submitted,

/s/ George A. Salter
George A. Salter
(GASalter@hhlaw.com)
W. Sidney Davis
(WSDavis@hhlaw.com)
Katie M. Lachter
(KMLachter@hhlaw.com)
Sabrina H. Cochet
(SHCochet@hhlaw.com)

HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
Tel: (212) 918-3000
Fax: (212) 918-3100

*Attorneys for Defendant KPMG Cayman*