UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MERIDIAN HORIZON FUND, LP,  :  09 Civ. 3708 (TPG)
MERIDIAN HORIZON FUND II, LP,  :
MERIDIAN DIVERSIFIED FUND, LP,  :
MERIDIAN DIVERSIFIED FUND, LTD.,  :  ECF CASE
MERIDIAN DIVERSIFIED ERISA FUND,  :  Electronically Filed
LTD., MERIDIAN DIVERSIFIED COMPASS  :
FUND, LTD., and MERIDIAN ABSOLUTE  :
RETURN ERISA FUND, LTD.,  :
 :
                Plaintiffs,  :
 :
         -against-  :
 :
TREMONT GROUP HOLDINGS, INC.,  :
TREMONT PARTNERS, INC., TREMONT  :
(BERMUDA) LIMITED, OPPENHEIMER  :
ACQUISITION CORPORATION, KPMG  :
LLP, AND KPMG (CAYMAN),  :
 :
                Defendants.  :
 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# THE TREMONT DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

Seth M. Schwartz
Susan L. Saltzstein
Michael H. Gruenglas
Jason C. Vigna
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Tremont Partners, Inc.,
Tremont Group Holdings, Inc., and
Tremont (Bermuda) Limited

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

ARGUMENT ........................................................................................................................1

I. PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 10(b) OF THE EXCHANGE ACT ..................................................................................................1

    A. Plaintiffs Have Not Adequately Pled A Material Misrepresentation .....................1

    B. Plaintiffs Have Not Adequately Pled Scienter ......................................................3

    C. Plaintiffs' Securities Fraud Claims Are Barred By The "Santa Fe" Doctrine .........3

II. PLAINTIFFS LACK STANDING TO ASSERT COMMON LAW CLAIMS BELONGING TO THE RYE FUNDS ...................................................................4

III. OFFSHORE PLAINTIFFS' CLAIMS MUST BE BROUGHT IN THE CAYMAN ISLANDS ................................................................................................6

IV. THE MARTIN ACT PREEMPTS PLAINTIFFS' BREACH OF FIDUCIARY DUTY AND NEGLIGENCE CLAIMS ..................................................................7

V. PLAINTIFFS' CLAIMS ARE OTHERWISE LEGALLY DEFECTIVE ........................8

    A. Plaintiffs' Common Law Fraud Claim Is Legally Insufficient For The Same Reasons Their Allegations Under Section 10(b) Fail To State A Claim ..................................................................................................................8

    B. Plaintiffs Fail To State A Breach Of Fiduciary Duty Claim ..................................8

    C. Plaintiffs' Negligence Claims Are Barred By Exculpation Clauses ......................9

    D. Plaintiffs' Losses Were Proximately Caused By Madoff ....................................10

CONCLUSION ....................................................................................................................11

## **TABLE OF AUTHORITIES**

### **CASES**

BNY AIS Nominees Ltd. v. Quan,
   609 F. Supp. 2d 269 (D. Conn. 2009)...............................................................................6

In re Bayou Hedge Fund Litigation,
   534 F. Supp. 2d 405 (S.D.N.Y. 2007) ..............................................................................2

Caraballo v. United States,
   830 F.2d 19 (2d Cir. 1987)..............................................................................................10

In re Caremark International, Inc. Derivative Litigation,
   698 A.2d 959 (Del. Ch. 1996) ..........................................................................................8

Caspian Investments, Ltd. v. Vicom Holdings, Ltd.,
   770 F. Supp. 880 (S.D.N.Y. 1991) ...................................................................................7

Ceribelli v. Elghanayan,
   990 F.2d 62 (2d Cir. 1993)................................................................................................5

In re Citigroup Inc. Shareholder Derivative Litigation,
   964 A.2d 106 (Del. Ch. 2009) ..........................................................................................8

Debussy LLC v. Deutsche Bank AG,
   No. 05 Civ. 550, 2006 WL 860956 (S.D.N.Y. Mar. 29, 2006)....................................4

Direct Mail Production Services Ltd. v. MBNA Corp.,
   No. 99 Civ. 10550, 2000 WL 1277597 (S.D.N.Y. Sept. 7, 2000)................................6

Druck Corp. v. Macro Fund (U.S.) Ltd.,
   No. 02 Civ. 6164, 2007 WL 258177 (S.D.N.Y. Jan. 29, 2007) ....................................8

ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,
   553 F.3d 187 (2d Cir. 2009)..............................................................................................3

Farash v. Continental Airlines, Inc.,
   574 F. Supp. 2d 356 (S.D.N.Y. 2008) .............................................................................9

Field v. Trump,
   850 F.2d 938 (2d Cir. 1988)..............................................................................................4

Firstclass Corp. v. Silverjet PLC,
   560 F. Supp. 2d 324 (S.D.N.Y. 2008) .............................................................................6

Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC,
  376 F. Supp. 2d 385 (S.D.N.Y. 2005) .................................................................................4, 5

Gaines-Tabb v. ICI Explosives, USA, Inc.,
  160 F.3d 613 (10th Cir. 1998) ..............................................................................................10

Globis Partners, L.P. v. Plumtree Software, Inc.,
  No. 1577, 2007 WL 4292024 (Del. Ch. Nov. 30, 2007) ........................................................8

In re Goldman Sachs Mutual Funds,
  No. 04 Civ. 2567, 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006) ..............................................4

Greenspun v. Lindley,
  36 N.Y.2d 473 (1975) .............................................................................................................4

Harsco Corp. v. Segui,
  91 F.3d 337 (2d Cir. 1996) .....................................................................................................1

In re Health Management System, Inc. Securities Litigation,
  No. 97 Civ. 1865, 1998 WL 283286 (S.D.N.Y. June 1, 1998) ...............................................2

Indemnity Insurance Co. of North America v. M/V Easline Tianjin,
  No. 07 Civ 959, 2008 WL 418910 (S.D.N.Y. Feb. 14, 2008) ................................................7

La Fondiaria Assicurazione, S.P.A. v. Ocean World Lines, Inc.,
  No. 02 Civ. 40, 2002 WL 31812679 (S.D.N.Y. Dec. 12, 2002) .............................................7

LaSala v. E*Trade Securities LLC,
  No. 05 Civ. 5869, 2005 WL 2848853 (S.D.N.Y. Oct. 31, 2005) ............................................7

M/S Bremen v. Zapata Off-Shore Co.,
  407 U.S. 1 (1972) ....................................................................................................................6

Malin v. XL Capital Ltd.,
  499 F. Supp. 2d 117 (D. Conn. 2007) .....................................................................................1

New York Islanders Hockey Club, LLP v. Comerica Bank-Texas,
  71 F. Supp. 2d 108 (E.D.N.Y. 1999) ....................................................................................10

Novak v. Kasaks,
  216 F.3d 300 (2d Cir. 2000) ...................................................................................................3

O'Brien v. National Property Analysts Partners,
  719 F. Supp. 222 (S.D.N.Y. 1989) .........................................................................................9

In re Openwave Systems Securities Litigation,
  528 F. Supp. 2d 236 (S.D.N.Y. 2007) ...............................................................................3

Pension Committee of University of Montreal Pension Plan v. Banc of America
  Securities, LLC,
  446 F. Supp. 2d 163 (S.D.N.Y. 2008) ...............................................................................4

Phillips v. Audio Active Ltd.,
  494 F.3d 378 (2d Cir. 2007)...............................................................................................7

Port Authority of New York & New Jersey v. Arcadian Corp.,
  189 F.3d 305 (3d Cir. 1999)..............................................................................................11

Primavera Familienstifung v. Askin,
  137 F. Supp. 2d 438 (S.D.N.Y. 2001) ...............................................................................5

Rabin v. Concord Assets Group, Inc.,
  No. 89 Civ. 6130, 1995 WL 645441 (S.D.N.Y. Nov. 2, 1995)...................................9

Rand & Paseka Manufacturing Co. v. Holmes Protection Inc.,
  130 A.D.2d 429 (1st Dep't 1987)......................................................................................9

Roby v. Corporation of Lloyd's,
  996 F.2d 1353 (2d Cir. 1993)............................................................................................6

Rolf v. Blyth, Eastman & Dillon Co.,
  570 F.2d 38 (2d Cir. 1978)................................................................................................3

Ronar, Inc. v. Wallace,
  649 F. Supp. 310 (S.D.N.Y. 1986) ..................................................................................6

SEC v. Collins & Aikman Corp.,
  524 F. Supp. 2d 477 (S.D.N.Y. 2007) ..............................................................................1

Santa Fe Industries, Inc. v. Green,
  430 U.S. 462 (1977)...........................................................................................................4

Solutia Inc. v. FMC Corp.,
  385 F. Supp. 2d 324 (S.D.N.Y. 2005) ..........................................................................4, 5

Sonet v. Timber Co., L.P.,
  722 A.2d 319 (Del. Ch. 1998).............................................................................................5

South Cherry Street LLC v. Hennessee Group LLC,
  ---F.3d---, 2009 WL 2032133 (2d Cir. July 14, 2009)..............................................2, 3

Southwick Clothing LLC v. GFT (USA) Corp.,
  No. 99 CV 10452, 2004 WL 2914093 (S.D.N.Y. Dec. 15, 2004) ...............................9

Steinberg v. Sherman,
  No. 07 Civ. 1001, 2008 WL 2156726 (S.D.N.Y. May 8, 2008) .................................9

Stern v. General Electric Co.,
  924 F.2d 472 (2d Cir. 1991)..........................................................................................9

Street, Sound Around Electronics, Inc. v. M/V Royal Container,
  30 F. Supp. 2d 661 (S.D.N.Y. 1999) ...........................................................................6

Van Der Lande v. Stout,
  13 A.D.3d 261 (1st Dept. 2004) ..................................................................................9

Wright v. Ernst & Young LLP,
  152 F.3d 169 (2d Cir. 1998)..........................................................................................1

**STATUTES**

Del. Code tit. 6, § 17-1101(f) (2006)..................................................................................10

N.Y. Partnership Law § 121-901 (McKinney 2005).........................................................10

**MISCELLANEOUS**

McKinney's Partnership Law Ch. 39, Art. 8-A, References & Annotations ....................10

The Tremont Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss the Complaint in this action.[1]

## ARGUMENT

### I. PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 10(b) OF THE EXCHANGE ACT

#### A. Plaintiffs Have Not Adequately Pled A Material Misrepresentation

Plaintiffs' allegations of material misrepresentation are fatally flawed for at least three reasons. *First*, plaintiffs mischaracterize Tremont's statements. As the PPMs incontrovertibly establish, TPI[2] *never* represented, as plaintiffs erroneously contend (Opp.[3] at 6-7), that TPI would undertake "regular due diligence" or "monitoring" of Madoff. (See generally Trans. Decl. Exs. B, D.[4]) Plaintiffs therefore have not, as they must, identified with the requisite specificity any false statement made by TPI.

*Second*, even if plaintiffs could show that TPI actually promised to conduct due diligence, plaintiffs have pled no facts to support their conclusory assertion that TPI either failed to conduct it, or that it did so and actually uncovered Madoff's fraud, but failed to disclose it to plaintiffs. (Opp. at 6.) See Malin v. XL Capital Ltd., 499 F. Supp. 2d 117, 145 (D. Conn. 2007)

---

[1] Unless otherwise defined herein, capitalized terms have the same meaning as in the Tremont Defendants' Memorandum of Law in Support of Their Motion To Dismiss, filed May 20, 2009 ("Moving Brief" or "Mov. Br." (Docket No. 32)).

[2] A defendant is not liable for any alleged misstatement "unless the statement is attributed to that person at the time of its dissemination to the public." SEC v. Collins & Aikman Corp., 524 F. Supp. 2d 477, 489 (S.D.N.Y. 2007) (citing Wright v. Ernst & Young LLP, 152 F.3d 169, 175 (2d Cir. 1998)). Because plaintiffs admittedly have not identified any alleged misstatement in the PPMs attributed to TGH or TBL, the Section 10(b) claims against them should be dismissed.

[3] Pls.' Mem. of Law in Opp'n to the Tremont Defs.' Mot. To Dismiss ("Opposition" or "Opp." (Docket No. 38)).

[4] The PPMs admonished in pertinent part that investors should not rely on any representation outside the four corners of those offering documents. (Trans. Decl. Ex. B at iii; Ex. D at i.) Thus, to the extent plaintiffs claim to have relied on any representation outside the PPMs, any such reliance is unjustifiable as a matter of law. See, e.g., Harsco Corp. v. Segui, 91 F.3d 337, 345 (2d Cir. 1996).

("Plaintiffs . . . assert that because large reserve increases were necessary, the accounting practices described must not have been followed. . . . This conclusory allegation . . . is insufficient."), aff'd, 312 F. App'x 400, 403 (2d Cir. 2009); In re Health Mgmt. Sys., Inc. Sec. Litig., No. 97 CIV. 1865, 1998 WL 283286, at *5 (S.D.N.Y. June 1, 1998) ("[T]he conclusory allegation that the opposite of [an alleged representation] is true, without further factual elaboration, is insufficient.")  As plaintiffs acknowledge in their Complaint, Madoff regularly sent trade confirmations to TPI, honored redemption requests without fail for more than fifteen years, and received uniformly clean audits from the NASD (e.g., Compl. ¶¶ 5, 7, 9) – all of which create the far more plausible inference that Tremont conducted due diligence and rationally concluded that Madoff ran a perfectly legitimate enterprise.  See In re Bayou Hedge Fund Litig., 534 F. Supp. 2d 405, 418 (S.D.N.Y. 2007), aff'd sub nom., South Cherry St. LLC v. Hennessee Group LLC, ---F.3d---, 2009 WL 2032133 (2d Cir. July 14, 2009).

*Third*, to the extent plaintiffs allege that TPI promised to conduct diligence on Madoff *after* dissemination of the PPMs, plaintiffs acknowledge that, to state a claim, they must plead facts sufficient to show that TPI secretly "did not intend to perform" as allegedly promised.  (Opp. at 7.)  They have attempted to do so, however, only by repeating their conclusory assertion that TPI must *never* have conducted diligence on Madoff.  As demonstrated above, this allegation is insufficient to state a claim.

Thus, with the exception of the allegation that TPI made inaccurate statements regarding Madoff's trading activity, plaintiffs have failed to identify any material misstatement on which they justifiably relied.  And, as to the statements related to Madoff's trading, as shown below, plaintiffs have failed adequately to allege, as they must, that TPI acted with fraudulent intent.

2

### B.  **Plaintiffs Have Not Adequately Pled Scienter**

Plaintiffs contend that they have adequately alleged scienter, asserting that reckless misconduct may be inferred from their allegation that "Tremont would have uncovered Madoff's Ponzi scheme if" it had conducted the due diligence it supposedly was obligated to conduct. (Opp. at 10.[5]) This argument is completely undermined, however, by the Second Circuit's recent decision in South Cherry Street, LLC v. Hennessee Group LLC, --- F.3d ---, 2009 WL 2032133 (2d Cir. July 14, 2009).  In that case, the Second Circuit squarely held that a virtually identical allegation was insufficient to establish recklessness.  See 2009 WL 2032133, at *13 (rejecting as insufficient allegation that defendant "HG 'could' have learned the truth as to [the fraudulent] aspects of the Bayou funds if HG had performed the 'due diligence' it promised").  As the Second Circuit ruled, this is at most an allegation of negligence, which is insufficient to state a claim under Section 10(b) of the Exchange Act.  See id. at **13-14.

### C.  **Plaintiffs' Securities Fraud Claims Are Barred By The "Santa Fe" Doctrine**

For the reasons discussed in Section I(C) of the Tremont Defendants' reply brief filed today in In re Tremont Securities Law, State Law and Insurance Litigation (Securities Action), 08 Civ. 11212 (TPG) ("Securities Reply"), plaintiffs' securities fraud claims also are barred by the

---

[5] However, the only fact plaintiffs specifically allege TPI would have discovered had it conducted such due diligence is that Madoff acted both as the reference entity's asset manager and broker/asset custodian (Opp. at 9) – something explicitly disclosed in the Funds' PPMs. (Trans. Decl. Ex. B at 8; Ex. D at 7.)  Plaintiffs offer no explanation why this fact, well known to them, was a sign of fraud "'so obvious that [TPI] must have been aware of'" Madoff's Ponzi scheme. ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 198 (2d Cir. 2009) (citation omitted).  In contrast, in Novak v. Kasaks, 216 F.3d 300, 304 (2d Cir. 2000), Rolf v. Blyth, Eastman & Dillon Co., 570 F.2d 38 (2d Cir. 1978), and In re Openwave Systems Securities Litigation, 528 F. Supp. 2d 236 (S.D.N.Y. 2007), cited by plaintiffs, the plaintiffs identified concrete information contemporaneously possessed by defendants that flatly contradicted defendants' public statements.  See Novak, 216 at 304, 311-12 (defendants' statements were contrary to inventory reports discussed internally at time); Rolf, 570 F.2d at 47 (defendants knew from daily monitoring that the quality of the securities he touted "was very low"); In re Openwave, 528 F. Supp. 2d at 249-50 (compensation committee knew from the face of the options they were awarding that exercise or strike price dates did not match the actual dates of the awards).

3

"Santa Fe" doctrine. See also Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 479 (1977). Each of the misrepresentations alleged by plaintiffs relate to TPI's understanding, diligence or oversight of Madoff and the Funds (Compl. at ¶¶ 6, 124, 126, 135, 137) – *i.e.*, they relate to TPI's alleged failure "'to adequately inform [it]sel[f]'" of the Funds' investments. Field v. Trump, 850 F.2d 938, 948 (2d Cir. 1988) (citation omitted). Such allegations of mismanagement fail to state a claim under Section 10(b). See id.

## II. PLAINTIFFS LACK STANDING TO ASSERT COMMON LAW CLAIMS BELONGING TO THE RYE FUNDS

In an effort to avoid application of Delaware and Cayman law, the law under which the Funds were organized, plaintiffs contend that the "internal affairs doctrine" does not apply "automatically." (Opp. at 21.) However, in Greenspun v. Lindley, 36 N.Y.2d 473 (1975), the case cited by plaintiffs for this proposition, the court *did* apply the law of the state of the relevant company's organization, see id. at 477, and plaintiffs have offered no reason to depart from that well-established rule here.[6] See also Debussy LLC v. Deutsche Bank AG, No. 05 Civ. 550, 2006 WL 860956, at **2-3 (S.D.N.Y. Mar. 29, 2006), aff'd, 242 F. App'x 735 (2d Cir. 2007); In re Goldman Sachs Mut. Funds, No. 04 Civ. 2567, 2006 WL 126772, at *5 n.11 (S.D.N.Y. Jan. 17, 2006). Applying the law of Delaware and the Cayman Islands, then, plaintiffs have no standing to maintain their common law claims. (See Mov. Br. at 10-11.)

---

[6] Two other cases cited by plaintiffs (Opp. at 13 n.10) are inapposite because defendants in those cases did not dispute the court's application of New York law. See Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC, 376 F. Supp. 2d 385, 408 (S.D.N.Y. 2005); Solutia Inc. v. FMC Corp., 385 F. Supp. 2d 324, 330 (S.D.N.Y. 2005). Plaintiffs' reliance on Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC, 446 F.Supp. 2d 163 (S.D.N.Y. 2008) (Opp. at 21-22), also is misplaced. In that case, although the hedge funds at issue were organized under the law of the British Virgin Islands, the hedge funds "were defunct," and the defendant directors no longer served on the funds' boards. Id. at 194. On those facts, which are absent here, the court found no reason to apply the internal affairs rule given the purpose of the rule, which "is to prevent a corporation and its current directors from being 'faced with conflicting demands.'" Id. (footnote and citation omitted).

Plaintiffs would fare no better under New York law.  New York law does not, as plaintiffs erroneously argue, permit a plaintiff to sue directly if the defendant breached a duty allegedly owed both to plaintiff and the entity in which plaintiff invested.  (See Opp. at 13 (citing Ceribelli v. Elghanayan, 990 F.2d 62, 63 (2d Cir. 1993), and Solutia Inc. v. FMC Corp., 385 F. Supp. 2d 324, 332 (S.D.N.Y. 2005)).)  As Ceribelli holds, a plaintiff may sue directly *only* if the defendant's alleged wrongdoing violates "an *independent* duty to the shareholder."  Ceribelli, 990 F.2d at 63 (emphasis added).[7]  Such an independent duty "must derive from 'circumstances independent of and extrinsic to the corporate entity.'"  Solutia, 385 F. Supp. 2d at 331.  Consequently, in the partnership context, plaintiffs fail to state a direct claim where, as here, they do not allege "that the defendants owed the plaintiff any duty other than as partners."  Id. at 332.

In this case, plaintiffs' state law claims are premised on the Tremont Defendants' alleged failure to exercise care in the management of the Funds – claims based on duties owed, if at all, to both the Funds *and* the limited partners.  See, e.g., Sonet v. Timber Co., L.P., 722 A.2d 319, 322 (Del. Ch. 1998) (holding that a general partner owes a duty to manage the affairs of the partnership with care and loyalty to both the partnership and the limited partners).[8]  Because plaintiffs' state law claims are not premised on the breach of any duty *independently* owed to them, they are derivative under New York law, as well as the governing law of Delaware and the Cayman Islands.  They therefore should be dismissed.

---

[7] In Ceribelli, plaintiffs were allowed to sue directly, even though the corporation also was harmed, because the alleged wrongdoer breached two distinct duties:  (1) a duty owed to shareholders as the sellers of stock; and (2) a *separate* duty owed to the corporation as its "promoter" in a stock offering.  990 F.2d at 64.

[8] The other two cases plaintiffs cite, Primavera Familienstiftung v. Askin, 130 F. Supp. 2d 450, 494-95 (S.D.N.Y. 2001), amended on reconsideration by 137 F. Supp. 2d 438 (S.D.N.Y. 2001), and Fraternity Fund, 376 F. Supp. 2d at 409, do not change this analysis.  (Opp. at 12 n.9, 13.)  The common law claims at issue in those cases were claims of fraud, which are inherently direct claims, see Primavera, 130 F. Supp. 2d at 495; Fraternity Fund, 376 F. Supp. at 409, not, as here, claims of breach of fiduciary duty or negligence.

5

### III. OFFSHORE PLAINTIFFS' CLAIMS MUST BE BROUGHT IN THE CAYMAN ISLANDS

The Offshore Plaintiffs' claims should be dismissed for the separate and independent reason that those plaintiffs expressly agreed in their Subscription Agreements that "any suit…with respect to this Agreement and the Fund shall be brought in the Cayman Islands."[9] It is well-established that sophisticated parties may not disregard a forum selection clause simply because it may be inconvenient (Opp. at 14-15) to abide by its terms. See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12-13 (1972) ("There are compelling reasons why a freely negotiated private international agreement . . . should be given full effect."); Ronar, Inc. v. Wallace, 649 F. Supp. 310, 313 (S.D.N.Y. 1986) ("Each inconvenience was foreseeable when the parties agreed to the [foreign] forum."); Street, Sound Around Elecs., Inc. v. M/V Royal Container, 30 F. Supp. 2d 661, 663 (S.D.N.Y. 1999) ("The possibility of multiple parallel proceedings was a contingency entirely foreseeable to plaintiff when it agreed to the forum selection clause.").[10]

A forum selection clause will be held unenforceable only where the party contesting the clause proves that "(1) [the clause's] incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a

---

[9]   (Trans. Decl. at Ex. G at S-6; Ex. H at S-6; Ex. J at S-6.)

[10]   Plaintiffs erroneously contend that the forum selection clauses in the Offshore Rye Fund Subscription Agreements do not apply to the Tremont Defendants on the ground that they are not parties to those agreements. (Opp. at 14.) In reality, a "non-party to a contract may invoke a contractual forum selection clause if the non-party is 'closely related' to one of the signatories to the contract such that 'the non-party's enforcement of the . . . clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound.'" Firstclass Corp. v. Silverjet PLC, 560 F. Supp. 2d 324, 328 (S.D.N.Y. 2008) (citation omitted); see also Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1358-59 (2d Cir. 1993); BNY AIS Nominees Ltd. v. Quan, 609 F. Supp. 2d 269, 277 (D. Conn. 2009) (finding non-signatory investment manager and director of hedge fund could invoke forum selection clause found in share application); Direct Mail Prod. Servs. Ltd. v. MBNA Corp., No. 99 Civ. 10550, 2000 WL 1277597, at **3-5 (S.D.N.Y. Sept. 7, 2000) (finding that where signatory entered the contract to confer a pecuniary benefit on related companies, those related companies could invoke the forum selection clause). The Tremont Defendants may invoke the Subscription Agreements' forum selection clauses given that plaintiffs allege that those defendants participated in the alleged mismanagement of the Funds that are signatories to the agreements.

strong public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." Phillips v. Audio Active Ltd., 494 F.3d 378, 383, 392 (2d Cir. 2007).[11]

Plaintiffs do not argue that any of these factors apply. Instead, they argue only that enforcement would be inefficient. (Opp. at 14-15.) Efficiency, however, is irrelevant to the question of the enforceability of a forum selection clause. See Phillips, 494 F.3d at 392-93 (dismissing breach of contract claim because forum selection clause required the claim to be brought in England, but allowing claims not covered by the forum selection clause to proceed in New York); La Fondiaria Assicurazione, S.P.A. v. Ocean World Lines, Inc., No. 02 Civ. 40, 2002 WL 31812679, at *2 (S.D.N.Y. Dec. 12, 2002) (dismissing complaint based on forum selection clause requiring action to be brought in France even though "it might be more efficient to dispose of the entire case in one court").[12] Accordingly, the Court should enforce the forum selection clause of the Subscription Agreements and dismiss the claims of the Onshore Plaintiffs.

## IV. THE MARTIN ACT PREEMPTS PLAINTIFFS' BREACH OF FIDUCIARY DUTY AND NEGLIGENCE CLAIMS

Plaintiffs contend that the Martin Act does not preempt their breach of fiduciary duty and negligence claims because (i) those claims purportedly are not based on allegations of deception

---

[11] Forum selection clauses are mandatory where, as here, they include the word "shall." See Indemnity Ins. Co. of N. Am. v. M/V Easline Tianjin, No. 07 CV 959, 2008 WL 418910, at *3 (S.D.N.Y. Feb. 14, 2008) (citing a line of cases and enforcing as mandatory a forum selection clause stating that dispute "shall be determined by the court in the People's Republic of China"); La Fondiaria Assicurazione, S.P.A. v. Ocean World Lines, Inc., No. 02 Civ. 40, 2002 WL 31812679, at *1 (S.D.N.Y. Dec. 12, 2002) (enforcing as mandatory a forum selection clause stating that the dispute "shall be brought before the Tribunal of Commerce at Marseille").

[12] The cases cited by plaintiffs are readily distinguishable. In Caspian Investments, Ltd. v. Vicom Holdings, Ltd., 770 F. Supp. 880 (S.D.N.Y. 1991), the court, applying a comity analysis (not an efficiency analysis), dismissed a New York-based suit after the same plaintiffs had brought a similar action in Ireland. Importantly, the parties' forum selection clause in Vicom provided that the suit be brought in *Ireland*. Id. at 884. In LaSala v. E*Trade Securities LLC, No. 05 Civ. 5869, 2005 WL 2848853, at **5-6 (S.D.N.Y. Oct. 31, 2005), the court merely considered whether to stay a proceeding, not whether a plaintiff would be permitted to bring suit in a forum barred by a forum selection clause.

7

and (ii) this Court should refuse to follow controlling precedent mandating preemption. (Opp. at 15-17.) For the reasons set forth in Section IV of the Securities Reply filed today by the Tremont Defendants, both arguments are baseless.

## V. PLAINTIFFS' CLAIMS ARE OTHERWISE LEGALLY DEFECTIVE

### A. Plaintiffs' Common Law Fraud Claim Is Legally Insufficient For The Same Reasons Their Allegations Under Section 10(b) Fail To State A Claim

Plaintiffs acknowledge that "the elements of common law fraud under New York [law] are essentially the same as the elements for federal securities fraud." (Opp. at 20.) Consequently, plaintiffs' fraud claims against the Tremont Defendants should be dismissed for the same reasons warranting dismissal of their Section 10(b) claims.

### B. Plaintiffs Fail To State A Breach Of Fiduciary Duty Claim

Plaintiffs do not address any of the Delaware or Cayman Islands authorities establishing that plaintiffs have failed to state a claim of breach of fiduciary duty. (See Mov. Br. at 16 (citing, *inter alia*, In re Citigroup Inc. S'holder Deriv. Litig., 964 A.2d 106, 124 (Del. Ch. 2009); Globis Partners, L.P. v. Plumtree Software, Inc., No. 1577, 2007 WL 4292024, at *6 (Del. Ch. Nov. 30, 2007); and In re Caremark Int'l, Inc. Deriv. Litig., 698 A.2d 959, 971 (Del. Ch. 1996)).) Instead, plaintiffs argue that New York law applies to their claim and that under New York law, they have sufficiently pled "that Tremont[13] acted 'with gross negligence' through a total failure 'to use reasonable care.'" (Opp. at 24.)

Plaintiffs are incorrect that New York law applies to their breach of fiduciary duty claim. New York courts look to the law of the jurisdiction of organization to determine whether a breach of fiduciary duty has occurred. See Druck Corp. v. Macro Fund (U.S.) Ltd., No. 02 Civ. 6164,

---

[13]   Plaintiffs have cited no authority for the proposition that TGH or TBL, as opposed to TPI, owed them fiduciary duties.

8

2007 WL 258177, at *2 (S.D.N.Y. Jan. 29, 2007), aff'd, 290 F. App'x 441 (2d Cir. 2008) ("Breach of fiduciary duty claims are governed by the [law of the] place of incorporation."); Steinberg v. Sherman, No. 07 Civ. 1001, 2008 WL 2156726, at *3 (S.D.N.Y. May 8, 2008) (same).  Here, the Funds were organized under Delaware and Cayman law, requiring application of the law of those jurisdictions to plaintiffs' claims in this case.  And, for the reasons stated in Tremont's Moving Brief, plaintiffs plainly have failed to state any claim of breach of fiduciary duty under Delaware or Cayman law.[14]  (See Mov. Br. at 15-16.)

### C. **Plaintiffs' Negligence Claims Are Barred By Exculpation Clauses**

Plaintiffs do not dispute that negligence claims are barred by the Funds' exculpation clauses.  (Opp. at 23-24.)  Nevertheless, plaintiffs attempt to redraft their Complaint to relabel Counts VIII and IX as claims of "gross negligence," which they assert are not exculpated.  (Id.)  Counts VIII and IX, however, allege none of the elements of gross negligence, and plaintiffs cannot rewrite their Complaint at this juncture.  See Southwick Clothing LLC v. GFT (USA) Corp., No. 99 CV 10452, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers."); O'Brien v. Nat'l Prop. Analysts Partners, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.").

Further, as plaintiffs concede (Opp. at 23), the LPA of the Onshore Fund exculpates the Tremont Defendants even for gross negligence – which is perfectly permissible under the law

---

[14]     Even under New York law, general partners such as TPI are entitled to the protections of the business judgment rule, which presumes that fiduciaries have complied with their fiduciary duties.  See Rabin v. Concord Assets Group, Inc., No. 89 Civ. 6130, 1995 WL 645441, at **5-6 (S.D.N.Y. Nov. 2, 1995).  To overcome these presumptions, New York law requires a plaintiff to make "a showing of fraud or bad faith."  Stern v. Gen. Elec. Co., 924 F.2d 472, 476 (2d Cir. 1991); see also Van Der Lande v. Stout, 13 A.D.3d 261, 261 (1st Dep't 2004).  As under Delaware law, such a showing requires that plaintiffs plead facts demonstrating, at a minimum, gross negligence in the sense of legal recklessness.  See Farash v. Cont'l Airlines, Inc., 574 F. Supp. 2d 356, 368 (S.D.N.Y. 2008); Rand & Paseka Mfg. Co. v. Holmes Prot. Inc., 130 A.D.2d 429, 431 (1st Dep't 1987).

governing limited partnerships. See Del. Code tit. 6, § 17-1101(f) (2006) ("A partnership agreement may provide for the limitation or elimination of any and all liabilities for breach of contract and breach of duties (including fiduciary duties) of a partner or other person[.]"); accord McKinney's Partnership Law Ch. 39, Art. 8-A, Refs & Annos. at VI.[15]  Consequently, Counts VIII and IX should be dismissed.

### D.     Plaintiffs' Losses Were Proximately Caused By Madoff

Plaintiffs' common law claims should be dismissed for the additional reason that Madoff's intentional criminal act was a superseding cause of plaintiffs' losses, cutting off any potential liability of other alleged tortfeasors. (Mov. Br. at 13-14.)  To be sure, the criminal act of another is not a superseding cause if the act was a "normal and foreseeable" consequence of a defendant's own conduct. Caraballo v. United States, 830 F.2d 19, 22 (2d Cir. 1987).  But a crime is normal and foreseeable only where "(1) the situation [created by defendant's actions] provides a temptation to which a 'recognizable percentage' of persons would yield, or (2) the temptation is created at a place where 'persons of a peculiarly vicious type are likely to be.'"[16] Gaines-Tabb v. ICI Explosives, USA, Inc., 160 F.3d 613, 621 (10th Cir. 1998) (quoting Restatement (2d) of Torts § 448 cmt. b).  Neither scenario is plausibly implicated here, and neither has been alleged in the Complaint.  As demonstrated in the many cases cited in the Moving Brief, this Court can, and

---

[15]     The law of Delaware governs the internal affairs of the Onshore Fund. See N.Y. P'ship Law § 121-901 (McKinney 2005).  In arguing that gross negligence may not be exculpated (Opp. at 23), plaintiffs rely on inapposite cases arising in the context of public corporations or public health and safety, which are governed by statutory schemes not applicable to limited partnerships.

[16]     New York Islanders Hockey Club, LLP v. Comerica Bank-Texas, 71 F. Supp. 2d 108 (E.D.N.Y. 1999), cited by plaintiffs, follows this rule.  There, defendants were alleged to have actively facilitated the scheme of an individual they knew to be "an established con artist" whose fraudulent transactions they knowingly financed in the past. Id. at 117-18.  Plaintiffs' Complaint, in contrast, nowhere alleges facts showing that the Tremont Defendants knew that Madoff, the former chairman of NASDAQ, was a fraud.

10

should, dismiss plaintiffs' claims against the Tremont Defendants, parties who did not themselves steal plaintiffs' money.  (See Mov. Br. at 13-14 (citing, *inter alia*, Port Auth. of N.Y. & N.J. v. Arcadian Corp., 189 F.3d 305, 319 (3d Cir. 1999) (applying New York law)).)

## **CONCLUSION**

For all of the foregoing reasons, and the reasons stated in the Tremont Defendants' Moving Brief, the Tremont Defendants' motion to dismiss should be granted in all respects.

Dated: New York, New York
       August 14, 2009

                              Respectfully submitted,

                               /s/ Seth M. Schwartz
                              Seth M. Schwartz  (Seth.Schwartz@Skadden.com)
                              Susan L. Saltzstein  (Susan.Saltzstein@Skadden.com)
                              Michael H. Gruenglas  (Michael.Gruenglas@Skadden.com)
                              Jason C. Vigna (Jason.Vigna@Skadden.com)
                              SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                              Four Times Square
                              New York, New York 10036
                              (212) 735-3000

                              Attorneys for Tremont Partners, Inc., Tremont Group
                              Holdings, Inc., and Tremont (Bermuda) Limited