UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
                                                :
MERIDIAN HORIZON FUND, L.P., ET                 :
AL.,                                            :
                                                :    09 Civ. 3708
                        PLAINTIFF,              :
                                                :    **OPINION**
           v.                                   :
                                                :
TREMONT GROUP HOLDINGS, INC.,                   :
                                                :
                        DEFENDANT               :
                                                :
                                                :
                                                :
------------------------------------------------x

Plaintiffs are hedge funds that invested in the Rye Select Broad Market XL Fund, L.P. and the Rye Select Broad Market Portfolio Fund, L.P. (collectively, the "XL Funds"), two hedge funds managed by defendant Tremont Partners, Inc. The returns for these funds were linked to the performance of other hedge funds that were managed by Bernard Madoff. Plaintiffs ultimately lost their entire investments when Madoff's Ponzi scheme was revealed.

Plaintiffs bring claims under the federal securities laws, as well as state law claims of fraud, negligence, and breach of fiduciary duty. The court has already dismissed claims brought by plaintiffs against the auditors of the XL Funds. This ruling was affirmed by the Court of Appeals on July 10, 2012. Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc., 747 F. Supp. 2d 406, 409 (S.D.N.Y. 2010) aff'd sub nom. Meridian Horizon Fund, LP v. KPMG (Cayman), 11-3311-CV, 2012 WL 2754933 (2d Cir. July 10, 2012).

Defendants move to dismiss the remaining counts for failure to state a claim. The motion is denied.

## THE COMPLAINT

The following allegations are taken from the Amended Complaint ("complaint") and the documents on which it relies. For purposes of these motions, these allegations are assumed to be true.

<u>The Parties</u>

Plaintiffs are divided into two groups depending on the funds in which they invested, "Onshore Plaintiffs" and "Offshore Plaintiffs."

The Onshore Plaintiffs include Meridian Horizon Fund, L.P., Meridian Horizon Fund II, LLP., and Meridian Diversified Fund, LP., all limited partnerships organized under the laws of the State of Delaware. They invested in the Rye Select Broad Market XL Fund, L.P. ("XL Onshore"), a Delaware limited partnership.

The Offshore Plaintiffs are Meridian Diversified Fund, Ltd., Meridian Diversified ERISA Fund, Ltd., Meridian Diversified Compass Fund, Ltd., and Meridian Absolute Return ERISA Fund, Ltd., companies incorporated under the laws of the Cayman Islands. They invested in the Rye Select Broad Market XL Portfolio, Ltd. ("XL Offshore"), a hedge fund organized as a Cayman Islands company.

The XL Funds did not directly invest with Madoff. Rather, the XL Funds

were set up in such a way that their returns were tied to the economic performance of hedge funds (the "Reference Entities").

The stated objective of XL Onshore was to provide investors with long-term capital growth and a return based on three times leveraged exposure to the economic performance of the reference entity Rye Select Broad Market Fund, LP ("Onshore Reference Entity"). The stated objective of XL Offshore was the same as the objective of XL Onshore. XL Offshore used the Rye Select Broad Market Portfolio Ltd. ("Offshore Reference Entity") as its reference entity.

Defendant Tremont Partners, Inc. ("Tremont Partners") was the general partner and investment manager of XL Onshore as well as of its corresponding reference entity. There are no allegations in the complaint about a general partner for XL Offshore. However, Tremont Partners was the investment manager for XL Offshore.

Tremont (Bermuda) Limited ("Tremont Bermuda") is a company organized under the laws of Bermuda. It served as the investment manager for the XL Offshore fund's reference entity.

Tremont Group Holdings, Inc. ("Tremont Holdings"), is Tremont Partners' parent company. Collectively, Tremont Partners, Tremont Holdings, and Tremont Bermuda will be referred to as the "Tremont Defendants."

Defendant Oppenheimer Acquisition Corporation is the parent company of Tremont Holdings. It owns 100% of Tremont Holdings and derives 7% of its earnings from Tremont Holdings.

The Alleged Wrongdoing

The complaint alleges that the Tremont Defendants assured plaintiffs that they were intimately familiar with the operations of Madoff and BMIS (Madoff's company) and that they closely monitored these operations. It is further alleged (par. 42) that the Tremont defendants consistently represented, through offering materials, financial information, and conversations, that they had conducted sufficient due diligence on Madoff and BMIS to verify, among other things, the existence of the assets Madoff and BMIS claimed to hold and the occurrence of the trades that Madoff and BMIS claimed to execute.

According to the complaint (par. 45), at one time plaintiffs' representatives themselves, with the approval of the Tremont Defendants, had met personally with Madoff. However, beginning in late 2005 the Tremont Defendants put an end to this, emphasizing that the role of the Tremont Defendants was to minimize the need for plaintiffs to have direct contact with Madoff and BMIS. This "avoided disturbing Madoff."

The complaint contains a number of allegations about a Darren Johnston, someone connected with the Tremont Defendants. According to the complaint, he made numerous reports to plaintiffs about alleged appreciation of the reference entities managed by Madoff and BMIS.

Is it alleged (par. 48) that Johnston reported to plaintiffs' representatives that he and his colleagues planned to meet with Madoff in late March 2006. Plaintiffs' representatives asked if they could join the meeting. Johnston subsequently came back with a negative response and stated that the Tremont

The Alleged Wrongdoing

The complaint alleges that the Tremont Defendants assured plaintiffs that they were intimately familiar with the operations of Madoff and BMIS (Madoff's company) and that they closely monitored these operations. It is further alleged (par. 42) that the Tremont defendants consistently represented, through offering materials, financial information, and conversations, that they had conducted sufficient due diligence on Madoff and BMIS to verify, among other things, the existence of the assets Madoff and BMIS claimed to hold and the occurrence of the trades that Madoff and BMIS claimed to execute.

According to the complaint (par. 45), at one time plaintiffs' representatives themselves, with the approval of the Tremont Defendants, had met personally with Madoff. However, beginning in late 2005 the Tremont Defendants put an end to this, emphasizing that the role of the Tremont Defendants was to minimize the need for plaintiffs to have direct contact with Madoff and BMIS. This "avoided disturbing Madoff."

The complaint contains a number of allegations about a Darren Johnston, someone connected with the Tremont Defendants. According to the complaint, he made numerous reports to plaintiffs about alleged appreciation of the reference entities managed by Madoff and BMIS.

Is it alleged (par. 48) that Johnston reported to plaintiffs' representatives that he and his colleagues planned to meet with Madoff in late March 2006. Plaintiffs' representatives asked if they could join the meeting. Johnston subsequently came back with a negative response and stated that the Tremont

Defendants "would handle any questions plaintiffs' representatives had for Madoff."

The complaint (par. 51) alleges that the Tremont Defendants described to plaintiffs their method of acquiring "a detailed understanding of the managers" regarding the funds invested in, which included obtaining information about "investment process and … procedures and policies." This scrutiny involved an investigation of the managers' back-office systems, to make sure that the processes "described at the manager level are actually carried out."

The complaint (pars 68 and 69) refers to "a standardized DDQ dated June 30, 2007," which plaintiffs received from Tremont Defendants. A DDQ is a Due Diligence Questionnaire. Among other things the DDQ stated that one branch of the Tremont Defendants "reviews each of the trades to ensure that the investment advisor does not deviate from the stated investment strategy." Trades were allegedly reconciled to broker confirmations monthly. According to the complaint (par. 71) on October 26, 2007 Johnston and a colleague met with plaintiffs' representatives and said that "given the personal history between the Tremont Defendants and Madoff and BMIS and the very sizeable commitment of funds they directed to BMIS" the Tremont Defendants were able to maintain a close relationship with Madoff and BMIS and spoke with Madoff at least once a month, and met with Madoff each year.

The complaint alleges (pars 75-78) that a DDQ dated June 38 was provided to plaintiffs. This DDQ described strict monitoring of a fund manager such as Madoff, to detect, among other things, fraud and "failure to comply

with laws."

The complaint contains a section (pars 84-87) describing the revelation in December 2008 about Madoff's gross fraud, the main feature of which was that funds invested with Madoff were simply not used to purchase actual assets, and that his purported operation was a mere shell.

Is There a Sufficient Allegation of Scienter?

In viewing the complaint, the essential question now arises as to whether the complaint makes the necessary further allegations that these representations were false and made with scienter by the Tremont Defendants. The answer is that there are no such clear-cut allegations. What is alleged is that, if the Tremont Defendants had actually conducted the monitoring as they claimed they would have been aware of the facts about Madoff and BMIS (pars 6 and 88). The complaint goes on to assert that the Tremont Defendants either failed to perform the monitoring they claimed to have performed or they uncovered the facts about Madoff and knowingly or recklessly misrepresented the circumstances to plaintiffs, all in order to collect substantial management fees (pars 6 and 90).

The conduct described above is alleged to have been done by the Tremont Defendants.  Oppenheimer, the corporate parent of Tremont Holdings, has been sued on a control person theory, based on allegations that it had the power to control Tremont Holdings and its subsidiaries through its 100% ownership of Tremont Holdings, its provision of support services to Tremont

Holdings (such as compliance, audit, finance, and human resources), and Oppenheimer's ability to place its own President on Tremont Holdings' Board of Directors.  Plaintiffs also allege that Oppenheimer controlled the Tremont Defendants because Oppenheimer directed the Tremont Defendants to change auditors from Ernst & Young to KPMG, which Oppenheimer engaged for its subsidiaries' audit work.

The Claims and the Motions

Claims 1-3 are asserted under the federal securities laws.  In Claims 1 and 2, plaintiffs allege that the Tremont Defendants are liable for securities fraud under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j)(b) (2010), and SEC Rule 10b-5.  As discussed above, the primary allegation is that the Tremont Defendants misled plaintiffs about the extent of the due diligence they were conducting on Madoff.  Claim 3 is a claim against Oppenheimer for control person liability under Section 20(a) of the Exchange Act.

Claims 4 and 5 are for common law fraud against the Tremont Defendants, based on the same allegations as the federal securities claims.

Claims 6 and 7 are for breach of fiduciary duty.  Claims 8 and 9 are for negligence.

Claims 10-15 are claims against KPMG, which the court has previously dismissed for failure to state a claim.

Defendants move to dismiss the remaining claims for failure to state a claim.  They argue that the securities fraud claims and common law fraud

claims fail to adequately plead scienter (counts 1-2, 4-5).  Without a primary violation of the federal securities laws, defendants argue that the claim for control person liability must be dismissed (count 3).

Defendants further argue that the plaintiffs lack standing to pursue the breach of fiduciary duty and negligence claims (counts 6-9), which defendants argue are derivative claims that may only be asserted by the XL Funds or by shareholders in a derivative suit on their behalf.  Defendants also argue that plaintiffs' negligence and breach of fiduciary duty claims are barred by various contractual exculpation clauses and that the claims against XL Offshore must be brought in the Cayman Islands pursuant to a forum selection clause.

## DISCUSSION

I.   Fraud Claims

What have just been described are the allegations in the complaint about representations made by the Tremont defendants of their relationships with Madoff and their close scrutiny of the investing Madoff was purportedly doing. The question then arises as to whether the complaint made adequate allegations that these representations were knowingly false – whether there was falsification accompanied by scienter. Defendants argue that plaintiffs have not adequately alleged scienter and that the complaint should be dismissed pursuant to Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b).

To state a claim for securities fraud, a plaintiff must allege facts

sufficient to show that, in connection with the purchase or sale of securities, the defendant made a false material representation or omitted to disclose material information, with scienter, upon which plaintiff relied, and that plaintiff's reliance was the proximate cause of the injury.  See ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 197 (2d Cir. 2008).

A claim for relief under Section 10(b) is subject to the heightened pleading requirements of Rule 9(b) and the PSLRA.  See ATSI Commc'ns v. Shaar Fund Ltd., 493 F.3d 87, 99 (2d Cir. 2007).  Indeed, under both Rule 9(b) and Section 10(b) of the PSLRA, allegations must be made "with particularity" and give "rise to a strong inference that the defendant acted with the required state of mind," namely, "to deceive, manipulate or defraud."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 313-14 (2007).

For purposes of stating a Section 10(b) claim, scienter means an actual intent "to deceive, manipulate, or defraud."  Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976).  A plaintiff may satisfy the requirement to plead scienter by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness.  See Ganino v. Citizens Utils. Co., 228 F.3d 154, 168-69 (2d Cir. 2000).  Moreover, for an inference of scienter to be strong, it must be more than merely plausible or reasonable—it must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent."  Tellabs, 551 U.S. at 310.  In short, to determine

whether a plaintiff's purported inferences of scienter are sufficiently "strong," the court must consider both the inferences urged by the plaintiff and any competing inferences rationally drawn from all the facts alleged, taken collectively. See ECA, 553 F.3d at 198.

The elements of common law fraud under New York law and fraud under the federal securities laws are "essentially the same."[1] See Meridian Horizon Fund, L.P., 747 F. Supp. 2d at 414 (quoting Fezzani v. Bear, Stearns & Co., 592 F. Supp. 2d 410, 423 (S.D.N.Y. 2008)).

In the present case, the complaint alleges that the Tremont defendants represented that they had a close relationship with Madoff and that they delved into the details of Madoff's operation in order to assure plaintiffs of the safety of their large investments in the XL funds.

There is a wealth of detail in these allegations about what representations were made by the Tremont Defendants to plaintiffs. The problem is, as indicated earlier, the lack of specific claims about what the Tremont defendants actually did in relation to what they said they were doing.

However the complaint alleges, with some plausibility, that if the Tremont defendants had indeed done all they said they were doing, they would have uncovered the Madoff fraud.

In any event, the court believes that the complaint is surely adequate to withstand the motion to dismiss. The court will conduct further proceedings to attain clarification of the certain issues.

---

[1] The parties do not dispute that New York law applies to the common law fraud claims.

The court is well aware of the Second Circuit decision in <u>South Cherry Street, LLC v. Henessee Group LLC</u>, 573 F.3d 98 (2d Cir. 2009). However, the complaint in the present case is significantly stronger than the complaint in <u>South Cherry Street</u>.

## Conclusion

For the forgoing reasons the motion to dismiss the statutory and common law fraud claims in the complaint is denied. However there will need to be further proceedings to clarify certain issues regarding the complaint. These further proceedings will also deal with the breach of fiduciary duty and negligence claims, which the court declines to dismiss on the present record.

This opinion resolves the documents listed as numbers 63 and 67 on the docket of case 09 Civ. 3708.

So ordered.

Dated: New York, New York
September 14, 2012

/s/ Thomas P. Griesa
Thomas P. Griesa
U.S. District Judge

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Sept 14, 2012
```

- 11 -